Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
David J. Harris, Jr. (SBN 286204)
djh@classactionlaw.com
FINKELSTEIN & KRINSK LLP
550 West C Street, Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

*Counsel for Plaintiff and
the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COINBASE GLOBAL, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No.:<br><br><u>CLASS ACTION COMPLAINT FOR:</u><br><br>(1) VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;<br><br>(2) VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Pursuant to Fed. R. Civ. P. 23, Plaintiff David Suski brings this class action individually and on behalf of all other persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) Sweepstakes, and who purchased or sold Dogecoins on a Coinbase exchange for $100 or more between June 3, 2021 and June 10, 2021, inclusive of both of those dates. Plaintiff makes the following allegations based on the investigation of his counsel, and based on personal knowledge as to himself and his own acts and dealings with the Defendants. Plaintiff and his counsel believe that substantial, additional evidentiary support will exist for the allegations herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. Founded in 2012, Defendant Coinbase Global, Inc. (hereinafter "Coinbase," or the "Company") is a newly public company and one of the largest online cryptocurrency exchanges in the world. Coinbase has approximately 60 million active users worldwide, consisting primarily of retail consumers, who buy and sell cryptocurrencies online through the Company's website, www.coinbase.com.

2. While Coinbase is informally known as a cryptocurrency "exchange," it is not actually an exchange in the mold of stock exchanges or other, traditional securities and commodities exchanges. Rather than facilitating cryptocurrency purchases and sales between users, Coinbase itself buys and sells its "cryptos" to and from its users as a counterparty. Thus, Coinbase is more like a cryptocurrency "dealership" than a true "exchange." Coinbase collects commissions from its users for each crypto purchase or sale they execute on Coinbase, with the commission being calculated as a percentage of the dollar price (or Euro price, or Yen price, etc.) of the crypto volume purchased or sold. The Company's financial and operational health depends upon its ability to sell and resell its "cryptos" to consumers in exchange for traditional currencies like U.S. dollars.

3. Among the many different cryptocurrencies that Coinbase buys and sells is a purported cryptocurrency called "Dogecoin," or "DOGE." Dogecoin was purportedly created in December 2013 by two software engineers named Billy Markus and Jackson Palmer, who decided to create a new digital payment system as a joke: making light of speculative trading that was occurring

CLASS   ACTION   COMPLAINT

in other, seemingly worthless cryptocurrencies at the time (like Bitcoin). If entirely arbitrary computer codes like Bitcoins could be invented and sold for up to $1,000 each in 2013, then why not a Dogecoin?



4. The software engineers' intended joke has since become quite a hit, especially among millennials and younger generations. As the retail prices of many cryptocurrencies have skyrocketed since 2013, so too has the retail price of the "coin" known as "DOGE." The price of one Dogecoin was less than one U.S. penny as of January 2021, before spiking as high as $0.70 per Dogecoin in May 2021.

5. Coinbase took notice of DOGE's meteoric ascent in popularity this year, and quickly decided to add the intended satire known as Dogecoin to the list of cryptos it would sell to customers. On June 1, 2021, Coinbase started allowing its customers to transfer any DOGE they might own into their Coinbase accounts. The Company announced that it would begin buying and selling DOGE to its users beginning on or after June 3, 2021, "if liquidity conditions [were] met." *See* https://blog.coinbase.com/dogecoin-doge-is-launching-on-coinbase-pro-1d73bf66dd9d (last visited Jun. 9, 2021). Given, however, the huge amount of commissions that Coinbase would earn from any surge in DOGE trading, Coinbase had no intention of leaving DOGE's "liquidity conditions" up to chance or up to *natural* consumer sentiment. Instead, Coinbase chose to affirmatively incentivize large, early trading volumes in DOGE among its users. And to do so, the Company hired Defendant Marden-Kane Inc. ("MKI") to design, market, and execute a $1.2 million "Dogecoin Sweepstakes," beginning on June 3, 2021.

CLASS   ACTION   COMPLAINT

6.      On June 3, 2021 (the first day that DOGE trading became possible), Coinbase directly emailed to millions of its users, and also displayed to them on its website and mobile app, advertisements of a $1.2 million Dogecoin "Sweepstakes."   Coinbase's direct-to-user emails (designed in substantial part if not entirely by MKI) displayed large, colorful graphics and large print stating: "Trade DOGE. Win DOGE.  Starting today, you can trade, send, and receive Dogecoin on Coinbase.com and with the Coinbase Android and iOS apps.  To celebrate, we're giving away $1.2 million in Dogecoin.  Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win. Terms and conditions apply."  The email further highlighted in large, bold text, "What you can win": including the facts that "1 Winner will receive $300,000 in DOGE," that "10 Winners will receive $30,000 in DOGE," and that "$6,000 Winners will receive $100 in DOGE." Sandwiched between those large, prominent statements was a smaller-font link stating, "See all rules and details."   Immediately below the bold statements about prizes was a large, bright blue button saying, "See how to enter."   That first screen-page of the email advertisement looked like the following image.



CLASS   ACTION   COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7.      After Plaintiff and other consumers clicked the big, bright "See how to enter" button before clicking the much smaller "See all rules and details" link, they were taken to a Coinbase web advertisement containing similar, prominent instructions on how to enter the Company's DOGE Sweepstakes.  Once again, the ad stated in large, bold letters, with graphics: "Trade DOGE.  Win DOGE."  This web ad reiterated the main assertions in the email ad, stating that "Dogecoin is now on Coinbase, and we're giving away $1.2 million in prizes to celebrate.  Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win.  Limit one entry per person.  Opting in multiple times will not increase your chance of winning."  Once again, there was a much smaller, fainter link, beneath the prominent text, that said "View sweepstakes rules," and then a much larger, bright-blue button prompting the customer to "Opt-in,"



8.      Upon clicking "Opt-in," Plaintiff and other consumers would see both the large text and the bright blue button change.  The largest text changed to say: "You're one step closer to winning.  You've successfully opted in to our Dogecoin Sweepstakes.  Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win."  At the same time,

4

CLASS   ACTION   COMPLAINT

the large, blue button changed to say: "Make a trade."  All other aspects of the webpage remained unchanged.  After opting in and clicking "Make a trade," customers were taken to Coinbase's trading platform, where they could sell or buy Dogecoins to or from Coinbase, and would pay Coinbase "commissions" for the privilege of buying or selling.

9.      If customers scrolled down a bit *before* "opting in" or "making a trade," then they would see other large, bold statements with graphics.  The digital ad's second and third "screen pages" once again highlighted the Sweepstakes prizes, and the specific process for entering to win.



CLASS   ACTION   COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14   10.   Thus, according to Coinbase's prominent, repeated instructions, the four-step process

15   for entering its DOGE Sweepstakes was stated as follows.

16   (a) "**Sign in to Coinbase**.  Not logged in?  Sign in or create an account at coinbase.com.

17       Then follow the prompts to opt in."

18   (b) "**Opt in to the sweepstakes**.  If you're signed in, you can opt in above.  You'll get an

19       email confirming that you've successfully opted in after about 24 hours."

20   (c) "**Make a trade**.  Buy or sell $100 or more in DOGE on Coinbase between 6/3/21 and

21       6/10/21.  You can trade $100 all at once, or a little at a time."

22   (d) "**Watch your inbox**.  Once you opt in and trade, you'll be officially entered to win.

23       Winners will hear from us via email on or around 6/17."

24   11.   Coinbase's email and website advertisements were materially false and misleading to

25   Plaintiff and other Class members.   The truth was that users could enter the Company's DOGE

26   Sweepstakes by buying or selling $100 in DOGE, *or by mailing Coinbase a 3x5-inch index card with*

27   *the customer's name, address, email address, phone, and date of birth written on it*.  While Coinbase

28                                          6
                              CLASS   ACTION   COMPLAINT

ultimately disclosed this truth on its separate, official "rules and details" webpage, Coinbase and its Sweepstakes "Administrator," MKI, specifically designed their email and website ads with the knowledge and intent that the ads' text, structure and design would cause most members of the public to "opt in" and "make a trade" (*i.e.,* pay Coinbase $100 or more, plus commissions) without seeing the "rules and details" (or at least *before* seeing those "rules and details").  Defendants' intentionally false and misleading digital ad campaigns caused Plaintiff and the Class to pay Coinbase many millions of dollars in purchases and commissions, which they would not otherwise have spent absent Defendants' deceptive digital ad campaign.

12.     This nationwide class action seeks financial and equitable relief from Defendants' wrongful conduct, on behalf of Plaintiff and millions of other damaged Class members.

**PARTIES**

13.     Plaintiff David Suski is a citizen of New York, and has a personal account with Coinbase that allows him to sell and buy cryptocurrencies directly to and from Coinbase via www.coinbase.com, as well as the Company's mobile app.

14.     Founded in 2012, Defendant Coinbase Global, Inc. ("Coinbase") is a Delaware corporation with its primary offices located in San Francisco, California.  Coinbase is one of the largest online cryptocurrency dealers in the world.  Coinbase has approximately 60 million active users worldwide, consisting primarily of consumers who buy and sell cryptocurrencies through the Company's website, www.coinbase.com.  In 2021, Coinbase's common stock began trading publicly on the NASDAQ global stock exchange under ticker symbol "COIN."

15.     Defendant Marden-Kane, Inc. ("MKI") is a New York corporation with its primary offices located in Manhasset, New York (*i.e.,* Long Island).  MKI specializes in designing, creating, executing, and analyzing various advertising and promotional campaigns for corporate clients: and specifically, digital sweepstakes offers and operations.  Defendant MKI contracted with Defendant Coinbase to serve as the start-to-finish "Administrator" of Coinbase's June 2021 Dogecoin Sweepstakes and Coinbase's attendant advertising campaign.

7

CLASS   ACTION   COMPLAINT

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction under 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, and Plaintiff and most Class members are citizens of States different from the Defendants.

17.     This Court has, at minimum, specific personal jurisdiction over both Defendants because Defendants' official Sweepstakes rules provide that "the California courts (state and federal) shall have sole jurisdiction of any controversies regarding the [Sweepstakes,] and the laws of the State of California shall govern the promotion."

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the events and omissions giving rise to the claims occurred in this district, and a substantial part of the property at issue in this action is situated within this district.

**SUBSTANTIVE ALLEGATIONS**

**Plaintiff's Experience in Defendants' DOGE Sweepstakes**

19.     On or about June 8, 2021, Plaintiff viewed Coinbase's email and internet ads, without realizing that he could enter the Company's DOGE Sweepstakes simply by mailing Coinbase an index card with his name, birthday, phone, mailing and email addresses on it.  Before seeing all of Defendants' Sweepstakes "rules and details," Plaintiff followed the more conspicuous assertions and action buttons contained in Defendants' ads: to "opt in" to the Sweepstakes, and to "make a trade" on Coinbase's platform by paying Coinbase the advertised $100 to acquire some Dogecoins.  Nowhere did Defendants' ads make clear that there was a 100% free, mail-in option for entering the Sweepstakes, an option that required no DOGE purchases or sales on Coinbase.

20.     If Coinbase's digital ads had made clear to Plaintiff that there was a 100% free entry option, then Plaintiff would not have given Coinbase his $100, or paid Coinbase any commissions to acquire Dogecoins.  In fact, as of June 8, 2021, Plaintiff already owned over 1,000 Dogecoins, which he maintained in his personal account with a different company, popular online-broker Robinhood Markets, Inc.  The *only* reason that Plaintiff undertook to buy more Dogecoins from Coinbase was

CLASS   ACTION   COMPLAINT

because the Company led him to believe that doing so was necessary to enter Coinbase's $1.2 million Sweepstakes.

21.     Plaintiff did not see the Sweepstakes' "rules and details" until after he had already given his money to Coinbase.  This is because Defendants' ads were *specifically known and designed by Defendants* to deceive and confuse Plaintiff and most other layperson-consumers into believing that they would have to trade DOGE on Coinbase to enter the Sweepstakes, and to further induce them into paying Coinbase on that false pretense *before* they were likely to view the Sweepstakes' official "rules and details" to the contrary.

**Defendants' Knowledge and Intent in Crafting its Misleading Sweepstakes Ads**

22.     Coinbase and its Sweepstakes "Administrator," MKI, actually knew that their ads had the likelihood, tendency and capacity to deceive, distract and confuse many ordinary consumers like Plaintiff because Defendants had already executed, and analyzed the results of, a nearly identical Coinbase "sweepstakes" campaign just two months prior to the DOGE Sweepstakes.

23.     Specifically, in April 2021, the two companies had collaborated on and executed a very similar, $2 million *Bitcoin* Sweepstakes.  The only substantive difference was that instead of purporting to require people to "make a trade" to enter, the companies' Bitcoin Sweepstakes ads purported to require people to "[s]ign up for an account at coinbase.com," and "verify [their] identity."

24.     However, just like in the later DOGE Sweepstakes, there was another, less intrusive option that Defendants' buried into the "rules" and "details" of their Bitcoin Sweepstakes. Specifically, rather than providing their social security numbers, drivers' licenses, and other sensitive personally identifying information ("PII") to Coinbase, users also had the option to enter simply by mailing Coinbase a 3x5-inch index card with only the customer's name, address, email address, phone, and birthday on it.

25.     The digital ads that Coinbase and MKI used in the Bitcoin Sweepstakes were designed and presented to consumers in a manner *substantially identical* to the digital ad campaign they used in the subsequent Dogecoin Sweepstakes.

CLASS   ACTION   COMPLAINT

26.     Moreover, in executing their Bitcoin Sweepstakes, Coinbase and MKI had collected, reviewed and analyzed a wealth of detail about consumers' specific behaviors and reactions to various parts of this ad campaign.  Specifically, in addition to knowing how many consumers had created a Coinbase account and rigorously verified their identities (Coinbase's desired outcome), versus how many had simply mailed in an index card with their name, birthday, and contact information on it (*not* Coinbase's desired ad outcome), Defendants also knew from their Bitcoin Sweepstakes: (a) how many of the total entrants had actually clicked on the official "rules and details" upon viewing these ads, (b) whether entrants view the "rules and details" page before or after creating a new Coinbase account and verifying their identities, and (c) how entrants and other consumers navigated the various "web paths" that one might take to go from viewing the ads to actually entering the Sweepstakes.

27.     Indeed, MKI's own website touts MKI's in-depth, Sweepstakes data analyses and reporting as follows:

Tracking and Reporting

Each client promotion includes two levels of tracking and reporting: (1) website traffic and (2) promotion registration database tracking. Information we provide via website traffic analysis includes aggregate and daily information on key metrics, such as site hits, unique visitors, top pages, operating systems, entry and exit paths, and top promotion referrers. Promotion registration data analysis includes the aggregate and daily number of unique registrants and entries. At the close of each promotion, we provide clients with a detailed analysis of how their promotion performed in the marketplace, including the effectiveness of media tactics in driving engagement, demographics, age and gender, opt-ins, and responses to any survey questions related to brand awareness and purchase intent.

*See* http://www.mardenkane.com/sweepstakes (last visited Jun. 11, 2021).  Thus, as of June 2021 (at the latest), Coinbase and MKI already knew—based on detailed, empirical data from the substantially identical, April 2021 Sweepstakes campaign—that the precise ways they were wording, designing, and presenting their digital ads to consumers in the DOGE Sweepstakes would have a high likelihood, capacity and tendency *to cause the vast majority of consumers to never see their*

CLASS   ACTION   COMPLAINT

*separate "rules and details" page, the only page where Defendants' disclosed their trade-free, mail-in option for entering.* Defendants were not merely guessing or predicting that their DOGE Sweepstakes ads would tend to conceal the true entry options from most entrants. Instead, Defendants actually knew as a matter of empirical proof and statistical near-certainty—from their substantially identical, Bitcoin Sweepstakes campaign in April—that their DOGE Sweepstakes ads would have the capacity, tendency, and likelihood to conceal the true entry options from many entrants' eyes: at least until *after* entrants had spent their money on false pretenses.

28.    It is not now, nor was it ever, any surprise to Defendants that their Sweepstakes ad campaign against Plaintiff and the Class would achieve—and did achieve—a result in which many entrants would pay many millions of dollars collectively, without knowing that they could enter the same Sweepstakes simply by mailing Coinbase an index card with their name on it. Defendants' digital Sweepstakes ads were not only objectively false and misleading to Plaintiff and the Class, but also known and intended by Defendants' to be misleading and damaging to Plaintiff and the Class.[1]

**No Arbitration**

29.    Pursuant to Coinbase's "Official Rules" for its Dogecoin Sweepstakes, "[p]articipation [in the Sweepstakes] constitutes entrant's full and unconditional agreement to these Official Rules and [Coinbase's] and [its] Administrator's decisions, which are final and binding in all matters related to the Sweepstakes." *See* Official Rules, ¶1, *available at* https://www.coinbase.com/sweepstakes-doge-terms (last visited Jun. 11, 2021). The Official Rules further provide that "THE CALIFORNIA COURTS (STATE AND FEDERAL) SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THE PROMOTION AND

---

[1] The reason why Coinbase included a free-entry option in the first place, in both Sweepstakes, was the Company's desire to avoid the conclusion that it was conducting unlawful lotteries. The elements of a lottery are: (i) consideration given by an entrant; (ii) in exchange for a chance; (iii) to win a prize. *See, e.g., Trinkle v. California State Lottery*, 105 Cal.App.4th 1401, 1406 (Cal. Ct. App. 2003). The goals of these two Sweepstakes were to drive new users, and to drive Dogecoin trading volume. Coinbase offered six-figure prizes to persuade consumers to take those two actions, yet knew that most consumers would not give up their social security numbers or buy DOGE to enter a random drawing: if they didn't have to. Thus, Coinbase attempted to conduct a profitable "non-lottery" with a free mail-in option that most consumers would never know about. That scheme may or may not constitute a lottery, but it certainly constitutes deceptive advertising.

CLASS   ACTION   COMPLAINT

THE LAWS OF THE STATE OF CALIFORNIA SHALL GOVERN THE PROMOTION. EACH ENTRANT WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION AND VENUE IN THOSE COURTS FOR ANY REASON AND HEREBY SUBMITS TO THE JURISDICTION OF THOSE COURTS." *Id.*, ¶10.  Although the same paragraph provides that "[c]laims may not be resolved through any form of class action," *id.*, such class action waivers are unenforceable as a matter of law (in the absence of an agreement to arbitrate), where, as here, a class action waiver "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that a party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced." *Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005) (internal quotes and citations omitted), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

### CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) Sweepstakes, and who purchased or sold Dogecoins on a Coinbase exchange for $100 or more between June 3, 2021 and June 10, 2021, inclusive.  Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Coinbase has or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery, Plaintiff believes that there are at least many thousands and potentially millions of members of the proposed Class.  Members of the Class may

CLASS   ACTION   COMPLAINT

be identified and located from database records maintained by Defendants, and may be notified of the pendency of this action by electronic mail and/or regular mail, using the form of notice similar to that customarily used in class actions.

32.     Plaintiff's claims are typical of other Class members' claims, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law, as complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether Defendants' uniform, digital advertising campaign for the June 2021 DOGE Sweepstakes was materially and objectively false, deceptive, and misleading when disseminated to Plaintiff and the Class;

b.     whether Defendants, individually and together, violated California's False Advertising Law, by designing, drafting, creating, analyzing, and presenting to Class members a uniform advertising campaign that was materially false, deceptive, and misleading when disseminated to all Class members;

c.     whether Defendants violated the unlawful or unfair prongs of California's Unfair Competition Law when they designed, drafted analyzed and presented to Class members a uniform digital advertising campaign that was materially false, deceptive, and misleading when disseminated to all Class members;

d.     whether Plaintiff and the Class suffered damages as a result of Defendants' conduct, and the proper measure of such damages, and whether the Class is entitled to equitable relief, including but not limited to public and permanent injunctive relief, restitution of the money Class members paid to Coinbase, and disgorgement of Defendants' ill-gotten gains; and

CLASS   ACTION   COMPLAINT

e.      whether Plaintiff and the Class are entitled to reasonable attorneys' fees and expenses as a result of Defendants' wrongful conduct as set forth herein.

35.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, as the joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation would make it difficult if not impossible for members of the Class to redress the wrongs done to them on an individual basis.  There will likely be no substantial difficulty in the management of this case as a class action.

**FIRST CAUSE OF ACTION**
**Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* -**
**Untrue, Misleading and Deceptive Advertising**

36.      Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

37.      California Business and Professional Code, Section 17500, makes it unlawful for any person:

> to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

38.      At all material times, Defendants engaged in a scheme of advertising that consumers' entry into Defendants' Dogecoin Sweepstakes was, in fact, contingent upon such consumers "opting in" online, and purchasing or selling Dogecoins for $100 more on coinbase.com, between June 3, 2021 and June 10, 2021, when in fact no Dogecoin or other cryptocurrency transaction whatsoever was required for entry into Defendants' Sweepstakes.

39.      Defendants' advertisements of their June 2021 DOGE Sweepstakes misrepresented and/or concealed the true requirements for Sweepstakes entry.  Defendants' advertisements were

CLASS   ACTION   COMPLAINT

made to consumers and emanated from Coinbase's primary offices within the State of California, to millions of consumers within the State of California and nationally or internationally, and are within the meaning of advertising as provided in Cal. Bus. & Prof. Code §§ 17500, *et seq*., in that such promotional materials were intended as inducements to purchase products and services on Coinbase.com and are statements disseminated by Defendants to Plaintiff and other members of the Class.   Defendants knew, or in the exercise of reasonable care should have known, that their advertising statements about their June 2021 DOGE Sweepstakes would be and were false, misleading, confusing, and deceptive to a substantial segment if not a vast majority of consumer recipients.

40.     In furtherance of Defendants' plan and scheme, Coinbase and MKI, both individually and in collaboration, designed, created, prepared, structured, tested, reviewed, analyzed and disseminated via the internet digital advertisements misleadingly suggesting, and overtly and falsely stating, that their June 2021 DOGE Sweepstakes in fact required entrants to purchase or sell Dogecoins for $100 more on coinbase.com, between June 3, 2021 and June 10, 2021.  Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendants' statements regarding the Sweepstakes entry requirements because all members of the Class were demonstrably exposed to such statements, and demonstrably ***not*** exposed to the truth that they could enter the Sweepstakes by mail, for free instead of paying Coinbase significant amounts of money to enter. Consumers, including Plaintiff and members of the Class, were among the specifically intended targets of such direct misrepresentations.

41.     Defendants' above acts, in designing, creating, preparing, structuring, testing, reviewing, analyzing and disseminating via the internet such misleading and deceptive statements throughout the United States to Plaintiff and members of the Class, were and are demonstrably likely to deceive and confuse reasonable consumers by obfuscating the true requirements (and non-requirements) for entry into Defendants' Sweepstakes, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

42.     Defendants' materially false and misleading Sweepstakes ad campaign caused

15

Plaintiff and other members of the Class to personally suffer substantial injuries, in the form of paying Coinbase many millions of dollars in purchases and commissions that they would not otherwise have spent to enter the DOGE Sweepstakes. Had Plaintiff and members of the Class known that Defendants' materials, advertisements and inducements misrepresented, obfuscated and concealed the true entry requirements for Defendants' Sweepstakes, they would not have purchased or sold Dogecoins for $100 more on coinbase.com, between June 3, 2021 and June 10, 2021.

43.     Plaintiff, on behalf of himself and all other similarly situated persons, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendants from continuing the unlawful practices alleged herein, and financial relief in the form of actual and punitive damages, and any other relief deemed improper by the Court.

## SECOND CAUSE OF ACTION
### Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* – Unlawful Business Acts and Practices

44.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

45.     As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiff and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 more and paying the attendant purchase and sale commissions on coinbase.com, between June 3, 2021 and June 10, 2021, when in fact no Dogecoin or other cryptocurrency transactions whatsoever were required for entry into Defendants' Sweepstakes.

46.     As a result of Defendants' above unlawful acts and practices of false and misleading advertising detailed herein, Plaintiff, on behalf of himself and the Class, and as appropriate, on behalf of the general public, seeks permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June 2021 DOGE Sweepstakes, and of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**THIRD CAUSE OF ACTION**
**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* –**
**Unfair Business Acts and Practices**

47.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

48.    Defendants' actions alleged herein violate the laws and public policies of California, as set out in the preceding paragraphs of this complaint.

49.    There is no benefit to consumers, competition or the general public from allowing Defendants to deceptively market million-dollar Sweepstakes promotions to millions of people in violation of law, under the false guise of executing a sales "promotion."

50.    The gravity of harm suffered by Plaintiff and the Class, who have unnecessarily lost at least millions of dollars collectively, and at least $100 each, outweighs any legitimate justification, motive or reason for Defendants' deceptive Sweepstakes' marketing to millions of people nationwide.  Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the public policies of California, and are substantially injurious to Plaintiff and the Class.

51.    Defendants' above acts and practices were and are likely to deceive—and in fact, did deceive—reasonable consumers as to the true requirements for entering Defendants' $1.2 million DOGE Sweepstakes, and further, were likely to conceal and did conceal from reasonable consumers the true Sweepstakes entry requirements.

52.    As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiff and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 more and paying the attendant purchase and sale commissions on coinbase.com, between June 3, 2021 and June 10, 2021, when in fact no Dogecoin or other cryptocurrency transactions whatsoever were required for entry into Defendants' Sweepstakes.

53.    Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks permanent injunctive relief prohibiting Defendants from continuing their wrongful advertising practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June

17

CLASS   ACTION   COMPLAINT

2021 DOGE Sweepstakes, and of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as Class Representative, and the law firm of Finkelstein & Krinsk LLP as Class Counsel;

B.     Requiring Defendants to pay the actual damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein, plus punitive damages;

C.     For an award of restitution, and an order for the disgorgement of all of Defendants' ill-gotten gains from the unlawful conduct alleged herein;

D.     For an order permanently and publicly enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices alleged herein; and

E.     Awarding Plaintiff and other members of the Class prejudgment and post-judgment interest, as well as reasonable attorneys' fees, expert fees and other costs and expenses of this litigation; and

F.     Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: June 11, 2021                              Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By: ___*s/ David J. Harris, Jr.*___
         David J. Harris, Jr., Esq.

djh@classactionlaw.com
550 West C Street, Suite 1760
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

*Counsel for Plaintiff and the Putative Class*

18

CLASS   ACTION   COMPLAINT