COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
ELIZABETH SÁNCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:      +1 415 693 2000
Facsimile:      +1 415 693 2222

Attorneys for Defendant
COINBASE GLOBAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE GLOBAL, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**COINBASE GLOBAL, INC.'S MOTION TO COMPEL ARBITRATION, OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:      January 10, 2022<br>Time:      9:30 a.m.<br>Courtroom:  C |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539-SK

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................. 1

II. BACKGROUND ............................................................................................... 2

    A.  Plaintiffs agreed to Coinbase's User Agreement. .................................... 2

    B.  Plaintiffs agreed to binding, individual arbitration. ................................. 3

        1.  Plaintiff David Suski ...................................................................... 4

        2.  Plaintiffs Jaimee Martin, Jonas Calsbeek, and Thomas Maher ................ 4

    C.  Plaintiffs participated in Coinbase's Dogecoin Sweepstakes. .................. 6

III. LEGAL STANDARDS........................................................................................ 8

IV. THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS. ......... 9

    A.  The Court should compel arbitration because Plaintiffs consented to arbitration agreements that encompass their present claims. ..................... 9

        1.  Plaintiffs and Coinbase consented to final and binding individual arbitration by agreeing to the User Agreement. ........................ 9

        2.  The arbitration provision in the User Agreement is not unconscionable. ............................................................................. 10

        3.  Plaintiffs' claims fall within the scope of the arbitration clause in the User Agreement.............................................................. 11

    B.  If there is a dispute about the arbitrability of Plaintiffs' claims, that issue must be resolved by the arbitrator.................................................. 12

    C.  The Court should compel arbitration and dismiss this action in its entirety......... 14

    D.  Alternatively, the Court should stay these proceedings until arbitration is completed. ............................................................................................. 15

V.  ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS....... 15

    A.  The Dogecoin Sweepstakes did not violate Cal. Penal Code § 320 because it was a lawful sweepstakes, not an illegal lottery (claim 1)................... 15

        1.  An illegal lottery requires payment of valuable consideration. ............... 16

        2.  The Dogecoin Sweepstakes was not a lottery because participants could enter for free. .................................................................... 17

    B.  Coinbase did not violate § 17539.15 because its marketing materials contained the required "no-purchase-or-payment-necessary message" (claim 2). ............................................................................................. 18

    C.  Coinbase did not violate the FAL or UCL because no reasonable consumer would have been deceived by its marketing materials (claims 3 and 4). .............. 20

    D.  Plaintiffs have not plausibly alleged a violation of the UCL "unfair" prong (claim 5). ............................................................................................. 22

    E.  Coinbase did not violate the CLRA because Coinbase's marketing materials did not state that payment was necessary to participate in the Dogecoin Sweepstakes (claims 6 and 7)................................................... 23

VI. CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Pitney Bowes, Inc.*,
   2005 WL 1048700 (N.D. Cal. May 4, 2005) ........................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 9

*Baxter v. Intelius, Inc.*,
   No. SACV09-1031 AG ............................................................................................. 21

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................................. 20

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 9

*Breathe Techs., Inc. v. New Aera, Inc.*,
   2020 WL 4747896 (N.D. Cal. Aug. 17, 2020) ........................................................ 11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ........................................................................... 13, 14

*Cal. Gas. Retailers v. Regal Petroleum Corp.*,
   50 Cal. 2d 844 (Cal. 1958) ................................................................................. 16, 17

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................... 21, 22

*Castagnola v. Hewlett-Packard Co.*,
   2012 WL 2159385 (N.D. Cal. June 13, 2012) ........................................................ 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................. 15

*Dinan v. SanDisk LLC*,
   2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir.
   2021) .................................................................................................................. 23, 24

*Dittenhafer v. Citigroup*,
   2010 WL 3063127 (N.D. Cal. Aug. 2, 2010) .......................................................... 14

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) .................................................................... 22

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ............................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539-SK

*Gerlach v. Tickmark Inc.*,
   2021 WL 3191692 (N.D. Cal. July 28, 2021) ........................................................................ 14

*Haskell v. Time, Inc.*,
   965 F. Supp. 1398 (E.D. Cal. 1997) .............................................................................. 16, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................................. 8, 12

*Hopkins & Carley, ALC v. Thomson Elite*,
   2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) .......................................................................... 14

*Hotel Employees & Restaurant Employees Int'l Union v. Davis*,
   21 Cal. 4th 585 (1999) ........................................................................................................ 16

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) ......................................................................................... 15

*Lokey v. CVS Pharmacy, Inc.*,
   2020 WL 6822890 (N.D. Cal. Nov. 20, 2020) ......................................................................... 20

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ................................................................................................ 10

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................................................. 9

*Ng v. US Bank, NA*,
   2016 WL 5390296 (N.D. Cal. Sept. 26, 2016) .............................................................. 15, 18

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .......................................................................................... 8, 9

*People v. Cardas*,
   28 P.2d 99 (1933) ............................................................................................................ 17

*People v. Carpenter*,
   141 Cal. App. 2d 884 (1956) .............................................................................................. 16

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) .......................................................................... 8, 9, 10

*Reddy v. Litton Indus.*,
   912 F.2d 291 (9th Cir. 1990) ............................................................................................... 9

*Singh v. Wells Fargo Bank, N.A.*,
   2009 WL 2365881 (N.D. Cal. July 30, 2009) ...................................................................... 15

*Sparling v. Hoffman Const. Co.*,
   864 F.2d 635 (9th Cir. 1988) ............................................................................................. 14

*Sponchiado v. Apple Inc.*,
    2019 WL 6117482 (N.D. Cal. Nov. 18, 2019)...................................................................... 23, 24

*Stathakos v. Columbia Sportswear Co.*,
    2017 WL 1957063 (N.D. Cal. May 11, 2017) ........................................................................ 23

*Underwriters Reinsurance Co. v. Ace Am. Ins. Co.*,
    2003 WL 24011931 (C.D. Cal. Feb.10, 2003)........................................................................ 14

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)................................................................................................. 20

*Yu v. Volt Info. Scis., Inc.*,
    2019 WL 3503111 (N.D. Cal. Aug. 1, 2019) ........................................................................ 10

**Statutes**

9 U.S.C. § 2 .................................................................................................................................... 8

9 U.S.C. § 3 .................................................................................................................................... 15

Cal. Bus. & Prof. Code § 17539.15(b)........................................................................... 17, 18, 19

Cal. Code Civ. Proc. § 1281.2 ....................................................................................................... 11

Cal. Penal Code § 320 ....................................................................................................... 15, 16, 18

Consumer Legal Remedies Act................................................................................................ 23, 25

False Advertising Law .......................................................................................................... *passim*

Federal Arbitration Act ............................................................................................................ 8, 15

Unfair Competition Law ....................................................................................................... *passim*

**Other Authorities**

AAA Rule 14(a) ............................................................................................................................. 13

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Coinbase Global, Inc.[1] will and hereby does move this Court to compel individual arbitration of Plaintiffs' claims and to dismiss Plaintiffs' claims or stay Plaintiffs' claims pending the conclusion of that arbitration. Alternatively, Coinbase moves the Court to dismiss the First Amended Complaint ("FAC") (ECF No. 22) for failure to state a claim under Rule 12(b)(6). This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Carter McPherson-Evans and the attached exhibits, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and oral argument of counsel.

### STATEMENT OF RELIEF SOUGHT

Coinbase respectfully seeks an order compelling arbitration of Plaintiffs' claims and staying these proceedings pending a decision by the arbitrator. Alternatively, Coinbase seeks dismissal of the FAC with prejudice under Rule 12(b)(6).

### STATEMENT OF ISSUES TO BE DECIDED

1.     Should the Court compel arbitration of this dispute and dismiss or stay these proceedings in light of Plaintiffs' and Coinbase's agreement requiring arbitration of the claims asserted in the FAC?

2.     If the Court declines to compel arbitration, should the FAC be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted?

---

[1] Plaintiffs have filed a stipulation (ECF No. 32) seeking permission to file a Second Amended Complaint ("SAC") that revises their CLRA claims and names Coinbase, Inc. as the defendant instead of Coinbase Global, Inc. The parties agree that this motion shall respond to the SAC (if the Court permits the SAC to be filed). ECF No. 32 at 1–2.

## I.   **INTRODUCTION**

Plaintiffs are all Coinbase users who agreed to submit any disputes that they have with Coinbase to binding arbitration. The claims that Plaintiffs now assert against Coinbase are clearly covered by the arbitration provisions in the Coinbase User Agreement. The Court should compel Plaintiffs to arbitrate these claims, as they agreed they would do when they opened their Coinbase user accounts weeks, months, or years before the Dogecoin Sweepstakes was announced. If there is a dispute about the scope of the arbitration provision, that issue should be decided by the arbitrator.

Alternatively, if the Court finds that Plaintiffs are entitled to escape their arbitration agreements, it should dismiss their claims on the merits for two reasons.

First, the Dogecoin Sweepstakes was not an illegal lottery. An illegal lottery exists only when participants are required to pay valuable consideration for a chance to win a prize in a contest. There is plainly no lottery if participants can enter a contest for free, even if they can also enter by making a purchase. Plaintiffs readily admit that a free alternative method of entry ("FAME") option was available for them to enter the Dogecoin Sweepstakes. *See, e.g.*, FAC ¶ 28 ("there was a 100% free, mail-in option for entering the sweepstakes"). Plaintiffs' admission is fatal to their lottery claims. Plaintiffs' assertion that they were "subjectively unaware" of the FAME (*id.* ¶ 89) has no bearing on whether the contest was an illegal lottery. Plaintiffs' theory would erase the distinction between lawful sweepstakes and unlawful lotteries, and has no basis in California law.

Second, Coinbase's disclosures concerning the Dogecoin Sweepstakes satisfied the requirements of California law governing the content of sweepstakes promotions and were not untrue, deceptive, or misleading as a matter of law. The FAC explains that Coinbase's marketing materials clearly displayed the phrase "NO PURCHASE NECESSARY." *See, e.g., id.* ¶¶ 66, 69–74, 102–04. And the FAC details the numerous times Coinbase prompted users in its promotional materials to review the Sweepstakes rules. *See, e.g., id.* ¶¶ 8, 10, 11. As Plaintiffs readily admit, those rules made clear that users could enter the Sweepstakes by "simply mail[ing] the Defendants a 3x5-inch index card stating the user's name, contact information, and date of birth."

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539-SK

*See, e.g., id.* ¶¶ 15, 28, 76; *see also id.* Ex. A at 4. Coinbase's promotional materials plainly and prominently made this information available to Coinbase's users, and no objectively reasonable consumer would have been deceived. Plaintiffs' subjective awareness or unawareness does not convert objectively reasonable conduct into unlawful, untrue, deceptive, or misleading conduct. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (the legal standard is whether an objectively reasonable consumer would have been aware of sweepstakes disclosures, and not whether a plaintiff was subjectively unaware). No valid claim exists when a consumer simply overlooks a company's clear and conspicuous disclosures. Plaintiffs' claims that Coinbase's statements were unlawful, false, or deceptive are baseless and should be dismissed.

## II.   BACKGROUND

Coinbase operates one of the largest cryptocurrency exchange platforms in the United States. Its users can purchase, sell, and conduct financial transactions using digital currencies like Bitcoin, Ethereum, Litecoin, and Dogecoin. As explained below, each Plaintiff created a user account on Coinbase's platform. As part of the signup process, users must click a checkbox that requires them to agree to Coinbase's User Agreement, which contains an arbitration provision. Each Plaintiff also participated in Coinbase's Dogecoin Sweepstakes, which offered participants the opportunity to win prizes of up to $1,200,000 in Dogecoin. Each Plaintiff was presented with clear and conspicuous disclosures indicating that they could participate in the Dogecoin Sweepstakes by (1) opting in and trading Dogecoin on Coinbase's platform or (2) entering for free by mailing an index card with their contact information. FAC ¶¶ 28–37 & Ex. A at 4. These Plaintiffs all chose to enter by trading Dogecoin.

### A.   Plaintiffs agreed to Coinbase's User Agreement.

In order to trade Dogecoin on the Coinbase platform, each Plaintiff had to first sign up for a Coinbase account.[2] Upon visiting coinbase.com or downloading the Coinbase app, each Plaintiff was prompted to enter an email address. Declaration of Carter McPherson-Evans ("McPherson-Evans Decl.") ¶ 8 & Ex. 1. Next, the plaintiffs were prompted to enter additional

---

[2] All facts regarding the signup process and User Agreement were true as of 2018 through present day, during which period the named Plaintiffs created their Coinbase accounts and agreed to the User Agreement. McPherson-Evans Decl. ¶¶ 7–11.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

information, such as their name and a password, to create an account. The plaintiffs were also shown a checkbox requiring them to affirmatively agree to the Coinbase User Agreement:



*Id.* ¶ 8. The "User Agreement" text in blue is a link that takes the user to a page containing the full text of the agreement, titled "Coinbase User Agreement." A user cannot create a Coinbase account without checking the box. *Id.* ¶¶ 6–11.

Coinbase's records show that all four Plaintiffs affirmatively accepted the User Agreement. Suski accepted on January 24, 2018, at 11:12 a.m.:



Martin accepted on February 12, 2021, at 2:58 p.m.:



Calsbeek accepted on May 13, 2021, at 7:05 p.m.:



Maher accepted on April 5, 2020, at 10:40 p.m.:



*Id.* ¶ 13 & Exs. 2–5. Notably, all Plaintiffs accepted the Coinbase User Agreement well before Coinbase promoted or conducted the Dogecoin Sweepstakes.

**B.**    **Plaintiffs agreed to binding, individual arbitration.**

The User Agreements to which Plaintiffs agreed all contained provisions requiring the arbitration of disputes with Coinbase.[3]

---

[3] Since Coinbase made small changes to the language and structure of the User Agreement from 2018 through 2021, the individual arbitration provisions to which each Plaintiff agreed are set forth below.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

### 1.   Plaintiff David Suski

The User Agreement to which Suski agreed included a section titled "Arbitration; Waiver of Class Action" that stated:

> **7.2. Arbitration; Waiver of Class Action.** If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration**. The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by law, and the arbitral decision may be enforced in any court. At your request, hearings may be conducted in person or by telephone and the arbitrator may provide for submitting and determining motions on briefs, without oral hearings. The prevailing party in any action or proceeding to enforce this agreement shall be entitled to costs and attorneys' fees.
>
> If the arbitrator(s) or arbitration administrator would impose filing fees or other administrative costs on you, we will reimburse you, upon request, to the extent such fees or costs would exceed those that you would otherwise have to pay if you were proceeding instead in a court. We will also pay additional fees or costs if required to do so by the arbitration administrator's rules or applicable law. Apart from the foregoing, each Party will be responsible for any other fees or costs, such as attorney fees that the Party may incur. If a court decides that any provision of this section 7.2 is invalid or unenforceable, that provision shall be severed and the other parts of this section 7.2 shall still apply. In any case, the remainder of this User Agreement, will continue to apply.

McPherson-Evans Decl. ¶ 14 & Ex. 6 (emphasis in original).

### 2.   Plaintiffs Jaimee Martin, Jonas Calsbeek, and Thomas Maher

Similarly, the User Agreements to which Martin, Calsbeek, and Maher agreed included a section titled "Arbitration; Waiver of Class Action"[4] that stated:

---

[4] The relevant User Agreement language with respect to arbitration (Section 8.3) was substantively identical for these three Plaintiffs. *Compare* McPherson-Evans Decl. Ex. 7 ¶ 8.3, *with* Ex. 8 ¶ 8.3, *and* Ex. 9 ¶ 8.3.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

**8.3. Arbitration; Waiver of Class Action. If we cannot resolve the dispute through the Formal Complaint Process,[5] you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement"). Subject to applicable jurisdictional requirements, you may elect to pursue your claim in your local small claims court rather than through arbitration so long as your matter remains in small claims court and proceeds only on an individual (non-class and non-representative) basis. Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf).**

**This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**

**CLASS ACTION WAIVER: TO THE EXTENT PERMISSIBLE BY LAW, ALL CLAIMS MUST BE BROUGHT IN A PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE PROCEEDING (COLLECTIVELY "CLASS ACTION WAIVER"). THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS OR ENGAGE IN ANY CLASS ARBITRATION. YOU ACKNOWLEDGE THAT, BY AGREEING TO THESE TERMS, YOU AND COINBASE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION.**

The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award and the arbitral decision may be enforced in any court. An arbitrator's decision and judgment thereon will not have a precedential or collateral estoppel effect. At your request, hearings may be conducted in person or by telephone and the arbitrator may provide for submitting and determining motions on

---

[5] The User Agreement defines a Formal Complaint Process that users must follow before filing arbitration claims. McPherson-Evans Decl. Exs. 7, 8, 9 ¶ 8.2. The FAC does not allege that Plaintiffs Calsbeck, Martin, or Maher completed that process. If these Plaintiffs wish to pursue their claims in arbitration, they must complete the Formal Complaint Process first.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

1
2
3
4
5
6

> briefs, without oral hearings. To the extent permitted by law, the prevailing party in any action or proceeding to enforce this Agreement, any arbitration pursuant to this Agreement, or any small claims action shall be entitled to costs and attorneys' fees. If the arbitrator or arbitration administrator would impose filing fees or other administrative costs on you, we will reimburse you, upon request, to the extent such fees or costs would exceed those that you would otherwise have to pay if you were proceeding instead in a court. We will also pay additional fees or costs if required to do so by the arbitration administrator's rules or applicable law.

7  McPherson-Evans Decl. Exs. 7, 8, 9 ¶ 8.3 (emphasis in original).

8      In addition to these arbitration provisions describing the procedure for arbitration (and

9  Plaintiffs' agreement to arbitration), the User Agreement to which Plaintiffs Martin, Calsbeek,

10  and Maher agreed also explicitly referenced the arbitration provision at the very beginning of the

11  agreement, further advising Plaintiffs that "[b]y signing up to use a [Coinbase] account," they

12  "agree that [they] have read, underst[oo]d, and accept[ed] all of the terms and conditions . . .

13  including . . . 'Arbitration; Waiver of Class Action'":

14
15
16
17
18
19

> Welcome to Coinbase! This is a User Agreement between you (also referred to herein as "Client," "User," or customer) and Coinbase Inc. ("**Coinbase**"). This User Agreement ("**Agreement**") governs your use of the services provided by Coinbase described below ("**Coinbase Services**" or "**Services**"). By signing up to use an account through coinbase.com, pro.coinbase.com, APIs, or the Coinbase mobile application (collectively the "**Coinbase Site**"), you agree that you have read, understand, and accept all of the terms and conditions contained in this Agreement including Section 8.2. "Arbitration; Waiver of Class Action", as well as our Privacy Policy, Cookie Policy, and E-Sign Consent Policy.

20  *Id.* Exs. 7, 8, 9 at 1 (emphasis in original).

21      **C.      Plaintiffs participated in Coinbase's Dogecoin Sweepstakes.**

22      Each Plaintiff participated in the Coinbase Dogecoin Sweepstakes between June 3 and 10,

23  2021. FAC ¶¶ 1, 58. To promote the Sweepstakes, Coinbase used direct-to-user emails and digital

24  advertisements for web and mobile platforms. *Id.* ¶ 7. These marketing materials presented users

25  with buttons to "See how to enter," "opt-in" or "make a trade." *Id.* ¶¶ 8–15. Above each of these

26  buttons, users were also presented with links to disclosures at the bottom of the page (*id.* ¶ 11 n.1)

27  or the Sweepstakes Official Rules (*id.* ¶¶ 8, 16). The disclosure at the bottom of the marketing

28  materials stated in part:

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

1

> NO PURCHASE NECESSARY TO ENTER OR WIN.
> PURCHASES WILL NOT INCREASE YOUR CHANCES OF

2

> WINNING. Opt-in required. Alternative means of entry available.

3   *Id.* ¶ 66. Likewise, the Official Rules stated at the very beginning:

4

> NO PURCHASE NECESSARY. A PURCHASE OR PAYMENT
> OF ANY KIND WILL NOT INCREASE YOUR CHANCES OF

5

> WINNING.

6   *Id.* Ex. A at 1. And the Official Rules clearly stated that participants could enter using one of

7   "[t]wo methods of entry." *Id.* Ex. A at 3. The first method was to trade Dogecoin on Coinbase's

8   platform. *Id.* The second method was to mail an index card containing the entrant's contact

9   information:

10

> <u>Method 2</u>: To enter via mail, hand write the following on the front
> of a 3x5 card, your name, address, city, state, zip, e-mail address,

11

> telephone number and date of birth. Insert single card in an
> envelope and mail with sufficient postage to: Coinbase Dogecoin

12

> Sweepstakes, PO Box 738, Syosset, NY 11791-0738—return
> address and mailing address on envelope must be handwritten.

13

> Mail-in entries must include all requested information (as stated
> above) to be considered an entry. Mail-in entries must be

14

> postmarked by June 10, 2021 and received by June 15, 2021. Only
> one (1) entry per person. Requests for confirmation of receipt of

15

> mail-in entries will not be acknowledged. No photo copies,
> facsimiles or reproductions of mail-in entry will be accepted.

16

> Sponsor is not responsible for late, lost, damaged, stolen,
> incomplete, illegible, postage due, or misdirected entries. Proof of

17

> mailing does not constitute proof of delivery. Winners that entered
> via mail will be required to create a new Coinbase account on

18

> Coinbase.com and agree to the respective terms of use and privacy
> notice, or have a valid Coinbase account standing, to receive their

19

> prize. If you do not create a new Coinbase account and agree to
> such terms of use and privacy notice within the timeframe indicated

20

> by Sponsor, you will be ineligible to receive a prize.

21   *Id.* at 3–4. The Official Rules also stated that entrants needed to create Coinbase user accounts

22   and agree to the Coinbase User Agreement in order to be eligible to participate in the

23   Sweepstakes. *Id.*

24         These disclosures made clear multiple times that Plaintiffs were not required to trade

25   Dogecoin to participate in the Sweepstakes, and that Plaintiffs could have participated in the

26   Sweepstakes for free by mailing a card.

27

28

Cooley LLP
Attorneys at Law
San Francisco

7

Coinbase's Motion to Compel
Arbitration or Dismiss Complaint
Case No. 3:21-cv-04539

1    **III.    LEGAL STANDARDS**

2        ***Motion to compel arbitration.*** The Federal Arbitration Act ("FAA") applies to arbitration

3    agreements in contracts affecting interstate commerce, and directs that, like any other contracts,

4    arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as

5    exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Henry Schein, Inc. v.*

6    *Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("Under the [FAA], arbitration is a matter

7    of contract, and courts must enforce arbitration contracts according to their terms." (citation

8    omitted)). Indeed, the FAA requires a court to stay judicial proceedings and compel arbitration

9    for claims that are covered under an enforceable arbitration agreement. *See Nguyen v. Barnes &*

10   *Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing 9 U.S.C. § 3 ("If any suit or proceeding be

11   brought . . . upon any issue referable to arbitration . . . the court in which such suit is pending . . .

12   shall on application of one of the parties stay the trial of the action until such arbitration has been

13   had in accordance with the terms of the agreement[.]")). These provisions of the FAA reflect—

14   and courts routinely recognize—a "liberal federal policy favoring arbitration," along with "the

15   fundamental principle that arbitration is a matter of contract." *Peter v. DoorDash, Inc.*, 445 F.

16   Supp. 3d 580, 583 (N.D. Cal. 2020) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

17   339 (2011)).

18       In evaluating a motion to compel arbitration, "the court's role under the FAA is 'limited to

19   determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

20   agreement encompasses the dispute at issue.'" *DoorDash*, 445 F. Supp. 3d at 583 (quoting *Chiron*

21   *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Additionally, the

22   parties may also delegate the initial arbitrability issue to an arbitrator with "clear and

23   unmistakable" language, *Henry Schein*, 139 S. Ct. at 530, at which point "the courts must respect

24   the parties' decision as embodied in the contract," and compel arbitration even in the face of

25   questions about the scope of the arbitration agreement. *Id.* at 528; *DoorDash*, 445 F. Supp. 3d at

26   584 ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the

27   parties have agreed to arbitrate or whether their agreement covers a particular controversy.")

28   (citation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

*Rule 12(b)(6).* To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). Where amendment would be futile, the court should dismiss with prejudice. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

## IV. THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS.

### A. The Court should compel arbitration because Plaintiffs consented to arbitration agreements that encompass their present claims.

The Court should compel arbitration because the parties entered into a valid and binding agreement to arbitrate that encompasses Plaintiffs' claims.

#### 1. Plaintiffs and Coinbase consented to final and binding individual arbitration by agreeing to the User Agreement.

Plaintiffs and Coinbase are parties to a valid arbitration agreement. "An essential element of a contract is consent." *DoorDash*, 445 F. Supp. 3d at 585 (citing Cal. Civ. Code § 1550 and *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999) ("To form a contract, a manifestation of mutual assent is necessary.")). As explained above, each Plaintiff consented to the arbitration provision in the User Agreement by affirmatively checking the box indicating that they "agree[d] to the User Agreement" and then clicking a button to create a Coinbase user account. McPherson-Evans Decl. ¶ 13.

Online agreements are enforceable when they put a "website user on actual or inquiry notice of [their] terms." *DoorDash*, 445 F. Supp. 3d at 585 (*citing Nguyen* 763 F.3d at 1177). There are many variations of "[c]ontracts formed on the Internet," including (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use"; (2) "'browsewrap' agreements, where

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

1   a website's terms and conditions of use are generally posted on the website via a hyperlink at the

2   bottom of the screen," *Nguyen*, 763 F.3d at 1175–76 (citation omitted); and (3) various hybrids,

3   including "sign-in wrap" agreements, in which a website "notif[ies] the user of the existence of

4   the website's terms of use and, instead of providing an 'I agree' button, advise[s] the user that he

5   or she is agreeing to the terms of service when registering or signing up." *DoorDash*, 445 F.

6   Supp. 3d at 585. Courts will uphold such agreements "where the existence of the terms was

7   reasonably communicated to the user." *Id.* (citations omitted).

8          Here, Plaintiffs affirmatively checked the box indicating that they agreed to Coinbase's

9   User Agreement, and the full text of the User Agreement was linked—in blue text, which

10  contrasted with the surrounding black text and the white background of the page—for easy

11  identification and access. Plaintiffs were, therefore, clearly on notice of the User Agreement and

12  its arbitration provision. *See DoorDash*, 445 F. Supp. 3d at 582 (enforcing an arbitration

13  agreement where users were notified that "By tapping Sign Up . . . you agree to our Terms and

14  Conditions" and were presented with hyperlinked Terms and Conditions, but otherwise were "not

15  required to click through to the [Terms and Conditions] in order to complete the sign-up

16  process"); *see also id.* at 586–87 (rejecting the plaintiff's arguments that they were not on notice

17  because "the text informing them that signing up for an account would constitute agreement to the

18  terms was 'displayed as a gray font on a lighter-shade of gray background' and the font was

19  'unreasonably small'"); *Meyer v. Uber Techs., Inc.* 868 F.3d 66, 78–79 (2d Cir. 2017) (finding

20  sufficient inquiry notice based on, among other factors, the fact that the link to the terms appeared

21  near the button users had to click to agree to the terms, and that the color of the link differed from

22  the background and non-linked text). Plaintiffs were on notice of the User Agreement and

23  expressly assented to it, and they are therefore bound by its arbitration clause.

24              **2.      The arbitration provision in the User Agreement is not
                          unconscionable.**

25

26         "[T]he party opposing arbitration must demonstrate that the contract as a whole or a

27  specific clause in the contract is both procedurally and substantively unconscionable." *Yu v. Volt*

28  *Info. Scis., Inc.*, 2019 WL 3503111, at *5 (N.D. Cal. Aug. 1, 2019) (citations omitted). Here, there

Cooley LLP
Attorneys at Law
San Francisco

10

Coinbase's Motion to Compel
Arbitration or Dismiss Complaint
Case No. 3:21-cv-04539

was no coercion to create a Coinbase account, Plaintiffs were on notice of the arbitration

provision, and the arbitration provision applies equally to Plaintiffs and to Coinbase. Plaintiffs

cannot make a credible argument that the arbitration provision is unconscionable, and therefore

cannot satisfy their burden.

### 3.    Plaintiffs' claims fall within the scope of the arbitration clause in the User Agreement.

Plaintiffs and Coinbase agreed that "any dispute arising out of or relating to this

Agreement or the Coinbase Services, including, without limitation, federal and state statutory

claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any

other legal theory, shall be resolved through binding arbitration, on an individual basis."[6]

McPherson-Evans Decl. ¶ 13 & Exs. 7–9. Here, the plaintiffs each purchased at least $100 worth

of Dogecoin on Coinbase, and they seek to represent a class of Coinbase users "who purchased or

sold Dogecoins" on Coinbase's platform. *See, e.g.*, FAC ¶¶ 28–39, 80. The plaintiffs allege that

they would not have purchased Dogecoin if they better apprehended that no purchase was

required to enter the Dogecoin Sweepstakes. *See, e.g., id.* ¶ 18. That is a dispute that arises out of

or relates to the use of the Coinbase Services.

Contrary to Plaintiffs' claims (*id.* ¶ 79), the reference to the jurisdiction of the California

courts and the laws of California in the Official Rules of the Dogecoin Sweepstakes does not

change the outcome. On the contrary—California public policy strongly favors enforcement of

valid arbitration agreements. *See* Cal. Code Civ. Proc. § 1281.2 ("On petition of a party to an

arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and

that a party to the agreement refuses to arbitrate that controversy, the court shall order the

petitioner and the respondent to arbitrate the controversy if it determines that an agreement to

arbitrate the controversy exists."); *Breathe Techs., Inc. v. New Aera, Inc.*, 2020 WL 4747896, at

*3 (N.D. Cal. Aug. 17, 2020) ("California law reflects a strong policy in favor of arbitration.").

And there is no conflict between the terms of the User Agreement and the Official Rules. The

---

[6] For Suski, the relevant language is: "any dispute arising under this [User] Agreement shall be finally settled in binding arbitration, on an individual basis." McPherson-Evans Decl. ¶ 13 & Ex. 6.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

"Disputes" section of the Official Rules applies to Dogecoin Sweepstakes participants who never agreed to the User Agreement. For instance, if a participant entered by mailing a card and never created a Coinbase account (and thus never agreed to the User Agreement), then the participant would not have an arbitration agreement with Coinbase, and disputes between that participant and Coinbase arising from the Sweepstakes should be resolved in a California state or federal court per the Official Rules. Likewise, if a visitor who was not a Coinbase user viewed Coinbase's marketing materials but never participated in the Sweepstakes, then that visitor too would not have an arbitration agreement with Coinbase. But as soon as a participant created a Coinbase user account and consented to the User Agreement, that participant agreed to abide by the terms of the User Agreement—including the provision that requires arbitration[7] of disputes arising out of the participant's use of Coinbase's services, such as trading Dogecoin to participate in the Sweepstakes. Nothing in the Official Rules purports to supersede or conflict with the User Agreement; indeed, to the contrary, the Official Rules require participants to create Coinbase accounts (and thus consent to the User Agreement) in order to be eligible to win a prize in the Dogecoin Sweepstakes. FAC Ex. A at 3–4.

In light of the existence of a valid arbitration agreement in the User Agreement between Plaintiffs and Coinbase, therefore, application of California law requires arbitration of Plaintiffs' claims.

### B. If there is a dispute about the arbitrability of Plaintiffs' claims, that issue must be resolved by the arbitrator.

Under the User Agreement, any dispute about the scope or applicability of the arbitration provision is delegated to the arbitrator. Binding Supreme Court precedent provides that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator"—as is the case here— "the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528.

---

[7] The agreements signed by Plaintiffs Martin, Calsbeek, and Maher also allow certain claims to be asserted in small claims court (McPherson-Evans Decl. Exs. 7, 8, 9 ¶ 8.2), but that provision does not apply here because Plaintiffs' claims do not meet the jurisdictional requirements for small claims court.

Cooley LLP
Attorneys at Law
San Francisco

12

Coinbase's Motion to Compel
Arbitration or Dismiss Complaint
Case No. 3:21-cv-04539

For Suski, the User Agreement explicitly incorporated and adopted the American

Arbitration Association's ("AAA") Consumer Arbitration Rules (and included a link to the text of

those rules) to govern any dispute between Coinbase and the user. McPherson-Evans Decl. Ex. 6

¶ 7.2. Specifically, Rule 14(a) of the AAA Rules (titled "Jurisdiction") states that the "arbitrator

shall have the power to rule on his or her own jurisdiction, including any objections with respect

to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim

or counterclaim." AAA Consumer Arbitration Rules at R-14(a).[8]

Likewise, for Plaintiffs Martin, Calsbeek, and Maher, the parties delegated the question of

arbitrability both by incorporating and adopting the AAA Consumer Arbitration Rules *and* by

expressly reserving that question for the arbitrator on the face of the User Agreement.

McPherson-Evans Decl. Exs. 7, 8, 9 ¶ 8.3. The second paragraph of Section 8.3 in the User

Agreement reads:

> **This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**

*Id.* (emphasis in original).

The incorporation of the AAA Consumer Arbitration Rules in the User Agreement

furnishes "clear and unmistakable" evidence that Plaintiffs agreed to delegate questions of

arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting

parties agreed to arbitrate arbitrability"); *see also id.* ("We observed that '[v]irtually every circuit

to have considered the issue has determined that incorporation of the [AAA] arbitration rules

constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'")

(quoting *Oracle America, Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)). And

although *Brennan* concerned a contract between two sophisticated parties, the *Brennan* opinion

---

[8] The AAA Consumer Arbitration Rules can be found at
https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (effective September 1, 2014).

Cooley LLP
Attorneys at Law
San Francisco

13

**Coinbase's Motion to Compel
Arbitration or Dismiss Complaint
Case No. 3:21-cv-04539**

itself noted that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties." *Brennan*, 796 F.3d at 1130–31 (collecting cases).

Despite the intra-circuit split since *Brennan*, courts in the Northern District and other lower courts in the Ninth Circuit have determined that *Brennan* similarly applies to non-sophisticated parties. *See, e.g.*, *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) ("The 'greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.' ") (quoting *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017)); *McLellan*, 2017 WL 4551484, at *2 (collecting cases); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973–75 (N.D. Cal. 2015); *but see Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal. 2019) (citing *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016))).

Together, the delegation in the text of the User Agreement, along with the explicit incorporation of the AAA Consumer Arbitration Rules, is clear and unmistakable evidence that the parties agreed to delegate arbitrability questions to the arbitrator. Therefore, if Plaintiffs dispute whether the arbitration provision in the User Agreement governs these claims, the Court should refer this case to the AAA arbitrator to consider the issue, and stay the action pending resolution of questions of arbitrability.

### C.      The Court should compel arbitration and dismiss this action in its entirety.

Because the arbitration provision is valid, dismissal of this entire action is appropriate. Where, as here, "an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action." *Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011) (citations omitted); *see also Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Dittenhafer v. Citigroup*, 2010 WL 3063127, at *7 (N.D. Cal. Aug. 2, 2010) (compelling arbitration and dismissing case); *Underwriters Reins. Co. v. Ace Am. Ins. Co.*, 2003 WL 24011931, at *7–8 (C.D. Cal. Feb.10, 2003) (same). Accordingly, the Court should compel arbitration and dismiss the action.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

**D.    Alternatively, the Court should stay these proceedings until arbitration is completed.**

While the Court should dismiss this action in its entirety, if the Court agrees that arbitration is mandatory per Plaintiffs' contracts with Coinbase, it must at least stay these proceedings pending the arbitrator's determination. That is because when a matter is "referable to arbitration," the FAA imposes a mandatory stay as to litigation between the parties required to arbitrate. 9 U.S.C. § 3; *see also Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, at *6 (N.D. Cal. May 4, 2005) ("The stay provision is mandatory: 'If the issues in a case are within the reach of the Agreement, the district court has no discretion under section 3 [of the FAA] to deny the stay.'" (citation omitted)); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." (citation omitted)).

**V.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS.**

**A.    The Dogecoin Sweepstakes did not violate Cal. Penal Code § 320 because it was a lawful sweepstakes, not an illegal lottery (claim 1).**

A contest of chance is not a lottery if participants can enter for free to win a prize. Here, Plaintiffs readily concede that they could have participated in the Dogecoin Sweepstakes without making a purchase. *See, e.g.*, FAC ¶ 28 ("there was a 100% free, mail-in option for entering the sweepstakes"); *see also id.* Ex. A at 3–4 (the Official Rules disclosed the free method of entry). That concession is fatal to their Unfair Competition Law ("UCL") claim that the Dogecoin Sweepstakes was an illegal lottery. Recognizing this flaw, Plaintiffs assert that they were "subjectively unaware of the omitted truth that a free, mail-in entry option existed." FAC ¶¶ 89, 92. But that assertion is legally irrelevant. A contest does not become a lottery just because a participant is "subjectively unaware" of the free method of entry.

Plaintiffs assert a claim under Cal. Penal Code § 320 (which prohibits illegal lotteries) via the "unlawful" prong of the UCL, which "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

1    *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A plaintiff asserting a UCL

2    "unlawful" claim must establish a violation of the predicate statute, and if it cannot, the UCL

3    claim must be dismissed. *See, e.g.*, *Singh v. Wells Fargo Bank, N.A.*, 2009 WL 2365881, at *5

4    (N.D. Cal. July 30, 2009) (dismissing a UCL claim because the plaintiff failed to show that the

5    defendant committed any underlying violation of law); *Ng v. US Bank, NA*, 2016 WL 5390296, at

6    *8 (N.D. Cal. Sept. 26, 2016) (same). As discussed below, Plaintiffs cannot establish that

7    Coinbase violated § 320. Accordingly, Plaintiffs' lottery claim must be dismissed.

8              **1.    An illegal lottery requires payment of valuable consideration.**

9              Lotteries are illegal under California law. Cal. Penal Code § 320. A lottery is "any scheme

10   for the disposal or distribution of property by chance, among persons who have paid or promised

11   to pay any valuable consideration for the chance of obtaining such property or a portion of it, or

12   for any share or any interest in such property, upon any agreement, understanding, or expectation

13   that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift

14   enterprise, or by whatever name the same may be known." *Id.* § 319. This statute is strictly

15   construed. *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404 (E.D. Cal. 1997) ("A penal statute is

16   strictly construed.").

17             An illegal lottery has three components: "a prize, distribution by chance, and

18   consideration." *Hotel Emps. & Rest. Emps. Int'l Union v. Davis*, 21 Cal. 4th 585, 592 (1999). If

19   any of these elements is missing, the contest is not an illegal lottery. *Cal. Gasoline Retailers v.*

20   *Regal Petroleum Corp.*, 50 Cal. 2d 844, 850–52 (1958).

21             The difference between an unlawful lottery and a lawful sweepstakes is whether

22   participants are required to pay valuable consideration to participate. Consideration is "the fee (in

23   the form of money or anything else of value) that a participant pays the operator for entrance."

24   *Hotel Emps.*, 21 Cal. 4th at 592 (citing *Regal*, 50 Cal. 2d at 853–54, 857–62). The classic

25   example is a lottery ticket: a participant buys a ticket in exchange for a chance to win. However,

26   if prizes are awarded on the basis of chance, but entries may be obtained freely, no lottery exists

27   because no person is required to pay consideration for the chance of winning a prize. *See, e.g.*,

28   *Haskell*, 965 F. Supp. at 1404 ("California courts have consistently held that business promotions

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

1    are not lotteries so long as tickets to enter are not conditioned upon a purchase." (citations

2    omitted)); *Regal*, 50 Cal. 2d at 856–57 (holding that a contest was lawful because "the receipt of

3    the ticket or tickets was not dependent upon a purchase of merchandise or service"); *People v.*

4    *Carpenter*, 141 Cal. App. 2d 884, 888–90 (1956) (holding that a contest was lawful because many

5    ticketholders "did not pay anything for the chance of getting the prize"); *People v. Cardas*, 28

6    P.2d 99, 101 (1933) (holding that a contest was lawful because "the holders of the prize tickets

7    did not pay a valuable consideration for the chance of winning the prize").

8            This is true even when some participants pay consideration to enter, so long as they are

9    not *required* to pay as a condition of entering the sweepstakes. *Regal*, 50 Cal. 2d at 858–59.

10   Businesses routinely hold purchase-not-required sweepstakes in which they give away entries

11   with each product purchase or donation, while also providing entries to those who request to enter

12   without making a purchase. Indeed, as discussed below, California law requires the sweepstakes

13   sponsor to include a "clear and conspicuous statement of the no-purchase-or-payment-necessary

14   message" in solicitation materials. Cal. Bus. & Prof. Code § 17539.15(b). If the legislature

15   believed it was improper to allow participants to receive entries in connection with a purchase or

16   donation (while also allowing anyone enter for free), then the legislature would have said that

17   purchases are prohibited, rather than requiring a disclaimer that no purchase or payment is

18   necessary. The key to a lawful sweepstakes is that no purchase is necessary to enter.

19                    **2.      The Dogecoin Sweepstakes was not a lottery because participants could
                               enter for free.**

20

21           California lottery law is clear: if a FAME is available, a contest is not a lottery. *Haskell*,

22   965 F. Supp. at 1404 ("California courts have consistently held that business promotions are not

23   lotteries so long as tickets to enter are not conditioned upon a purchase."); *Regal*, 50 Cal. 2d at

24   844 (holding that a contest was not an illegal lottery because tickets were freely distributed to

25   non-purchasers via at-home drop-offs, by placing tickets in windshield wipers of parked cars, and

26   by giving them away at events); *Cardas*, 28 P. 2d at 101 (finding that no consideration was

27   required because tickets were freely given to neighborhood residents and passersby).

28           The Dogecoin Sweepstakes was therefore not a lottery. As Plaintiffs concede, they could

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

have entered via the FAME that Coinbase provided. For instance, the Official Rules clearly disclosed the procedure by which Plaintiffs could have participated for free by mailing a postcard containing their contact information. FAC Ex. A at 3–4. The Plaintiffs also state throughout the FAC that a FAME was available. *See, e.g.*, FAC ¶¶ 16 (noting the existence of a "free entry option"), 28 ("there was a 100% free, mail-in option for entering the sweepstakes"), 29 ("there was a trade-free entry option"), 54 (Coinbase disclosed the "free, mail-in entry option" in the Official Rules), 106 (there was a "purchase-free, payment-free option" to participate).

Despite admitting that Coinbase offered a FAME for the Dogecoin Sweepstakes (*e.g.*, *id.* ¶ 28), Plaintiffs contend that they were "subjectively unaware of the omitted truth that a free, mail-in entry option existed." *Id.* ¶¶ 89, 92. But there is no reasonable dispute that FAME was available to anyone, and it was readily apparent to any participant who took a moment to read Coinbase's disclosures. Coinbase did not hide existence of the FAME—on the contrary, it displayed the standard "NO PURCHASE NECESSARY" language in its marketing materials, and provided additional details about the free alternative method of entry in the Official Rules. Any allegations that Coinbase "omitted" the disclosure of the FAME, or that the disclosures were not conspicuous enough, are relevant to Plaintiffs' false advertising claims (addressed in Section V.C below), not their lottery claims. There is no support in California lottery law for Plaintiffs' theory that a lawful sweepstakes becomes an unlawful lottery when one of its participants was "subjectively unaware" of the free method of entry. If that were the case, any participant could simply ignore sweepstakes disclosures and file a lawsuit based on the claim that they were unaware of the FAME.

Thus, Plaintiffs have not adequately alleged that Coinbase violated Cal. Penal Code § 320. Since they have not established a violation of the predicate statute, their UCL claim (FAC ¶¶ 86–93) must be dismissed. *Ng*, 2016 WL 5390296, at *8.

**B.     Coinbase did not violate § 17539.15 because its marketing materials contained the required "no-purchase-or-payment-necessary message" (claim 2).**

Plaintiffs also assert a UCL "unlawful" claim based on an alleged violation of Cal. Bus. & Prof. Code § 17539.15(b), which governs the content of sweepstakes promotional materials. As

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

above, Plaintiffs' UCL claim must be dismissed because they have not adequately alleged a

violation of the predicate law.

Under § 17539.15(b), sweepstakes solicitation materials must include a "no-purchase-or-

payment-necessary" disclosure in the official rules of the sweepstakes:

> Solicitation materials containing sweepstakes entry materials or
> solicitation materials selling information regarding sweepstakes
> shall include a clear and conspicuous statement of the no-purchase-
> or-payment-necessary message, in readily understandable terms, in
> the official rules included in those solicitation materials and, if the
> official rules do not appear thereon, on the entry-order device
> included in those solicitation materials.

Cal. Bus. & Prof. Code § 17539.15(b). The phrase "no-purchase-or-payment-necessary message"

means "the following statement *or a statement substantially similar* to the following statement:

'No purchase or payment of any kind is necessary to enter or win this sweepstakes.'" *Id.*

§ 17539.15(k)(1) (emphasis added).

Here, Coinbase included substantially similar statements throughout its marketing

materials. *See, e.g.*, FAC ¶ 66 (in its Sweepstakes emails, website, and mobile ads, Coinbase

stated: "NO PURCHASE NECESSARY TO ENTER OR WIN"); *see also id.* ¶¶ 69, 72–74.

Plaintiffs acknowledge that Coinbase's marketing materials contained the phrase "no purchase

necessary," but they nonetheless contend that the marketing materials violated § 17539.15

because they did not also include the phrase "or payment of any kind." *See, e.g.*, *id.* ¶ 73. But

California does not require magic words to deliver the "no-purchase-or-payment-necessary

message." The message just needs to be "readily understandable." That in some instances

Coinbase allegedly did not include the "or payment of any kind" language does not *per se* violate

§ 17539.15(b) where its disclosures were "readily understandable" from the language that

Coinbase used. Plaintiffs contend that by omitting the phrase "or payment of any kind," Coinbase

deceived consumers into thinking that they needed to make an additional payment to participate

in the Sweepstakes, such as paying a transaction fee for making a trade on Coinbase's platform.

*See, e.g.*, *id.* ¶ 73 ("Defendants' sweepstakes ads left open the possibility that payments of some

kind, other than DOGE purchases[,] might be necessary to enter: such as the 'payment' of a

*transaction fee*" (emphasis in original)). That allegation is simply not credible, particularly since

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

participants could easily navigate to the Official Rules, which contained additional details about the rules for participation—including the additional "or payment of any kind" language.

Accordingly, Plaintiffs fail to state a claim for a violation of § 17539.15, and their UCL claim based upon it (*id.* ¶¶ 94–107) must be dismissed.

### C.   Coinbase did not violate the FAL or UCL because no reasonable consumer would have been deceived by its marketing materials (claims 3 and 4).

There is no merit to Plaintiffs' assertion that Coinbase's promotional materials "affirmatively misrepresented, concealed and omitted" the FAME. *See, e.g.*, FAC ¶ 112.

To state a claim under the UCL or the False Advertising Law ("FAL") based on false advertising or promotional practices, Plaintiffs must "show that members of the public are likely to be deceived." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The standard for evaluating a deceptive advertising claim on a motion to dismiss is whether a reasonable person would have been misled. *Freeman*, 68 F.3d at 285 (adopting the "reasonable person" standard and rejecting the "unwary consumer" standard). This is an objective test. *Williams.*, 552 F.3d at 938; *see also Lokey v. CVS Pharmacy, Inc.*, 2020 WL 6822890, at *5 (N.D. Cal. Nov. 20, 2020) (dismissing plaintiffs' UCL and FAL claims "[b]ecause the label [was] not deceptive, and the plaintiff's subjective interpretation fail[ed] the reasonable-consumer test" (citations omitted)).

In *Freeman*, the Ninth Circuit addressed whether a reasonable person would have been deceived where disclosures in sweepstakes promotional materials appeared in the "small print" but not in the "large print." 68 F.3d at 289. It held that "no reasonable reader could ignore" the small-print disclosures, and that a reasonable consumer would be put on notice of the sweepstakes terms "simply by doing sufficient reading to comply with the instructions for entering the sweepstakes." *Id.* Applying this standard, the court found that the disclosures expressly stated that no purchase was necessary to participate in the sweepstakes, and affirmed the district court's dismissal of the plaintiff's deceptive advertising claims.

Several other courts have dismissed deceptive advertising claims where a consumer failed to read clear disclosures and later claimed to have been deceived. For example, in *Castagnola*, the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

court observed that a "consumer cannot decline to read clear and easily understandable terms that are provided on the same webpage in close proximity to the location where the consumer indicates his agreement to those terms and then claim that the webpage, which the consumer has failed to read, is deceptive." *Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at \*10 (N.D. Cal. June 13, 2012) (quoting *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at \*6 (S.D. Tex. Aug. 31, 2009)). Likewise, in *Baxter*, the court held that where the terms are provided on the same webpage as the marketing statements and "in close proximity to where the consumer indicates his agreement to those terms . . . which the consumer failed to read," the consumer cannot claim that the terms are deceptive. *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at \*4 (C.D. Cal. Sept. 16, 2010).

The Court should reach the same result here. Coinbase's disclosures were readily apparent to any reasonable consumer who was willing to take a moment to "do[] sufficient reading to comply with the instructions for entering the sweepstakes." *Freeman*, 68 F.3d at 289–90. Coinbase's marketing materials—including its emails and the Sweepstakes webpage—clearly stated that participants did not need to make a purchase to participate:

> NO PURCHASE NECESSARY TO ENTER OR WIN.
> PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available.

FAC ¶ 66. Similarly, the Official Rules clearly disclosed both methods of entry (*id.* Ex. A at 3–4), and stated at the outset: "NO PURCHASE NECESSARY. A PURCHASE OR PAYMENT OF ANY KIND WILL NOT INCREASE YOUR CHANCES OF WINNING" (*id.* Ex. A at 1). Sweepstakes operators are not required to present each disclosure as prominently as every other marketing statement; rather, the standard is whether a reasonably diligent consumer could find and understand the terms. Coinbase met that standard here.

Since no reasonable consumer would have been deceived by Coinbase's promotional materials, Plaintiffs UCL and FAL deceptive advertising claims (FAC ¶¶ 108–19) should be dismissed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

**D.     Plaintiffs have not plausibly alleged a violation of the UCL "unfair" prong (claim 5).**

Plaintiffs fail to allege a violation of the "unfair" prong of the UCL, under which "a practice may be deemed unfair even if not specifically proscribed by some other law." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (Cal. 2003)). California courts have articulated three tests to determine whether conduct is "unfair." *Carrier IQ*, 78 F. Supp. 3d at 1115. First, "the 'tethering test' requires that the 'public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.'" *Id.* (quoting *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010)). Second, the "balancing test" "asks whether the alleged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* Finally, the third test requires "(1) that the consumer injury be substantial; (2) that the injury not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided." *Id.*

Plaintiffs' allegations are insufficient to state a claim under each of these three tests. First, Plaintiffs' "tethering" allegations in FAC ¶ 121 are wholly conclusory and fail to tether the UCL claim to any specific California policy. This warrants dismissal. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing UCL "unfair" claim because although plaintiff "ma[de] conclusory statements that [defendant's] alleged conduct is unfair, he [did] not reference any established public policy that [defendant's] actions have violated").

Under the other two tests, Plaintiffs mischaracterize both the benefit to the public and the alleged harm to consumers. Coinbase's Sweepstakes materials benefited the public by informing them of a novel investment opportunity and offering a chance to win valuable prizes by participating. In contrast, any harm to Plaintiffs was minimal. Plaintiffs' allegation that Coinbase's marketing materials caused losses of "hundreds of millions of dollars" (FAC ¶ 123) is

Cooley LLP
Attorneys at Law
San Francisco

1    conclusory, highly implausible, and unsupported by any credible evidence or explanation.

2    Plaintiffs also fail to explain how they themselves suffered any substantial injury—particularly

3    since they all created accounts on Coinbase's platform well before the Dogecoin Sweepstakes

4    occurred (see Section II.A above).

5         Finally, under the third test, Plaintiffs clearly could have "reasonably avoided" the harms

6    they allege. As explained in Section V.C, no reasonable consumer would have been deceived by

7    Coinbase's marketing materials. On the contrary—a reasonable consumer would have noticed the

8    clear "NO PURCHASE NECESSARY" disclosures and taken a moment to understand how to

9    participate without making a purchase.

10        Because Plaintiffs fail to state a claim under each of the three tests, their UCL "unfair"

11   claim (FAC ¶ 120–26) should be dismissed.

12   **E.    Coinbase did not violate the CLRA because Coinbase's marketing materials
           did not state that payment was necessary to participate in the Dogecoin**
13   **Sweepstakes (claims 6 and 7).**

14        Plaintiffs assert violations of Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §

15   1770(a)(14), both as a direct claim (FAC ¶¶ 127–34) and as the predicate violation for a UCL

16   "unlawful" claim (*id.* ¶¶ 135–37). Both claims should be dismissed because no reasonable

17   consumer would have interpreted Coinbase's marketing materials to require payment to

18   participate.

19        The CLRA prohibits representations "that a transaction confers or involves rights,

20   remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ.

21   Code § 1770(a)(14). Like UCL and FAL deceptive advertising claims, CLRA claims are

22   evaluated under the "reasonable consumer" standard. *Freeman* 68 F.3d at 289; *Stathakos v.

23   Columbia Sportswear Co.*, 2017 WL 1957063, at *7 (N.D. Cal. May 11, 2017). Dismissal is

24   warranted where "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a

25   reasonable consumer [is] likely to be deceived." *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at

26   *3 (N.D. Cal. Nov. 18, 2019) (quoting *Williams*, 552 F.3d at 939).

27        Courts have dismissed CLRA claims where asterisks or footnotes call the reader's

28   attention to important disclosures in advertisements. *See, e.g.*, *Sponchiado*, 2019 WL 6117482, at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

*4–5; *Dinan v. SanDisk LLC*, 2020 WL 364277, at *9 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021). For instance, the court in *Dinan* explained that "[a]sterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye," and that "the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read." *Dinan*, 2020 WL 364277, at *8. Likewise, in *Sponchiado*, the plaintiffs argued that Apple's qualifying language regarding screen size was insufficient because it was not placed immediately next to actual screen size dimensions on the advertisement. *Sponchiado*, 2019 WL 6117482, at *4. The court determined that "[i]t would not be sensible for a reasonable consumer to simply assume the supplemental information would not apply to the preceding statement in its entirety and therefore choose to ignore it (and in practice, footnotes are commonly placed at the end of a sentence). Accordingly, a reasonable consumer could not be deceived by the iPhone Products' screen size representation, given the qualifying language expressly notifying the consumer that the actual screen area is less than indicated." *Id*.

Here, Coinbase included the same type of link to a footnote containing the "no purchase necessary" disclosure. Plaintiffs allege that the statement indicating that they "need[ed]" to buy or sell Dogecoin to participate in the Sweepstakes constituted an affirmative misrepresentation. *See, e.g.*, FAC ¶ 130. But their screenshots show that, two lines below, Plaintiffs were presented with text that stated: "*View sweepstakes rules →*" (including the asterisk). FAC ¶ 11 (screenshot). That text linked to a footnote that stated: "NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available." *Id*. A nearly identical disclosure appeared in the Official Rules linked at the bottom of this paragraph. *Id.* ¶ 66 & Ex. A.

Like the disclosure in *Freeman*, where Defendants' sweepstakes mailer included qualifying language about the chances of winning in the official rules, Coinbase's advertisements explicitly call the reader's attention to key information about the method of entry. *See Freeman*, 68 F.3d at 289–90 (finding that Plaintiffs' inference regarding the mailer was unreasonable in the context of the document as a whole). Coinbase clearly disclosed to readers, in multiple locations,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

that no purchase was necessary to participate and that a FAME was available. No reasonable consumer would have been misled.

The same reasoning applies to Plaintiffs' alleged misrepresentation as to the necessary amount of Dogecoin users needed to trade in order to participate via the paid method of entry. In describing the paid method of entry, the Official Rules state:

> Method 1: Existing account holders and new* account holders must opt-in to participate in the Sweepstakes and must complete **$100usd (cumulative [of] the transaction fee))** in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes.

FAC Ex. A at 3 (emphasis added). (Immediately afterwards, the Official Rules stated that participants can enter for free by mailing a card.) This disclosure is adequate in the context in which it appeared. Per *Freeman*, courts should consider the context of an advertisement to evaluate whether an inference is reasonable. 68 F.3d at 289–90. And, as in *Freeman*, the disclosures here "expressly and repeatedly state[d] the conditions which must be met in order to win," and "[n]one of the qualifying language is hidden or unreadably small." *Id.* No reasonable consumer would have been led to believe that the only way to enter the Sweepstakes was to buy or trade at least $100 in Dogecoin, *excluding* transaction fees; rather, the disclosures clearly stated that the $100 trade *included* transaction fees.

Plaintiffs thus fail to state a claim for a violation of § 1770(a)(14). FAC ¶¶ 127–34. Their UCL "unlawful" claim based on § 1700(a)(14) must also be dismissed. *Id.* ¶¶ 135–37.

## VI. CONCLUSION

Coinbase respectfully requests that the Court compel arbitration and stay the proceedings, or in the alternative, dismiss the FAC.

Dated: October 19, 2021                    COOLEY LLP

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

Attorneys for Defendant
COINBASE GLOBAL, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

COINBASE'S MOTION TO COMPEL
ARBITRATION OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539