COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
ELIZABETH SANCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:   +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**COINBASE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR, ALTERNATIVELY, TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:        January 10, 2022<br>Time:       9:30 a.m.<br>Courtroom: C |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1
II. THE COURT SHOULD COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS. .................................................................................................. 1
   A. Plaintiffs consented to valid arbitration agreements that govern their claims. ................................................................................................................. 1
   B. The Official Rules do not supersede or modify the User Agreement. .................... 2
   C. Disputes about arbitrability must be resolved by the arbitrator. ............................. 5
   D. The Court should compel arbitration and stay these proceedings. .......................... 6
III. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(6). .............................................................................................. 7
   A. The Dogecoin Sweepstakes was not an illegal lottery (claim 1). ............................ 7
   B. Coinbase's disclosures satisfied the requirements of § 17539.15 (claim 2). .......... 9
   C. Coinbase's statements were not deceptive and therefore did not violate the UCL, FAL, or CLRA (claims 3, 4, 6, and 7). ........................................................ 10
   D. Plaintiffs fail to state a claim under the UCL "unfair" prong (claim 5). ............... 12
IV. CONCLUSION ............................................................................................................. 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
   424 F.3d 278 (2d Cir. 2005) ................................................................................................ 3, 4

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ................................................................................................ 10

*Breathe Techs., Inc. v. New Aera, Inc.*,
   No. 5:18-cv-07691-EJD, 2020 WL 4747896 (N.D. Cal. Aug. 17, 2020) ................................. 6

*Cal. Gasoline Retailers v. Regal Petroleum Corp.*,
   50 Cal. 2d 844 (1958) .......................................................................................................... 7, 8

*Capili v. Finish Line, Inc.*,
   116 F. Supp. 3d 1000 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir.
   2017) ........................................................................................................................................ 5

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................... 12

*Couch v. Telescope, Inc.*,
   2:07-cv-03916 (C.D. Cal. Nov. 30, 2007), ECF No. 30 at *6–9 ............................................. 8

*Dinan v. SanDisk LLC*,
   No. 18-cv-05420-BLF, 2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844
   F. App'x 978 (9th Cir. 2021) ................................................................................................. 12

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................................... 12

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .................................................................................................... 10

*Goldman, Sachs & Co. v. City of Reno*,
   747 F.3d 733 (9th Cir. 2014) ............................................................................................ 3, 4, 5

*Haskell v. Time, Inc.*,
   965 F. Supp. 1398 (E.D. Cal. 1997) ..................................................................................... 7, 8

*Herkenrath v. Move, Inc.*,
   No. CV 18-4438-MWF (KSX), 2018 WL 10705782 (C.D. Cal. Aug. 21, 2018) ................. 3, 4

*Hotel Emps. & Rest. Emps. Int'l Union v. Davis*,
   21 Cal. 4th 585 (1999) ............................................................................................................. 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hughes Aircraft Co. v. North American Van Lines*,
    970 F.2d 609 (9th Cir. 1992) ................................................................................................ 2

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
    817 F.2d 75 (9th Cir. 1987) .................................................................................................. 4

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) .............................................................................................. 6

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) .............................................................................................. 6

*Morrow Equip. Co., LLC v. Baker Concrete Const., Inc.*,
    No. CV-09-1335-ST, 2010 WL 4483914  (D. Or. June 8, 2010), *report and
    recommendation adopted*, No. CIV 09-1335-ST, 2010 WL 4483909 (D. Or.
    Nov. 1, 2010) ........................................................................................................................ 2

*Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*,
    819 F.2d 400 (3d Cir. 1987) ................................................................................................. 3

*People v. Cardas*,
    137 Cal. App. Supp. 788 (1933) ....................................................................................... 7, 8

*Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*,
    297 F. 3d 388 (5th Cir. 2002) ............................................................................................... 2

*Peterson v. Minidoka Cty. Sch. Dist. No. 331*,
    118 F.3d 1351 (9th Cir.), *amended*, 132 F.3d 1258 (9th Cir. 1997) ..................................... 2

*Saperstein v. Thomas P. Gohagan & Co.*,
    476 F. Supp. 3d 965 (N.D. Cal. 2020) .................................................................................. 6

*Sponchiado v. Apple Inc.*,
    No. 18-cv-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) .............................. 12

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .............................................................................................. 10

Cooley LLP
Attorneys at Law
San Francisco

- iii -

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

9 U.S.C. § 3 ............................................................................................................................ 6

Cal. Bus. & Prof. Code
    § 17539.15 ..................................................................................................................... 9, 10
    § 17539.15(b) ...................................................................................................................... 9
    § 17539.15(k)(1) ................................................................................................................. 9

Cal. Code Civ. Proc. § 1281.2 .................................................................................................. 6

Cal. Pen. Code §§ 319–20 ........................................................................................................ 7

Consumer Legal Remedies Act ("CLRA") .................................................................... 10, 12

False Advertising Law ("FAL") ...................................................................................... 10, 12

Unfair Competition Law ("UCL") ............................................................................. 10, 12, 13

**Other Authorities**

Rule 12(b)(6) ................................................................................................................. 1, 7, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iv -

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

## I. INTRODUCTION

Plaintiffs concede that they agreed to arbitrate their Sweepstakes-related claims when they created their Coinbase accounts and consented to the Coinbase User Agreement. There is no dispute about that. This alone should end the analysis and the Court should compel Plaintiffs to arbitrate the claims they admit are subject to their arbitration agreement with Coinbase.

The Sweepstakes' Official Rules do not supersede, amend, or in any way change the parties' arbitration agreement. The Coinbase User Agreement forecloses that possibility. And even if that conclusion is a close call (it is not), the User Agreement reserves for an arbitrator the decision about whether this matter should be in arbitration in the first instance. Plaintiffs cannot avoid their contractual obligations simply because they would prefer to litigate their dispute here.

If the Court nevertheless agrees with Plaintiffs that this dispute should be litigated here, then the Court should dismiss the Second Amended Complaint ("SAC"), ECF No. 36, for failure to state a claim under Rule 12(b)(6). Plaintiffs' opposition brief does not refute (or even address) many of Coinbase's arguments and authorities, relying instead on inflammatory rhetoric and hyperbolic complaints about Coinbase's conduct. Among other flaws, Plaintiffs fail to allege the elements of an unlawful lottery; fail to assert how Coinbase's sweepstakes disclosures were inadequate as a matter of law; fail to allege how Coinbase's statements would have deceived a reasonable consumer; and fail to assert how Coinbase's conduct was "unfair" in violation of California law. These defects warrant dismissal.

## II. THE COURT SHOULD COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CLAIMS.

### A. Plaintiffs consented to valid arbitration agreements that govern their claims.

Plaintiffs concede that the arbitration provision in the User Agreement is valid and governs Plaintiffs' claims. *See, e.g.*, Opp'n to Mot. ("Opp'n"), ECF No. 40 at 11 ("There is no disputing that Plaintiffs' claims fall within the plain terms of the parties' original arbitration clauses, as such claims 'arise[] out of or relate[] to [Plaintiffs'] use of the Coinbase services.'" (quoting Mot. at 11)); *see also* Opp'n at 12 ("the parties agree that the plain text of their original arbitration agreements *mandated* an *arbitration forum* as the exclusive form for resolving Plaintiffs' claims" (emphasis in original)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539-SK

**B.     The Official Rules do not supersede or modify the User Agreement.**

The only matter in dispute is whether the Official Rules somehow "superseded" or "modified" the User Agreement's arbitration provision (Opp'n at 9–13). The Official Rules did not supersede or modify the User Agreement's arbitration provision for the following two reasons.

***First***, as Coinbase explained in its motion, there is no conflict between the User Agreement and the Official Rules because they apply to different categories of Sweepstakes participants. Mot. at 11–12. The Official Rules govern disputes between Coinbase and Sweepstakes participants who never created Coinbase user accounts. For example, Sweepstakes participants could enter for free by mailing an index card containing their contact information. Those participants never would have agreed to the Coinbase User Agreement, and they are free to pursue Sweepstakes-related claims against Coinbase in state or federal court. By contrast, participants who entered the Sweepstakes by trading Dogecoin were required to create Coinbase user accounts and agree to the User Agreement. Those participants—including Plaintiffs—agreed to assert Sweepstakes-related claims against Coinbase in arbitration.

As Plaintiffs note, basic contract principles govern the interpretation of these agreements. Opp'n at 9–10. But those principles hold that courts should "read provisions so that they harmonize with each other, not contradict each other." *Peterson v. Minidoka Cty. Sch. Dist. No. 331*, 118 F.3d 1351 (9th Cir.), *amended*, 132 F.3d 1258 (9th Cir. 1997) (citing *Hughes Aircraft Co. v. North American Van Lines*, 970 F.2d 609, 613 (9th Cir. 1992)). Courts frequently apply that rule to find that forum selection clauses do not override previously executed arbitration provisions. *See, e.g.*, *Morrow Equip. Co., LLC v. Baker Concrete Const., Inc.*, No. CV-09-1335-ST, 2010 WL 4483914, at *5 (D. Or. June 8, 2010), *report and recommendation adopted*, No. CIV 09-1335-ST, 2010 WL 4483909 (D. Or. Nov. 1, 2010) (explaining that "the inclusion of a forum selection clause granting jurisdiction in one forum is not necessarily inconsistent with an arbitration clause requiring arbitration in another location," and compelling arbitration); *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F. 3d 388 (5th Cir. 2002) (explaining that courts should interpret forum selection clauses "in the context of the entire contractual arrangement" and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

finding that "the parties intended the clause to apply only in the event of a nonarbitrable dispute," and compelling arbitration); *Herkenrath v. Move, Inc.*, No. CV 18-4438-MWF (KSX), 2018 WL 10705782, at *6 (C.D. Cal. Aug. 21, 2018) (finding "no conflict" between the arbitration agreement and forum selection clause, and compelling arbitration); *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005) (same); *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987) (same).

**Second**, the Official Rules do not purport to amend the User Agreement. Coinbase may amend the User Agreement only via the procedure specified in Section 9.5:[1]

> We may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time. If you do not agree with any such modification, your sole and exclusive remedy is to terminate your use of the Services and close your account. You agree that we shall not be liable to you or any third party for any modification or termination of the Coinbase Services, or suspension or termination of your access to the Coinbase Services, except to the extent otherwise expressly set forth herein. If the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective.

McPherson-Evans Decl. Ex. 7 at 29, ECF No. 33-8. Nowhere do the Official Rules state that they are intended to amend, modify, or supersede any prior agreement, including the User Agreement. Nor do Plaintiffs allege that Coinbase followed the procedure for amending the User Agreement set forth in Section 9.5. Thus, any purported modifications to the User Agreements via the Official Rules are invalid. Additionally, Section 9.4 of the User Agreement states that it "comprise[s] the entire understanding and agreement between [the user] and Coinbase." *Id.*

Plaintiffs cite four cases in support of their argument that the Official Rules agreement "supersedes, modifies, and prevails over the parties' original arbitration agreements" (Opp'n at 13 (internal quotations omitted)). Each of those cases is readily distinguishable.

Plaintiffs' first case, *Goldman*, is inapplicable because, as explained above, the User Agreement and Official Rules are complementary, not contradictory. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743–46 (9th Cir. 2014). *Goldman* "would only apply if the

---

[1] For Suski, this language appears in Section 8.5. ECF No. 33-7.

Arbitration Agreement and the forum selection clause conflicted, which they do not." *Herkenrath*, 2018 WL 10705782, at *6 (compelling arbitration and distinguishing *Goldman* where, as here, the plaintiffs failed to "show that the arbitration agreement is not enforceable or conflicts with an unrelated forum selection clause").

Plaintiffs' second case, *Applied Energetics*, a Second Circuit case, determined that the two agreements were "all-inclusive" and that "neither admits the possibility of the other." *Id.* at 525. The court expressly distinguished the facts of that case from the scenario in which a "forum selection clause in [a] subsequent agreement could be read as complementary, rather than contradictory, to the parties' initial agreement to arbitrate." *Id.* (citing *Bank Julius*, 424 F.3d at 284–85, as an instance in which an arbitration agreement was enforceable because it was consistent with a later agreement containing a forum selection clause). That is the scenario here. The User Agreement and Official Rules can and should be read in harmony.

Plaintiffs' third case, *Hunt Wesson*, did not involve competing agreements at all. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76 (9th Cir. 1987). Instead, it addressed whether the forum selection clause in a single agreement *required* or merely *permitted* disputes to be resolved in courts in Orange County. *Id.* Plaintiffs do not explain how *Hunt Wesson* is relevant here; instead, they cite the following sentence in a parenthetical: "[I]n cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required *exclusive* jurisdiction." *Id.* at 77. Plaintiffs appear to rely on *Hunt Wesson* to support the proposition that the forum selection clause in the Official Rules "plainly *mandates* a *judicial forum* as the *exclusive* forum for resolving Plaintiffs' claims." Opp'n at 13 (emphasis in original). That is not a correct reading of *Hunt Wesson*. The *Hunt Wesson* court was distinguishing between two types of forum selection clauses. 817 F.2d at 77–78. The first type is a *permissive* forum selection clause, which specifies that a given court has jurisdiction, but allows the possibility that other courts might have jurisdiction as well. *Id.* The second type is an *exclusive* forum selection clause, which states that a given court is the *only* court that has jurisdiction. *Id.* This discussion provides no support for Plaintiffs' argument that the forum selection clause in the Official Rules somehow nullifies or supersedes the arbitration provision in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

the User Agreement.

Plaintiffs' fourth case, *Capili*, simply has nothing to do with the matter presently before the Court. *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1003 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017). It held that a single employment contract was procedurally unconscionable (because it was presented to the employee on a "take-it-or-leave-it basis") and substantively unconscionable (because it required disputes to be resolved in forums "thousands of miles away" from where the employee worked), and found that the entire agreement was unenforceable on that basis. *Id.* at 1007, 1009. This case adds nothing to an analysis of whether the Official Rules superseded or modified the User Agreement.

Finally, there is no merit to Plaintiffs' contention that "no agreement to arbitrate . . . exist[s]." Opp'n at 14. Plaintiffs concede that the User Agreement was valid and enforceable. They also concede that the User Agreement's arbitration clause covers their claims. The only issue here is whether the User Agreement—an agreement that assuredly exists and that Plaintiffs admit is valid—is superseded or modified by the Official Rules. As explained above, it is not, and Plaintiffs' two authorities (*Goldman* and *Applied Energetics*) provide no basis to invalidate the parties' arbitration agreement.

### C.    Disputes about arbitrability must be resolved by the arbitrator.

The User Agreement states: "This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge." ECF No. 33-8 at 25.

Plaintiffs rely only the phrase " 'ANY CONTROVERSIES REGARDING' the Sweepstakes" in the Official Rules to suggest that the Rules superseded or modified the clause delegating issues of arbitrability to the arbitrator. Opp'n at 14. But whether this dispute is arbitrable is not a "controversy regarding the Sweepstakes." It is a controversy about the User Agreement.

Plaintiffs cannot avoid the arbitrability clause in the User Agreement by relying on the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

absurd legal fiction that the User Agreement's arbitration clause "no longer exists." Opp'n at 14. The question is not whether the arbitration clause exists or not. The question is whether the clause is superseded or modified by the Official Rules. That question—a question about the enforceability of the arbitration clause in the User Agreement—was expressly reserved to the arbitrator. Nothing in the Official Rules changes that. And even if Plaintiffs are correct that the Official Rules supersede or modify the arbitration clause in the User Agreement (they are not), the Official Rules say nothing about whether disputes about arbitrability should be delegated to the arbitrator, and therefore the Official Rules do not supersede or modify this delegation clause.

If the Court determines that a valid dispute exists on the issue of whether the parties' agreement to arbitrate is enforceable, then it must refer that dispute to the arbitrator, as required by the User Agreement itself, by California law, and by Ninth Circuit precedent. *See* ECF No. 33-8 at 25 (disputes about arbitrability are delegated to the arbitrator); Cal. Code Civ. Proc. § 1281.2 ("On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."); *Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 972–73 (N.D. Cal. 2020) ("Where the parties 'clearly and unmistakably' indicate their intent to do so, an agreement may delegate 'threshold issues' of arbitrability, including the "enforceability, revocability or validity" of an arbitration clause, to the arbitrator rather than to a court." (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016))); *Breathe Techs., Inc. v. New Aera, Inc.*, No. 5:18-cv-07691-EJD, 2020 WL 4747896, at *3 (N.D. Cal. Aug. 17, 2020) ("California law reflects a strong policy in favor of arbitration.").

**D.    The Court should compel arbitration and stay these proceedings.**

The Court should stay this action if it agrees that arbitration is required. See 9 U.S.C. § 3 (the Federal Arbitration Act imposes a mandatory stay of litigation when parties are required to arbitrate); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." (citation omitted)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

### III. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(6).

#### A. The Dogecoin Sweepstakes was not an illegal lottery (claim 1).

An illegal lottery has three elements: a prize, distribution by chance, and consideration. *Hotel Emps. & Rest. Emps. Int'l Union v. Davis*, 21 Cal. 4th 585, 592 (1999); *see also* Cal. Pen. Code §§ 319–20. No lottery exists where participants can enter for free, even if they can also enter by making a purchase. *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404 (E.D. Cal. 1997). Coinbase's Dogecoin Sweepstakes was a lawful sweepstakes, not an illegal lottery, because participants could enter for free by mailing an index card—even though they could also enter by buying or selling Dogecoin. Plaintiffs' SAC concedes this. *See, e.g.*, SAC ¶ 28 ("there was a 100% free, mail-in option for entering the sweepstakes").

Plaintiffs do not dispute these blackletter principles of lottery and sweepstakes law. Instead, they cite *Regal* for the proposition that the "question of consideration is not to be viewed from the standpoint of the defendant, but from that of the [entrants]." Opp'n at 17 (quoting *Cal. Gasoline Retailers v. Regal Petroleum Corp.*, 50 Cal. 2d 844, 860 (1958)). Based on this sentence from *Regal*, Plaintiffs argue that the Dogecoin Sweepstakes was an illegal lottery because Plaintiffs subjectively believed they were required to pay consideration to participate. Opp'n at 17–18. But that is not the legal standard—the question is whether participants can enter for free, not whether participants subjectively believe they are required to pay. *See, e.g.*, *Haskell*, 965 F. Supp. at 1403–04 (explaining that the relevant inquiry is whether a free method of entry was available, regardless of the plaintiffs' "subjective expectation," and noting that the plaintiffs' theory would "criminalize . . . widespread and fairly unremarkable marketing practice[s]").

*Regal* itself provides no support for Plaintiffs' theory. Plaintiffs' quotation comes from the *Regal* court's discussion of *People v. Cardas*, 137 Cal. App. Supp. 788 (1933). In that case, a theater operator conducted a promotion in which it freely distributed tickets to the public (as well as to theatergoers who paid for admission) for a chance to win round-trip travel to Catalina Island. *Regal*, 50 Cal. 2d at 853–54. It held the drawing at the theater's entrance, which enticed participants to congregate there and pay to see the show. *Id.* The theater operator was convicted

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S REPLY ISO MOTION TO COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

of running an illegal lottery because the contest involved a prize (round-trip travel), distribution by chance (a random drawing), and consideration (increased patronage at the theater). *Id.* The appellate court reversed, finding that there was no consideration because many participants received their tickets for free. *Id.* (holding that even though some participants entered by paying for admission to a show, other participants "who received prize tickets without buying an admission ticket did not pay anything for the chance of getting the prize"). The court held that the element of consideration "is not to be determined from the standpoint of the defendant" (which received a monetary benefit in the form of increased patronage at the theater), "but from that of the holders of the prize tickets" (many of whom paid nothing). *Id.* at 854–55. Because tickets were freely distributed, the element of consideration was missing, and therefore the contest was not an illegal lottery. *Id. Regal* and *Cardas* say nothing about participants' subjective awareness of the free method of entry. If anything, they reiterate the basic principle that a contest is not a lottery if participants can enter for free. *See Regal*, 50 Cal. 2d at 856–57 (holding that a contest was lawful because "the receipt of the ticket or tickets was not dependent upon a purchase of merchandise or service").

Likewise, *Couch* does not support Plaintiffs' argument. *Couch v. Telescope, Inc.*, 2:07-cv-03916 (C.D. Cal. Nov. 30, 2007), ECF No. 30 at *6–9. In that case, the court found that the scheme was in illegal lottery because the plaintiffs paid 99 cents to enter via text message and received nothing in return. *Id.* at 9. According to the court, this arrangement violated California's lottery laws because those entrants "paid *only* for the privilege of entering." *Id.* (emphasis added). The court expressly distinguished that scenario from lawful contests where, as here, participants could enter by purchasing something of value. *Id.* at 7–9 (citing *Regal*, *Cardas*, *Haskell*, and other California authorities).

Plaintiffs repeatedly allege that the Dogecoin Sweepstakes was a lottery because Coinbase's marketing materials deceived them into thinking they needed to trade Dogecoin to participate. Opp'n at 18. But those allegations are relevant only to Plaintiffs' deceptive advertising claims (discussed in Section III.C below), not their lottery claim. Plaintiffs acknowledge that a free method of entry was available (e.g., SAC ¶ 28), and accordingly, their

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

lottery claim must be dismissed.

**B.     Coinbase's disclosures satisfied the requirements of § 17539.15 (claim 2).**

Under Cal. Bus. & Prof. Code § 17539.15(b), sweepstakes solicitation materials must include a "no-purchase-or-payment-necessary message" in "readily understandable terms." The message must appear on "entry-order device[s]" (*id.*), and it must contain "the following statement ***or a statement substantially similar*** to the following statement: 'No purchase or payment of any kind is necessary to enter or win this sweepstakes.'" (*id.* § 17539.15(k)(1) (emphasis added)).

Coinbase satisfied the statute's requirements. Coinbase included the phrase "NO PURCHASE NECESSARY TO ENTER OR WIN" throughout its marketing materials—including in its sweepstakes emails, website, and mobile ads. *See, e.g.*, SAC ¶ 66 (acknowledging that Coinbase's "email, web, [and] mobile app ads" stated: "NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING."); *see also id.* ¶¶ 69, 72–74. This language is easily understandable and was presented clearly and conspicuously. Although this statement does not match the literal text that appears in § 17539.15(k)(1), the statute does not require this language to appear verbatim. Instead, it requires a statement that is "substantially similar" to the statutory language, presented in "readily understandable terms." Coinbase's version satisfies that requirement. And participants could have easily navigated to the Official Rules, which stated at the very beginning: "NO PURCHASE NECESSARY. A PURCHASE OR PAYMENT OF ANY KIND WILL NOT INCREASE YOUR CHANCES OF WINNING." ECF No. 22-1 at 2; *see also* Opp'n at 7 (acknowledging that Coinbase's sweepstakes materials contained "conspicuous statement[s] that '[t]erms and conditions appl[ied]'" and that these statements were "coupled with reasonably conspicuous hyperlinks" to the Official Rules).

In their opposition brief, Plaintiffs appear to argue that the "Opt in" and "Make a trade" buttons are "entry-order devices" within the meaning of the statute. Opp'n at 20–21; *but see* SAC ¶ 101 (alleging that the *materials containing* these buttons—the "direct-to-user emails, webpages and mobile app screens"—were the entry-order devices at issue). The statute does not define

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

"entry-order device," and there is no case law interpreting this term. But a plain reading of the statute makes it clear that a sweepstakes operator should include the required language on the materials that entrants use to participate in the sweepstakes. Coinbase did so. There is no basis for Plaintiffs' assertion that that the statement should have appeared inside the buttons (as opposed to below them).

Plaintiffs' claim for a violation of § 17539.15 lacks merit and should be dismissed.

### C. Coinbase's statements were not deceptive and therefore did not violate the UCL, FAL, or CLRA (claims 3, 4, 6, and 7).

Plaintiffs' deceptive-advertising claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") all turn on whether an objectively reasonable consumer would have been misled by Coinbase's statements. *See, e.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (to state a UCL or FAL claim based on false advertising, Plaintiffs must "show that members of the public are likely to be deceived") (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008))); *Williams*, 552 F.3d at 938 (the standard is whether an objectively reasonable person would have been misled); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (CLRA claims are also evaluated under the objectively-reasonable-consumer standard). If a court determines that no reasonable consumer would have been deceived, it should dismiss deceptive-advertising claims as a matter of law under Rule 12(b)(6). *Id.*

Coinbase's motion addresses the statements Plaintiffs allege were deceptive and discusses applicable case law showing why dismissal of Plaintiffs' UCL, FAL, and CLRA claims is warranted at the pleadings stage. Mot. at 20–21, 23–25. In response, Plaintiffs cite no case law showing that their claims should survive a motion to dismiss. Instead, Plaintiffs recite a list of five of Coinbase's statements that were allegedly deceptive. Opp'n at 22–23. None of those statements would have deceived a reasonable consumer.

First, Plaintiffs allege that web and mobile users were presented with a button that read "Opt in," and the text at the bottom of the page stated "Opt-in required." Opp'n at 22; SAC ¶¶ 75–76. Plaintiffs allege that these statements misled consumers into believing that "opting in"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539

was the only way to participate in the Sweepstakes. Opp'n at 22. That interpretation is not credible in the context in which these statements appeared:

> NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available.

SAC ¶ 66. This statement makes it abundantly clear that a user would *not* need to make a purchase to participate, and that an "alternative means of entry" was available. In context, the phrase "Opt-in required" means that if users chose to enter by trading Dogecoin, they would need to affirmatively opt in by clicking the button. It did not suggest that trading Dogecoin was the only way to participate. This phrase also appeared next to a conspicuous link to the Official Rules, which presented a detailed explanation of the two methods by which a user could participate. *See* Mot. at 6–7 and ECF No. 22-1.

Second, Plaintiffs allege that after they clicked the "Opt in" button, they were presented with a message that stated: "Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win." Opp'n at 23; SAC ¶¶ 11, 110. Again, this statement is in no way deceptive in the context in which it appeared. It was presented to users only after they clicked the "Opt in" button. It served to remind users that once they chose to participate in the Sweepstakes by opting in and trading Dogecoin (as they signaled by clicking the "Opt in" button), they should remember to make a Dogecoin trade before the end of the Sweepstakes period. It did not conceal the free alternative method of entry in any way.

Third, Plaintiffs allege that after they clicked a "See how to enter" button, they were taken to the "Opt in" page, and lower down on that page, there were four-part instructions on how to participate in the sweepstakes by trading Dogecoin. Opp'n at 23; SAC ¶¶ 8–13. Plaintiffs leave out important details in this user flow. Above the "See how to enter" button, users were presented with a link to "See all rules and details" that pointed to the Official Rules. SAC ¶ 8. Then, in the first screen on the "Opt in" page, there was another link that read: "*View sweepstakes rules →." *Id.* ¶ 10. Finally, the page also contained the "NO PURCHASE NECESSARY" statement and contained a link to the Official Rules. *E.g., id.* ¶ 66. These disclosures made clear numerous times that users could enter for free.

Fourth, Plaintiffs allege that Coinbase's disclaimers did not alter the meaning of the other statements on the page. Opp'n at 23; SAC ¶¶ 69–72. But Plaintiffs ignore the cases Coinbase cited in its motion (Mot. at 23–24) in which courts have dismissed similar deceptive-advertising claims where asterisks or footnotes all the reader's attention to important disclosures elsewhere on the page or package. *See, e.g., Dinan v. SanDisk LLC*, No. 18-cv-05420-BLF, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021) ("the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read"); *see also Sponchiado v. Apple Inc.*, No. 18-cv-07533-HSG, 2019 WL 6117482, at *3 (N.D. Cal. Nov. 18, 2019).

Fifth, Plaintiffs allege that Coinbase's statements led them to believe that they would need to trade $100 in Dogecoin *plus* transaction fees in order to participate in the Sweepstakes. Opp'n at 23; SAC ¶¶ 40–48. That allegation flatly contradicts the Official Rules' description of the paid method of entry, which states that participants must trade $100 "cumulative [of] the transaction fee." ECF No. 22-1 at 3. Any reasonable consumer would have understood that they could participate by trading $100 of Dogecoin *including* transaction fees.

Because no reasonable consumer would have been misled by these statements, Plaintiffs deceptive-advertising claims based on the UCL, FAL, and CLRA should be dismissed.

### D. Plaintiffs fail to state a claim under the UCL "unfair" prong (claim 5).

Plaintiffs fail to state a claim under each of the three tests that California courts apply to determine whether conduct is "unfair." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1115 (N.D. Cal. 2015).

Under the "tethering" test, Plaintiffs fail to tether their claim to any specific California policy. Plaintiffs try to salvage this claim by pointing out that their allegations are tethered to "the laws and public policies of California, as set out in the preceding paragraphs of this complaint." Opp'n at 24; SAC ¶¶ 120–21. That is not enough; a plaintiff cannot satisfy the tethering test simply by incorporating the entire complaint by reference. Because Plaintiffs have not identified a specific California public policy that Coinbase violated, their UCL "unfair" claim should be dismissed. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

Under the other two tests, Plaintiffs also do not address Coinbase's point (Mot. at 22–23) that the Plaintiffs have not alleged that they suffered any substantial injury. Plaintiffs argue that they "pa[id] $100-plus to lose a cryptocurrency 'Sweepstakes'" involving "digital joke-tokens" (Opp'n at 25) but that rhetoric rings hollow in light of the fact that all of the Plaintiffs created Coinbase accounts well before the Dogecoin Sweepstakes occurred (Mot. at 2–3). Indeed, Plaintiff Suski "already owned over 1,000 Dogecoins" before Coinbase launched its Dogecoin Sweepstakes. Compl., ECF No. 1 ¶ 20. Plaintiffs also fail to account for the public benefit that flowed from the Sweepstakes and the fact that Plaintiffs could have reasonably avoided the harms they allege. Mot. at 23–24.

Plaintiffs fail to plausibly allege a claim under any of the three UCL "unfair" tests. Accordingly, this claim should be dismissed.

### IV.  CONCLUSION

Coinbase respectfully requests that the Court compel arbitration and stay these proceedings, or the alternative, dismiss the SAC for failure to state a claim under Rule 12(b)(6).

Dated: December 7, 2021                                COOLEY LLP


By: /s/ Michael G. Rhodes
    Michael G. Rhodes

Attorneys for Defendant
COINBASE, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

COINBASE'S REPLY ISO MOTION TO
COMPEL OR DISMISS COMPLAINT
CASE NO. 3:21-CV-04539