UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, et al., | Case No. 21-cv-04539-SK |
| Plaintiffs, | |
| v. | **ORDER REGARDING MOTIONS TO COMPEL ARBITRATION AND TO DISMISS** |
| MARDEN-KANE, INC., et al., | |
| Defendants. | Regarding Docket Nos. 33, 41 |

This matter comes before the Court upon consideration of the motion to compel arbitration or, in the alternative, to dismiss filed by Coinbase Global, Inc. ("Coinbase"). Having carefully considered the parties' papers, relevant legal authority, the record in the case, and oral argument, the Court hereby DENIES Coinbase's motion to compel arbitration and GRANTS IN PART and DENIES IN PART Coinbase's alternative motion to dismiss for the reasons set forth below. The Court GRANTS Plaintiffs' request for judicial notice pursuant to Federal Rule of Evidence 201. (Dkt. No. 41.)

## BACKGROUND

Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek and Thomas Maher (collectively, "Plaintiffs") filed this purported class action on behalf of themselves and persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) sweepstakes in June 2021, and who purchased or sold Dogecoins on a Coinbase exchange for a total of $100 or more between June 3, 2021 and June 10, 2021. (Dkt. No. 36 (Second Amended Complaint ("SAC"), p. 2.)

Plaintiffs are Coinbase users with Coinbase accounts, which they created before the sweepstakes began. When they created their Coinbase accounts, each Plaintiff agreed to the Coinbase User Agreement which indisputably contains an arbitration provision. Suski agreed to a User Agreement with the following provision:

> . . . If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration**. The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by law, and the arbitral decision may be enforced in any court. . . .

(Dkt. No. 33-7 (Attached as Exhibit 6 to the Declaration of Carter McPherson-Evans) (emphasis in original).) Martin, Calsbeek, and Maher agreed to a User Agreement with the following provision:

> . . . **If we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement"). Subject to applicable jurisdictional requirements, you may elect to pursue your claim in your local small claims court rather than through arbitration so long as your matter remains in small claims court and proceeds only on an individual (non-class and non-representative) basis. Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible https://www.adr.org/sites/default/files/Consumer%20Rules.pdf).**
>
> **This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**
>
> \* \* \*
>
> The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award and the arbitral decision may be enforced in any court.

2

(Dkt. Nos. 33-8, 33-9, 33-10 (Exhibits 7, 8, 9 to the McPherson-Evans Decl.) (emphasis in original).)

Suski accepted Coinbase's User Agreement on January 24, 2018; Martin accepted on February 12, 2021; Calsbeek accepted on May 13, 2021; and Maher accepted on April 5, 2020. (Dkt. Nos. 33-3, 33-4, 33-5, 33-6 (Exhibits 2 through 5 to the McPherson-Evans Decl.).)

Plaintiffs then participated in Coinbase's June 2021 sweepstakes. Coinbase's advertisements for its sweepstakes stated:

> Trade DOGE. Win DOGE. Starting today, you can trade, send, and receive Dogecoin on Coinbase.com and with the Coinbase Android and iOS apps. To celebrate, we're giving away $1.2 million in Dogecoin. Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win. Terms and conditions apply.

(Dkt. No. 36, ¶ 8.) Below that language was a link to "See all rules and details" in smaller font. (*Id*., ¶ 8.) The Sweepstakes advertisements then stated: "What you can win," "1 Winner will receive $300,000 in DOGE," "10 Winners will receive $30,000 in DOGE," and "6,000 Winners will receive $100 in DOGE." (*Id*., ¶ 8.) Immediately below those statements about prizes was a large, bright blue box that said, "See how to enter." (*Id*., ¶ 8.) Below the blue box in light small print was the following text:

> Not investment advice or a recommendation to trade Dogecoin. NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available. Sweepstakes open to legal residents of the fifty (50) United States and the District of Columbia (excluding Hawaii). Void where prohibited by law. Must be age of majority in state of residence as of 6/3/21. Promotion ends 11:59 PM (PT) on 6/10/21. Winners must have a Coinbase account on Coinbase.com to receive a prize. Receipt and use of prizes subject to Coinbase terms and conditions. Odds of winning depend on the number of eligible entries received. One entry per person. Sponsor: Coinbase: Coinbase Sweepstakes, 100 Pine Street, Suite #1250, San Francisco, CA 94111. See Official Rules for details.

(*Id*., ¶¶ 66.)

When Plaintiffs clicked on the blue box with "See how to enter", they were taken to another page stating in large, bolded letters: "Trade DOGE. Win DOGE." (*Id*., ¶ 10.) Underneath it stated:

3

> Dogecoin is now on Coinbase, and we're giving away $1.2 million in prizes to celebrate. Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win.
>
> Limit one entry per person. Opting in multiple times will not increase your chance of winning."

(*Id*.) Below, in smaller text, was a link to "View sweepstakes rules." Below that link, in a bright blue box was a link in larger text to "Opt in." (*Id*.) At the bottom of the advertisement was the same paragraph in small, light print regarding no purchase necessary. (*Id*., ¶ 67.)

Upon clicking "Opt-in," Plaintiffs were taken to another screen which stated in large, bolded text: "You're one step closer to winning." (*Id.*, ¶ 11.) Below the large text stated:

> "You've successfully opted in to our Dogecoin Sweepstakes. Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win."

(*Id*.) Below, in smaller text, was a link to "View sweepstakes rules." Below that link, in a bright blue box was a link in larger text to "Make a trade." (*Id*.) Again, at the bottom of the advertisement was the same paragraph in small, light print regarding no purchase necessary. (*Id*., ¶ 67.)

Upon clicking "Make a trade," Plaintiffs were taken directly to Coinbase's trading platform, where they could sell or buy Dogecoins for $100 or more on Coinbase. (*Id*., ¶ 12.)

However, Coinbase users were not required to buy or sell $100 or more in Dodge to enter the sweepstakes. Instead, individuals were able to mail an index card with their name, contact information and date of birth, without a purchase, to enter the sweepstakes. (*Id*., ¶ 15.) Coinbase provided that information in the sweepstakes rules and details webpage. (*Id*., ¶ 16.) Coinbase, based on in-depth, empirical data from a previous sweepstakes, knew that the wording, design, and presentation of their Dogecoin sweepstakes advertisements would cause most users never to see the information about the alternative ways to enter on the separate "rules and details" webpage. (*Id*., ¶ 54.)

Coinbase's "Official Rules" for its Dogecoin sweepstakes states:

> Participation [in the Sweepstakes] constitutes entrant's full and unconditional agreement to these Official Rules and [Coinbase's] and [its] Administrator's decisions, which are final and binding in all matters related to the Sweepstakes."

4

(Dkt. No. 22-1, Ex. A[1] (Official Rules), ¶ 1.) The Official Rules further provide:

> THE CALIFORNIA COURTS (STATE AND FEDERAL) SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THE PROMOTION AND THE LAWS OF THE STATE OF CALIFORNIA SHALL GOVERN THE PROMOTION. EACH ENTRANT WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION AND VENUE IN THOSE COURTS FOR ANY REASON AND HEREBY SUBMITS TO THE JURISDICTION OF THOSE COURTS.

(*Id*., ¶10.) With respect to entry, the Official Rules state:

> Two methods of entry:
>
> Method 1: Existing account holders and new* account holders must opt-in to participate in the Sweepstakes and must complete $100usd (cumulative the transaction fee)) in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes.
>
> . . .
>
> Method 2: To enter via mail, hand write the following on the front of a 3x5 card, your name, address, city, state, zip, e-mail address, telephone number and date of birth. Insert single card in an envelope and mail with sufficient postage to: . . .Only one (1) entry per person. . . . Winners that entered via mail will be required to create a new Coinbase account on Coinbase.com and agree to the respective terms of use and privacy notice, or have a valid Coinbase account standing, to receive their prize. If you do not create a new Coinbase account and agree to such terms of use and privacy notice within the timeframe indicated by Sponsor, you will be ineligible to receive a prize.
>
> **Note: Your chances of winning are the same regardless of method of entry.**

(*Id*., ¶ 3.)

At the hearing on this matter, Coinbase stated that an individual who won through the mail-in process would be required to open a Coinbase account to collect the winnings.

Plaintiffs allege that Coinbase's sweepstakes was an unlawful lottery in violation of California Penal Code § 320, that its solicitations for the sweepstakes violated California Business and Professions Code § 17539.15, and that Coinbase's conduct violated California Civil Code §

---

[1] Plaintiffs did not attach a copy of the Official Rules for the Dogecoin sweepstakes to their Second Amended Complaint. If Plaintiffs file a Third Amended Complaint in accordance with this Order, they shall attach a copy of the Official Rules.

1770. Plaintiffs brings claims under California Business and Professions Code § 17200, California's Unfair Competition Law ("UCL") based on this alleged unlawful and unfair conduct. Plaintiffs also bring a claim for false advertising under California Business and Professions Code §§ 17200 and 17500, California's False Advertising Law ("FAL") and for violation of California Civil Code § 1750, California's Consumers Legal Remedy Act ("CLRA"). (Dkt. No. 36.)

Coinbase now moves to compel arbitration under its User Agreement or, in the alternative, to dismiss Plaintiffs' claims for failure to state a claim.

## ANALYSIS

**A.    Legal Standard Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 4.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties enter into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). The principles of state contract law are applied in determining the validity of the arbitration agreement. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938,

6

944 (1995); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing arbitration bears the burden of proving by a preponderance of evidence any fact necessary to its defense. *Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 453 (2009) (citing *Rosenthal v. Great Western Fin. Securities Corp.,* 14 Cal.4th 394, 413 (1996)).

Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties. *See First Options of Chicago*, 514 U.S. at 943. "But, unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*" *Oracle Am., Inc. v. Myriad Group A. G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (internal quotation marks and citations omitted) (emphasis in original). Thus, "there is a presumption that courts will decide which issues are arbitrable." *Id.*

### B. Coinbase's Motion to Compel.

Here, the parties do not dispute that: (1) Plaintiffs agreed to Coinbase's User Agreement; (2) Coinbase's User Agreement contains a valid arbitration agreement; and (3) Plaintiffs subsequently agreed to the Dogecoin sweepstakes' Official Rules; and (4) the Dogecoin sweepstakes' Official Rules provides that California courts have exclusive jurisdiction over any controversies regarding the sweepstakes. Plaintiffs also do not dispute that their claims would fall within the scope of Coinbase's User Agreement arbitration provision, had they not agreed to the subsequent exclusive jurisdiction provision in the Dogecoin sweepstakes' Official Rules. The issues are thus which contract (Coinbase's User Agreement or the Dogecoin sweepstakes' Official Rules) governs this dispute and who decides which contract applies (this Court or the arbitrator).

#### 1. Who Decides Which Contract Governs.

Whether the Court or the arbitrator determine which contract applies "is an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (emphasis in original) (quoting *Oracle Am., Inc. v. Myriad Group A. G.,* 724 F.3d 1069, 1072 (9th Cir. 2013)). Therefore, "there

is a presumption that courts will decide which issues are arbitrable." *Id.* Coinbase argues that the arbitration provisions in the Coinbase User Agreements clearly delegate the issue of arbitrability to the arbitrator. Three of the four Plaintiffs agreed to the arbitration provision in the Coinbase User Agreement, which provides:

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

(Dkt. Nos. 33-8, 33-9, 33-10 (Exhibits 7, 8, 9 to the Declaration of McPherson-Evans) (emphasis omitted).) For Suski, the User Agreement explicitly incorporated and adopted the American Arbitration Association's ("AAA") Consumer Arbitration Rules (and included a link to the text of those rules) to govern any dispute between Coinbase and the user. (Dkt. No. 33-7 (Ex. 6 to the McPherson-Evans Decl.).) Rule 14(a) of the AAA Rules (titled "Jurisdiction") states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA Consumer Arbitration Rules, https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (effective September 1, 2014).

While disagreements over the scope of the arbitration provisions were delegated to the arbitrator, the dispute here is not over the scope of the arbitration provision, but rather whether the agreement was superseded by another separate contract. In other words, Plaintiffs do not dispute that their claims would fall within the scope of the arbitration provision if they had not agreed to the Official Rules of the Dogecoin sweepstakes. Moreover, because Plaintiffs agreed to a subsequent agreement with an exclusive jurisdiction provision, the dispute over how to address the interaction between two separate contracts is not clearly and unmistakably delegated in the arbitration provision to the arbitrator. Or, as another district court explained, the required "clear and unmistakable evidence of intent to arbitrate arbitrability does not exist where an arbitration provision has been excluded from superseding agreements." *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197, at *3 (C.D. Cal. July 22, 2014). In light of the presumption that the

8

1  Court address this issue, the Court will determine which contract applies.

2

3     **2.    Which Contract Governs.**

4     "[A]rbitration is a matter of contract," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "Where the arbitrability of a dispute is contested, we must decide whether the parties are contesting the *existence* or the *scope* of an arbitration agreement. If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original). When determining whether parties have agreed to submit to arbitration, courts apply general state-law principles of contract interpretation. *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1044 (9th Cir. 2009).

    Here, after agreeing to the Coinbase User Agreement with the arbitration provision, Plaintiffs agreed to the Official Rules for the Dogecoin sweepstakes, which contains an exclusive forum selection clause designating California courts for all disputes regarding the sweepstakes. The arbitration clause and the forum selection provision in the two contracts are conflicting. As in *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, the language in the sweepstakes Official Terms "that '[a]ny dispute' between the parties 'shall be adjudicated' by specified courts stands in direct conflict with the [Coinbase User] Agreement's parallel language that 'any dispute . . . shall be resolved through binding arbitration.' Both provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Id.*, 645 F.3d 522, 525 (2d Cir. 2011) (finding the adjudication clause specifically precludes and, thus, supersedes the arbitration provision). Although Coinbase tries to reconcile the two, arguing that the sweepstakes Official Rules only applies to non-Coinbase users, there is no support in the contract language for this distinction. The Official Rules does not limit to whom it applies. Instead, by its terms, it applies to all sweepstakes' "entrants." (Dkt. No. 22-1, Ex. A, ¶¶ 1, 10.)

    Because the arbitration provision and the forum selection clause conflict, the subsequent contract supersedes the first. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742-43 (9th Cir. 2014) (finding an arbitration clause was superseded by a forum selection clause in a

subsequent agreement); *see also Applied Energetics*, 645 F.3d at 525-26 (same); *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 n. 1 (N.D. Cal. 2015) (Under California law, "[t]he general rule is that when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent.") (quoting 17A C.J.S. Contracts § 574).

Therefore, the Court DENIES Coinbase's motion to compel arbitration and, thus, turns to the alternative motion to dismiss for failure to state a claim.

**C.    Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling

10

on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss. *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

**D.    Coinbase's Motion to Dismiss.**

**1.    California Penal Code § 320.**

Plaintiffs allege that the Dogecoin sweepstakes violates California Penal Code § 320. Coinbase argues that the Dogecoin sweepstakes was not an illegal lottery under California law because it provided free alternative methods of entry. As a result, Coinbase argues that Plaintiffs' UCL claims, predicated on violation of the lottery law, fail as a matter of law.

Lotteries are illegal under California law. *See* Cal. Penal Code § 320. California law defines a lottery as:

> any scheme for the disposal of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property . . . upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance.

Cal. Pen. Code §319. This statute is strictly construed. *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404 (E.D. Cal. 1997) ("A penal statute is strictly construed."). The essential elements of a lottery are chance, consideration, and the prize. *People v. Cardas*, 137 Cal. App. Supp. 788, 790 (1933); *Cal. Gasoline Retailers v. Regal Petroleum Corp.*, 50 Cal. 2d 844, 851 (1958). If any one of the three elements is missing, the game or scheme at issue is not a lottery. *Haskell*, 965 F. Supp. at 1403.

In *Cardas*, tickets for a promotional scheme were distributed with programs in the neighborhood of the theater, with two thousand distributed to passing motorists and others handed out to patrons and non-patrons in front of the theater. 137 Cal. App. Supp. at 789. It was

11

unnecessary to buy an admission ticket to secure a prize ticket or to claim the prize. *Id*. The court held there was no lottery because "those who purchased admission tickets and received price tickets, . . ., could not be said to have paid a consideration for the prize tickets since they could have received them free." *Id*. at 791. In *People v. Carpenter*, 141 Cal. App. 2d 884, 889-90 (1956), the court found that the movie theater's contest was not a lottery because tickets were offered to customers and non-customers and no consideration was paid for the chance of winning. Anyone who wanted to participate could do so for free. *Id*. Similarly, in *Regal*, the participating gas stations did not conduct a lottery where they distributed tickets for free before and after purchases at the gas stations and elsewhere, including homes, drive-in theaters, and baseball games. The Court clarified that, as long as any person could have received a ticket without paying anything for it, it did not matter how many tickets were distributed with a purchase. *Regal*, 50 Cal. App. 2d at 858-59.

In contrast, in *People v. Gonzales* the court held that a promotion was a lottery because "[t]here was no general or indiscriminate distribution of the drawing tickets to persons irrespective of whether they paid admission." 62 Cal. App. 2d 274, 279 (1944). Instead, a person had to purchase at least one admission ticket in order to participate in the drawing. *Id*. at 280.

Summarizing the "implicit holdings" of these leading lottery cases, the court in *People v. Shira* explained:

> in order for a promotional giveaway scheme to be legal any and all persons must be given a ticket free of charge and without any of them paying for the opportunity of a chance to win a prize. Conversely, a promotional scheme is illegal where any and all persons cannot participate in a chance for the prize and some of the participants who want a chance to win must pay for it.

62 Cal. App. 3d 442, 459 (1976); *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404 (E.D. Cal. 1997) ("California courts have consistently held that business promotions are not lotteries so long as tickets to enter are not conditioned upon a purchase.").

Although a close case, the Court finds that, as currently alleged in the Second Amended Complaint, the Dogecoin sweepstakes was not an illegal lottery. In the California cases finding no consideration, the tickets were clearly and widely distributed for free. *Cardas*; 137 Cal. App. Supp. at 789; *Regal*, 50 Cal. App. 2d at 852-53; *Carpenter*, 141 Cal. App. 2d at 889-90. However, the holdings of those cases did not turn on a wide and obvious method of free ticket distribution.

12

Although Plaintiffs may not have been aware of it when they made a trade of Dogecoins, they were not actually required to trade Dogecoins in order to enter the sweepstakes and have a chance to win.  Because California penal statutes are construed strictly and because no California court has held that being unaware of the free method of entry is sufficient to demonstrate the required consideration, the Court finds that Plaintiffs have not and cannot allege a violation of California Penal Code § 320.  Therefore, the Court GRANTS Coinbase's motion to dismiss as to Plaintiffs' first claim (violation of Cal. Bus. & Prof. Code § 17200) in full and Plaintiffs' second claim (violation of Cal. Bus. & Prof. Code §§ 17200, 17539.15) and sixth claim (violation of Cal. Civ. Code § 1750) to the extent they are is premised on a violation of Penal Code § 320.  At oral argument, Plaintiffs advanced a theory that they conceded they had not explicitly pleaded in the Second Amended Complaint, and the Court GRANTS leave to amend to advance this theory.

### 2. Disclosure and Misrepresentation Claims.

That many people may not have been aware that there was a free method of entry is significant for Plaintiffs' claims for disclosure and misrepresentation under the UCL, FAL, and CLRA.  Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Because the same standard for false advertising or misrepresentations governs all three statutes, courts often analyze the three statutes together.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).  Upon review of Coinbase's advertising materials as alleged in the Second Amended Complaint, the Court finds that Plaintiffs state a claim that the materials were likely to deceive a reasonable consumer that they needed to make a trade to participate in the sweepstakes.  While Coinbase may have actually disclosed the free method in the Dogecoin sweepstakes' Official Rules, its advertising methods heavily directed people to make a trade in order to participate in this sweepstakes.  Additionally, Coinbase's statements regarding "no purchase necessary" were ambiguous in light of the other statements regarding the need to "buy or sell" Dogecoin.  Persons could have reasonably believed they were required to buy *or sell* Dogecoin to participate, which would have been consistent with not making a purchase but still requiring them to make a trade.

Additionally, California law requires sweepstakes sponsors to include a "clear and conspicuous statement of the no-purchase-or-payment-necessary message" in solicitation

1  materials. *See* Cal. Bus. & Prof. Code § 17539.15(b).[2] The statute defines the "no-purchase-or-payment-necessary" statement to mean a statement substantially similar to: "No purchase or payment of any kind is necessary to enter or win this sweepstakes." Cal. Bus. & Prof. Code § 17539.15(k)(1). There are no cases construing this statute. Therefore, the Court considers the language of the statute, which requires a "clear and conspicuous statement" that "no purchase or payment of any kind" is required to enter or win. The Court finds that Plaintiffs have alleged sufficient facts to show that Coinbase's advertisements were not "clear and conspicuous" as to whether all persons could enter for free.

Accordingly, the Court finds that Plaintiffs have alleged sufficient facts as to the remainder of their claims and DENIES Coinbase's motion to dismiss as to Plaintiffs' second through seventh claims to the extent they are not premised on a violation of California Penal Code § 320.

## CONCLUSION

For the foregoing reasons, the Court DENIES Coinbase's motion to compel arbitration and GRANTS IN PART and DENIES IN PART Coinbase's alternative motion to dismiss for failure to state a claim. Therefore, the Court GRANTS WITH LEAVE TO AMEND Coinbase's motion to dismiss as to Plaintiffs' first claim (violation of Cal. Bus. & Prof. Code § 17200) in full and Plaintiffs' second claim (violation of Cal. Bus. & Prof. Code §§ 17200, 17539.15) and sixth claim (violation of Cal. Civ. Code § 1750) to the extent they are is premised on a violation of Penal Code § 320. The Court DENIES Coinbase's motion to dismiss as to the remainder of Plaintiff's claims. Plaintiffs shall file their amended complaint, if any, by no later than February 1, 2022.

**IT IS SO ORDERED**.

Dated: January 11, 2022



SALLIE KIM
United States Magistrate Judge

---

[2] California Business and Professions Code § 17539.15(b) provides: "Solicitation materials containing sweepstakes entry materials or solicitation materials selling information regarding sweepstakes shall include a clear and conspicuous statement of the no-purchase-or-payment-necessary message, in readily understandable terms, in the official rules included in those solicitation materials and, if the official rules do not appear thereon, on the entry-order device included in those solicitation materials."