COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
ELIZABETH SANCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:   +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**COINBASE, INC.'S MOTION TO STAY PENDING APPEAL** |

**NOTICE OF MOTION AND MOTION TO STAY PENDING APPEAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 18, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Coinbase, Inc. will and hereby does move this Court to stay this case with respect to Coinbase pending resolution of Coinbase's appeal of the order denying its motion to compel arbitration. This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and oral argument of counsel.

**STATEMENT OF ISSUE TO BE DECIDED**

Coinbase has taken an immediate appeal of the Court's order denying its motion to compel arbitration. Should the Court stay this case until the Ninth Circuit resolves Coinbase's appeal?

I.   **INTRODUCTION**

Coinbase has appealed the Court's denial of its motion to compel arbitration and now seeks to stay these proceedings while the appeal is pending. Although the Court determined in its order denying Coinbase's motion to compel that there was a valid arbitration agreement between the Plaintiffs and Coinbase and that the arbitration agreement delegated arbitrability to the arbitrator, the Court held that the Official Rules for Coinbase's Dogecoin Sweepstakes contained a forum selection clause that superseded the valid arbitration provision in Coinbase's User Agreement. ECF No. 53 at 7–9. Coinbase believes there is a reasonable probability that the Ninth Circuit will disagree, as the arbitration agreement delegates all disputes about arbitrability to the arbitrator as a threshold matter. And even if the Ninth Circuit disagrees on the arbitrability point, it should hold that the User Agreement and the Official Rules can be read in harmony such that the plaintiffs here must litigate their claims in arbitration.

Coinbase respectfully requests that the Court stay these proceedings until Coinbase's appeal is resolved. Courts apply a four-factor test in considering motions to stay pending such

appeals, and each factor favors a stay here: first, Coinbase's appeal presents "a substantial case on the merits" and stands a "reasonable probability" or "fair prospect" of success; second, Coinbase will be irreparably harmed if it spends significant time and resources to litigate Plaintiffs' claims, only to have the appellate court reverse and compel arbitration; third, Plaintiffs will suffer no cognizable harm from a stay; and fourth, the public interest favors a stay because it would promote judicial economy and the strong federal policy in favor of arbitration. *Leiva-Perez v. Holder*, 640 F.3d 962, 964–68 (9th Cir. 2011).

## II.   BACKGROUND

Plaintiffs' Second Amended Complaint alleges that Coinbase's Dogecoin Sweepstakes was an unlawful lottery and that Coinbase made misleading statements about whether participants could enter the sweepstakes for free. Second Am. Compl., ECF No. 36; *see also* Mot. to Compel, ECF No. 33 ("Mot.") at 2–8 (summarizing Plaintiffs' factual allegations and legal claims).

Coinbase filed a motion to compel arbitration and dismiss Plaintiffs' claims under Rule 12(b)(6). Mot. at 2–8. The Court denied Coinbase's motion to compel arbitration, finding that although there was no dispute that the Coinbase User Agreement contains a valid, binding arbitration clause that governs Plaintiffs' claims, the Court would not compel Plaintiffs to arbitrate their claims because the Official Rules for the sweepstakes superseded the valid arbitration agreement. Order, ECF No. 53, at 7–10. The Court also granted and denied Coinbase's motion to dismiss in part. *Id.* at 10–14.

Coinbase filed a notice of appeal of the Court's order denying its motion to compel arbitration. ECF No. 58.

## III.   LEGAL STANDARD

Under the FAA, a party may immediately appeal an order denying a motion to compel arbitration. 9 U.S.C. § 16.

Courts in the Ninth Circuit consider four factors when deciding whether to stay proceedings pending such an appeal: (1) whether the movant has shown a sufficient probability of success on the merits of the appeal; (2) whether the movant will be irreparably injured without a stay; (3) whether a stay will substantially injure the other parties; and (4) whether the public

interest favors a stay. *Ali v. JP Morgan Chase Bank*, No. C 13-01184 JSW, 2014 WL 12691084, at *1 (N.D. Cal. Mar. 10, 2014) (citing *Leiva-Perez*, 640 F.3d at 964); *Nken v. Holder*, 556 U.S. 418, 426 (2009).

Courts examine these factors "on a flexible 'continuum,'" which is a "sliding scale approach" that balances the factors so that "a stronger showing of one element may offset a weaker showing of another." *Ali*, 2014 WL 12691084, at *1 (quoting *Leiva-Perez*, 640 F.3d at 964–66). "Under this sliding scale approach, a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal raises serious legal questions." *Roe v. SFBSC Mgmt., LLC*, No. 14–cv–03616–LB, 2015 WL 1798926, at *2 (N.D. Cal. Apr. 17, 2015) (quoting *Leiva-Perez*, 640 F.3d at 971).

In the Ninth Circuit, district courts have discretion on whether to issue a stay pending appeal of the denial of a motion to compel arbitration. *See Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1027 (N.D. Cal. 2015) (citing *Nken*, 556 U.S. at 433–34). California district courts routinely exercise this discretion to grant complete stays of all proceedings pending such appeals. *See, e.g.*, *Revitch v. DirecTV, LLC*, No. 18-cv-01127-JCS, 2018 WL 5906077, at *2 (N.D. Cal. Nov. 9, 2018); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. ED CV 16-1953-DMG (KK), 2018 WL 6074573, at *3 (C.D. Cal. Mar. 8, 2018); *McGhee v. N. Am. Bancard*, LLC, No. 17-cv-0586-AJB-KSC, 2018 U.S. Dist. LEXIS 19579, at *8 (S.D. Cal. Feb. 6, 2018); *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, No. 17-cv-04063-JSW, 2017 WL 5569819, at *2 (N.D. Cal. Nov. 20, 2017); *Perez v. DirecTV Grp. Holdings, LLC*, No. 16-cv-1440-JLS-DFMx, 2017 WL 8117452, at *3 (C.D. Cal. Sept. 22, 2017); *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2016 WL 6902458, at *4 (C.D. Cal. Jan. 25, 2016); *Ward v. Estate of Goossen*, No. 14-cv-03510-TEH, 2014 WL 7273911, at *5 (N.D. Cal. Dec. 22, 2014); *Ali*, 2014 WL 12691084, at *1; *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *3 (N.D. Cal. May 1, 2013); *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *5 (N.D. Cal. Jan. 11, 2012); *Antonelli v. Finish Line, Inc.*, No. 11-cv-03874 EJD, 2012 WL 2499930, at *2 (N.D. Cal. June 27, 2012); *Pokorny v. Quixtar Inc.*, No. 07-00201 SC, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008).

## IV. ARGUMENT

Here, all four factors weigh in favor of a complete stay: (1) Coinbase's appeal has a sufficient probability of success on the merits; (2) Coinbase will suffer irreparable harm without a stay; (3) a stay will not injure Plaintiffs; and (4) a stay is in the public interest. *Ali*, 2014 WL 12691084, at *1–2.

### A. Coinbase's appeal has a "reasonable probability" of success.

To satisfy the first factor, a movant "need not demonstrate that it is more likely than not that [it] will win on the merits"; rather, "the idea is that[,] in order to justify a stay, a petitioner must show, at a minimum, that [it] has a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 966–68. A movant need only demonstrate a "minimum quantum of likely success"—that is, that its appeal has a "reasonable probability" or "fair prospect" of success, presents "a substantial case on the merits," or raises "serious" legal questions. *Id*. (citations omitted). These requirements are "essentially interchangeable" and "none of them demand a showing that success is more likely than not." *Id.*

Coinbase's appeal satisfies this test. There is no question that there is a valid, binding arbitration clause between Plaintiffs and Coinbase and that this clause delegates to the arbitrator all disputes as to its applicability, scope, enforceability, and revocability. The Court's decision, however, decided arbitrability by determining the applicability, scope, enforceability, and revocability of the arbitration clause instead of referring that issue to the arbitrator. Coinbase stands a "reasonable probability" or "fair prospect" of prevailing on this question. As Coinbase explained in its motion-to-compel papers (ECF Nos. 33 & 43), there is no dispute that each Plaintiff consented to the arbitration clause in Coinbase's User Agreement, that this clause is valid and binding, and that this clause governs all of Plaintiffs' claims in this case. Likewise, there is no dispute that the User Agreement delegates the issue of arbitrability to the arbitrator (rather than the Court). The arbitration clause, to which Plaintiffs voluntarily agreed when they opened their Coinbase accounts, reads:

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.

Carter McPherson-Evans Decl., Ex. 7, ECF No. 33-8 ¶ 8.3. The Court disregarded both the arbitration clause and the delegation of arbitrability to the arbitrator in the Court's decision denying the motion to compel. This the Court may not do.

The Supreme Court has held that when "the parties' contract delegates the arbitrability question to an arbitrator, the courts *must* respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) (emphasis added). In evaluating a motion to compel arbitration, "the court's role under the [Federal Arbitration Act] is 'limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 583 (N.D. Cal. 2020) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Coinbase respectfully submits that both elements are satisfied and the Court should have referred Plaintiffs' claims to an arbitrator to determine whether they fall within the scope of the arbitration agreement rather than deciding the issue.

In its order denying Coinbase's motion to compel arbitration, the Court disregarded the arbitration clause by finding that the Official Rules superseded the User Agreement "[b]ecause the arbitration provision and the forum selection clause conflict." ECF No. 53 at 9. Coinbase respectfully disagrees with this conclusion for several reasons. First, that alleged "conflict" goes to the enforceability, revocability, scope, or validity of the arbitration provision—an issue that is expressly delegated to the arbitrator. Ex. 7 ¶ 8.3. Second, the User Agreement and the Official Rules do not conflict and they must be read in harmony under the principles of contractual interpretation. *See, e.g.*, *Peterson v. Minidoka Cnty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir. 1997) (courts should "read provisions so that they harmonize with each other, not contradict each other") (citing *Hughes Aircraft Co. v. N. Am. Van Lines*, 970 F.2d 609, 613 (9th Cir. 1992)).

Here, the Official Rules bind Dogecoin Sweepstakes participants who were not already Coinbase users. These free entrants would have been entitled to pursue any legal claims in court against Coinbase. Plaintiffs, however, were not free entrants; Plaintiffs were Coinbase users who voluntarily agreed to the Coinbase User Agreement's arbitration clause The forum selection clause in the Official Rules does not supersede or modify the arbitration clause in the User Agreement.

Coinbase recognizes that the Court disagrees on these points, but to justify a stay, Coinbase need not show "that it is more likely than not that [it] will win on the merits" before the Ninth Circuit. *Leiva-Perez*, 640 F.3d at 966–68. Rather, Coinbase needs to show only that it "has a substantial case for relief on the merits." *Id.* Coinbase has met that standard here.

### B. Coinbase will suffer irreparable harm without a stay.

A motion to compel goes to the Court's jurisdiction to entertain Plaintiffs' complaint. Coinbase will forever lose the benefits of arbitration if the Court requires it to litigate Plaintiffs' claims before its appeal is resolved. *Ali*, 2014 WL 12691084, at *1 ("When a party is denied the opportunity to arbitrate and must undergo the expense and delay of a trial before being able to appeal[,] 'the advantages of arbitration—speed and economy—are lost forever.'") (citation omitted); *see also Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (the loss of the benefits of arbitration constitutes serious and irreparable harm); *Pokorny*, 2008 WL 1787111, at *2; *Wuest*, 2017 WL 5569819, at *1; *Ward*, 2014 WL 7273911, at *3 ("arbitration is unique" in that "monetary expenses incurred in litigation" generally constitute irreparable harm) (citations omitted); *Zaborowski*, 2013 WL 1832638, at *2 (issuing stay because the "substantial costs" of defending suit in court "would affect the cost-limiting purpose of arbitration"); *Murphy v. DirecTV, Inc.*, No. 07–cv–06465–FMC–VBKx, 2008 WL 8608808, *2 (C.D. Cal. July 1, 2008) (issuing stay because "costs of litigation in the face of a denied motion to compel arbitration will generally constitute irreparable harm" (citations omitted)).

Coinbase will be forced to expend significant resources to litigate this case in this Court if the case is permitted to proceed while Coinbase's appeal is pending since the arbitration clause limits the scope of Plaintiffs' claims against Coinbase. For example, the Coinbase User

Agreement states that Plaintiffs are permitted to pursue only individual claims, but Plaintiffs will likely seek broad discovery on the putative nationwide class they seek to represent. Thus, Coinbase would face the additional burden of being compelled to produce materials far beyond the scope of what the User Agreement allows. *Roe*, 2015 WL 1798926, at *3 ("The burdens associated with discovery in a putative class action are substantially greater than [those] in an individual arbitration" (quoting *Kwan v. Clearwire Corp.*, No. C09–1392JLR, 2011 WL 1213176, at *3 (W.D. Wash. Mar. 29, 2011)); *see also Wuest*, 2017 WL 5569819, at *1 (irreparable harm absent a stay was amplified because "Plaintiff has brought this case as a class action, thus increasing the expense Defendants will incur"); *Kaltwasser v. Cingular Wireless, LLC*, No. C 07–00411 JF (PVT), 2010 WL 2557379, *2 (N.D. Cal. June 21, 2010) ("[T]he nature and extent of discovery permissible in private arbitration is fundamentally different from that allowed in class-action litigation.").

Although litigation expenses are generally not considered irreparable harm, that is not the case where those expenses are incurred pending an appeal of an order denying a motion to compel arbitration. *Eberle v. Smith*, No. 07-CV-0120 W(WMC), 2008 WL 238450, at *3 (S.D. Cal. Jan. 29, 2008) (because litigation "would defeat the important, cost-limiting purpose of arbitration agreements[;] . . . in the limited context of an interlocutory appeal of the order refusing to compel arbitration, Defendants would be irreparably harmed if the Court did not enter a stay"); *Pokorny*, 2008 WL 1787111, at *2 (a stay pending appeal was warranted because "[d]efendants could spend substantial time and resources on the litigation, only to have the appellate court could reverse the [o]rder and compel arbitration after the fact").

The parties will also likely need to engage in the briefing and hearing of another motion to dismiss after Plaintiffs file their third amended complaint—all of which would be wasted if the Ninth Circuit rules in Coinbase's favor. *Ali*, 2014 WL 12691084, at *1 ("If the litigation proceeded to trial, and then the Ninth Circuit reversed this Court's order denying arbitration, then the benefits of arbitration would have been lost.").

**C.     A stay will not injure Plaintiffs.**

By contrast, Plaintiffs will suffer no injury from a stay. The Dogecoin sweepstakes closed

several months ago. The only possible harm to Plaintiffs would be a delay in prosecuting their claims and obtaining monetary damages,[1] but that harm "does not compare to the unjustifiable waste of time and money that would result from proceeding with this litigation before the Ninth Circuit decides whether this dispute is even subject to judicial resolution." *Mundi v. Union Sec. Life Ins. Co.*, No. CV-F-06-1493 OWW/TAG, 2007 WL 2385069, at *6 (E.D. Cal. Aug. 17, 2007); *see also Antonelli*, 2012 WL 2499930, at *3 ("delay is an unavoidable consequence to any stay, and numerous courts have determined that a general claim of delay is not enough on its own to constitute undue prejudice") (citation omitted); *Zaborowski*, 2013 WL 1832638, at *3 ("Although relief may be delayed, this case is still in its earliest stages, relief through the court system often takes a long time, and the delay may be mitigated by remedies such as prejudgment interest").

### D. The public interest favors a stay.

Recognizing the strong federal preference for arbitration, Plaintiffs and Coinbase agreed to mandatory arbitration of any disputes. The public interest favors a stay because it would promote judicial economy. *Zaborowski*, 2013 WL 1832638, at *3 ("[C]ontrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration."); *Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2019 WL 3207812, at *3 (N.D. Cal. Jul. 16, 2019) (finding that a stay was warranted where substantial judicial resources could be wasted).

A stay would also serve the public interest by promoting the strong federal policy in favor of arbitration. *Richards*, 2012 WL 92738, at *4 ("[T]he federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay, even when other interests are at play." (citing *Winig v. Cingular Wireless LLC*, No. C-06-4297 MMC, 2006 WL 3201047, at *3 (N.D. Cal. 2006) and *Del Rio v. Creditanswers, LLC*, No. 10cv346-WQH-BLM, 2010 WL 3418430, at *5 (S.D. Cal. Aug. 26, 2010)); *Pokorny*, 2008 WL 1787111, at *2 ("The speed and efficiency of [arbitration] are the foundation for a strong

---

[1] Plaintiffs' Second Amended Complaint requests no particular injunctive relief—and injunctive relief would be inappropriate in this case because the Dogecoin Sweepstakes has ended, and all of Plaintiffs' alleged injuries are redressable with monetary relief.

federal policy favoring arbitration over litigation, which would be contravened by requiring the parties to litigate while the appeal is pending.") (citations omitted); *Ward*, 2014 WL 7273911, at *5 ("The policy underlying the FAA is to promote judicial efficiency and economy. Thus, contrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration." (internal quotations and citations omitted)); *Ali*, 2014 WL 12691084, at *2 ("Courts considering this issue 'have found that the federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay, even when other interests are at play.'" (citation omitted)); *Laster v. T-Mobile USA, Inc.*, No. 05cv1167 DMS (AJB), 2008 WL 5377635, *3 (S.D. Cal. Nov. 4, 2008) ("this stay serves the public's interest by promoting the strong federal policy encouraging arbitration as a prompt, economical and adequate method of dispute resolution" (internal quotations and citations omitted)).

Conversely, a stay would not impair Plaintiffs' interest in pursuing their claims. *Winig*, 2006 WL 3201047, at *3 ("Although the Court is cognizant of the public interest in vindicating consumer rights, the Court finds the requested stay will not materially impact that interest." (internal quotation marks and citations omitted)); *Murphy*, 2008 WL 8608808, at *4 (any "public interest in protecting consumers . . . is not seriously undermined because class members may be appropriately compensated after litigation on the merits" (citation omitted)).

## V.   CONCLUSION

Coinbase has demonstrated a "minimum quantum of likely success" of its appeal. *Leiva-Perez*, 640 F.3d at 966–68. It would also suffer irreparable harm if the case proceeds, while Plaintiffs would suffer no cognizable harm from a stay, and a stay would serve the public interest by promoting judicial economy and the strong federal policy in favor of arbitration. Accordingly, Coinbase respectfully requests that the Court stay this case pending Coinbase's appeal of the order denying Coinbase's motion to compel arbitration.

| | |
|---|---|
| Dated: February 9, 2022 | COOLEY LLP |
| | By: */s/ Michael G. Rhodes* |
| | Michael G. Rhodes |
| | Attorneys for Defendant<br>COINBASE, INC. |

263475197