Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
David J. Harris, Jr. (SBN 286204)
djh@classactionlaw.com
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1260
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

*Counsel for Plaintiffs and
the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO COINBASE'S MOTION TO STAY PENDING INTERLOCUTORY APPEAL**<br><br>Hearing:    April 18, 2022<br>Time:      9:30 a.m.<br>Courtroom:  C |

1    Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher respectfully
2    submit this memorandum of law in opposition to Defendant Coinbase, Inc.'s ("Coinbase") Motion to
3    Stay Pending Interlocutory Appeal ("Motion").

4    **I.      INTRODUCTION**

5    Coinbase's Motion fails to explain why a stay of this case would be proper.  Coinbase
6    previously moved to compel the arbitration of Plaintiffs' claims, and the Court denied that motion.
7    Dkt. 53 ("Order").  The Court's Order denying Coinbase's motion to compel applied settled law to
8    undisputed facts.  *See* Order at 7 (listing the undisputed facts); *id.* at 7-11 (applying settled law to the
9    undisputed facts).  A district court's application of settled law to undisputed facts does not warrant a
10   stay pending appeal.  For this reason alone, the Motion must be denied.

11   The Court should also deny Coinbase's Motion to stay because Coinbase will not be
12   irreparably harmed by being subjected to common litigation costs.  Any common, litigation-related
13   harms that Coinbase complains of are more self-inflicted than irreparable.  As this Court has
14   recognized, it was Coinbase who contractually required Plaintiffs to bring their Sweepstakes-related
15   claims for judicial resolution.  *See* Dkt. 22-1, ¶10 (adhesive "Official Rules" agreement); Order at 5,
16   7.  The mere fact that judicial resolution entails some costs, which Coinbase suddenly prefers not to
17   incur, does not constitute "irreparable harm."  It constitutes irreparable regret, and regret is not a
18   basis for staying a pending case.  If Coinbase wanted to avoid normal litigation costs, then Coinbase
19   should not have written a mandatory, exclusive litigation clause into its own contracts with its
20   customers.  The doctrine of irreparable harm does not exist to save multibillion-dollar corporations
21   from their own contractual choices.

22   Unlike Coinbase, Plaintiffs would be substantially harmed by a stay, due to the presence of
23   Defendant Marden-Kane, Inc. ("MKI").  Plaintiffs have asserted claims against MKI that are similar
24   and related to the claims they assert against Coinbase.  Because MKI has never had any contract with
25   Plaintiffs containing an arbitration clause, MKI has neither filed nor joined any motion to compel
26   arbitration, and therefore has no right to file an interlocutory appeal or seek a stay.  Plaintiffs have an
27   unqualified right to timely pursue their claims against MKI.  To stay Plaintiffs' claims against
28   Coinbase would be to require Plaintiffs to litigate the merits of their claims twice, on two separate

1

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL**

schedules: one for MKI, and one for Coinbase after its appeal is resolved.  Such consecutive-track litigation would leave Plaintiffs with an unjustified and likely unrecoverable multiplication of litigation costs, and would also saddle this Court with the inefficiency of adjudicating the same merits issues twice on consecutive schedules.  In the end, both judicial economy and fairness to the Plaintiffs dictate that if MKI must promptly proceed with its defense (and it must), then Coinbase must promptly proceed as well.

As set forth below, the law clearly disfavors a stay under the circumstances of this case.

## II.    LEGAL STANDARD

The Federal Arbitration Act grants a moving party the right to file an interlocutory appeal from the denial of a motion to compel arbitration.  9 U.S.C. § 16(a).  By contrast, the staying of an action pending such an appeal is "not a matter of right."  *Cesca Therapeutics Inc. v. Syngen Inc.*, No. 2:14-cv-2085-TLN-KJN, 2017 WL 1174062, at *2 (E.D. Cal. Mar. 30, 2017) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).  "In the Ninth Circuit, a district court has discretion to decide whether to stay an action pending appeal from an order refusing to compel arbitration." *Arena v. Intuit Inc.*, 444 F. Supp. 3d 1086, 1093 (N.D. Cal. 2020) (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)).  Such stays are discretionary, not automatic, because automatic stays would permit parties to substantially delay litigation by bringing meritless motions to compel arbitration.  *Britton*, 916 F.2d at 1412.

The party seeking a stay bears "the burden of persuading the court that the circumstances of the case justify a stay."  *DKS, Inc. v. Corporate Business Solutions, Inc.*, No. 2:15-cv-00132-MCE-DAD, 2015 WL 6951281, at *1 (E.D. Cal. Nov. 10, 2015); *see also Ward v. Estate of Goossen*, No. 14-cv-03510-TEH, 2014 WL 7273911, at *1 (N.D. Cal. Dec. 22, 2014) ("[T]he party requesting the stay bears the burden of showing that the case's circumstances justify an exercise of the court's discretion in granting a stay.").  "To determine whether the moving party has met its burden, the Ninth Circuit adheres to a four-factor test: (1) whether the party has made a strong showing it is likely to succeed on the merits; (2) whether the party will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public's interest lies."  *Ward*, 2014 WL 7273911, at *1 (citing *Hilton v. Braunskill*, 481 U.S. 770,

2

776 (1987)).  Courts evaluate these factors on a sliding scale, and the first two factors carry the most weight.  *Cesca Therapeutics*, 2017 WL 1174062, at *2 (citing *Nken*, 556 U.S. at 434).  If and only if the first two factors are satisfied, "courts then assess the harm to the opposing party and weigh the public interest."  *Just Film, Inc. v. Merch. Serv. Inc.*, No. C 10-1993 CW, 2011 WL 3844071, at *1 (N.D. Cal. Aug. 30, 2011).

**III.    ARGUMENT**

    **A. Coinbase raises no "serious" or "substantial" questions of law, as it fails to even address this Court's reasoning in declining to compel arbitration.**

    The party seeking a stay pending appeal should be able to make "a strong showing that [it] is likely to succeed on the merits."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  If, however, a party cannot carry that high burden, the party must at least show that its appeal presents a "substantial case on the merits" or "raises serious legal questions."  *Id.* at 966-68.  "In this district, a serious legal question generally includes (1) a matter of first impression within the Ninth Circuit, (2) a constitutional question, or (3) a pressing legal issue which urges the Ninth Circuit to hear the case."  *Yeamons v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-cv-00792-EMC, 2021 WL 1772808, at *3 (N.D. Cal. Mar. 19, 2021) (quoting *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 953-54 (N.D. Cal. 2019)); *see also Mohamed v. Uber Techs., et al.*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015) ("For a legal question to be serious, it must be a question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.") (internal quotations omitted).

    Here, Coinbase has not raised any question of first impression.  In fact, this Court relied upon settled Ninth Circuit law in denying Coinbase's motion to compel arbitration.  *See* Order at 7, 9-10 (relying upon *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), *cert. denied* 574 U.S. 991).  Nowhere does Coinbase's Motion even discuss the Circuit cases upon which this Court rightly relied in its Order.  *See generally* Motion (Dkt. 59).  Moreover, Coinbase's Motion raises neither a constitutional question nor a "pressing legal issue" that matters to anyone except the parties to this suit.  *Yeamons*, 2021 WL 1772808, at *3.  There are simply no grounds for finding that Coinbase has raised any "serious legal questions" here.

3

PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL

1    Coinbase's Motion further fails to address this Court's *application* of settled law to the facts

2 of this case.  In moving to compel arbitration, Coinbase had argued that *Goldman* did not apply

3 because its User Agreements and Official Rules did not actually conflict.  *See, e.g.,* Dkt. 43 at 2.

4 Coinbase argued that the Official Rules' exclusive jurisdiction clause applied only to Sweepstakes

5 Entrants who were not Coinbase users.  *Id.*  This Court squarely addressed and correctly rejected that

6 argument in its prior Order, reasoning:

> Although Coinbase tries to reconcile the two, arguing that the sweepstakes Official Rules only applies to non-Coinbase users, *there is no support in the contract language for this distinction*. The Official Rules does not limit to whom it applies. Instead, by its terms, it applies to all sweepstakes' "entrants."
> (Dkt. No. 22-1, Ex. A, ¶¶ 1, 10.)

10 Order at 9 (emphasis added).  Nowhere does Coinbase's Motion explain how the Court

11 misinterpreted the plain language of the parties' Official Rules agreement.  If Coinbase can't explain

12 that here, then Coinbase will be unable to explain it to the Ninth Circuit.[1]

13    In the same vein, this Court relied upon the settled law that contracting parties must "clearly

14 and unmistakably" delegate arbitrability disputes to an arbitrator to prevent judicial resolution of

15 arbitrability disputes.  *See* Order at 7-9.  While the Court (and even Plaintiffs) recognized that such a

16 "clear and unmistakable" delegation might exist if the User Agreements were the only contracts

17 between the parties, this Court correctly observed that the Official Rules' "exclusive jurisdiction

18 provision" rendered any prior delegation less than "clear and unmistakable."  *See id.*  (citing *Ingram*

19 *Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197, at *3 (C.D. Cal. July 22, 2014)).  Once again,

20 Coinbase's Motion declines to even address the Court's reasoning or cited case law.  Coinbase

---

[1] Coinbase argues that the Court must read the conflicting provisions "in harmony," no matter what those provisions say.  Motion at 5.  That is not the law.  Instead, a court should reconcile seemingly conflicting terms where: (1) those terms are part of the same contract; and (2) the court can reconcile the terms without doing "violence" to the plain contractual language.  *See Royal Ins. Co. of Liverpool v. Caledonian Ins. Co. of Edinburgh, Scotland*, 20 Cal.App. 504, 506 (Cal. Ct. App. 1912) ("It is a well recognized rule that every part of a contract must be given some effect if possible, and two apparently conflicting provisions of the same contract must be reconciled *if such may be done without doing actual violence to the language of the contract*.") (emphasis added).  As the Court recognized in its Order, Coinbase's attempts to reconcile the Official Rules to the User Agreements would do "actual violence to the language" of the Official Rules.  *Id.*; Order at 9.  It is also undisputed that the conflicting provisions here are not part "of the same contract" between the parties.  *Royal Ins. Co. of Liverpool*, 20 Cal.App. at 506.  Courts need not and may not concoct creative ways to reconcile provisions that are plainly irreconcilable, especially where those provisions are not part of the same agreement between the parties.

4

PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL

1    simply ignores one of the two valid contracts that it has with each Plaintiff, and on that basis alone,

2    argues that a stay would be proper.

3            In sum, Coinbase's motion to stay merely summarizes the same arguments that Coinbase

4    previously made in support of its motion to compel arbitration.   Yet Coinbase declines to even

5    address this Court's reasoning in rejecting those arguments.  If Coinbase had a "substantial case" to

6    make about how the Court's reasoning was incorrect (or even debatable), then Coinbase would have

7    made that substantial case in its Motion.  Coinbase conspicuously declined to do so.  Appealing an

8    order to which the appellant itself has no substantive response does not portend a "reasonable

9    probability" of success on appeal.  *Leiva-Perez*, 640 F.3d at 971.  Coinbase's Motion must be denied

10   for this reason alone, regardless of the other three factors that the Court might consider below.

11           In any event, the other three factors similarly disfavor any stay of Plaintiffs' pending claims

12   against Coinbase.

13           **B.  Coinbase has not shown irreparable harm.**

14           "[N]early all courts" agree that "incurring litigation expenses does not amount to an

15   irreparable harm."  *Yeamons*, 2021 WL 1772808, at *4 (internal quotations omitted).  Federal courts

16   overwhelmingly hold that financial injuries never constitute "irreparable" harm because such injuries

17   can be redressed by damages.  *See, e.g., Fox Broadcasting Co. Inc. v. Dish Network, L.C.C.*, 905 F.

18   Supp. 2d 1088, 1111 (C.D. Cal. 2012) ("Economic injury alone will not support a finding of

19   irreparable harm because it can generally be remedied by money damages."); *Cutera, Inc. v. Lutronic*

20   *Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1208 (E.D. Cal. 2020) ("Ordinarily, economic injury is not

21   irreparable because monetary damages are an adequate remedy.").

22           Coinbase contends that it "will be forced to expend significant resources to litigate this case."

23   Motion at 6.   Such economic harms are, by definition, far from "irreparable."   *E.g., Fox*

24   *Broadcasting Co. Inc.*, 905 F. Supp. 2d at 1111; *Cutera, Inc.*, 444 F. Supp. 3d at 1208.

25   Furthermore, the "resources" required to timely proceed with Coinbase's defense are not truly

26   "significant" to Coinbase.  Motion at 6.   Coinbase is a publicly traded, $46 billion company that

27   defrauded Plaintiffs out of about $100 to $200 each.  *See* https://finance.yahoo.com/quote/coin/ (last

28   visited Mar. 9, 2022).  On a percentage basis, Plaintiffs have lost more of their personal net worth

5

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL**

from Coinbase's unlawful conduct than Coinbase will lose of its corporate net worth from defending this lawsuit.

Coinbase's Motion should fail for the independent reason that the company has not shown and cannot show irreparable harm from timely defending this case.

**C. Plaintiffs would be unjustly and substantially harmed by a stay.**

In considering whether to grant a stay pending interlocutory appeal, courts should consider whether opposing parties would be substantially harmed by a stay. *Stiner*, 383 F. Supp. 3d at 953. Courts in this district have recognized that injuries to a plaintiff from an unwanted stay are "compounded" where "there are other defendants in the case who . . . did not appeal," because a stay would mean that the plaintiff "could not move forward with her case against the non-appealing defendants." *Newton v. American Debt Servs., Inc.*, No. C-11-3228 EMC, 2012 WL 3155719, at *8 (N.D. Cal. Aug. 2, 2012).

Here, Defendant MKI has never had any form of arbitration agreement with Plaintiffs. Hence, MKI plainly has no right to arbitrate, or to file an interlocutory appeal, or to request a stay of the claims against it. A stay of Plaintiffs' claims against Coinbase would therefore require Plaintiffs to: (1) gratuitously forbear for years from pursuing their claims against MKI; or (2) litigate the same merits issues through two separate litigation schedules: one schedule for MKI while Coinbase's appeal is pending, and then a second schedule for Coinbase after its appellate proceedings conclude. As a practical matter, this would multiply the Court's burden in adjudicating the claims in this case, and multiply Plaintiffs' litigation costs in ways that would likely be unrecoverable.

For these reasons, the harms that would visit Plaintiffs from a stay only further counsel in favor of requiring Coinbase to timely defend this action. If MKI has no right to arbitrate, or to appeal, or to seek a stay (and MKI has no such right), then neither does Coinbase. This is especially true because the Defendants here expressly required Plaintiffs to bring their instant claims for relief before this Court. Dkt. 22-1, ¶10 (Defendants' adhesive, exclusive jurisdiction clause); *see also Britton*, 916 F.2d at 1412 ("Since the issue of arbitrability was the only substantive issue presented in this appeal, [internal footnote omitted] the district court was not divested of jurisdiction to proceed with the case on the merits.").

PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL

1    To force Plaintiffs into a stay here would be to force Plaintiffs to be unjustly and

2  unnecessarily damaged by Coinbase's unilateral breach of the parties' Official Rules agreements.

3  Plaintiffs' sunk litigation costs in responding to Coinbase's motion to compel arbitration, Motion to

4  stay, and pending appeal constitute enough damage from Coinbase's breach of the Official Rules.

5  The Court should not make Plaintiffs suffer further from Coinbase's breach by granting a stay to

6  which the company has no lawful entitlement.

7    **D.  The public interest disfavors a stay.**

8    Coinbase contends that a stay would be proper because there is a "strong federal policy in

9  favor of arbitration," and because a stay would serve judicial economy.  *See* Motion at 8.  Neither of

10  those things is true here.

11    The Federal Arbitration Act—and thus the strong federal policy favoring arbitration—applies

12  only where a valid agreement to arbitrate exists.  9 U.S.C. § 2; *see also Granite Rock Co. v. Int'l*

13  *Brotherhood of Teamsters*, 561 U.S. 287, 302-03 (2010) ("[T]he FAA's proarbitration policy does

14  not operate without regard to the wishes of the contracting parties.").  The Ninth Circuit holds that

15  where a subsequent agreement has superseded an earlier agreement to arbitrate between the same

16  parties, the earlier agreement to arbitrate no longer exists.  *Goldman*, 747 F.3d at 743 (explaining that

17  "the question of whether the Placement Agreement had superseded the Engagement Agreement was

18  a dispute over the existence, rather than the scope, of the agreement to arbitrate") (citing *Applied*

19  *Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522 (2d Cir. 2011)).  Here, this Court has

20  held that the Official Rules' dispute resolution clause superseded the User Agreements' arbitration

21  clauses.  Order at 9-10.  Thus, the Court necessarily and correctly held that no agreement exists

22  among the parties to arbitrate their Sweepstakes-related "controversies."  By extension then, there

23  exists no federal or other public policy favoring arbitration of the parties' "controversies regarding

24  the [Sweepstakes]."  *Id.*; Dkt. 22-1, ¶10.

25    As for judicial economy, Plaintiffs have explained that they have an unqualified right to

26  timely pursue their claims against MKI.  This is because MKI can point to no arbitration agreement

27  with Plaintiffs—past or present—to which it was a party or a third-party beneficiary.  Hence, if the

28  Court were to grant Coinbase a stay of the claims against Coinbase, the proper course of action

7

would be not to stay Plaintiffs' claims against MKI, but rather, to allow Plaintiffs to pursue their claims against MKI irrespective of Coinbase's arbitration rights.  Indeed, no matter what happens with Coinbase's interlocutory appeal, the claims against MKI must proceed in this Court pursuant to the Official Rules.  The only thing, then, that a stay would accomplish would be either: (1) a potentially multiyear delay in the adjudication of Plaintiffs' ripe claims against MKI; or (2) two separate litigation schedules as described above.  Neither outcome would serve the public's interest in judicial efficiency.  Judicial efficiency is clearly best served by declining to stay this case, irrespective of what happens on appeal.

On the other hand, the public has a strong interest in the prompt enforcement of laws against false and misleading advertising.  *See, e.g., Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012) (recognizing that "[p]reventing consumer confusion serves the public interest").  The public also has a strong interest in the enforcement of valid contracts.  *See, e.g., Heat Factory U.S., Inc. v. Schawbel Techs., LLC*, No. 18-cv-1941-WQH-MSB, 2019 WL 1779579, at *8 (S.D. Cal. Apr. 23, 2019) (recognizing that "[t]he public interest is served by upholding contractual obligations").  Here, allowing Plaintiffs to timely pursue their claims would further the public's interests in preventing misleading advertising like the Sweepstakes ads at issue, and in upholding valid contractual rights like Plaintiffs' rights under Official Rules ¶10.

At bottom, the public interests at stake here weigh firmly against any stay of this action.

**E.  Coinbase's string-cited cases do not justify a stay.**

Coinbase asserts that district courts within the Ninth Circuit "routinely . . . grant complete stays of all proceedings" pending the appeal of an order declining to compel arbitration.  *See* Motion at 3 (collecting twelve cases).  The reality, however, is that district courts deny such stay requests at least as routinely as they grant such requests.  *See, e.g., Mohamed v. Uber Technologies*, 115 F. Supp. 3d 1024, n.4 (N.D. Cal. 2015) (noting that as of mid-2015, district courts in California had denied such stay requests twelve times and granted such stay requests eight times).  The decision to grant or deny a motion to stay should be made based upon the particular facts and circumstances of each case.  *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 14-cv-02857-WHO, 2015 WL 674962, at

*3 (N.D. Cal. Feb. 17, 2015); *Morse v. Servicemaster Global Holdings, Inc.,* No. 08–cv–03894, 2013 WL 123610, at *1–2 (N.D. Cal. Jan. 8, 2013).

None of Coinbase's twelve cited decisions granting a stay (Motion at 3) involved a case like this one.  None of those decisions involved a contract that unambiguously granted a court "sole jurisdiction" over the precise claims at issue.  *But see* Dkt. 22-1, ¶10.  The Court here correctly held that the parties' Official Rules agreement unambiguously vests the Court with jurisdiction to resolve the claims at issue, exclusive of any arbitrator's jurisdiction.  *Id.*; Order (Dkt. 53) at 7, 9.  A stay under such circumstances would be improper.  Coinbase itself expressly promised to litigate Plaintiffs' claims here, so Coinbase must litigate Plaintiffs' claims without delay.  Furthermore, none of Coinbase's cited decisions considered the presence of a defendant like MKI, who never had any arbitration agreement with the plaintiffs.

Any proper application of the Ninth Circuit's four-part test, to the particular facts and circumstances of this case, shows that Coinbase has not carried its burden of justifying a stay. Coinbase's appeal and Motion to stay ultimately amount to pure delay and obstruction tactics of a type that the Ninth Circuit has specifically warned against.  *See Britton*, 916 F.2d at 1412.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Coinbase's Motion to stay pending interlocutory appeal.

Dated: March 9, 2022

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By: ___*s/ David J. Harris, Jr.*___
        David J. Harris, Jr., Esq.

djh@classactionlaw.com
501 West Broadway, Suite 1260
San Diego, California 92101
Telephone: (619) 238-1333

*Counsel for Plaintiffs and the Putative Class*

PLAINTIFFS' OPPOSITION TO MOTION TO STAY PENDING APPEAL