Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
David J. Harris, Jr. (SBN 286204)
djh@classactionlaw.com
FINKELSTEIN & KRINSK LLP
501 West Broadway, Suite 1260
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

*Counsel for Plaintiffs and*
*the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1) VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;<br><br>(2) VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;<br><br>(3) VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code §§ 1750, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

*"When you see these sort[s] of practices done by both scammers and legitimate entities, it makes it really hard to distinguish between the two of them."*

-Benjamin Powers, Coindesk.com (June 4, 2021)

This putative class action concerns an unlawful, fraudulently marketed cryptocurrency lottery (or in the alternative, an unlawfully marketed "sweepstakes"). The operators of this cryptocurrency lottery objectively and affirmatively represented to millions of consumers that they were required to give valuable consideration for a chance to win up to $300,000. Contrary to the operators' express representations to those consumers, the operators had privately agreed among themselves to grant *free* entry requests from those consumers (if any happened to be submitted). Based on the totality of the operators' statements to them personally and to the public at large, the consumers at issue in this case objectively had no reasonable way of knowing that the operators would grant any free entry requests from them. The operators solicited millions of consumers to pay hundreds of millions of dollars to enter and lose an unlawful "lottery," disguised as a lawful "sweepstakes," for the sake of pure corporate profit.

Pursuant to Fed. R. Civ. P. 23, Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek and Thomas Maher bring this class action individually and on behalf of all other persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) sweepstakes in June 2021, and who purchased or sold Dogecoins on a Coinbase exchange for a total of $100 or more between June 3, 2021 and June 10, 2021, inclusive. Plaintiffs make the following allegations based upon the investigation of their counsel, and based upon personal knowledge as to themselves and their own acts and dealings with the Defendants. Plaintiffs and their counsel believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      Founded in 2012, Defendant Coinbase, Inc. ("Coinbase," or the "Company") is a newly public company and one of the largest online cryptocurrency exchanges in the world. Coinbase has approximately 60 million active users worldwide, consisting primarily of retail

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

consumers, who buy and sell cryptocurrencies online through the Company's website, www.coinbase.com, and through the Coinbase mobile app.

2.      Coinbase collects trading fees (or "commissions") from its users for each crypto purchase or sale they execute with Coinbase.  Coinbase's trading fees are calculated as the greater of either a flat fee, or some percentage of the price of the cryptocurrencies being bought or sold.  For transaction amounts totaling between $50.01 and $200, a flat fee of $2.99 per transaction applies.  On top of the applicable trading fees, Coinbase also charges a "spread" of approximately 0.5% for each cryptocurrency purchase or sale transaction executed by its users.  Coinbase's financial health depends upon its ability to buy, offer, sell, and resell "cryptocurrencies" to consumers in exchange for actual currencies, like U.S. dollars.

3.      Among the many different cryptocurrencies that Coinbase buys and sells is a cryptocurrency called "Dogecoin," or "DOGE."  Dogecoin was created in December 2013 by two software engineers, who decided to create a new digital payment system as a joke, making light of the speculative trading that was occurring in cryptocurrencies generally.  After all, if arbitrary computer codes like "Bitcoins" could be invented by private persons out of thin air, and sold for thousands of dollars each, then why not invent and sell "Dogecoins" too?



4.      The software engineers' joke eventually became a hit, especially among millennials and younger generations.  As the retail prices of many cryptocurrencies skyrocketed in recent years, so too did the retail price of the "coin" known as "DOGE."  The retail price of one Dogecoin was less than a penny as of January 2021, before spiking as high as $0.70 per DOGE in May 2021.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

5.       Coinbase, one of the world's preeminent crypto dealers, took notice of DOGE's meteoric ascent in popularity, and in response, decided to add Dogecoins to the list of cryptos that Coinbase would offer to its customers.

6.       On June 1, 2021, for the first time, Coinbase started allowing its users to transfer "Dogecoins" into their Coinbase trading accounts.  Coinbase announced that it would start allowing users to buy and sell Dogecoins on or after June 3, 2021, "if liquidity conditions are met."  *See* https://blog.coinbase.com/dogecoin-doge-is-launching-on-coinbase-pro-1d73bf66dd9d   (last visited Jun. 9, 2021).  Given the huge amount of commissions that Coinbase could earn from millions of users buying and selling DOGE on its platform, Coinbase had no intention of leaving DOGE's "liquidity conditions" up to chance, or up to natural consumer sentiment.  Instead, Coinbase decided to actively incentivize as much Dogecoin trading as possible on its platform.  To do this, Coinbase hired Defendant Marden-Kane Inc. ("MKI") to help plan and execute a $1.2 million "Dogecoin sweepstakes," which began on June 3, 2021.

7.       On June 3, 2021 (the first day that Coinbase opened for Dogecoin trading), Coinbase directly emailed Plaintiffs and millions of its users, and also displayed to them on its website and mobile app, advertisements of a $1.2 million Dogecoin "sweepstakes."  Defendants' direct-to-user emails and digital ads were drafted, structured and designed collaboratively by MKI and Coinbase, and then ultimately transmitted to users by Coinbase.

8.       Defendants' direct-to-user emails and digital ads displayed large, colorful graphics and large print stating:

> Trade DOGE. Win DOGE.  Starting today, you can trade, send, and receive Dogecoin on Coinbase.com and with the Coinbase Android and iOS apps.  To celebrate, we're giving away $1.2 million in Dogecoin.  Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win.  Terms and conditions apply.

Defendants' email solicitations also displayed large, bold text, showing "What you can win," highlighting that "1 Winner will receive $300,000 in DOGE," that "10 Winners will receive $30,000 in DOGE," and that "6,000 Winners will receive $100 in DOGE."   Immediately below those flashy statements about prizes was a large, bright blue button that said, "See how to enter."  Sandwiched in

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

between those large, prominent statements was a much smaller-font link stating, "See all rules and details."  The first "screen-page" of Defendants' email ads looked like the image below.



9.     The digital ads on Coinbase's website and mobile app were substantially identical.

10.    When Plaintiffs and other consumers clicked the big, bright blue "See how to enter" button (before clicking the smaller, "See all rules and details" link), they were taken to a Coinbase web advertisement containing similar, prominent instructions on how to enter the Company's sweepstakes.  Once again, the ad stated in large, bold letters, with graphics: "Trade DOGE.  Win DOGE."  This web ad reiterated the main assertions in the email ad, stating that "Dogecoin is now on Coinbase, and we're giving away $1.2 million in prizes to celebrate.  Opt in and then buy or sell

$100 in DOGE on Coinbase by 6/10/2021 for your chance to win. Limit one entry per person. Opting in multiple times will not increase your chance of winning." Once again, there was a much smaller, fainter link, beneath the prominent text, that said "View sweepstakes rules," and then a much larger, bright-blue button prompting the customer to "Opt-in."[1]



11.     Upon clicking "Opt-in," Plaintiffs and other consumers would see the large text and the bright blue button change. The large text changed to say:

> "You're one step closer to winning. You've successfully opted in to our Dogecoin Sweepstakes. *Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win.*" (emphasis added)

At the same time, Defendants' large, bright blue button changed from saying "Opt in," to saying "Make a trade." All other aspects of this digital ad remained unchanged upon clicking the "Opt in" button. Thus, Defendants affirmatively represented to Plaintiffs and the Class that "buy[ing] or sell[ing] $100 in Dogecoin on Coinbase by 6/10/2021" was necessary to enter "for a chance to win." (See the image below.)

---

[1] The faint and tiny "View sweepstakes rules" link displayed above did not even link to the sweepstakes rules, but rather, to a footnote at the bottom of the page containing generalized, ambiguous statements about *some* aspects of the sweepstakes rules.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

12.     Upon clicking "Make a trade," customers were taken directly to Coinbase's trading platform, where they could sell or buy Dogecoins for $100 or more on Coinbase.

13.     If users happened to scroll down Defendants' digital ads a bit before "opting in" or "making a trade," they would see other large, bold-font statements.  The digital ads' second and third "screen pages" further highlighted the sweepstakes prizes, and the process for entering to win.

//
//
//
//
//
//

6

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

**coinbase**     Prices   Learn   Individuals   Businesses   Developers   Company     Sign in   Get started

| Winner will receive $300,000 in DOGE | Winners will receive $30,000 in DOGE | Winners will receive $100 in DOGE |

# How to enter

**Sign in to Coinbase** — Not logged in? Sign in or create an account at coinbase.com. Then follow the prompts to opt in.

**Opt in to the sweepstakes** — If you're signed in, you can opt in above. You'll get an email confirming that you've successfully opted in after about 24 hours.

**Make a trade** — Buy or sell $100 or more in DOGE on Coinbase between 6/3/21 and 6/10/21. You can trade $100 all at once, or a little at a time.

**Watch your inbox** — Once you opt in and trade, you'll be officially entered to win. Winners will hear from us via email on or around 6/17.

**Important security notice:** Be on the lookout for scammers. You will get a confirmation email within 24 hours. We will only notify you about prizes via no-reply@coinbase.com. See a fraudulent giveaway? Report it to security@coinbase.com.

14.      Thus, according to Defendants' prominent, repeated instructions, the process for entering their Dogecoin sweepstakes was as follows.

(a) "**Sign in to Coinbase**. Not logged in? Sign in or create an account at coinbase.com. Then follow the prompts to opt in."

(b) "**Opt in to the sweepstakes**. If you're signed in, you can opt in above. You'll get an email confirming that you've successfully opted in after about 24 hours."

(c) "**Make a trade**. Buy or sell $100 or more in DOGE on Coinbase between 6/3/21 and 6/10/21. You can trade $100 all at once, or a little at a time."

(d) "**Watch your inbox**. Once you opt in and trade, you'll be officially entered to win. Winners will hear from us via email on or around 6/17."

15.      Defendants' above email, web, and mobile app advertisements to Plaintiffs and the Class were materially false and misleading when disseminated. The truth was that users did *not* "need" to buy or sell "$100 or more in DOGE" to enter Defendants' sweepstakes. Instead, users

could have bought or sold *almost* $100 in DOGE, *or* simply mailed the Defendants a 3x5-inch index card stating the user's name, contact information, and date of birth.   Defendants, however, specifically crafted their ads with the knowledge and intent that the ads' text, structure, and design— as well as the text of the Official "Sweepstakes" Rules—would reasonably lead most Coinbase users to "Opt in" and "Make a trade" to enter for a slim chance to win.   As detailed herein, Defendants made other false and misleading statements to Plaintiffs and the Class to deceive them into buying or selling $100 or more "in Dogecoin," and into paying Coinbase's associated transaction costs, for a chance to win the advertised prizes.

16.   Defendants directly and affirmatively deceived Plaintiffs and the Class for the purposes of extracting hundreds of millions of dollars from them, thereby ensuring that Coinbase's "liquidity conditions" would be met as soon as the Company's platform opened for Dogecoin trading.  https://blog.coinbase.com/dogecoin-doge-is-launching-on-coinbase-pro-1d73bf66dd9d  (last visited Jun. 9, 2021) ("Trading will begin on or after 9AM Pacific Time (PT) Thursday June 3, if liquidity conditions are met.").

17.   Defendants' deceptive digital ad campaign caused Plaintiffs and millions of Class members to pay hundreds of millions of dollars in "Dogecoin" purchases and transaction costs to Coinbase, which they would not otherwise have paid absent Defendants' affirmative misstatements and omissions.  This nationwide class action seeks judicial relief from Defendants' unlawful conduct, on behalf of Plaintiffs and all other Class members.

## PARTIES

18.   Plaintiff David Suski is a citizen of New York, and has a personal account with Coinbase that allows him to sell and buy cryptocurrencies directly to and from Coinbase via www.coinbase.com, as well as the Company's mobile app.

19.   Plaintiff Jaimee Martin is a citizen of Oregon, and has a personal account with Coinbase that allows her to sell and buy cryptocurrencies directly to and from Coinbase via www.coinbase.com, as well as the Company's mobile app.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

20.     Plaintiff Jonas Calsbeek is a citizen of California, and has a personal account with Coinbase that allows him to sell and buy cryptocurrencies directly to and from Coinbase via www.coinbase.com, as well as the Company's mobile app.

21.     Plaintiff Thomas Maher is a citizen of Missouri, and has a personal account with Coinbase that allows him to sell and buy cryptocurrencies directly to and from Coinbase via www.coinbase.com, as well as the Company's mobile app.

22.     Founded in 2012, Defendant Coinbase, Inc. ("Coinbase") is a Delaware corporation with its primary offices located in San Francisco, California.  Coinbase is one of the largest online cryptocurrency dealers in the world.  Coinbase has approximately 60 million active users worldwide, consisting primarily of consumers who buy and sell cryptocurrencies through the Company's website, www.coinbase.com.  In 2021, the common stock of Coinbase's parent company, Coinbase Global, Inc., began trading publicly on the NASDAQ global stock exchange under ticker symbol "COIN."

23.     Defendant Marden-Kane, Inc. ("MKI") is a New York corporation with its primary offices located in New York.  MKI specializes in designing, creating, executing, and analyzing various advertising and promotional campaigns for corporate clients, and specializes particularly in administering digital sweepstakes campaigns.  In or before 2021, Defendant MKI contracted with Defendant Coinbase to serve as Coinbase's "Administrator" for the June 2021 Dogecoin sweepstakes.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction under 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, and Plaintiffs and most Class members are citizens of States different from the Defendants' home States.

25.     This Court has, at minimum, specific personal jurisdiction over both Defendants because Defendants' official sweepstakes rules and terms provide that "the California courts (state and federal) shall have sole jurisdiction of any controversies regarding the [sweepstakes] promotion, and the laws of the State of California shall govern the promotion."  *See* Ex. A, Official Rules, ¶10, *available at* https://www.coinbase.com/sweepstakes-doge-terms (last visited Jun. 11, 2021).

9

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because a substantial part of the events and omissions giving rise to the claims occurred in this district, and a substantial part of the property at issue in this action is situated within this district.

## SUBSTANTIVE ALLEGATIONS

**Plaintiffs' Experiences With Defendants' DOGE Sweepstakes**

27.     On or about June 8, 2021, Plaintiff David Suski viewed Defendants' email and internet ads, reasonably without knowing that he could have entered the Dogecoin sweepstakes simply by mailing in a 3x5 index card stating his name, birthday, and contact information.  Before reading all of Defendants' sweepstakes "rules and details," Plaintiff Suski followed the more conspicuous statements and action buttons contained in Defendants' ads to "See how to enter," to "Opt in" to the sweepstakes, and to "Make a trade" on Coinbase's platform by buying Dogecoins from Coinbase for $100.

28.     Nowhere did Defendants' ads clearly and objectively disclose to Plaintiff Suski that there was any 100% free, mail-in option for him to enter the sweepstakes: an option that required no Dogecoin purchases or sales.  Instead, as soon as he clicked the big blue button to "Opt in" to the sweepstakes, Defendants' digital ad affirmatively represented to Plaintiff Suski that he would "*need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win.*"[2]  Moreover, even Defendants' Official Rules for the DOGE Sweepstakes (hereinafter "Official Rules") affirmatively and objectively stated that "*[e]xisting account holders* [like Plaintiff Suski] must opt-in to participate in the Sweepstakes *and must* complete $100usd (cumulative the transaction fee) in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes."  *See* Official Rules, Ex. A, ¶3.  The above statements were materially and *objectively* false and misleading because the true and undisclosed, material fact—reasonably knowable only to the Defendants themselves—was that Defendants would accept free, mail-in entries from any and all "Sweepstakes" participants, including but not limited to "account holders" such as Plaintiff Suski.  Plaintiff Suski reasonably relied upon Defendants' material, *objectively* false and misleading representations and omissions to his own detriment.

---

[2] All emphasis within quotations marks is added unless otherwise stated herein.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

29.     If Defendants' "sweepstakes" solicitations had clearly and objectively disclosed to Plaintiff Suski that he had any trade-free entry option, then he would not have given Coinbase his $100, or paid any trading commissions or spreads to buy or sell Dogecoins on Coinbase.  The only reason that Plaintiff Suski undertook to buy Dogecoins from Coinbase between June 3 and June 10, 2021 was because Defendants led him to reasonably believe that doing so was necessary to enter a $1.2 million sweepstakes.

30.     On or about June 4, 2021, Plaintiff Jaimee Martin viewed a screenshot of Defendants' email advertisement for the Dogecoin sweepstakes.  Upon reviewing the screenshot of Defendants' email ad, Plaintiff Martin reasonably believed that buying or selling $100 or more in DOGE was necessary to enter the sweepstakes.  In reliance upon Defendants' misleading email advertisement, Plaintiff Martin immediately went on Coinbase and bought Dogecoins she would not otherwise have purchased, for a total of approximately $120 (including commissions).  She had not yet opted into the sweepstakes at this time.

31.     Days later, on or about June 9, 2021, Plaintiff Martin once again viewed Defendants' Dogecoin sweepstakes ad, but this time on her Coinbase mobile app.  Defendants' digital sweepstakes ad again led Plaintiff Martin to reasonably believe that buying or selling $100 or more in DOGE was necessary to enter the sweepstakes.  In reasonable reliance upon Defendants' affirmatively false and misleading ads, Plaintiff Martin clicked Defendants' prominent "Opt in" button, and then purchased additional Dogecoins from Coinbase for a total of $100 (including commissions).  She made this purchase even after making her prior, $120 purchase because: (a) when she clicked Defendants' prominent "Opt in" button, the ad falsely represented to her that *"you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win"*; and because (b) she had still not received any email from Coinbase confirming her sweepstakes entry, despite her $120 Dogecoin purchase from Coinbase days earlier.[3]

---

[3] Coinbase sent Plaintiff Martin an email confirmation of her "opting in" almost instantly after she clicked "Opt in," yet Coinbase inexplicably delayed for several days in sending her an email confirmation of her *entry*.  Coinbase's delayed entry-confirmation email left Plaintiff Martin unsure of whether she had successfully entered the sweepstakes with her first purchase, so she made a second purchase to ensure that she would be entered.  Coinbase did not send her entry-confirmation email until June 10, 2021.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

32.     Plaintiff Martin opted into the sweepstakes, and made each of her Dogecoin purchases, reasonably without knowing that she could have entered the Dogecoin sweepstakes simply by mailing Coinbase an index card stating her name, birthday, and contact information. Before reading all of Defendants' sweepstakes "rules and details," Plaintiff Martin followed the more conspicuous statements and action buttons in Defendants' ads to "See how to enter," to "Opt in" to the sweepstakes, and to "Make a trade" on Coinbase's platform, by buying Dogecoins from Coinbase for a total of $220.

33.     Nowhere did Defendants' ads clearly and objectively disclose to Plaintiff Martin that there was a 100% free, mail-in option for her to enter the sweepstakes, an option that required no Dogecoin purchases or sales.  Indeed, as soon as she clicked the big blue button to "Opt in" to the sweepstakes, Defendants' digital ad affirmatively misrepresented to Plaintiff Martin that she would "*need* to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win."  Moreover, even Defendants' Official Rules for the DOGE Sweepstakes affirmatively and objectively stated that "*[e]xisting account holders* [like Plaintiff Martin] must opt-in to participate in the Sweepstakes *and must* complete $100usd (cumulative the transaction fee) in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes."  *See* Official Rules, Ex. A, ¶3.  The above statements were materially and ***objectively*** false and misleading because, the true and undisclosed, material fact—reasonably knowable only to the Defendants themselves—was that Defendants would accept free, mail-in entries from any and all "Sweepstakes" participants, including but not limited to Coinbase "account holders" such as Plaintiff Martin.  Plaintiff Martin reasonably relied upon Defendants' material, objectively false and misleading representations and omissions to her own detriment.

34.     If Defendants' "sweepstakes" solicitations had clearly and objectively disclosed to Plaintiff Martin that she had a 100% free, mail-in entry option, then she would not have given Coinbase her $120, or her subsequent $100, or paid any trading commissions or spreads to buy or sell Dogecoins from Coinbase.  The only reason that Plaintiff Martin undertook to buy Dogecoins from Coinbase between June 3 and June 10, 2021 was because Defendants led her to reasonably think that doing so was necessary to enter a $1.2 million sweepstakes.

35.     On or about June 3, 2021, Plaintiff Jonas Calsbeek viewed Coinbase's email and internet ads, reasonably without knowing that he could have entered the Dogecoin sweepstakes simply by mailing Coinbase an index card with his name, birthday, and contact information on it. Before reading all of Defendants' sweepstakes "rules and details," Plaintiff Calsbeek followed Defendants' more conspicuous statements and action buttons in the ads to "See how to enter," to "Opt in" to the sweepstakes, and to "Make a trade" on Coinbase's platform by buying Dogecoins for a total of $125 (including trading fees).

36.     Nowhere did Defendants' digital sweepstakes ads clearly and objectively disclose to Plaintiff Calsbeek that there was a 100% free, mail-in option for him to enter this sweepstakes, an option that required no Dogecoin purchases or sales.  In fact, as soon as Plaintiff Calsbeek clicked the big blue button to "Opt in" to the sweepstakes, Defendants' digital ad affirmatively misrepresented to Plaintiff Calsbeek that he would "*need* to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win."  Moreover, even Defendants' Official Rules for the DOGE Sweepstakes affirmatively and objectively stated that "*[e]xisting account holders* [like Plaintiff Calsbeek] must opt-in to participate in the Sweepstakes *and must* complete $100usd (cumulative the transaction fee) in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes."  *See* Official Rules, Ex. A, ¶3.  The above statements were materially and ***objectively*** false and misleading because, the true and undisclosed, material fact—reasonably knowable only to the Defendants themselves—was that Defendants would accept free, mail-in entries from any and all "Sweepstakes" participants, including but not limited to Coinbase "account holders" such as Plaintiff Calsbeek. Plaintiff Calsbeek reasonably relied upon Defendants' material, objectively false and misleading representations and omissions to his detriment.

37.     If Defendants' "sweepstakes" solicitations had clearly and objectively disclosed to Plaintiff Calsbeek that he had a 100% free, mail-in entry option, then he would not have given Coinbase his $125 or paid Coinbase any trading fees or spreads.   In fact, the only reason why Plaintiff Calsbeek undertook to buy Dogecoins from Coinbase between June 3 and June 10, 2021

1   was that Defendants led him to reasonably think that doing so was necessary to enter a $1.2 million

2   "sweepstakes."

3         38.    On or about June 3, 2021, Plaintiff Thomas Maher viewed Coinbase's email and

4   internet ads, without knowing that he could have entered the Dogecoin sweepstakes simply by

5   mailing Coinbase an index card with his name, birthday, and contact information on it.  Before

6   reading all of Defendants' sweepstakes "rules and details," Plaintiff Maher followed Defendants'

7   more conspicuous statements and action buttons to "See how to enter," to "Opt in" to the

8   sweepstakes, and to "Make a trade" on Coinbase's platform by buying Dogecoins for a total of $105

9   (including trading fees).

10         39.    Nowhere did Defendants' digital sweepstakes ads clearly and objectively disclose to

11   Plaintiff Maher that there was a 100% free, mail-in option for him to enter this sweepstakes, an

12   option that required no Dogecoin purchases or sales.  In fact, as soon as Plaintiff Maher clicked the

13   big blue button to "Opt in" to the sweepstakes, Defendants' digital ad affirmatively misrepresented to

14   Plaintiff Maher that he would "*need* to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a

15   chance to win."   Moreover, even Defendants' Official Rules for the DOGE Sweepstakes

16   affirmatively and objectively stated that "*[e]xisting account holders* [like Plaintiff Maher] must opt-

17   in to participate in the Sweepstakes *and must* complete $100usd (cumulative the transaction fee) in

18   trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion

19   Period to earn one (1) entry into the Sweepstakes."  *See* Official Rules, Ex. A, ¶3.  The above

20   statements were materially and *objectively* false and misleading because, the true and undisclosed,

21   material fact—reasonably knowable only to the Defendants themselves—was that Defendants would

22   accept free, mail-in entries from any and all "Sweepstakes" participants, including but not limited to

23   Coinbase "account holders" such as Plaintiff Maher.  Plaintiff Maher reasonably relied upon

24   Defendants' material, objectively false and misleading representations and omissions to his

25   detriment.

26         40.    As with Plaintiff Martin, Coinbase delayed in sending Plaintiff Maher a

27   contemporaneous (or even same-day) email confirming his opt-in and entry into the sweepstakes.

28   Coinbase's delayed email confirmations left Plaintiff Maher unsure of whether he had successfully

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

entered the sweepstakes with his $105 purchase, so he made a *second* DOGE purchase from Coinbase on June 4, 2021, spending an additional $100, to ensure that he would be entered. Coinbase eventually sent Maher an email confirmation of his opt-in on June 5, 2021, and an email confirmation of his sweepstakes entry on June 6, 2021.

41.     If Defendants' ads had clearly and objectively disclosed to Plaintiff Maher that he had a 100% free, mail-in entry option, which did not require any DOGE trading, then he would not have given Coinbase his $205 or paid Coinbase any trading fees.  In fact, the only reason why Plaintiff Maher undertook to buy Dogecoins from Coinbase between June 3 and June 10, 2021 was that Defendants led him to believe that doing so was necessary to enter a $1.2 million "sweepstakes."

42.     Defendants' sweepstakes ads and Official Rules were specifically known and designed by Defendants to deceive and confuse each Plaintiff, and to deceive and confuse *any* reasonable consumer who happened to be a Coinbase "account holder," into believing that they would "need" to, and that they "must," buy or sell Dogecoins on Coinbase's platform to enter the sweepstakes.  Defendants' materially and objectively false and misleading representations and omissions were designed to induce, and did deceptively induce, Plaintiffs and the Class to pay $100 or more to Coinbase on that false, misleading, and unlawful pretense.

**Defendants' Additional False And Misleading Statements And Omissions To Class Members**

43.     In addition to misrepresenting the necessity of "making a trade," Defendants also misrepresented the dollar amount of purchase or sale transactions that would be (purportedly) necessary to enter.

44.     Specifically, Defendants' ads stated that "[W]e're giving away $1.2 million in Dogecoin.  Opt in and then buy or sell *$100 in DOGE* on Coinbase by 6/10/2021 for your chance to win."  *See* ¶¶9-12, *supra*.  Likewise, upon clicking Defendants' "Opt in" button, Defendants' ads stated that "you'll still need to buy or sell *$100 in Dogecoin* on Coinbase by 6/10/2021 for a chance to win."  These statements reasonably conveyed the message that the total value *of the Dogecoins* purchased or sold during the entry period must be greater than or equal to $100.

45.     When purchasing cryptocurrencies on Coinbase, users select the digital token that they wish to buy (*e.g.,* Bitcoin, Litecoin, Dogecoin, etc.) and input the dollar amount that they wish

to spend.  Coinbase then shows users the dollar amount of trading commissions that will be deducted from their purchase (or sale), and then displays the quantity of cryptocurrency that will be purchased with the remaining dollar amount.

46.     For example, if a Coinbase user goes to purchase Dogecoins, and enters a dollar amount of $100, Coinbase displays to that user a "preview" of the transaction.   Coinbase's transaction preview will show a "Total" price of $100, a "Coinbase fee" of approximately $3, and a *"Purchase"* price of approximately $97.  The transaction preview also shows the user how many Dogecoins will be purchased with the $97 that remain *after* deducting commissions.

47.     Thus, when Defendants advertised to Class members that they "need[ed]" to buy or sell "$100 *in DOGE*" or "$100 *in Dogecoin*" to enter, Defendants effectively communicated that users would have to pay a transaction "Total" of *more than* $100 to account for the transaction fee, and ensure that the previewed DOGE "Purchase" price was greater than or equal to $100.

48.     Indeed, that is why Plaintiff Martin made a purchase "Total" of $120, instead of $100 even.  That is also why Plaintiff Calsbeek's purchase "Total" was $125, instead of $100 even.  That is also why Plaintiff Maher's June 3, 2021 purchase "Total" was $105, instead of $100 even.  Based on the plain language in Defendants' ads, each of them believed they needed to buy "$100 in Dogecoin," *after* deducting the "Coinbase fee," because that fee was *not* part of the previewed "Purchase" price for the Dogecoins.   Once again, Defendants' sweepstakes ads were both untrue and materially misleading.

49.     The truth was that a purchase or sale transaction "Total" of *$100 even*—and hence, a Dogecoin "Purchase" price of less than $100 (in other words, *less than* "$100 in DOGE")—would have sufficed for Plaintiffs and the Class to enter the sweepstakes.  Defendants buried this truth only in the fine print of their official sweepstakes rules, which provided:

> Existing account holders and new* account holders must opt-in to participate in the Sweepstakes and must complete $100usd (*cumulative the transaction fee*)) in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes.

(emphasis added).

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

50.     The false and misleading "$100 in DOGE" and "$100 in Dogecoin" language in Defendants' ads caused most Class members to make purchases totaling marginally *more than* $100, to avoid having their "Coinbase fee" reduce the previewed value of their Dogecoin "Purchase" below $100.     This subtle deception by the Defendants allowed Coinbase to fleece millions of Class members out of several more dollars each, which Class members never needed to spend to enter. Defendants' deception in this regard further inflated Coinbase's fee-based and spread-based profits by at least millions of dollars, and further ensured that Coinbase's "liquidity conditions" for DOGE trading would be immediately satisfied on June 3, 2021.

51.     In sum, Defendants deployed multiple, objectively false and misleading advertising tactics to induce millions of consumers to spend *over* $100 that they did not need to spend to enter Defendants' $1.2 million sweepstakes.

**Defendants' Knowledge and Intent in Crafting Their Misleading "Sweepstakes" Solicitations**

52.     Coinbase and its sweepstakes "Administrator," Defendant MKI, knew that their ads had the likelihood, tendency and capacity to mislead and confuse consumers like Plaintiffs because Defendants had already executed and analyzed a nearly identical, digital "sweepstakes" on Coinbase just two months prior to this DOGE Sweepstakes.

53.     Specifically, in April 2021, Defendants had collaborated to execute a $2 million *Bitcoin* sweepstakes.     The only substantive difference between this Bitcoin sweepstakes and Defendants' subsequent Dogecoin sweepstakes was that, instead of purporting to require people to "make a trade" to enter, Defendants' Bitcoin sweepstakes ads purported to require people to "[s]ign up for an account at coinbase.com," and "verify [their] identity."     Aside from that one difference, the digital structure, aesthetic design, and language that Defendants' used in their Bitcoin sweepstakes ads were identical to what they used in their Dogecoin sweepstakes ads.

54.     In Defendants' earlier Bitcoin sweepstakes—just like in the Dogecoin sweepstakes— there was a different, less intrusive entry-option provided not on the ads or on the entry webpages, but instead on a separate "rules" and "details" webpage.     Rather than providing social security numbers, drivers' licenses, and other sensitive, personally identifying information ("PII") to

Coinbase (*i.e.,* "verify[ing] [their] identity"), users had the *alternative* option to enter by mailing Coinbase a 3x5-inch index card with the customer's name, contact information, and birthday on it.

55.   The digital ads that Defendants used in their earlier Bitcoin sweepstakes were designed and presented to consumers in a manner substantially identical to the digital ads they used in their June 2021 Dogecoin sweepstakes.

56.   In executing their April 2021 Bitcoin sweepstakes, Defendants had collected, reviewed and analyzed a wealth of data about consumers' specific behaviors and reactions to various parts of this ad campaign.   Both Coinbase and MKI knew exactly how many consumers had "create[d] a Coinbase account" and rigorously "verif[ied] [their] identities" (Coinbase's desired outcome), versus how many had simply mailed in an index card with their name, birthday, and contact information on it (*not* Coinbase's desired outcome).   Even more specifically, however, Defendants collected and analyzed the following data from their Bitcoin sweepstakes showing how ad recipients actually navigated the various "web paths" that one might take from reviewing the ads, to ultimately entering the sweepstakes.

57.   Indeed, MKI's own website touts its sophisticated, in-depth data analysis and reporting capabilities as follows.

Tracking and Reporting

> Each client promotion includes two levels of tracking and reporting: (1) website traffic and (2) promotion registration database tracking. Information we provide via website traffic analysis includes aggregate and daily information on key metrics, such as site hits, unique visitors, top pages, operating systems, entry and exit paths, and top promotion referrers. Promotion registration data analysis includes the aggregate and daily number of unique registrants and entries. At the close of each promotion, we provide clients with a detailed analysis of how their promotion performed in the marketplace, including the effectiveness of media tactics in driving engagement, demographics, age and gender, opt-ins, and responses to any survey questions related to brand awareness and purchase intent.

*See* http://www.mardenkane.com/sweepstakes (last visited Jun. 11, 2021).   As of June 2021, Defendants already knew—based on in-depth, empirical data from their Bitcoin sweepstakes in April 2021—that the precise ways they were wording, designing, and presenting their Dogecoin

sweepstakes ads to users would have a high likelihood, capacity, and tendency to cause most users to "make a trade" in exchange for entry, rather than mailing in a free-entry request.

58.     Defendants were not merely *guessing* that their sweepstakes ads would tend to conceal the existence of any free entry option from consumers.  Instead, Defendants knew as a matter of empirical proof (from their earlier Bitcoin sweepstakes) that their substantially identical, digital ads for the DOGE sweepstakes would have a likelihood, capacity, and tendency to conceal any free entry option from most consumers.

59.     It was never any surprise to Defendants that their digital sweepstakes ads to Plaintiffs and the Class would achieve (and did achieve) an outcome in which they would unwittingly pay hundreds of millions of dollars collectively, just to enter a sweepstakes that they could have entered for free.   Defendants' digital sweepstakes ads were not only objectively false and misleading to Plaintiffs and the Class, but also known and specifically intended by Defendants' to be misleading (and damaging) to Plaintiffs and the Class.[4]

**Contemporaneous Media Reports Further Suggest That Defendants' Ads Were Objectively And Materially False And Misleading To Reasonable Viewers**

60.     Defendants' Dogecoin sweepstakes ads were communicated to and publicized by several online media outlets in June 2021.

61.     For example, on June 3, 2021, *Business Insider* published an online news article regarding Defendants' sweepstakes.  The headline stated: "Coinbase is giving away $1.2 million in dogecoin as it starts letting users trade the meme cryptocurrency."   *See* https://www.businessinsider.com.au/coinbase-dogecoin-sweepstakes-users-can-trade-meme-cryptocurrency-2021-6 (last visited Aug. 9, 2021).  The entire body of the article read as follows:

> Coinbase said on Thursday that it plans to give away $1.2 million in dogecoin to encourage users to take advantage of its newest cryptocurrency trading option.

---

[4] The only reason why Defendants inconspicuously slipped a free entry option into their separate, "rules and details" webpage was that Defendants sought to avoid the legal conclusion that they were conducting an unlawful "lottery," as opposed to a "sweepstakes."  The elements of a "lottery" are: (i) consideration given by an entrant; (ii) in exchange for a chance; (iii) to win a prize.  *See, e.g., Trinkle v. California State Lottery*, 105 Cal.App.4th 1401, 1406 (Cal. Ct. App. 2003).  Defendants here attempted to conduct a profitable *non*-lottery by offering a free entry option *that most reasonable consumers would never know about*.  As detailed *infra*, that is insufficient to evade California's "lottery" laws, and in the alternative, is insufficient to comply with California's "sweepstakes" laws.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> ***Users must buy or sell $100 in DOGE through Coinbase by June 10 to be eligible for the sweepstakes, the company said.*** Coinbase said it plans to give out one prize worth $300,000, 10 prizes worth $30,000, and 6,000 prizes worth $100 by around June 17.
>
> The sweepstakes follows the company's announcement on Tuesday that it would start letting Coinbase Pro users trade dogecoin on its platform.
> The announcement, along with a tweet from Elon Musk referencing the meme currency, sent dogecoin's value climbing by as much as 41%.
>
> At $52.3 billion, dogecoin had the sixth-largest market cap among all cryptocurrencies as of Thursday evening, according to CoinMarketCap, after seeing a massive rally in May that sent its market cap soaring to more than $85 billion.
>
> Dogecoin was started as a joke by two engineers in 2013, but has since gained immense popularity thanks to Redditors as well as endorsements from Musk and other high-profile celebrities, leading other crypto trading platforms like Robinhood, eToro, and Gemini to start accepting trades in recent weeks.

*Id.* (emphasis added). Nowhere did this *Business Insider* article reference any free, mail-in entry option for the sweepstakes, because nowhere did Defendants' sweepstakes ads state that such a free entry option existed.

62.     Similarly, on June 7, 2021, *InvestorPlace.com* published an online article regarding Defendants' sweepstakes. That article was titled, "Coinbase Dogecoin Sweepstakes: What to Know About the $1.2M DOGE Giveaway." *See* https://investorplace.com/2021/06/coinbase-dogecoin-sweepstakes-what-to-know-about-the-1-2m-doge-giveaway (last visited Aug. 9, 2021). The article's subtitle said, "Here's what crypto investors may want to know about the Coinbase Dogecoin Sweepstakes taking the market by storm today." The body of the article stated as follows:

> Today, investors in **Coinbase** (NASDAQ:COIN) are seeing a green day. For everyone's favorite Shiba Inu-inspired meme currency, **Dogecoin** (CCC:DOGE-USD) not so much. However, any green day is a good day for investors in COIN stock, given the recent ride Coinbase has been on. One might be curious as to the primary reason for today's move. Perhaps part of the answer is the recently launched Coinbase Dogecoin Sweepstakes.



PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

1

Source: Shutterstock

2
3
4

Most investors know how popular Dogecoin has become of late. Whether due to the incessant tweeting of Elon Musk, or simply the momentum of this moonshot cryptocurrency, Dogecoin is still ranked No. 6 among all cryptocurrencies in market capitalization. That's right, a meme cryptocurrency with no real utility is valued at nearly $50 billion.

5
6
7

There are a variety of reasons for this. However, most investors know just how catchy the simplistic marketing behind this digital coin has been. Today's recent moves reflect yet another marketing stunt from Dogecoin and its purveyors.

8

Whether this maneuver ultimately pays off for investors remains to be seen. However, news of the Coinbase Dogecoin sweepstakes certainly has the DOGE crowd barking.

9

**What Is the Coinbase Dogecoin Sweepstakes All About?**

10
11
12

Last week, Coinbase announced the launch of a Dogecoin giveaway. This sweepstakes is in honor of Dogecoin's recent listing on Coinbase Pro. Indeed, that's news in and of itself. But when an exchange like Coinbase offers $1.2 million in prizes to celebrate such an announcement, crypto investors perk up.

13

What's the catch?

14
15

***Well, crypto investors simply need to opt in to the sweepstakes and buy or sell $100 in DOGE on Coinbase by June 10. That's it.***

16
17

Each crypto investor gets one entry per person. One winner will receive $300,000 in DOGE, 10 winners will received $30,000 in DOGE, and 6,000 winners will receive $100 in DOGE.

18
19
20
21

The simplicity of this sweepstakes makes this a no-brainer for most investors to get in on the action. For those bullish on DOGE, adding an additional $100 in exposure sure seems like a good idea, given the recent dip in Dogecoin prices. For those bearish on DOGE, selling $100 worth of this digital token still provides an entry. There's really no downside to entering, for those interested.

22
23
24

***Of course, Coinbase's business model is one which is fee-based. The more volume Coinbase can generate, the more money this platform stands to earn. Those behind this marketing stunt have undoubtedly done the math.*** However, if it proves successful, this could pave the way for future giveaways in an attempt to rekindle retail investor enthusiasm in this sector.

25

*Id.* (underlined emphasis added).

26
27
28

21

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

63.     Like the June 3 article from *Business Insider*, this June 7 article from *InvestorPlace* failed to mention any free, mail-in entry option because nowhere did Defendants' sweepstakes ads—to which the article directly linked—state that such a free entry option existed.

64.     Moreover, on June 5, 2021, the Business webpage on *NJ.com* published a similar article stating that: "Coinbase is giving away $1.2 million worth of Dogecoin.  ***To be eligible, you have to 'opt in' and buy or sell $100 worth of the meme-inspired cryptocurrency by June 10.***"  *See* https://www.nj.com/business/2021/06/dogecoin-coinbase-giveaway-how-to-opt-in-to-sweepstakes-and-how-to-buy-dogecoin.html (last visited Aug. 9, 2021) (emphasis added) (linking to Coinbase's sweepstakes advertisement).   Nowhere did this *NJ.com* article reference any free, mail-in entry option for the sweepstakes because nowhere did Defendants' sweepstakes ads state that such an entry option existed.

65.     Finally, even after Defendants' Dogecoin sweepstakes ended, *Newsweek* published an online article materially misstating the sweepstakes entry requirements.  In a June 18, 2021 article titled, "Why Coinbase Dogecoin Sweepstake[s] Winners Haven't Been Announced Amid Confusion Online," *Newsweek* stated that "[t]he sweepstake[s] ended on June 10 at 11:59 p.m. PDT, ***by which time entrants needed to have opted in and completed a $100 trade of Dogecoin to be eligible***. ***Coinbase said entrants would receive an email once they had met both requirements***."  *See* https://www.newsweek.com/why-coinbase-dogecoin-sweepstake-winners-havent-been-announced-confusion-online-1601996 (last visited Aug. 9, 2021).  Like the other three articles referenced above, nowhere did this *Newsweek* article reference any free entry option because nowhere did Defendants' sweepstakes ads state that any free entry option existed.

66.     In sum, numerous, reasonable viewers of Defendants' sweepstakes ads—including members of the media and the public—were misled into believing that buying or selling $100 worth of Dogecoins on Coinbase was necessary to enter Defendants' June 2021 sweepstakes.

**Defendants' June 2021 Dogecoin "Sweepstakes" Was an Unlawful Lottery in Disguise**

67.     California Penal Code § 320 provides that "[e]very person who contrives, prepares, sets up, proposes, or draws any lottery" is guilty of a misdemeanor.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

68.     As a matter of objective fact, considering the totality of Defendants' statements regarding the June 2021 "Sweepstakes"—including the "Sweepstakes" ads, the Official Rules, and all public statements made by Defendants—the ordinary, reasonable consumer could not be expected to have known the truth that Defendants would privately allow Coinbase users to obtain "a chance to win" *without* "buy[ing] or sell[ing] $100 in Dogecoin on Coinbase by 6/10/2021."  *See* ¶11, *supra*. That truth was reasonably and objectively knowable only to the Defendants themselves during the "Sweepstakes" entry period of June 3 to June 10, 2021.

69.     Considering the totality of Defendants' statements regarding the June 2021 "Sweepstakes," a reasonable Coinbase "account holder" could not be expected to have known the truth: namely, that Defendants would privately allow "[e]xisting account holders and new* account holders" such as them to "participate in the Sweepstakes" *without* "complet[ing] $100usd . . . in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period."  *See* Official Rules, Ex. A, ¶3.  That truth was reasonably and objectively knowable only to the Defendants themselves during the "Sweepstakes" entry period.

70.     By affirmatively and objectively telling Plaintiffs and all other Class members that they "need[ed] to," and that they "must," buy or sell Dogecoins and pay all associated transaction costs to earn a chance to win prizes, Defendants objectively caused Plaintiffs and all Class members to pay consideration in exchange for a chance to win prizes.  This constituted an unlawful "lottery" scheme by the Defendants, within the meaning of California Penal Code §§ 319, 320.

71.     The "lottery" problem here is not merely that Plaintiffs and the Class were *subjectively unaware* that they had a free entry option (though they were subjectively unaware). Instead, the "lottery" problem here is that for millions of Coinbase users and "account holders," Defendants affirmatively, objectively and publicly disclosed only that they "need[ed] to" and that they "must" buy or sell DOGE—and pay all associated transaction costs—to obtain a chance to win.

72.     It is one thing for consumers to be subjectively unaware of a clearly and objectively *disclosed*, free option for entering an alleged "lottery."  Such a factual scenario might not constitute a "lottery" under Cal. Penal Code § 319, but such a scenario is not at all what occurred in this case.

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

73.     It is another thing for a defendant to advertise to millions of consumers a chance to win prizes, while **objectively** disclosing—but failing to **clearly or conspicuously** disclose—to those consumers that they have a free option for entering.   Such a factual scenario may or may not constitute a "lottery."

74.     It is quite another thing for a defendant to advertise to millions of consumers a chance to win prizes: while affirmatively telling those consumers that consideration **is** required for a chance to win, and furthermore, **objectively** concealing from those consumers **and from the public at large** that the consumers can obtain free chances to win.  This factual scenario is precisely what occurred in this case, and this definitely constitutes an unlawful lottery "scheme" under § 319: perpetrated by the Defendants against millions of consumers nationwide.

**In the Alternative, Defendants' "Sweepstakes" Solicitations Failed To Comply With California "Sweepstakes" Law, and Did Not Correct Defendants' Conspicuous Misstatements Of Fact**

75.     If the Court or a jury finds that Defendants' June 2021 Dogecoin Sweepstakes did *not* constitute an unlawful "lottery" within the meaning of California Penal Code §§ 319 and 320, then the Sweepstakes was nevertheless an unlawfully executed "sweepstakes" as a matter of law.

76.     California law provides specific requirements for "solicitation materials containing sweepstakes entry materials," such as Defendants' sweepstakes ads here.

> *Solicitation materials containing sweepstakes entry materials* or solicitation materials selling information regarding sweepstakes *shall include a clear and conspicuous statement* of the no-purchase-or-payment-necessary message,  in  readily  understandable  terms,  in  the official rules included in those solicitation materials *and*, *if the official rules do not appear thereon*, on the entry-order device included in those solicitation materials.

Cal. Bus. & Prof. Code § 17539.15(b).  Defendants' "sweepstakes" ads were "solicitation materials" containing both "sweepstakes entry materials" and "entry-order device[s]."  *Id.*  The "sweepstakes entry materials" contained in these ads consisted of plain-text sweepstakes entry instructions.  ¶¶9-12, *supra*.  The "entry-order devices" contained in the ads consisted of the "Opt in" and "Make a trade" buttons, the webpages and mobile-app screens on which those buttons appeared, and Coinbase's online trading interface (to which the "Make a trade" button routed users).   See the images below.

**PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Defendants' were required by statute to include "a clear and conspicuous" statement of the "no-

26  purchase-or-payment-necessary message" in their Official Rules. *Id.* Moreover, because Defendants'

27  "official rules d[id] not appear" on their "solicitation materials," Defendants were also required to

28  "include a clear and conspicuous statement of the no-purchase-or-payment-necessary message . . . *on*

25

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

*the entry-order device* included in those solicitation materials containing sweepstakes entry materials."[5]  If the Dogecoin "sweepstakes" did *not* constitute an unlawful lottery[6], then Defendants' sweepstakes ads violated Cal. Bus. & Prof. Code § 17539.15(b) in several independent respects.

77.     The statute expressly required Defendants' "statement of the no-purchase-or-payment-necessary message" on the "entry-order device" to be "clear and conspicuous," and to be made "in readily understandable terms."  Cal. Bus. & Prof. Code § 17539.15(b).  The statute defines the "no-purchase-or-payment-necessary message" to mean "the following statement or a statement substantially similar to the following statement: 'No purchase or payment of any kind is necessary to enter or win this sweepstakes.'" Cal. Bus. & Prof. Code § 17539.15(k)(1).

78.     To the extent that Defendants made such a statement *at all* in their sweepstakes email, web, or mobile app ads, they made it using the following text.

> Not investment advice or a recommendation to trade Dogecoin. NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available. Sweepstakes open to legal residents of the fifty (50) United States and the District of Columbia (excluding Hawaii). Void where prohibited by law. Must be age of majority in state of residence as of 6/3/21. Promotion ends 11:59 PM (PT) on 6/10/21. Winners must have a Coinbase account on Coinbase.com to receive a prize. Receipt and use of prizes subject to Coinbase terms and conditions. Odds of winning depend on the number of eligible entries received. One entry per person.  Sponsor: Coinbase: Coinbase Sweepstakes, 100 Pine Street, Suite #1250, San Francisco, CA 94111. See Official Rules for details.

**First**, the above text was not stated "conspicuous[ly]" on or around Defendants' solicitation materials or "entry-order device[s]."  Instead, this text appeared in faint, fine print at the bottom of Defendants' multi-page/multi-screen email solicitations.  To view the above text at all, recipients

---

[5] The statute defines "official rules" as "the formal printed statement, however designated, of the rules for the promotional sweepstakes appearing in the solicitation materials."  Cal. Bus. & Prof. Code § 17539.15(k)(2).  Defendants' "formal printed statement . . . of the rules for the [Dogecoin] sweepstakes" did not "appear" on Defendants' email ads for the DOGE sweepstakes.  Instead, what "appeared" on Defendants' ads was only a small hyperlink to the "formal printed statement . . . of the rules," which "appeared" on a separate webpage, and not on the "solicitation materials" themselves.

[6] An unlawful "lottery" is excluded from the statutory definition of a "sweepstakes."  Cal. Bus. & Prof. Code § 17539.5(a)(12) ("'Sweepstakes' means any procedure for the distribution of anything of value by lot or chance that is not unlawful under other provisions of law including, but not limited to, the provisions of Section 320 of the Penal Code."); *see also* Cal. Penal Code § 320 ("Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor.").

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

1  would have to have scrolled down to the bottom of the email, which did *not* require any scrolling

2  before clicking the "See how to enter button."

3

4  

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22  Only upon scrolling down to the bottom of this email would recipients see Defendants' "NO

23  PURCHASE NECESSARY" statement in fine, gray-colored print.

24

25

26

27

28

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20  This was not a "conspicuous" statement of the "no-purchase-or-payment-necessary message" on (or

21  near) Defendants' "entry-order device"—as required by § 17539.15(b)—because users' eyes might

22  not even *see* Defendants' fine print *at all* before clicking "See how to enter," and thereby being taken

23  immediately to a separate webpage (or mobile app screen) containing Defendants' "Opt in" and

24  "Make a trade" buttons.

25        79.    Similarly, Defendants buried the same faint, fine-print text at the bottom of their "Opt

26  in" and "Make a trade" webpages and mobile screens, requiring users to scroll down several pages to

27  see the above text at all.  Below is the sequence of screen-pages that users would see, *if* they scrolled

28  to the bottom of the page before clicking Defendants' "Opt in" and "Make a trade" buttons.



PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT



PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

This was by no means a "conspicuous" statement of the "no-purchase-or-payment-necessary message" on (or near) Defendants' "entry-order device," as required by § 17539.15(b). Many users' eyes would not see this fine print, at the bottom of a multi-page site, before clicking the large, blue "Opt in" and "Make a trade" buttons at the very top of the website or mobile-app screen.

80.     Upon clicking Defendants' prominent "Make a trade" button, users were rerouted directly to Coinbase's trading platform, which contained no sweepstakes-related disclosures at all.

//

//

//

//

//

//

//

31

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

Defendants' above-pictured trading interface also constituted an "entry-order device," as each Class member *completed* their sweepstakes "entry" by executing a purchase or sale "order" on this interface.  Yet this crypto trading interface (this "entry-order device") did not contain any "no-purchase-or-payment-necessary message," let alone a "clear and conspicuous" one.  Cal. Bus. & Prof. Code § 17539.15(b).

81.    ***Second***, Defendants' faintly colored, fine-print disclaimer was not stated "clear[ly]" or in "readily understandable terms" when read within the context of Defendants' more prominent statements in their sweepstakes ads.  Defendants' "NO PURCHASE NECESSARY" statement was at best *ambiguous* when read in context, and could be reasonably understood as *consistent* with Defendants' more prominent misstatements in their sweepstakes ads.

Not investment advice or a recommendation to trade Dogecoin. NO PURCHASE NECESSARY TO ENTER OR WIN. PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING. Opt-in required. Alternative means of entry available. Sweepstakes open to legal residents of the fifty (50) United States and the District of Columbia (excluding Hawaii). Void where prohibited by law. Must be age of majority in state of residence as of 6/3/21. Promotion ends 11:59 PM (PT) on 6/10/21. Winners must have a Coinbase account on Coinbase.com to receive a prize. Receipt and use of prizes subject to Coinbase terms and conditions. Odds of winning depend on the number of eligible entries received. One entry per person. Sponsor: Coinbase: Coinbase Sweepstakes, 100 Pine Street, Suite #1250, San Francisco, CA 94111. See Official Rules for details.

82.    Specifically, Defendants' direct-to-user email ads stated:

32

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

> Trade DOGE. Win DOGE.  Starting today, you can trade, send, and receive Dogecoin on Coinbase.com and with the Coinbase Android and iOS apps.  To celebrate, we're giving away $1.2 million in Dogecoin.  Opt in and then buy *or sell* $100 in DOGE on Coinbase by 6/10/2021 for your chance to win.  Terms and conditions apply.

Similarly, Defendants' webpage and mobile app screens prominently stated the following, right above the big, blue "Opt in" in button:

> Dogecoin is now on Coinbase, and we're giving away $1.2 million in prizes to celebrate.  Opt in and then buy *or sell* $100 in DOGE on Coinbase by 6/10/2021 for your chance to win.  Limit one entry per person.  Opting in multiple times will not increase your chance of winning.

Thus, Defendants' most prominent text made clear that either a DOGE purchase *or* sale on Coinbase would suffice for entry into the sweepstakes.  So when Defendants' faint, fine-print disclaimer at the bottom of each page said "NO PURCHASE NECESSARY"—and that "PURCHASES WILL NOT INCREASE YOUR CHANCES OF WINNING"—readers could reasonably understand that statement to be consistent with Defendants' more prominent entry instructions, which made clear that a DOGE *sale* transaction of $100 or more would suffice for entry.  The same is true of Defendants' fine-print disclaimer that "[a]lternative means of entry [were] available."  In context, reasonable recipients (who were fortunate enough to even *see* this fine print at the bottom of Defendants' solicitation materials) could fairly understand the "[a]lternative means of entry" to be exactly what Defendants' had advertised more prominently: (a) buy $100 or more in DOGE; or, "alternative[ly]," (b) sell $100 or more in DOGE.  There was simply nothing in the text of Defendants' faint, fine-print disclaimer that clearly corrected Defendants' main assertion: namely, that users must "Trade DOGE" (*i.e.,* either buy *or* sell DOGE) for a chance to win.

83.     Defendants' fine-print disclaimer was particularly "[un]clear" regarding any free entry option, when read in conjunction with the *large*-print statement directly above Defendants' big "Make a trade" button.

> You're one step closer to winning.  You've successfully opted in to our Dogecoin Sweepstakes.  *Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win.*

Defendants conspicuously stated that a Dogecoin purchase or sale *was* necessary to enter "for a chance to win."  So when Defendants later said only that no "*purchase*" was "necessary," reasonable

readers could well understand that disclaimer to be *consistent with* Defendants' (false) statement that a Dogecoin purchase *or* sale was necessary to enter.  Obviously, no purchase transaction is necessary if—as Defendants had already highlighted—a sale transaction suffices.

84.   In sum, Defendants' "NO PURCHASE NECESSARY" statement was not only designed and placed *inconspicuously* away from Defendants' "entry-order device[s]," but in addition, Defendants' "NO PURCHASE NECESSARY" statement was *unclearly* worded and *not* "readily understandable," when read in the context of Defendants' more prominent instructions and misstatements regarding sweepstakes entry.  Cal. Bus. & Prof. Code § 17539.15(b).  Nothing in Defendants' fine-print disclaimer clearly or objectively corrected the false and misleading nature of the most prominent, material misstatements and omissions in Defendants' sweepstakes solicitations.

85.   ***Third,*** the "NO PURCHASE NECESSARY" statement in Defendants' sweepstakes solicitations was not "substantially similar" to the statement required by statute.  The "no-purchase-*or-payment*-necessary message" required by § 17539.15 "means the following statement or a statement substantially similar to the following statement: 'No purchase *or payment of any kind* is necessary to enter or win this sweepstakes.'"  Cal. Bus. & Prof. Code § 17539.15(k)(1).  By contrast, the "NO PURCHASE NECESSARY" statement at the bottom of Defendants' sweepstakes ads left open the possibility that payments of some kind, other than DOGE purchases might be necessary to enter: such as the "payment" of *a transaction fee* to Coinbase for *selling* $100 or more worth of Dogecoins.

86.   Defendants omitted the required "payment of any kind" language from their "NO PURCHASE NECESSARY" message to avoid contradicting their more prominent assertions to users that trading Dogecoins (and paying Coinbase's customary transaction fees) was necessary for entry.

87.   Similarly, when read objectively and in full context, the "NO PURCHASE NECESSARY" statement contained in Defendants' Official Rules left open the possibility that a payment of some kind, other than for DOGE purchases, might be necessary for Coinbase users to enter: such as the payment of a transaction fee to Coinbase for *selling* Dogecoins.  The Official Rules prominently stated: "NO <u>PURCHASE</u> NECESSARY.  A PURCHASE OR PAYMENT OF ANY KIND WILL NOT <u>INCREASE YOUR CHANCES</u> OF WINNING." (underline added)  When read in the full context of Defendants' solicitations and Official Rules, this statement was objectively unclear in

communicating that **neither** a "purchase" **nor a "sale"** of Dogecoins was necessary for Coinbase "account holders" to enter.  This is particularly true, in light of Defendants' statement in Official Rules ¶3 that:

> Existing account holders and new* account holders **must** opt-in to participate in the Sweepstakes and **must** complete $100usd . . . in trade (buy/sell) of Dogecoin on Coinbase.com (.com and/or Coinbase app) during the Promotion Period to earn one (1) entry into the Sweepstakes.

*See* Official Rules, Ex. A, ¶3.  The clearest, objective reading of the Official Rules was that the free, mail-in entry method (denoted as "Method 2") was available **only** to persons who were **not** "[e]xisting account holders [or] new* account holders" with Coinbase, and that "A PURCHASE OR PAYMENT OF ANY KIND" would not give **"account holders"** any greater chance of winning than **non-"account holders"** who chose to enter for free.  *Id.*  At best, the "NO PURCHASE NECESSARY" statement in the Official Rules was less than "clear," as required by statute, when read objectively and in fully context.[7]

88.     **Fourth,** Defendants' fine-print disclaimer expressly stated *"Opt-in required,"* while presenting users with a big, bright *"Opt in"* button on the entry webpage and mobile app screen. This was materially false and misleading, as it created a reasonable impression that clicking Defendants' conspicuous *"Opt in"* button was "required" for entry.  But in fact, clicking Defendants' "Opt in" button was *not* necessary for entry.

89.     Instead, mailing in a 3x5 index card with one's name, contact information, and birthdate on it would have sufficed for entry.  Defendants' "Opt in required" disclaimer was thus affirmatively misleading when read within the context of the entire solicitation email, webpage, and mobile app screen.

90.     Moreover, upon (unnecessarily) clicking the "Opt-in" button, that button would transform into a big, bright "Make a trade" button topped off with the following large-font text:

---

[7] Even if the Court or a jury was inclined to find that Defendants *did* include the required "payment of any kind" language in their "Official Rules," that alone would not satisfy the statute.  Indeed, because the Official Rules did not "appear" on Defendants' "[s]olicitation materials containing sweepstakes entry materials," Defendants were **also** required to include the "payment of any kind" language "on the entry-order device included in those solicitation materials."  Cal. Bus. & Prof. Code § 17539.15(b).  Defendants failed to include the required "payment of any kind" language "on the entry-order device included in those solicitation materials," as the statute demanded.  *Id.*

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

"Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/2021 for a chance to win." This statement was flatly untrue.

91.    Defendants' ambiguous, fine-print disclaimer at the very bottom of their "entry-order device[s]" (*i.e.,* the emails, webpages and mobile app screens containing the "See how to enter," "Opt in," and "Make a trade" buttons) was not just legally insufficient under § 17539.15(b). It was also affirmatively false and materially misleading, when read in the full context of Defendants' solicitation materials.

**No Arbitration Or Class Action Waiver**

92.    Defendant Marden-Kane, Inc. does not now have, nor has it ever had, any form of arbitration agreement with Plaintiffs. In addition, as this Court has already correctly held, there is no existing agreement between Plaintiffs and Coinbase to arbitrate any controversies regarding this Sweepstakes. *See* Order (ECF No. 53); Order (ECF No. 76).

93.    In the alternative, even if there were any extant agreement between Plaintiffs and Coinbase to arbitrate their controversies regarding this Sweepstakes (there is no such agreement, as this Court has already correctly held), Coinbase's adhesive, one-sided arbitration agreements with Plaintiffs, including but not limited to Coinbase's adhesive "delegation clause," would be unconscionable and unenforceable for the reasons recently decided by Judge Alsup in *Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022).

94.    Pursuant to Coinbase's "Official Rules" for its Dogecoin Sweepstakes, "[p]articipation [in the Sweepstakes] constitutes entrant's full and unconditional agreement to these Official Rules and [Coinbase's] and [its] Administrator's decisions, which are final and binding in all matters related to the Sweepstakes." *See* Ex. A, Official Rules, ¶1, *available at* https://www.coinbase.com/sweepstakes-doge-terms (last visited Jun. 11, 2021). The Official Rules further provide that "THE CALIFORNIA COURTS (STATE AND FEDERAL) SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THE PROMOTION AND THE LAWS OF THE STATE OF CALIFORNIA SHALL GOVERN THE PROMOTION. EACH ENTRANT WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION AND VENUE IN THOSE COURTS FOR ANY REASON AND HEREBY SUBMITS TO THE JURISDICTION OF

36

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

THOSE COURTS**.**"  *Id.*, ¶10.  The same paragraph provides that "[c]laims may not be resolved through any form of class action." *Id.*.  However, absent an existing agreement to arbitrate (or in the alternative, absent any *enforceable* agreement to arbitrate), such class action waivers are unconscionable and unenforceable as a matter of California law, where, as here, a class action waiver "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that a party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced." *Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (internal citations omitted).  Moreover, where, as here, there is no conflict between the Federal Arbitration Act and California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) ("CLRA"), the CLRA is **not** preempted and expressly **precludes** courts from enforcing class action waivers like the one in Defendants' Official Rules.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of themselves and all other persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) sweepstakes in June 2021, and who purchased or sold Dogecoins on a Coinbase exchange for a total of $100 or more between June 3, 2021 and June 10, 2021, inclusive. Excluded from the Class are Defendants, the officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

96.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time, and can be ascertained only through appropriate discovery, Plaintiffs believe that there are millions of

37

members of the proposed Class.   Members of the Class may be identified and located from database records maintained by Defendants, and may be notified of the pendency of this action by electronic mail and/or regular mail, using the form of notice similar to that customarily used in class actions.

97.   Plaintiffs' claims are typical of other Class members' claims, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law, as complained of herein.

98.   Plaintiffs will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

99.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.   whether Defendants' uniform, digital advertising campaign for the June 2021 DOGE sweepstakes was materially false, deceptive, and misleading when disseminated to Plaintiffs and the Class;

b.   whether Defendants' June 2021 Dogecoin "sweepstakes" in fact constituted an unlawful "lottery" within the meaning of California Penal Code §§ 319, 320;

c.   whether Defendants violated Cal. Bus. & Prof. Code § 17539.15 by, *inter alia*, failing to make the required "clear and conspicuous statement[s]" of the "no-purchase-or-payment-necessary message";

d.   whether Defendants, individually and together, violated California's False Advertising Law, by designing, drafting, creating, analyzing, and presenting to Class members a uniform advertising campaign that was materially false, deceptive, and misleading when disseminated to Class members;

e.   whether Defendants violated the unlawful or unfair prongs of California's Unfair Competition Law when they designed, drafted analyzed and presented to Class members a uniform digital advertising campaign that was materially false, deceptive, and misleading when disseminated to Class members;

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

f.      whether Plaintiffs and the Class suffered harm as a result of Defendants' conduct, and the forms of judicial relief to which Class members are entitled, including, but not limited to, public and permanent injunctive relief, restitution of the money Class members paid to Coinbase, and disgorgement of Defendants' ill-gotten gains; and

g.      whether Plaintiffs and the Class are entitled to reasonable attorneys' fees and expenses as a result of Defendants' wrongful conduct as set forth herein.

100.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, as the joinder of all members is impracticable. Furthermore, because the financial harm suffered by individual Class members may be relatively small, the expense and burden of individual litigation would make it difficult if not impossible for members of the Class to redress the wrongs done to them on an individual basis.  There will likely be no substantial difficulty in the management of this case as a class action.

**FIRST CAUSE OF ACTION**
**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* –**
**Unlawful Business Acts and Practices (Unlawful Lottery)**

101.    Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this Complaint.

102.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice."

103.    California Penal Code § 319 provides that "[a] lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

104.    California Penal Code § 320 provides that "[e]very person who contrives, prepares, sets up, proposes, or draws any lottery" is guilty of a misdemeanor.  Defendant Coinbase committed

39
PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

an "unlawful" business act or practice by "contriv[ing], prepar[ing], set[ting] up," and "propos[ing]" and conducting an unlawful "lottery" within the meaning of Cal. Penal Code § 320, when it contrived, prepared, set up, broadly advertised, and then ultimately conducted its $1.2 million Dogecoin "sweepstakes" in June 2021. Defendant MKI likewise committed an "unlawful" business act or practice by "contriv[ing], prepar[ing], set[ting] up, propos[ing]," and randomly "draw[ing]" the winners of an unlawful "lottery" at its offices in Syosset, NY on or about June 17, 2021, within the meaning of Cal. Penal Code § 320, as it contrived, prepared, set up, and ultimately administered, and randomly drew the winners of, Defendants' $1.2 million Dogecoin "sweepstakes."

105.    The elements of a "lottery" are: (i) consideration given by an entrant; (ii) in exchange for a chance; (iii) to win a prize. *See, e.g., Trinkle v. California State Lottery*, 105 Cal.App.4th 1401, 1406 (Cal. Ct. App. 2003). Defendants' Dogecoin "Sweepstakes" was a "scheme for the disposal or distribution of property [Dogecoins or "US Dollars," *see* Official Rules, Ex. A, ¶6] by chance." Cal. Penal Code §319. Defendants' Dogecoin "Sweepstakes" solicitations, transmitted directly to Plaintiffs and the Class, ***affirmatively and objectively*** represented that they "need[ed] to," and that they "must," pay "valuable consideration" to Coinbase between June 3 and June 10, 2021 (in the form of buying ***or*** selling Dogecoins on Coinbase for $100 or more, and paying the attendant transaction costs) in order for them to obtain a chance to win the advertised "property." *Id.* Nowhere did Defendants objectively disclose to Plaintiffs or other Class members, or even objectively disclose to the public, that Defendants would allow Coinbase users and "account holders" like Plaintiffs and the Class to enter the "Sweepstakes" without executing any Dogecoin purchase ***or*** sale transaction on Coinbase.

106.    Plaintiffs and the Class, reasonably relying on Defendants' affirmative, objective representations to them and to the public that paying consideration to Coinbase ***was*** necessary for them to enter—and being reasonably unaware of the truth that Defendants had privately agreed, only among themselves, to accept free entry requests (if any) from Coinbase users—did objectively pay valuable consideration (totaling at least $100 each) to Coinbase in the forms described herein, in exchange for a chance to win one of Defendants' advertised prizes.

107.    Defendants' unlawful "sweepstakes" was structured by Defendants to distribute the

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

advertised prizes by chance, within the meaning of a "lottery," as all prize winners (none of whom are Plaintiffs here) were randomly selected from among millions of eligible entrants on or about June 17, 2021.  Defendant MKI, as "administrator," conducted the random prize drawings at its offices in Syosset, New York.  Defendant MKI also assisted Coinbase in "contriv[ing], prepar[ing], [and] set[ting] up" the June 2021 Dogecoin "sweepstakes" by collaborating with Coinbase to draft, design and structure Defendants' digital ad campaign for the "sweepstakes," and to draft and finalize the "Official Rules," a copy of which is attached hereto as "Exhibit A."

108.    The lottery "prizes" and "property" distributed by the Defendants to their randomly drawn winners included: (a) to one winner, either $300,0000 *or* a large number of Dogecoins priced at a retail value of approximately $300,000; (b) to ten other winners, either $30,000 *or* a large number of Dogecoins priced at a retail value of approximately $30,000; and (c) to six thousand other "winners," a number of Dogecoins priced at a retail value of approximately $100.

109.    Hence, Defendants conducted an unlawful "lottery" within the meaning of Cal. Penal Code §§ 319 and 320 because, from the reasonable perspectives of Plaintiffs and the Class, Defendants ***objectively*** required Plaintiffs and the Class to pay "consideration" to Coinbase in exchange for a random "chance" to win some form of prize or "property."  Defendants' June 2021 Dogecoin "sweepstakes" was, in substance, an unlawful, million-dollar "lottery," which Plaintiffs and the Class unwittingly paid many millions of dollars to enter.

110.    As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiffs and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 more on coinbase.com or the Coinbase app, and by paying all attendant transaction costs to Coinbase, between June 3, 2021 and June 10, 2021.  Plaintiffs, on behalf of themselves and the Class, and as appropriate, on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and such other equitable relief, including full restitution of all monetary payments that Class members made in consideration of their entries into Defendants' June 2021 DOGE "sweepstakes," and disgorgement of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**SECOND CAUSE OF ACTION** [8]

**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* –**
**Unlawful Business Acts and Practices (Violations of Cal. Bus. & Prof. Code § 17539.15)**

111.    Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this Complaint.

112.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice."

113.    Under California law, a "[s]weepstakes" is "any procedure for the distribution of anything of value by lot or chance that is not unlawful under other provisions of law including, but not limited to, the provisions of Section 320 of the Penal Code." Cal. Bus. & Prof. Code § 17539.5(a)(12); *see also* Cal. Penal Code § 320 ("Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor."). Thus, an unlawful "lottery" is excluded from the statutory definition of a "sweepstakes."

114.    If the Court or a jury in this case ultimately concludes that Defendants' June 2021 Dogecoin sweepstakes did *not* constitute a "lottery" within the meaning of Cal. Penal Code § 320, then Plaintiffs hereby allege, in the alternative, that Defendants' June 2021 Dogecoin sweepstakes constituted a "sweepstakes" within the meaning of Cal. Bus. & Prof. Code § 17539.15(b), which provides that:

> *Solicitation materials containing sweepstakes entry materials* or solicitation materials selling information regarding sweepstakes *shall include a clear and conspicuous statement* of the no-purchase-or-payment-necessary message, in readily understandable terms, in the official rules included in those solicitation materials *and*, *if the official rules do not appear thereon*, on the entry-order device included in those solicitation materials.

Cal. Bus. & Prof. Code § 17539.15(b) (emphasis added). Defendants' "sweepstakes" ads were

---

[8] Plaintiffs hereby plead this, their Second Cause of Action, in the alternative to their First Cause of Action, in case the Court (or a jury) ultimately finds that Defendants' June 2021 Dogecoin sweepstakes did *not* constitute a "lottery" within the meaning of Cal. Penal Code § 320. Plaintiffs' First Cause of Action and Second Cause of Action are pled in the alternative because, as a matter of California statutory law, the definitions of the terms "lottery" and "sweepstakes" are mutually exclusive. Cal. Bus. & Prof. Code § 17539.5(a)(12) ("'Sweepstakes' means any procedure for the distribution of anything of value by lot or chance *that is not unlawful under other provisions of law including, but not limited to, the provisions of Section 320 of the Penal Code*.") (emphasis added).

42

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

"solicitation materials" containing both "sweepstakes entry materials" and "entry-order device[s]." *Id.*   The "sweepstakes entry materials" contained in Defendants' solicitations consisted of Defendants' plain-text sweepstakes entry instructions. *E.g.,* ¶¶9-12, *supra*.   The "entry-order devices" contained in Defendants' solicitations consisted of Defendants' bright blue "Opt in" and "Make a trade" buttons, the webpages and mobile app screens on which those buttons appeared, and Coinbase's online crypto trading interface (to which the "Make a trade" button immediately rerouted users). *E.g.,* ¶¶65-69, *supra*.

115.   The term "official rules" means "the formal printed statement, however designated, of the rules for the promotional sweepstakes appearing in the solicitation materials."  Cal. Bus. & Prof. Code § 17539.15(k)(2).

116.   The   term "no-purchase-or-payment-necessary message"   means   "the   following statement or a statement substantially similar to the following statement: 'No purchase or payment of any kind is necessary to enter or win this sweepstakes.'" Cal. Bus. & Prof. Code § 17539.15(k)(1).

117.   Defendants Coinbase and MKI were each a "sweepstakes sponsor" within the meaning of Cal. Bus. & Prof. Code § 17539.15, as each Defendant was a "person or entity that operate[d] or administer[ed] a sweepstakes as defined in paragraph (12) of subdivision (a) of Section 17539.5."  Cal. Bus. & Prof. Code § 17539.15(*l*)(2)(A).

118.   The "formal printed statement" of Defendants' "official rules" did not "appear" on Defendants' sweepstakes entry "solicitation materials."  Consequently, Defendants were required to include "a clear and conspicuous statement of the no-purchase-or-payment-necessary message, in readily understandable terms," *on "the entry-order device"*: namely, on their direct-to-user emails, webpages and mobile app screens displaying the "See how to enter," "Opt in," and "Make a trade" buttons, on which Plaintiffs and each Class member clicked to enter Defendants' digital sweepstakes. Defendants failed to satisfy this statutory requirement for several, independent reasons.

119.   ***First,*** the "NO PURCHASE NECESSARY" statement on Defendants' entry-order devices was *not* "substantially similar" to the statement required by statute.  The "no-purchase-or-payment-necessary message" required by § 17539.15 "means the following statement or a statement substantially similar to the following statement: 'No purchase *or payment of any kind* is necessary to

43

enter or win this sweepstakes.'"  Cal. Bus. & Prof. Code § 17539.15(k)(1).  By contrast, the "NO PURCHASE NECESSARY" statement at the bottom of (some of) Defendants' entry-order devices omitted the material fact that that no "payment of any kind" was necessary to enter, such as the "payment" of a transaction fee for *selling* Dogecoins on Coinbase.  Defendants' unlawfully omitted the required "payment of any kind" language from their sweepstakes entry emails, webpages, and mobile app screens, for the particular purpose of concealing any truly free, sweepstakes-entry option from Plaintiffs' and the Class's eyes.  *E.g.,* ¶¶74-75, *supra*.

120.   **Second**, Defendants' "NO PURCHASE NECESSARY" statement on their "entry-order devices" was not stated "clear[ly]," or in "readily understandable terms," when read within the context of Defendants' more prominent statements in their sweepstakes solicitation materials.  *E.g.,* ¶¶70-73, *supra*.

121.   **Third**, Defendants' "NO PURCHASE NECESSARY" statement on their "entry-order devices" was not stated "conspicuous[ly]" on or around Defendants' solicitation materials or "entry-order device[s]."  Instead, Defendants' textually inadequate statement appeared only in faint, fine print at the very bottom of Defendants' multi-page emails, webpages and mobile app screens.  To view Defendants' textually inadequate statement at all, recipients would have to have scrolled down to the bottom of Defendants' entry-order webpages and mobile app screens, which did *not* require any scrolling to click Defendants' far more conspicuous "See how to enter," "Opt in," and "Make a trade" buttons.  *E.g.,* ¶¶65-69, *supra*.

122.   **Fourth**, Defendants' Dogecoin trading interface also constituted an "entry-order device," as each Class member *completed* their sweepstakes "entry" by executing a Dogecoin purchase or sale "order" on this interface.  Yet this crypto trading interface (this "entry-order device") did not contain any "no-purchase-or-payment-necessary message," let alone a "clear and conspicuous" message.  Cal. Bus. & Prof. Code § 17539.15(b).  *See* ¶69, *supra*.

123.   For each of the above, independent reasons, Defendants violated Cal. Bus. & Prof. Code § 17539.15(b) by failing to include the required "clear and conspicuous statement" of the "no-purchase-or-payment-necessary message" in or on the "entry-order devices" included in their "solicitation materials containing sweepstakes entry materials."  Cal. Bus. & Prof. Code §

17539.15(b).  Defendants' failure to make the clear and conspicuous disclosures expressly required by statute caused Plaintiffs and other Class members (as well as members of the media) to remain unaware of any purchase-free, payment-free option for entering Defendants' advertised sweepstakes in June 2021.

124.    As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiffs and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 more on coinbase.com, and by paying the attendant transaction fees to Coinbase, between June 3, 2021 and June 10, 2021.  Plaintiffs, on behalf of themselves and the Class, and as appropriate, on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and other equitable relief, including full restitution of all monetary payments that Class members made in consideration of their entries into Defendants' June 2021 DOGE sweepstakes, and of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

### THIRD CAUSE OF ACTION
**Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* -
Untrue, Misleading and Deceptive Advertising**

125.    Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this Complaint.

126.    Although Defendants would privately grant free-entry requests from all persons (whether Coinbase "account holders" or not), that material truth was affirmatively and objectively contradicted by the plain text and full context of Defendants' Sweepstakes solicitations, Official Rules, and all other public statements made by the Defendants in June 2021.  Defendants declined to objectively disclose the truth to Plaintiffs, the Class, or even the public at large.

127.    California Business and Professions Code, Section 17500, makes it unlawful for any person:

> to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any

circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

128.     Before and during the June 2021 Dogecoin sweepstakes alleged herein, Defendant Coinbase made and disseminated from this state to the public nationwide, over the Internet and through wireless phone networks, digital advertising devices and "Official Rules" which falsely and misleadingly asserted to consumers that entry into Defendants' Dogecoin sweepstakes was, in fact, entirely contingent upon such consumers "opting in" online, and purchasing or selling Dogecoins for $100 more on Coinbase's digital trading platform, between June 3, 2021 and June 10, 2021, when the true, material, and undisclosed fact was that Defendants would privately grant entry requests from Coinbase users and "account holders" *who executed no Dogecoin purchase or sale transaction on Coinbase during the Promotion Period*.

129.     Likewise, before and during the June 2021 Dogecoin sweepstakes alleged herein, Defendant MKI caused such materially false and misleading advertising and Official Rules to be made and disseminated from this state to the public nationwide, over the Internet and through wireless phone networks.   Defendant MKI caused such false and misleading advertising statements and Official Rules to be made and disseminated nationwide, from California, because MKI personally participated in creating, drafting, designing and structuring Defendants' digital sweepstakes ads, including but not limited to the direct-to-consumer email, website and mobile app advertisements and Official Rules depicted and alleged herein, with the full knowledge and intent that Coinbase would electronically disseminate MKI's false and misleading ads and Official Rules to members of the public nationwide.

130.     Defendants' advertisements of and Official Rules for their June 2021 DOGE Sweepstakes affirmatively misrepresented, concealed and omitted the material truth regarding the requirements for sweepstakes entry.   Defendants' advertisements were made to consumers and emanated from Coinbase's primary offices within the State of California, to millions of consumers within the State of California and nationally or internationally, and are within the meaning of advertising as provided in Cal. Bus. & Prof. Code §§ 17500, *et seq*., in that such promotional

materials were intended as inducements to purchase products and services on Coinbase.com and are statements made and disseminated by Defendants, and caused by Defendants to be made and disseminated, to Plaintiffs and other members of the Class.  Each Defendant knew, or in the exercise of reasonable care should have known, that their advertising statements about, and the Official Rules for, their June 2021 DOGE Sweepstakes would be and were false, misleading, confusing, and deceptive to a substantial segment if not the vast majority of layperson-consumers who viewed them.

131.    In furtherance of Defendants' false and misleading advertising scheme, Coinbase and MKI, individually and in collaboration, designed, created, prepared, structured, tested, reviewed, analyzed and disseminated via the Internet digital advertisements and Official Rules misleadingly suggesting, and overtly and falsely stating, that their June 2021 DOGE Sweepstakes in fact *required* entrants and Coinbase users to purchase or sell Dogecoins for $100 more on Coinbase, between June 3, 2021 and June 10, 2021.  Defendants also materially falsified their digital sweepstakes ads and misled consumers by representing that sweepstakes entrants had to buy or sell *"$100 in DOGE"* or *"$100 in Dogecoin,"* when in fact consumer purchases or sales of marginally less than "$100 in Dogecoin" would have sufficed for entry.  *See* ¶¶41-49, *supra*.  Consumers, including Plaintiffs and members of the Class, **reasonably** relied on Defendants' multiple, material misstatements regarding their sweepstakes entry requirements because all members of the Class were demonstrably exposed to such statements. Consumers, including Plaintiffs and members of the Class, were among the specifically intended targets of Defendants' material misrepresentations.

132.    Defendants' above acts—in designing, creating, preparing, structuring, testing, reviewing, analyzing and disseminating via the Internet such misleading and deceptive statements throughout the United States to Plaintiffs and the Class—were demonstrably and objectively likely to deceive, mislead, and confuse, and did deceive, mislead and confuse, reasonable consumers by obfuscating the true requirements (and non-requirements) for entry into Defendants' Dogecoin sweepstakes, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

133.    Defendants' materially false and misleading sweepstakes advertising devices and Official Rules caused Plaintiffs and other members of the Class to suffer personal financial injuries, in the form of paying Coinbase hundreds of millions of dollars in purchases and transaction costs that

47

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

they would not otherwise have spent to enter the sweepstakes. Had Plaintiffs and members of the Class known that Defendants' solicitation materials, advertisements, Official Rules, and inducements misrepresented, obfuscated and concealed the true entry requirements for Defendants' sweepstakes, then they would not have purchased or sold Dogecoins for $100 or more on Coinbase's trading platform between June 3, 2021 and June 10, 2021 (inclusive).

134.   Plaintiffs, on behalf of themselves and the Class, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June 2021 DOGE sweepstakes, and disgorgement of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

## FOURTH CAUSE OF ACTION
### Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* – Unlawful Business Acts and Practices (False Advertising)

135.   Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

136.   As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiffs and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 or more and paying the attendant purchase and sale transaction costs on Coinbase between June 3, 2021 and June 10, 2021, when in fact no Dogecoin purchase or sale transactions were required for entry into Defendants' sweepstakes.

137.   As a result of Defendants' above unlawful acts and practices of false and misleading advertising detailed herein, Plaintiffs, on behalf of themselves and the Class, and as appropriate, on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June 2021 DOGE Sweepstakes, and disgorgement of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

## FIFTH CAUSE OF ACTION

48

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* – Unfair Business Acts and Practices**

138.    Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

139.    Defendants' actions alleged herein violate the laws and public policies of California, as set out in the preceding paragraphs of this complaint.

140.    There is no benefit to consumers, competition or the general public from allowing Defendants to deceptively market and sell million-dollar "sweepstakes" (really, "lottery") entries to millions of consumers, in violation of California law, and under the false guise of executing a cryptocurrency sales "promotion."

141.    The gravity of harm suffered by Plaintiffs and the Class, who have unnecessarily lost hundreds of millions of dollars collectively, outweighs any legitimate justification, motive or reason for Defendants' deceptive sweepstakes marketing.  Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the public policies of California, and are substantially injurious to Plaintiffs and the Class.

142.    Defendants' above acts and practices were and are likely to deceive—and in fact, did deceive—reasonable consumers as to the true requirements for entering Defendants' $1.2 million Dogecoin sweepstakes, and further, were likely to conceal and did conceal from reasonable consumers the true options and requirements for sweepstakes entry.

143.    As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiffs and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 more and paying the attendant transaction fees on Coinbase, between June 3, 2021 and June 10, 2021, when in fact no Dogecoin purchase or sale transactions were required for entry into Defendants' sweepstakes.

144.    Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing their wrongful advertising practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

2021 DOGE sweepstakes, and disgorgement of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

**SIXTH CAUSE OF ACTION**
**Violation of Cal. Civ. Code §§ 1750, *et seq.* –**
**(Misrepresenting That a "Transaction" Involves Certain "Obligations")**

145.   Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

146.   California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") provides that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: . . . (14) [r]epresenting that a transaction confers or involves rights, remedies, or *obligations* that it does not have or involve, or that are prohibited by law." Cal Civ. Code § 1770(a)(14).

147.   Plaintiffs' and the Class's entries into Defendants' June 2021 Dogecoin sweepstakes constituted "transactions" which Defendants "intended to result," and which did result, in the sale of goods and services to consumers ("goods" in the form of Dogecoins, and "services" in the form of cryptocurrency trade-execution, for a fee). As detailed throughout this complaint, Defendants' June 2021 Dogecoin sweepstakes solicitations—including, but not limited to, Defendants' direct-to-user email, website, and mobile app advertisements, and Official Rules—affirmatively "represent[ed] that" Plaintiffs' and the Class's sweepstakes entries "involved" and "conferred" upon them an "obligation" to buy or sell "$100 in DOGE" on Coinbase's trading platform between June 3 and June 10, 2021, when in fact, entry into Defendants' DOGE sweepstakes did *not* involve or confer that "obligation" on any Class member, as Defendants were in fact ***privately*** agreeing among themselves to grant trade-free entry requests (if any) from Coinbase users and "account holders" like Plaintiff and the Class, contrary to Defendants' affirmative and objective representations to Plaintiffs, the Class, and to the public at large. In representing to Plaintiffs and the Class that they "need[ed]" to, and that they "must," buy ***or*** sell Dogecoins on Coinbase to enter for a chance to win one of

Defendants' sweepstakes prizes, Defendants affirmatively misrepresented the "obligations" involved in Class members' sweepstakes entry transactions, in violation of Cal Civ. Code § 1770(a)(14).

148.    In addition, Defendants' affirmative representations to Plaintiffs and the Class that they "need[ed] to," and that they "must," buy or sell Dogecoins on Coinbase—and pay all attendant transaction costs to Coinbase—constituted an affirmative representation to Plaintiffs and the Class that they were obligated to pay *consideration* to Coinbase for a *chance* to win a *prize*.  In making those affirmative representations to Plaintiffs and the Class, Defendants affirmatively and unnecessarily represented that a "transaction" (Plaintiffs' and the Class's "Sweepstakes" entries) involved and conferred on all Class members an "obligation" that was and remains "prohibited by law" (*i.e.,* an "obligation" to pay consideration, in exchange for a chance, to win a prize).  *See* Cal. Penal Code §§ 319, 320; *see also Trinkle v. California State Lottery*, 105 Cal.App.4th 1401, 1406 (Cal. Ct. App. 2003) (explaining that the elements of an unlawful "lottery" are (i) consideration given by an entrant; (ii) in exchange for a chance; (iii) to win a prize).  Thus, Defendants independently violated Cal Civ. Code § 1770(a)(14) in this second way.

149.    Moreover, Defendants' affirmatively misrepresented that sweepstakes entrants had an "obligation" to buy or sell *"$100 in DOGE"* or *"$100 in Dogecoin,"* when in fact, the truth was that consumer purchases or sales of marginally *less than* "$100 in Dogecoin" would have sufficed for entry.  *See* ¶¶41-49, *supra*.  Defendants thus independently violated Cal Civ. Code § 1770(a)(14) in a third way, as they misrepresented the *dollar value* of DOGE trades that Class members were (purportedly) "obligat[ed]" to make in exchange for their sweepstakes entries.

150.    Plaintiffs and members of the Class reasonably relied on Defendants' multiple, material misstatements regarding their sweepstakes entry "obligations," as all members of the Class were demonstrably exposed to such statements, and each paid $100 or more to Coinbase as a direct result of Defendants misrepresentations, which were prohibited by Cal Civ. Code § 1770(a)(14) in several independent respects.

151.    On account of Defendants' unlawful acts and misrepresentations detailed herein, Plaintiffs, on behalf of themselves and the Class, and as appropriate, on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices,

51

and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into Defendants' June 2021 DOGE Sweepstakes, and disgorgement of all other ill-gotten gains derived from Defendants' wrongful conduct to the fullest extent permitted by law.

152.    On or about September 12, 2021, Plaintiffs provided Defendants with notices of their alleged, respective violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendants correct such violations.

153.    On or about October 12, 2021, Defendants provided Plaintiffs with responsive letters, denying that Defendants violated the CLRA or any other law, and declining to undertake any of the corrective actions demanded by Plaintiffs.  In light of Defendants' respective refusals to take any corrective action in response to Plaintiffs' demand letters, Plaintiffs and the putative Class hereby seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, their actual damages, punitive damages, attorneys' fees and costs, as well as injunctive and any other equitable relief that the Court may deem proper.

**SEVENTH CAUSE OF ACTION**
**Violations of Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* –**
**Unlawful Business Acts and Practices (Violations of Cal Civ. Code § 1770(a)(14))**

154.    Plaintiffs hereby incorporate by reference the allegations contained in all other paragraphs of this complaint, as if fully set forth herein.

155.    As a result of Defendants' unfair and unlawful conduct as described herein, Plaintiffs and the Class have lost money and property by purchasing and/or selling Dogecoins for $100 or more and paying the attendant purchase and sale transaction costs on Coinbase between June 3, 2021 and June 10, 2021.

156.    As a result of Defendants' above unlawful acts and practices in violation of Cal. Civ. Code § 1770(a)(14), Plaintiffs, on behalf of themselves and the Class, and on behalf of the general public, seek permanent injunctive relief prohibiting Defendants from continuing such wrongful practices, and such other equitable relief, including full restitution of all payments Class members made to Coinbase to facilitate their entries into the June 2021 DOGE Sweepstakes, and disgorgement of all ill-gotten gains derived from Defendants' conduct, to the fullest extent allowed by law.

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

3      A.      Determining that the instant action may be maintained as a class action under Rule 23

4   of the Federal Rules of Civil Procedure, and certifying Plaintiffs as Class Representatives, and the

5   law firm of Finkelstein & Krinsk LLP as Class Counsel;

6      B.      Requiring Defendants to pay the actual damages sustained by Plaintiffs and the Class

7   by reason of the acts and transactions alleged herein, as well as punitive damages;

8      C.      For an order of restitution necessary to restore to Plaintiffs and each Class member all

9   money and personal property that Defendants have acquired from Plaintiffs and the Class by means

10  of Defendants' unlawful conduct as described herein, and an order for the disgorgement of all of

11  Defendants' ill-gotten gains from the unlawful conduct alleged herein;

12     D.      For an order permanently and publicly enjoining Defendants from engaging in the

13  unlawful and unfair business acts and practices alleged herein;

14     E.      Ordering Defendants to pay Plaintiffs' and the Class's reasonable attorneys' fees,

15  expert fees, and all other costs and expenses of this litigation; and

16     F.      Ordering such other legal or equitable relief as this Court may deem just and proper.

17

**JURY DEMAND**

18

Plaintiffs hereby demand a trial by jury.

19

20  Dated: May 10, 2021                          Respectfully submitted,

21                                               FINKELSTEIN & KRINSK LLP

22                                               By: ___*s/ David J. Harris, Jr.*___
23                                                    David J. Harris, Jr., Esq.

24                                               djh@classactionlaw.com
25                                               501 West Broadway, Suite 1260
                                                 San Diego, California 92101
26                                               Telephone: (619) 238-1333
                                                 Facsimile:  (619) 238-5425

27                                               *Counsel for Plaintiffs and the Putative Class*

28

PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT