**VENABLE LLP**
Laura A. Wytsma (SBN 189527)
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
lawytsma@venable.com
Telephone: (310) 229-9900
Facsimile:  (310) 229-9901

Attorneys for Defendant
MARDEN-KANE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, et al., | Case No. 3:21-cv-04539-SK |
| Plaintiffs, | |
| v. | **MARDEN-KANE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS** |
| COINBASE INC. and MARDEN-KANE, INC., | |
| Defendants. | Date:   August 22, 2022<br>Time:   9:30 a.m.<br>Ctrm.:  C |

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

1

# TABLE OF CONTENTS

STATEMENT OF RELIEF SOUGHT ............................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .............................................. 1

INTRODUCTION .............................................................................................. 2

ARGUMENT ....................................................................................................... 4

I.      Plaintiffs Cannot Maintain Their Representative Claims in This Court. ................. 4

        A.      The Court Should Enforce Plaintiffs' Users Agreements. ........................... 4

                i.      The Court Should Enforce the Pre-Suit Resolution Procedure ......... 4

                ii.     The Court Should Enforce the Arbitration Requirement ................. 6

        B.      Alternatively, the Court Should Enforce the Sweepstakes Rules. ............... 7

II.     Plaintiffs' New Allegations Do Not Support an Unlawful Lottery Claim. ............. 9

III.    Plaintiffs' Jumbled Allegations Against "Defendants" Generally Cannot
        Support Their Claims Against Marden-Kane Specifically .................................... 10

        A.      Plaintiffs Fail to Attribute Specific Conduct to Marden-Kane. ................. 10

        B.      Even Under Plaintiffs' Muddled Allegations, The Sixth And Seventh
                CLRA Claims Against Marden-Kane Fail As A Matter Of Law ................ 12

                i.      Plaintiffs Cannot Allege Marden-Kane Made Representations
                        To Consumers In Any Transaction for Goods or Services ............. 13

                ii.     Because Plaintiffs Failed To Provide Proper Pre-Suit Notice,
                        Their CLRA Damages Claim Should Be Dismissed. ..................... 14

                iii.    Because Plaintiffs Fail to Allege Actual, Imminent Harm,
                        Their CLRA Injunctive Relief Claim Should Be Dismissed. .......... 16

                iv.     Plaintiffs Failed To File The Requisite Affidavit Showing That
                        This Is A Proper Place For Trial Against Marden-Kane. ................. 16

IV.     Plaintiffs' Demand for Injunctive Relief Should Be Dismissed or Stricken ......... 16

CONCLUSION................................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berk v. Coinbase, Inc.*,
   840 F. App'x 914 (9th Cir. 2020) ........................................................................6

*Bielski v. Coinbase, Inc.*,
   2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) .......................................................5

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) .............................................................15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ............................................................................5

*Discover Bank v. Superior Court*,
   36 Cal.4th 148 (2005) .......................................................................................8

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (2007) .....................................................................................8

*Haskell v. Time, Inc.*,
   965 F. Supp. 1398 (E.D. Cal. 1997) .................................................................9

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
   2014 WL 3721197 (C.D. Cal. July 22, 2014) ...................................................6

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ...................................................13

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................11

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ...........................................................15

*Mohamed v. Uber Technologies, Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ..........................................................................6

*Morgan v. Sundance, Inc.*,
   2022 U.S. LEXIS 2514, __ S. Ct. __ (May 23, 2022) .....................................7

*Mou v. SSC San Jose Operating Co. LP*,
   415 F. Supp. 3d 918 (N.D. Cal. 2019) ..............................................................1

*Outboard Marine Corp. v. Superior Court*,
   52 Cal.App.3d 30 (1975) ................................................................................14

*Peacock v. The 21st Amendment Brewery Café, LLC,*
    2018 U.S. Dist. LEXIS 7537 (N.D. Cal. Jan. 17, 2018) ..........................................14, 16

*Pierre v. Coinbase, Inc.,*
    2021 WL 1538015 (N.Y. Sup. Ct. Apr. 14, 2021) ..........................................................6

*Reeves v. Niantic, Inc.,*
    2022 U.S. Dist. LEXIS 97140, __ F.Supp.3d __ (N.D. Cal. May 31, 2022) ...............13

*Sapan v. Lexington Mortg. Corp.,*
    2017 U.S. Dist. LEXIS 63069 (C.D. Cal. Apr. 17, 2017)..........................................15

*Spark Connected, LLC v. Semtech Corp.,*
    2020 WL 6118575 (E.D. Tex. Oct. 16, 2020) ..............................................................7

*Sultan v. Coinbase, Inc.,*
    354 F. Supp. 3d 156 (E.D.N.Y. 2019) ..........................................................................6

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ....................................................................................................16

*Tarverdiyeva v. Coinbase Global, Inc.,*
    2021 WL 4527960 (M.D. Fla. Sept. 8, 2021) ...............................................................6

*United Specialty Ins. Co. v. Clean & Sober Media LLC,*
    2021 U.S. Dist. LEXIS 81911 (N.D. Cal. Feb. 19, 2021)..............................................5

*Waller v. Hewlett-Packard Co.,*
    2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 16, 2011) ..........................................15

*Young v. Oakland Unified Sch. Dist.,*
    2020 WL 6684844 (N.D. Cal. Nov. 12, 2020) ............................................................17

*Yu v. Design Learned, Inc.,*
    2016 U.S. Dist. LEXIS 54374 (N.D. Cal. Apr. 22, 2016) ...........................................10

**Statutes**

Cal. Civ. Code § 1770 ...........................................................................................................13

Cal. Civ. Code § 1780.........................................................2, 3, 4, 8, 11, 12, 13, 14, 15, 16

Cal. Civ. Code § 1782 ...........................................................................................................14

Cal. Penal Code § 320 ..........................................................................................................10

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

PLEASE TAKE NOTICE that on August 22, 2022, at 9:30 a.m., or as soon as this matter may be heard, in the courtroom of the Honorable Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, defendant Marden-Kane, Inc. will and hereby does move this Court to enforce the Plaintiffs' User Agreements and dismiss the Third Amended Complaint ("TAC") under Federal Rule of Civil Procedure Rule 12(b)(1), or to dismiss all claims against Marden-Kane under Rules 12(b)(3) and/or 12(b)(6).[1]

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying declaration of Laura A. Wytsma and attached exhibits, the pleadings and other documents on file in this case, all matters of which the Court may take judicial notice, and oral argument of counsel.

## STATEMENT OF RELIEF SOUGHT

Marden-Kane seeks an order enforcing the Plaintiffs' User Agreements, including the arbitration requirement and class action waiver (which is also found in the Dogecoin sweepstakes rules) and dismissing the case entirely.   Alternatively, it seeks an order dismissing, with prejudice, all claims asserted against Marden-Kane.

## STATEMENT OF ISSUES TO BE DECIDED

Should the Court enforce the Plaintiffs' agreements to use Coinbase's services, including the dispute resolution procedures (a pre-suit demand followed by filing claims in small claims court or arbitration) and class action waiver, in light of a not-inconsistent venue provision in the Dogecoin sweepstakes rules, which also preclude class claims?[2]

---

[1] Plaintiff's injunctive relief claim can be dismissed, as well as struck, under Rule 12(f).  *See Mou v. SSC San Jose Operating Co. LP*, 415 F. Supp. 3d 918, 932-33 (N.D. Cal. 2019).

[2]  Although the Court denied Coinbase's motion to compel arbitration, for the reasons discussed below, the Court should reconsider that decision, particularly in light of Plaintiffs' shifting theories for avoiding their contractual obligations.

1  Do Plaintiffs' allegations of wrongdoing against "Defendants" *generally* support
2  any claim against Marden-Kane *specifically*?

3  Should Plaintiffs' illegal lottery and Consumer Legal Remedies Act ("CLRA")
4  claims be dismissed with prejudice?

5  Should Plaintiffs claim for injunctive relief be dismissed or stricken absent any
6  actual, imminent threat of harm?

7  **INTRODUCTION**

8  The day after Coinbase concluded a Dogecoin sweepstakes, Plaintiffs raced to this
9  courthouse to sue Coinbase Inc. and Marden-Kane, Inc. for allegedly misleading them into
10  participating in the sweepstakes through a purchase, rather than through a free, mail-in
11  method.  In rushing to file suit, Plaintiffs wholly disregarded their obligations under their
12  agreements to use Coinbase's services.  First, they failed to afford Coinbase the chance to
13  resolve their disputes through a quick, no-cost resolution process.  Then, they ignored their
14  agreement to resolve their claims in small claims court or arbitration on an individual basis.

15  It has long been obvious that avoiding this latter obligation is why Plaintiffs sued
16  Marden-Kane along with Coinbase.  Plaintiffs, as their briefing makes clear, hoped to use
17  Marden-Kane's presence in this case to ensure that they can pursue class claims in federal
18  court rather than individual claims in arbitration.  And they have succeeded so far.  But as
19  discussed below, their claims should be arbitrated—or dismissed on the merits here.

20  Since filing suit on June 11, 2021, Plaintiffs have amended their complaint three
21  times.  A first amendment sought to avoid dismissal for lack of injury and thus standing.
22  A second amendment was necessitated by Plaintiffs' failure to provide pre-suit notice of
23  their CLRA claim in their rush to file a class action suit.  A third amendment followed the
24  Court's decision that the Dogecoin sweepstakes was not an unlawful lottery.  But even that
25  amendment does not change the legally dispositive fact that persons could (and did) enter
26  the Dogecoin sweepstakes for free.

27  Now, in their *fourth* complaint, Plaintiffs continue to complain that promotion of
28  the sweepstakes deceptively led them to believe that a purchase was necessary for entry.

2

***But Marden-Kane did not promote or advertise anything to the public***.  In trying to hold Marden-Kane hostage in this case for collateral reasons, Plaintiffs allege misconduct against "Defendants" generally, despite their heightened burden of pleading false advertising with particularity; make illogical, contradictory assertions; and at times, simply level accusations against Marden-Kane unsupported by specific facts (or the truth).

Not only do Plaintiffs fail to specifically allege any facts that would support liability as to Marden-Kane for any reason, the allegations of the Third Amended Complaint—even in their muddled condition—establish that Marden-Kane did not make any *representation* to a consumer, in a *transaction* with any consumer.  Thus, it cannot be liable under the CLRA.  Moreover, because Plaintiffs' claims do not concern "goods or services" within the meaning of the CLRA, the claim (along with the request for punitive damages) should be dismissed with prejudice altogether.

The TAC concludes by praying for various forms of relief, including a generic obey-the-law injunction.  But Plaintiffs do not allege—and having terminated their accounts with Coinbase cannot allege—any actual and imminent threat of harm.  For this reason alone, the Court should dismiss any claim for injunctive relief and strike it from the prayer.

In the end, Plaintiffs want it both ways.  They want to avoid their obligations under their User Agreements by asking the Court to enforce the sweepstakes rules instead.  Yet they do not want the Court to enforce *all* the rules—which include a class action waiver (as do the User Agreements).  But the waiver is enforceable and forecloses this class action altogether.  Even so, Plaintiffs still have at least two ways to obtain full compensation short of an expensive (and improper) class action.  Plaintiffs can seek reimbursement from Coinbase through its informal dispute resolution process.  Or they can file in small claims court for $30.  The latter option is wholly consistent with both their User Agreements and the Dogecoin sweepstakes rules, obviating any need to decide if the rules superseded the User Agreements.

For the reasons discussed below, this class action should be dismissed in its entirety or, alternatively, Marden-Kane should be dismissed from this suit with prejudice.

**ARGUMENT**

**I.    Plaintiffs Cannot Maintain Their Representative Claims in This Court.**

Plaintiffs each purchased Dogecoin pursuant to a User Agreement, which required certain dispute resolution procedures for any dispute arising out of or relating to Coinbase Services.[3]  *See* ECF 33-7; ECF 33-8; ECF 33-10.   There can be no serious dispute that Plaintiffs' claims arise out of Coinbase Services.   Plaintiffs have never suggested otherwise.  Indeed, their alleged injury depends on Plaintiffs' use of Coinbase Services.

Under the User Agreement, disputes are to be submitted to Coinbase through a "Formal Complaint Process" for a prompt and informal resolution at minimal cost.  Claims not resolved through this expeditious 15-day process can be filed in small claims court or the AAA—at the option of the User.   The Agreement also contains a waiver of claims on a class representative basis.   *Id.*   Even though Plaintiffs' claims plainly arise out of (and certainly relate to) Coinbase Services, Plaintiffs disregarded all three requirements:  they (1) ignored the dispute resolution process; (2) filed suit in federal court; and (3) asserted class claims.   These strategic litigation choices are fatal to their claims.

**A.    The Court Should Enforce Plaintiffs' Users Agreements.**

**i.    The Court Should Enforce the Pre-Suit Resolution Procedure**

In becoming users of Coinbase Services, Plaintiffs agreed to an informal method of resolving disputes.  Specifically, Plaintiffs agreed to the following resolution process:

> **8.2 Formal Complaint Process.** If you have a dispute with Coinbase (a "Complaint"), you agree to contact Coinbase through our support team to attempt to resolve any such dispute amicably. If we cannot resolve the dispute through the Coinbase support team, you and we agree to use the Formal Complaint Process set forth below. You agree to use this process before filing any arbitration claim or small claims action. …

---

[3] Until recently, Plaintiffs consistently conceded that the "original arbitration agreements" were "just as" "valid and enforceable" as the sweepstakes rules. ECF No. 40 at 11; *see also* ECF No. 40 at 11 ("Plaintiffs do not dispute the validity of their original arbitration agreements."). Now they allege the User Agreements are "unenforceable." TAC ¶ 93.  Plaintiffs' judicial flip-flopping should be disregarded.

4

**8.2.1. Procedural Steps.** In the event that your dispute with Coinbase is not resolved [by] Coinbase Support, <u>you agree to use our Complaint form to describe your Complaint, how you would like us to resolve the Complaint</u>, and any other information related to your dispute that you believe to be relevant. …

**8.2.2. Coinbase Response. …** A Coinbase customer relations agent ("Agent") will review your Complaint … based on the information you have provided …. Within 15 business days …, the Agent will … (i) offer to resolve your complaint in the way you requested; (ii) make a determination rejecting your Complaint and set out the reasons for the rejection; or(iii) offer to resolve your Complaint with an alternative solution. …

ECF No. 33-8 at 24-25 (emphasis added).[4]

But Plaintiffs, more interested in pursuing Coinbase's billion-dollar deep pockets than a genuine resolution of their own grievances, filed a federal class action suit. Had Plaintiffs contacted Coinbase *before* filing an expensive class action lawsuit, full and complete relief could have been afforded to them. But then Plaintiffs would have no injury and thus no claims to assert on behalf of a class against Coinbase *and* Marden-Kane.

Under California law, claims filed without complying with a contract's precondition for informally resolving disputes should be dismissed. *See United Specialty Ins. Co. v. Clean & Sober Media LLC*, 2021 U.S. Dist. LEXIS 81911, at *9 (N.D. Cal. Feb. 19, 2021); *Brosnan v. Dry Cleaning Station, Inc.*, 2008 U.S. Dist. LEXIS 44678, at *2-3 (N.D. Cal. June 8, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."). Even *Bielski v. Coinbase, Inc.*, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022), notes that "[p]re-arbitration dispute procedures can … present 'laudable' mechanisms to resolve disputes informally."

Because Plaintiffs failed to submit their disputes to Coinbase for potential resolution before filing suit, all their claims should be dismissed.

---

[4] The Court may judicially notice the User Agreements, which are referenced in the TAC. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

MARDEN KANE'S MOTION TO DISMISS

1

2

### ii.     The Court Should Enforce the Arbitration Requirement

In addition to agreeing to an informal dispute resolution process before filing suit,

3     Plaintiffs also agreed to submit unresolved claims to binding arbitration provision. ECF

4     No. 33 at 2-6.  As this Court has already ruled, the User Agreements requiring arbitration

5     are valid.  ECF No. 53 at 7.  Indeed, Plaintiffs did not "dispute the validity of their original

6     arbitration agreements with Coinbase."  ECF No. 40 at 6.  And with good reason.  *See Berk*

7     *v. Coinbase, Inc.*, 840 F. App'x 914, 915 (9th Cir. 2020) (finding claims against Coinbase

8     subject to arbitration).[5]

9

10

Plaintiffs contend—and this Court has agreed—that the venue provision in the

Dogecoin sweepstakes rules (which allowed for entry by non-Coinbase users) displaced

11     the venue provision in Plaintiffs' User Agreements.  This is incorrect, for all the reasons

12     Coinbase has articulated in briefing here and in the Ninth Circuit.  In particular, *Mohamed*

13     *v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) held that a contract delegating

14     threshold questions of arbitrability to an arbitrator must be enforced even where a separate

15     venue provision providing provided for "exclusive jurisdiction" in state or federal courts

16     in San Francisco, California.  *Id.* at 1209.[6]  The Court can and should follow *Mohamed*'s

17     guidance here.

18

19

20

While the Court denied Coinbase's motion to compel arbitration, it also noted that

this case presented "a very unusual set of circumstances" and that "a different legal set of

minds [could] look[] at this factual pattern" and reach the opposite conclusion (ECF No.

21

---

22     [5] *See also Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960, at *2 (M.D. Fla. Sept. 8,

23     2021); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 158 (E.D.N.Y. 2019); *Pierre v. Coinbase, Inc.*, 2021 WL 1538015, at *1 (N.Y. Sup. Ct. Apr. 14, 2021).

24     [6] *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 3721197 (C.D. Cal. July 22, 2014), on which

25     the Court relied in denying the motion to compel arbitration (ECF No. 53 at 8) predates *Mohamed* and is factually distinguishable.  *Ingram* cited out-of-circuit caselaw that did not pertain to a

26     competing forum selection clause.  2014 WL 3721197, at *3.  Rather, in *Ingram*, the parties' new agreements—on the same issues—contained a merger clause reflecting the parties' intent to

27     entirely supersede their earlier agreement to arbitrate, as well as a provision releasing all claims between the parties arising from their business relationship up to that date.  *See id.* at *2–3.

28

6

78 at 14:17-15:5).  Moreover, since the Court's decision, in arguing new and inconsistent theories for avoiding their arbitration, Plaintiffs have characterized the sweepstakes rules as a three-party agreement.  Appellees' Brief in Opp. at 4, Ninth Circuit, ECF No. 22 (arguing Plaintiffs "could follow their original User Agreements with Coinbase" or "they could follow their . . . Official Rules agreements with Coinbase *and* Marden-Kane.").

A *three*-party agreement cannot, as a matter of law, supersede a *two*-party agreement between Coinbase and each Plaintiff.  *See* 17A C.J.S. Contracts § 580 ("Before one contract is merged in another [or found to 'replace the former agreement[]' in some respect], the last contract must be between *the same parties as the first*, and must embrace the same subject matter, *and be inconsistent with one another*.") (emphasis added); *Spark Connected, LLC v. Semtech Corp.*, 2020 WL 6118575, at *5 (E.D. Tex. Oct. 16, 2020) (applying California contract law and holding that later executed separation agreement did not supersede earlier purchase agreement because they "concern[ed] different subject matter and involve[d] different parties").

Accordingly, the Court can and should dismiss and require arbitration of Plaintiffs' claims, particularly given Plaintiffs' shifting theories.  Although the Court may not do so, this motion is filed to preserve any and all rights that Marden-Kane has under the Federal Arbitration Act.  *See Morgan v. Sundance, Inc.*, 2022 U.S. LEXIS 2514, at *1, *4, __ S. Ct. __ (May 23, 2022) (addressing arbitration request made "too late" after defendant initially litigated "as if no arbitration agreement existed").

## B.  Alternatively, the Court Should Enforce the Sweepstakes Rules.

Trying to avoid their agreement to arbitrate disputes, Plaintiffs insist that the Court enforce the Dogecoin sweepstakes rules.  Just not *all* the rules.  Paragraph 10 of the rules provides: "Claims may not be resolved through any form of class action."  TAC ¶ 94.  Citing *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), Plaintiffs allege that the class action waiver is unenforceable.  *Id.*  Not so.

First, in *AT&T Mobility LLC v. Concepcion*, the U.S. Supreme Court abrogated *Discover Bank* in the context of a class waiver coupled with an arbitration requirement. 563 U.S. 333, 352 (2011).  That is precisely the case here—Plaintiffs waived their right to pursue class claims in agreeing to arbitrate instead.  Specifically, Plaintiffs agreed to litigate disputes on an "individual basis" and "expressly waive[d] the right "to participate in a class action lawsuit or class-wide arbitration."  ECF 33-7 at 12.

Plaintiffs have argued, successfully, that the *venue provision* in the sweepstakes rules (state or federal court) supersedes the *venue provision* in the Plaintiffs' Coinbase User Agreements (small claims court or arbitration).  But nothing in the sweepstakes rules conflicted with or purported to undo the Plaintiffs' separate, enforceable waiver of seeking relief on a class basis.  Quite the contrary, the rules reiterated and reinforced the obligation to pursue relief on an individual basis: "Claims may not be resolved through any form of class action."  TAC ¶ 94.  A venue provision in the Dogecoin sweepstakes rules did not and legally could not undo the earlier, valid contractual waiver of class claims.

Moreover, even *Discover Bank* does "not hold that all class action waivers are necessarily unconscionable."  36 Cal.4th at 162.  Rather, only when "the waiver is found in a consumer contract of adhesion" *and* the "disputes between the contracting parties predictably involve small amounts of damages" does California deem otherwise valid contractual waiver to be unconscionable.  *Id.*  Just weeks later, the California Supreme Court reiterated that class waivers are not per se unconscionable, focusing rather on whether the waiver "make[s] it very difficult for those injured by unlawful conduct to pursue a legal remedy."  *Gentry v. Superior Court*, 42 Cal. 4th 443, 457 (2007).

Here, the sums sought by Plaintiffs are neither predictable nor small.  Rather than seeking recovery of the $2.99 transaction fees paid to purchase Dogecoin, Plaintiffs seek sums between $100 and $220.  TAC ¶¶ 27-34.  In adding a CLRA claim, Plaintiffs no doubt sought to obtain actual damages of at least $1000 as well as punitive damages.  Cal. Civ. Code § 1780(a)(1), (4).  Whether several hundred dollars or $1000-plus-punitives, these are not the "small" sums contemplated by California cases refusing to enforce a class

action waiver.  The possibility of recovering hundreds of dollars is sufficient incentive to pursue an individual remedy, particularly when Coinbase has agreed to pay the costs of arbitration.  *AT&T Mobility*, 563 U.S. at 352 (noting "incentive for the individual prosecution of meritorious claims that are not immediately settled" and that participation in a class action "'could take months, if not years, and … may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars'") (citation omitted).

Moreover, it is not "very difficult" at all for Plaintiffs to pursue a remedy for their alleged losses.  Plaintiffs can seek damages in small claims court for a filing fee of $30, $50 or $75, which can be recovered if successful.[7]  Alternatively, Plaintiffs can pursue a claim in arbitration with Coinbase paying all costs—*win or lose*—in excess of the filing fee.  *See* ECF 33-7 at 33 (noting Coinbase will reimburse all fees or costs which exceed those to proceed in court).

This Court has decided that as to claims arising out of the Dogecoin promotion, the sweepstakes rules apply.  It should simply enforce *all* the rules.  Plaintiffs will not be left without the means to pursue full relief if it does.

## II.     Plaintiffs' New Allegations Do Not Support an Unlawful Lottery Claim.

Plaintiffs allege the Dogecoin sweepstakes constitutes an illegal lottery under California law. TAC ¶¶ 67-74, 103-109.  As this Court has recognized, a sweepstakes is not unlawful if it has a free method of entry.  ECF No. 53 (Jan. 11, 2021 Order) at 11-12; *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404 (E.D. Cal. 1997) ("California courts have consistently held that business promotions are not lotteries so long as tickets to enter are not conditioned upon a purchase.").

In considering the lottery claim pled in the Second Amended Complaint, the Court concluded that "[a]lthough Plaintiffs may not have been aware of it when they made a trade of Dogecoins, they were not actually required to trade Dogecoins in order to enter the sweepstakes and have a chance to win."  ECF No. 53 at 13:1-3.

---

[7] *See* https://www.courts.ca.gov/documents/filingfees.pdf.

Marden Kane's Motion to Dismiss

"Because California penal statutes are construed strictly," the Court noted, "and because no California court has held that being unaware of the free method of entry is sufficient to demonstrate the required consideration, the Court [found] that Plaintiffs have not and cannot allege a violation of California Penal Code § 320." *Id.* at 3-5.

Trying to undo this finding, Plaintiffs' fourth complaint alleges that not only were they *subjectively* unaware of the free method of entry, "Defendants" *objectively* concealed the alternative method of entry. TAC ¶ 74. However, Plaintiffs do not allege that there was no free, alternative method of entry that sweepstakes participants could use. Nor can they so allege. Plaintiffs' new unlawful lottery claim—peppered with allegations of wrongful concealment—does not change the dispositive fact that there was a free, alternative method that participants could (and did) use to enter the Dogecoin sweepstakes.

The Court should once again dismiss Plaintiffs' unlawful lottery claim, and all other claims to the extent premised on the alleged lottery.

## III. Plaintiffs' Jumbled Allegations Against "Defendants" Generally Cannot Support Their Claims Against Marden-Kane Specifically

### A. Plaintiffs Fail to Attribute Specific Conduct to Marden-Kane.

In a voluminous complaint with 162 paragraphs, "MKI" is mentioned in just eight. *See* TAC ¶¶ 23, 52, 56, 57, 104, 117, 129, 131. Instead, Plaintiffs allege various theories of liability based on conduct attributed to "Defendants" generally. But "grouping multiple defendants together in a broad allegation" is legally insufficient to support Plaintiffs' claims against Marden-Kane. *Yu v. Design Learned, Inc.*, 2016 U.S. Dist. LEXIS 54374, at *12-13 (N.D. Cal. Apr. 22, 2016) (granting motion to dismiss). Particularly so, when it is clear that Plaintiffs' core liability theory—that the advertising and on-line entry process of the Dogecoin sweepstakes (as opposed to the rules themselves) misled Plaintiffs—does not apply to Marden-Kane. *See, e.g., id.* ¶ 91 (alleging the "NO PURCHASE NECESSARY" disclaimer was "affirmatively false and materially misleading, *when read in the full context of [the] solicitation materials*") (emphasis added); *see also id.* ¶¶ 83, 84, 87, 91.

Throughout the Third Amended Complaint, conduct clearly attributable to Coinbase alone—evidenced by the snapshots of Coinbase's website—is attributed to "Defendants" generally.  *See, e.g.*, TAC ¶ 79 ("Defendants buried the same faint, fine-print text at the bottom of their "Opt-in" and "Make a trade" webpages and mobile screens."; referring to screenshot of *Coinbase* website).



In many cases, Plaintiffs simply contradict themselves.  For example, they allege that a "large, bright blue button" in "*Defendants'* email solicitations" misled Plaintiffs when just one paragraph earlier they allege that "*Coinbase* directly emailed Plaintiffs and millions of its users."  *Id.* ¶¶ 7, 8 (emphasis added).  Such contradictory allegations only highlight the impropriety of lumping two separate entities together rather than delineating the conduct for which each company is supposedly responsible.

Failing to distinguish between "Defendants" is just one pleading defect in the TAC. To allege false advertising, Plaintiffs bear a heightened burden of pleading with particularity.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying heightened pleading standard to UCL and CLRA claims).  A plaintiff alleging false advertising under the UCL or CLRA "must 'set forth *more* than the neutral facts necessary to identify the transaction.'"  *Id.* at 1124 (emphasis in original; citation omitted). Who-what-when-where-and-how must also be alleged.  *Id.*

This requirement serves three important purposes: (1) deterring the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) protecting the reputation of those charged with wrongdoing; and (3) preventing the "enormous social and economic costs [of litigation] absent some factual basis." *Id.* at 1125 (internal quotations omitted). *Id.* at 1125. But Plaintiffs do not (and cannot) allege the necessary "who, what, when, where, and how" to assert that *Marden-Kane* is liable to Plaintiffs for *Coinbase's* advertising materials.[8] *Id.* at 1126 (citation omitted).

For example, Plaintiffs do not and cannot allege that Marden-Kane had any control over Coinbase's advertising or the placement of the rules in that advertising.[9] Nor can Plaintiffs allege that Marden-Kane had any control over Coinbase's on-line process for opting-in to the sweepstakes. Indeed, Plaintiffs cannot allege that Marden-Kane exercised any control *whatsoever* over Coinbase—a billion-dollar company with its own extensive, in-house legal team.

Absent any specific factual allegations against Marden-Kane, including the requisite who-what-when-where-and-how, all claims against it should be dismissed.

**B.      Even Under Plaintiffs' Muddled Allegations, The Sixth And Seventh CLRA Claims Against Marden-Kane Fail As A Matter Of Law.**

Plaintiffs' sixth and seventh claims for relief both allege liability under the CLRA, one directly and the other indirectly under § 17200. Both claims fail as a matter of law against Marden-Kane; it engaged in no transactions with, and made no representations to, Plaintiffs or any consumer. Moreover, Marden-Kane provided no "goods or services" that it could "correct, repair, replace, or otherwise rectify," even if Plaintiffs had provided the

---

[8] Whatever claims Marden-Kane and Coinbase may have vis-à-vis each other is an issue for another suit, another day, in another San Francisco courtroom.

[9] Plaintiffs' allegation that "MKI, individually and in collaboration, designed, created, prepared, structured, tested, reviewed, analyzed and disseminated via the Internet digital advertisements" (TAC ¶ 131) not only lacks the required specificity, but also lacks any evidentiary support whatsoever. This allegation, among others, will be the subject of a Rule 11 motion if not withdrawn. However, it is anticipated Plaintiffs will not rely on such allegations without "evidentiary support" in opposing this motion.

proper pre-suit notice, which they did not.  Lastly, even if Plaintiffs could allege a CLRA claim against Marden-Kane, which it cannot, no affidavit supports a claim that venue is proper in California, rather than New York.

### i.  Plaintiffs Cannot Allege Marden-Kane Made Representations To Consumers In Any Transaction for Goods or Services

The CLRA prohibits "any person in a transaction" from "[r]epresenting that [it] confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Cal. Civ. Code § 1770(a)(14).  The statute applies only to actual or intended transactions for the sale or lease of "goods or services."  *Id.* § 1770(a).[10]  And, as the statute's title (*Consumer* Legal Remedies Act) suggests, the allegedly wrongful conduct must be directed at consumers.

Plaintiffs do not and allege that Marden-Kane made any *representation* to a consumer or engaged in any *transaction* with a consumer.  Indeed, Plaintiffs' allegations make clear that the transactions at issue (purchase of Dogecoin) were with Coinbase and the allegedly fraudulent representations were made by Coinbase.  *See, e.g.*, TAC ¶ 7 ("Coinbase directly emailed Plaintiffs and millions of its users, and also displayed to them on its website and mobile app, advertisements of a $1.2 million Dogecoin 'sweepstakes.'"); *id.* ¶ 30 ("Plaintiff Martin immediately *went on Coinbase* and bought Dogecoins she would not otherwise have purchased.") (emphasis added).  Because Marden-Kane did not engage in any *transaction* with a consumer, in which it made *representations* to any consumer, the CLRA claim against it should be dismissed as a matter of law.

The CLRA claim can be dismissed for two further, independent reasons though.

---

[10] The "underlying 'good' in a cryptocurrency exchange is not a 'tangible chattel'" within the meaning of the CLRA, and the services offered by a cryptocurrency exchange such as Coinbase are merely "ancillary" to the intangible good.  *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *24 (N.D. Cal. Jan. 19, 2022); *see also Reeves v. Niantic, Inc.*, 2022 U.S. Dist. LEXIS 97140, ___ F.Supp.3d ___ (N.D. Cal. May 31, 2022).

1

2

### ii. Because Plaintiffs Failed To Provide Proper Pre-Suit Notice, Their CLRA Damages Claim Should Be Dismissed.

The CLRA claim (indeed, all claims) should be dismissed for a separate reason—Plaintiffs failed to afford either Coinbase or Marden-Kane the opportunity to remedy their alleged injuries before filing suit.

To seek damages under the CLRA, a plaintiff must provide pre-suit notice "of the particular alleged violations of Section 1770 [and] [d]emand that the person correct, repair, replace, or otherwise rectify the goods or services." Cal. Civ. Code § 1782 (emphasis added). Particularity is "'important because otherwise a letter recipient may not know how to correct or rectify the goods to comply with the law in the allotted period.'" *Peacock v. The 21st Amendment Brewery Café, LLC*, No.17-CV-01918-JST, 2018 U.S. Dist. LEXIS 7537, at *22 (N.D. Cal. Jan. 17, 2018) (citation omitted). The purpose of this requirement is to "facilitate pre-complaint settlements of consumer actions wherever possible." *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 41 (1975). *Outboard Marine* emphasized that "literal application of the notice provisions" is the only way to accomplish the CLRA's purposes. *Id.* at 40-41.

Plaintiffs' belated CLRA notice lacked particularity both as to how Marden-Kane was responsible for Coinbase's advertising, and as to the sum of damages demanded by Plaintiffs. Wytsma Decl. Ex. 1. And it demanded nonspecific relief for an uncertified class that counsel does not represent. *Id.* As noted in Marden-Kane's response, without detailed information as to Plaintiffs' purchases of Dogecoin—which it lacked due to Coinbase's financial privacy restrictions—Marden-Kane could offer no cure. *Id.* Ex. 2. But Plaintiffs never provided the information needed to "correct, repair, replace, or otherwise rectify" their complaints. Wytsma Decl. ¶ 3. As such, Marden-Kane did not and could not know what Plaintiffs "expected [it] to do" about their alleged injuries and damages claim. *Peacock*, 2018 U.S. Dist. LEXIS 7537, at *24.

Sending a non-specific demand only *after* filing a federal class action comports with neither the letter nor the spirit of the CLRA, and undermines the statute's goal of promoting

14

early, out-of-court settlements.[11]  And permitting amendment to circumvent the pre-suit failure does "not rectify the situation."  *Sapan v. Lexington Mortg. Corp*., 2017 U.S. Dist. LEXIS 63069, *5 (C.D. Cal. Apr. 17, 2017).  "Strict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation."  *Laster v. T-Mobile USA, Inc*., 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005). Plaintiffs' CLRA claim for damages should be dismissed with prejudice.[12]  *See id*. ("[T]he only relief warranted here … is dismissal" without leave to amend); *Waller v. Hewlett-Packard Co*., 2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 16, 2011) (dismissing with prejudice).  "Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement."  *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).

Here, however, it is clear here that the goal of this lawsuit was not to seek prompt resolution of individual injuries but rather to ensure that pre-suit individual compensation did not preclude class claims from proceeding (with the possibility of statutory and punitive damages, as well as legal fees and costs).  *See* ECF No. 78 at 14:10-11 (Apr. 22, 2022 Hrg. Tr.) ("[W]hile plaintiffs might get relief, [but] then there would be nothing left in this Court if the plaintiffs get relief in arbitration.").

Because Plaintiffs failed to afford Marden-Kane the chance to rectify specifically articulated harms, the Court should dismiss the CLRA claim.  *See Cattie,* 504 F. Supp. 2d at 950 (dismissing CLRA damages claim with prejudice because plaintiff "claimed for damages, then gave notice, then amended her complaint").

---

[11] Coinbase stipulated to Plaintiffs adding a CLRA damages claim after filing suit without first providing notice.  ECF No. 32.  But Marden-Kane never so stipulated.

[12] There is an alternative line of cases in this Circuit holding that when pre-suit notice is not provided, a CLRA claims should be dismissed *without* prejudice.  Under either line, claims which improperly disregard the statute's pre-suit resolution process are dismissed.

### iii. Because Plaintiffs Fail to Allege Actual, Imminent Harm, Their CLRA Injunctive Relief Claim Should Be Dismissed.

While the CLRA permits pre-suit notice for injunctive relief, Plaintiffs' allegation fail to support their injunctive relief claim. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized … actual and imminent … [and] fairly traceable to the challenged action of the defendant." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Peacock*, 2018 U.S. Dist. LEXIS 7537, at *27 ("Injunctive relief is not available without a showing of an actualized, imminent threat that the same harm will be suffered again.").

Plaintiffs do not allege that they face an actual or imminent threat of future harm. Setting aside that the Dogecoin sweepstakes ended a year ago, Plaintiffs do not allege that they have active Coinbase accounts or continue to use Coinbase's services. Because no actual, imminent threat has been—or can be—alleged by Plaintiffs, their claim for injunctive relief under the CLRA should be dismissed. *See Peacock*, 2018 U.S. Dist. LEXIS 7537, at *27 (dismissing injunctive relief claim under CLRA).

### iv. Plaintiffs Failed To File The Requisite Affidavit Showing That This Is A Proper Place For Trial Against Marden-Kane.

In filing a claim under Civil Code § 1780(a), a plaintiff must file "an affidavit stating facts showing that the action has been commenced in a … proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." Cal. Civil Code § 1780(d). Marden-Kane does not "reside[]" in San Francisco County; nor does it have a "principal place of business" here. *Id.* And any of its conduct relevant to the Dogecoin sweepstakes occurred in New York. Plaintiffs cannot allege otherwise. For this reason, too, the CLRA claim against Marden-Kane should be dismissed.

## IV. Plaintiffs' Demand for Injunctive Relief Should Be Dismissed or Stricken

For standing to assert a claim for injunctive relief, Plaintiffs must demonstrate they are "realistically threatened" by repetition of the alleged misconduct. *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 109 (1983).  Because Plaintiffs cannot allege actual, imminent harm, Plaintiffs' claims for injunctive relief under *any* statute should be dismissed or stricken. *See id.* at 110 (affirming dismissal of count for injunctive relief where plaintiff could not allege that "he was likely to suffer future injury" from an unlawful LAPD chokehold); *Young v. Oakland Unified Sch. Dist.*, 2020 WL 6684844, at *1 (N.D. Cal. Nov. 12, 2020) (striking request for injunctive relief for lack of standing).

## CONCLUSION

Attempting to absolve themselves of any obligations under their User Agreements, Plaintiffs insist that they submitted their claims in court because the sweepstakes rules so required.  But if in filing suit *the day after the sweepstakes ended* Plaintiffs truly believed they were required to file their claims in a California court because the rules so required, then surely they also knew that those same rules provided a free, alternative method of entering the Dogecoin sweepstakes.  And if the Plaintiffs want the sweepstakes rules enforced, then the Court should enforce *all* the rules.  Plaintiffs can't have it both ways; litigation is not a nose of wax to be twisted this way and that.

The simple fact is that Plaintiffs sued Marden-Kane to avoid their arbitration obligations, as their arguments have since borne out.  But Marden-Kane had no control over how Coinbase advertised the Dogecoin sweepstakes rules which—with their large, all-caps 'NO PURCHASE NECESSARY' disclosure—did not violate California law in any case.  Plaintiffs simply cannot tie its liability theories—premised on big blue buttons, fine print disclosures, and other Coinbase advertising and emails—to Marden-Kane with any specific, truthful allegations.

The Court should dismiss Marden-Kane from this action altogether.

Dated: June 9, 2022                           Respectfully submitted,

VENABLE LLP

/s/ *Laura A. Wytsma*
Laura A. Wytsma
Attorneys for Defendant Marden-Kane, Inc.

MARDEN KANE'S MOTION TO DISMISS