COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
ELIZABETH SÁNCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER,<br><br>        Plaintiffs,<br><br>    v.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>        Defendants. | Case No. 3:21-cv-04539-SK<br><br>**COINBASE, INC.'S JOINDER IN DEFENDANT MARDEN-KANE, INC.'S MOTION TO COMPEL ARBITRATION AND, ALTERNATIVELY, COINBASE, INC.'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date:      August 22, 2022<br>Time:      9:30 a.m.<br>Courtroom: C |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ......................................................................................................... 2

II.     BACKGROUND ............................................................................................................ 3

     A.      Coinbase's Platform and the Dogecoin Sweepstakes ............................................ 3

     B.      Coinbase's User Agreement .................................................................................... 3

     C.      Relevant Proceedings ............................................................................................. 4

III.    LEGAL STANDARDS ................................................................................................... 4

IV.     COINBASE JOINS MARDEN-KANE'S MOTION TO COMPEL
      ARBITRATION, WHICH SHOULD BE GRANTED ...................................................... 6

     A.      Plaintiffs have conceded in Ninth Circuit briefing that the User Agreement
         and the Official Rules involve *different* contracting parties, precluding any
         supersession of the User Agreement by the Official Rules .................................... 6

     B.      Under the Ninth Circuit's decision in *Mohamed*, the Official Rules' forum
         selection clause does not disrupt the User Agreement's clear and
         unmistakable delegation of arbitrability questions to the arbitrator ...................... 7

     C.      Arbitration should be compelled because the User Agreement is fully
         integrated and the Official Rules did not amend or supersede the User
         Agreement. .............................................................................................................. 9

     D.      The User Agreement is not unconscionable ......................................................... 10

V.      ALTERNATIVELY, THE COURT SHOULD ENFORCE THE CLASS ACTION
      WAIVER AND DISMISS THIS CASE FOR LACK OF SUBJECT-MATTER
      JURISDICTION ............................................................................................................ 11

     A.      Plaintiffs agreed to the class action waiver in the Official Rules. ....................... 12

     B.      Class action waivers are enforceable under binding U.S. Supreme Court
         precedent. .............................................................................................................. 12

     C.      Plaintiffs do not adequately plead that the class action waiver in the
         Official Rules is unconscionable. .......................................................................... 12

VI.     ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ........ 15

     A.      Plaintiffs again fail to adequately allege that the Dogecoin Sweepstakes
         was an illegal lottery (claims 1, 2, and 6). ........................................................... 15

     B.      The CLRA does not apply to cryptocurrencies or cryptocurrency exchange
         platforms (claims 6 and 7) .................................................................................... 17

VII.    THE COURT SHOULD DISMISS PLAINTIFFS' REQUESTS FOR
      INJUNCTIVE RELIEF OR, ALTERNATIVELY, STRIKE THOSE REQUESTS. ....... 18

VIII.   CONCLUSION ............................................................................................................ 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

**Page(s)**

**Cases**

*Archer v. Carnival Corp.*,
   No. 20-cv-04203-RGK-SK, 2021 U.S. Dist. LEXIS 201310 (C.D. Cal. May
   14, 2021) ........................................................................................................... 11

*Arguelles–Romero v. Super. Ct.*,
   184 Cal. App. 4th 825 (2010) ......................................................................... 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 5

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018) ........................................................................... 4, 5

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ......................................................................................... 12, 13

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 5

*Berk v. Coinbase, Inc.*,
   840 F. App'x 914 (9th Cir. 2020) ....................................................................... 11

*Berry v. Am. Express Publ'g, Inc.*,
   147 Cal. App. 4th 224 (2007) ............................................................................. 18

*Bielski v. Coinbase, Inc.*,
   No. C 21-07478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) ................... 11

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995),
   59 F.3d 815 (9th Cir. 1995) ................................................................................ 20

*Cal. Gasoline Retailers v. Regal Petroleum Corp.*,
   50 Cal. 2d 844 (1958) ..................................................................................... 15, 16

*Carter v. Rent-A-Center, Inc.*,
   718 F. App'x 502 (9th Cir. 2017) ....................................................................... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................................. 5

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .............................................................................................. 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................ 19

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .............................................................................. 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Davis v. Einstein Noah Rest. Grp., Inc.*,
    No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23, 2019) ....................................9

*Dillion v. BET Info. Sys., Inc.*,
    No. 18-cv-04717-JST, 2019 WL 12338059 (N.D. Cal. Feb. 19, 2019) ...................................8

*Discover Bank v. Superior Court*,
    113 P.3d 1100 (Cal. 2005) ....................................................................................... 12, 13, 14

*Doe v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ..............................................................................18

*Dunn v. FastMed Urgent Care PC*,
    424 P.3d 436 (Ariz. Ct. App. 2018) .....................................................................................7

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy,*
    *Inc.*, 510 U.S. 517 (1994) ....................................................................................................6

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) ...............................................................................18

*Garcia v. ISS Facility Servs., Inc.*,
    855 F. App'x 338 (9th Cir. 2021) ......................................................................................10

*Grayson v. Cnty. of Marin*,
    No. 14-CV-05225-JST, 2015 WL 720830 (N.D. Cal. Feb. 18, 2015) ................................19

*Hash v. Kanaan*,
    No. 17-CV-01663-SK (PR), 2018 WL 9801576 (N.D. Cal. Jan. 4, 2018) (Kim,
    J.) ........................................................................................................................................20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ...........................................................................................................5

*Hotel Emps. & Rest. Emps. Int'l Union v. Davis*,
    21 Cal. 4th 585 (1999) ................................................................................................ 15, 16

*Ingram Micro Inc. v. Signeo International, Ltd.*,
    No. SACV 13–1934–DOC, 2014 WL 3721197 (C.D. Cal. July 22, 2014) ...........................9

*Iskanian v. CLS Transp. L.A., LLC*,
    59 Cal. 4th 348 (2014) ........................................................................................................12

*Jacksen v. Chapman Scottsdale Autoplex, LLC*,
    No. CV-21-00087-PHX-DGC, 2021 WL 3410912 (D. Ariz. July 21, 2021) ......................8

*Jeong v. Nexo Fin. LLC*,
    No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

*Kanno v. Marwit Cap. Partners II, L.P.*,
   18 Cal. App. 5th 987 (2017) ........................................................................................ 10

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ....................................................................................... 20

*Masterson v. Sine*,
   68 Cal. 2d 222 (1968) ................................................................................................. 10

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ....................................................................................... 19

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................................ 2, 7, 8, 9

*Mou v. SSC San Jose Operating Co*,
   415 F. Supp. 3d 918 (N.D. Cal. 2019) ......................................................................... 19

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ......................................................................................... 5

*Olmos v. Harbor Freight Tools USA, Inc.*, ,
   18-CV-04986-SK, 2018 WL 8804820 (N.D. Cal. Dec. 24, 2018) .................................. 20

*Peter v. DoorDash,Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ........................................................................... 5

*Peterson v. Minidoka Cnty. Sch. Dist. No. 331*,
   118 F.3d 1351 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir. 1997) ....................... 8

*Pierre v. Coinbase, Inc.*,
   No. 159761/20, 2021 WL 1538015 (N.Y. Sup. Ct. Apr. 14, 2021) ................................ 11

*Provencher v. Dell, Inc.*,
   409 F. Supp. 2d 1196 (C.D. Cal. 2006) ........................................................................ 14

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ......................................................................................... 6

*Reeves v. Niantic, Inc.*,
   21-cv-05883-VC, 2022 WL 1769119 (N.D. Cal. May 31, 2022) .................................... 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ......................................................................................... 7

*Saldivar v. Insight Global, LLC*,
   No. 17-cv-05981 NC, 2018 U.S. LEXIS 119338 (N.D. Cal. July 16, 2018) .................... 11

*Sanchez v. Valencia Holding Co.*,
   61 Cal. 4th 899 (2015) ........................................................................................... 12, 13

*Scott v. AT&T Inc.*,
   19-CV-04063-SK, 2021 WL 2839959 (N.D. Cal. Feb. 16, 2021) (Kim, J.) ......................... 20

*Senza-Gel Corp. v. Seiffhart*,
   803 F.2d 661 (9th Cir. 1986)................................................................................................ 21

*Spark Connected, LLC v. Semtech Corp.*,
   No. 4:18-cv-748-KPJ, 2020 WL 6118575 (E.D. Tex. 2020)................................................. 7

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016)................................................................. 5

*Stiner v. Brookdale Senior Living, Inc.*,
   810 F. App'x 531 (9th Cir. 2020) ...................................................................................... 10

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989)............................................................................................. 5

*Strozier v. Coinbase, Inc.*,
   No. 651451/2018, 2018 N.Y. Misc. LEXIS 14299 (Sup. Ct., N.Y. Cnty. Sept.
   10, 2018) ......................................................................................................................... 11

*Sultan v. Coinbase, Inc.*,
   354 F. Supp. 3d 156 (E.D.N.Y. 2019) ................................................................................ 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)........................................................................................................... 19

*Tarverdiyeva v. Coinbase Global, Inc.*,
   No: 8:21-cv-1717-MSS-SPF, 2021 WL 4527960 (M.D. Fla. Sept. 8, 2021) ....................... 11

*Taylor v. Shutterfly, Inc.*,
   No. 18-cv-00266-BLF, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ................................. 8

*Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979)............................................................................................... 5

*Young v. Oakland Unified Sch. Dist.*,
   20-CV-00685-VC, 2020 WL 6684844 (N.D. Cal. Nov. 12, 2020) ...................................... 19

**Statutes**

9 U.S.C. § 2 ............................................................................................................................. 5

Cal. Bus. & Prof. Code
   § 17200 ........................................................................................................................... 17
   § 17200 ........................................................................................................................... 17
   § 17539.15 ...................................................................................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

Cal. Civ. Code
   § 1750 .................................................................................................................... 17
   § 1761(a) ............................................................................................................... 17
   § 1761(b) ............................................................................................................... 17
   § 1761(d) ............................................................................................................... 17
   § 1856(a) ............................................................................................................... 10
   § 1856(b) ............................................................................................................... 10

Cal. Penal Code § 320 ................................................................................................... 17

Class Action Fairness Act (CAFA) .................................................................. 2, 11, 14

Consumer Legal Remedies Act (CLRA) ............................................................. *passim*

Federal Arbitration Act (FAA) ................................................................... 4, 5, 12

**Other Authorities**

17A C.J.S. Contracts § 580 ............................................................................................ 7

"Tangible," adj., Lexico.com (Oxford),
   https://www.lexico.com/en/definition/tangible (last visited June 9, 2022) ............................ 18

Fed. R. Civ. P.
   Rule 12(b)(1) ................................................................................. 5, 11, 15, 19
   Rule 12(b)(6) ............................................................................................. 4, 5
   Rule 12(f) ................................................................................... 6, 15, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

**NOTICE OF JOINDER; NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 22, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Coinbase, Inc. will and hereby does join in Defendant Marden-Kane, Inc.'s motion to compel individual arbitration of Plaintiffs' claims.

Alternatively, Coinbase moves the Court to (1) enforce the class action waiver in the Official Rules for the Dogecoin Sweepstakes ("Official Rules") and dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1); (2) dismiss portions of the Third Amended Complaint ("TAC") (ECF No. 83) for failure to state a claim under Rule 12(b)(6); and (3) dismiss Plaintiffs' requests for injunctive relief for lack of standing under Rule 12(b)(1) or strike those requests under Rule 12(f). This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and oral argument of counsel.

**STATEMENT OF RELIEF SOUGHT**

Coinbase respectfully joins Marden-Kane's request for an order compelling arbitration of Plaintiffs' claims. Alternatively, Coinbase requests that the Court (1) enforce the class action waiver in the Official Rules and dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1); (2) dismiss of portions of the TAC with prejudice under Rule 12(b)(6); and (3) dismiss Plaintiffs' requests for injunctive relief for lack of standing under Rule 12(b)(1) or strike those requests under Rule 12(f).

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Should the Court compel arbitration of this dispute by granting Marden-Kane's motion to compel, in which Coinbase joins?

2.  Should the Court enforce the binding class action waiver in the Official Rules for the Coinbase Dogecoin Sweepstakes and dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1)?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

COINBASE'S JOINDER
AND MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

3.   Should the Court dismiss portions of the TAC under Rule 12(b)(6) for failing to state a claim upon which relief can be granted?

4.   Should the Court dismiss Plaintiffs' requests for injunctive relief for lack of standing under Rule 12(b)(1), or alternatively, strike Plaintiffs' requests for injunctive relief under Rule 12(f)?

## I.   INTRODUCTION

Plaintiffs are former Coinbase users who agreed to arbitrate their claims. Although the Court previously denied Coinbase's motion to compel arbitration, Coinbase joins in Defendant Marden-Kane, Inc.'s motion to compel arbitration, and respectfully submits that the Court should enforce the parties' arbitration agreement, especially in light of Plaintiffs' new admissions. Plaintiffs have now taken a position before the Ninth Circuit—that the User Agreement and the Official Rules do *not* involve the same parties—that undermines the arguments for arbitration that Plaintiffs previously presented to this Court and on which this Court relied. Additionally, binding Ninth Circuit case law not considered by the Court in its previous order requires that the Court compel arbitration, notwithstanding the forum selection clause in the Official Rules. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016).

Alternatively, the Court should grant Coinbase's motion to dismiss the TAC. To begin, the Court should enforce the class action waiver in the Official Rules, which bars Plaintiffs from bringing a class action in any forum, and thus dismiss this case for lack of subject-matter jurisdiction, as Plaintiffs' sole claimed basis for federal jurisdiction is the Class Action Fairness Act ("CAFA"). Additionally, several of Plaintiffs' claims are subject to dismissal on the merits without leave to amend. First, the Court previously dismissed Plaintiffs' lottery claims, finding that Plaintiffs "have not *and cannot* allege a violation" of California's lottery laws because participants could have entered the Dogecoin Sweepstakes for free, rendering it a lawful sweepstakes, not an illegal lottery. ECF No. 53 at 13 (emphasis added) (dismissing claim 1 in full, and claims 2 and 6 to the extent they were premised on a violation of lottery laws). The TAC fails to cure this fundamental flaw. Second, as other courts have recognized, the Consumer Legal Remedies Act ("CLRA")—which applies only to "tangible goods" and related "services"—does

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

not apply to virtual currencies or exchange platforms, including cryptocurrencies like Dogecoin and cryptocurrency exchanges like Coinbase. This Court should reach the same result and dismiss Plaintiffs' CLRA claims (claims 6 and 7). Finally, the Court should dismiss or strike Plaintiffs' requests for injunctive relief for lack of standing because none of the challenged practices are ongoing and there is no risk of future harm.

## II.    BACKGROUND

### A.    Coinbase's Platform and the Dogecoin Sweepstakes

Coinbase operates one of the largest cryptocurrency exchange platforms in the United States. *See generally* TAC ¶¶ 1–17, 27–51; *see also* Mot. to Compel Arb. and to Dismiss, ECF No. 33 at 2. Its users can purchase, sell, and conduct financial transactions using digital currencies like Bitcoin, Ethereum, Litecoin, and Dogecoin. TAC ¶ 45. As explained in Section II.B below, each Plaintiff created a user account on Coinbase's platform. As part of the signup process, users must click a checkbox that requires them to agree to Coinbase's User Agreement, which contains an arbitration provision. ECF No. 33 at 2–3. Each Plaintiff also participated in Coinbase's Dogecoin Sweepstakes, which offered participants the opportunity to win prizes of up to $1,200,000 in Dogecoin. TAC ¶ 6. Each Plaintiff was presented with clear and conspicuous disclosures indicating that they could participate in the Dogecoin Sweepstakes by (1) opting in and trading Dogecoin on Coinbase's platform or (2) entering for free by mailing an index card with their contact information. *Id.* ¶¶ 27–36 & Ex. A at 3–4. These Plaintiffs all chose to enter by trading Dogecoin.

### B.    Coinbase's User Agreement

As Coinbase explained in its previous motion, each Plaintiff agreed to the Coinbase User Agreement, which contains a valid, binding arbitration provision. ECF No. 33 at 2–6. The version of the User Agreement to which Plaintiff Suski agreed stated: "you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis[.]" *Id.* at 4. Likewise, the version to which Plaintiffs Martin, Calsbeek, and Maher agreed stated: "you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis." *Id.* at 5.

### C.   Relevant Proceedings

Coinbase previously moved to compel arbitration and, alternatively, to dismiss Plaintiffs' claims under Rule 12(b)(6). ECF No. 33. The Court denied Coinbase's motion to compel arbitration (ECF No. 53), but noted that this case presented "a very unusual set of circumstances" and that "a different legal set of minds [could] look[] at this factual pattern" and reach the opposite conclusion (ECF No. 78 at 14:17–15:5). The Court also granted Coinbase's motion to dismiss Plaintiffs' lottery claims with leave to amend, finding that the Dogecoin Sweepstakes was not a lottery because participants could enter for free, and thus the element of consideration was missing. The Court declined to dismiss the remainder of Plaintiffs' claims, which centered on Coinbase's Sweepstakes-related marketing statements. *Id.* Plaintiffs subsequently filed their TAC, which re-alleged the lottery claims and included additional factual allegations regarding Coinbase's marketing statements. ECF No. 83.

Coinbase appealed the denial of its motion to compel arbitration to the Ninth Circuit. Case No. 22-15209. Plaintiffs' answering brief is due on July 11, 2022. Coinbase also moved this Court to stay proceedings pending appeal (ECF No. 59), which the Court denied (ECF No. 76). Coinbase then filed a motion to stay in the Ninth Circuit, which the Ninth Circuit denied. Ninth Circuit ECF No. 24.

In opposition to Coinbase's Ninth Circuit stay motion, Plaintiffs argued—for the first time—that the Official Rules for the Dogecoin Sweepstakes was a three-party contract between Coinbase, each of its users, and Marden Kane. Appellees' Brief in Opp., Ninth Circuit, ECF No. 22 at 2, 4. This Court should now consider Plaintiffs' position in ruling on Marden-Kane's Motion to Compel Arbitration.

## III.   LEGAL STANDARDS[1]

***Compelling arbitration.*** Under the Federal Arbitration Act ("FAA"), arbitration

---

[1] District courts are not "bound by any law of the case" in ruling on subsequent dispositive motions to dismiss an amended complaint. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

1    agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

2    or in equity for the revocation of any contract[.]" 9 U.S.C. § 2; *Henry Schein, Inc. v. Archer &*

3    *White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). In evaluating a motion to compel arbitration, "the

4    court's role under the FAA is 'limited to determining (1) whether a valid agreement to arbitrate

5    exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Peter v.*

6    *DoorDash, Inc.*, 445 F. Supp. 3d 580, 583 (N.D. Cal. 2020) (quoting *Chiron Corp. v. Ortho*

7    *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Additionally, the parties may also

8    delegate the initial arbitrability issue to an arbitrator with "clear and unmistakable" language,

9    *Henry Schein*, 139 S. Ct. at 530, at which point "the courts must respect the parties' decision as

10   embodied in the contract," and compel arbitration. *Id.* at 531; *see also* Coinbase's Mot. to Compel

11   Arb. and to Dismiss, ECF No. 33 at 8 (setting forth the legal standard governing motions to

12   compel arbitration).

13        ***Rule 12(b)(1).*** As courts of limited jurisdiction, federal courts are "presumed to lack

14   jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v.*

15   *Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Plaintiffs

16   bear the burden of proving that the court has jurisdiction to decide their claims. *Thornhill Publ'n*

17   *Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). If Plaintiffs cannot establish

18   federal jurisdiction, their claims must be dismissed. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 333

19   (2016), *as revised* (May 24, 2016).

20        ***Rule 12(b)(6).*** To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a

21   claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).

22   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

23   statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

24   (2009) (citation omitted). Where "there is no cognizable legal theory or an absence of sufficient

25   facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v.*

26   *Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). Where amendment would be futile,

27

28   1035, 1043 (9th Cir. 2018).  "[P]ermitting the filing of an amended complaint requires a new
     determination." *Id.*

Cooley LLP
Attorneys at Law
San Francisco

5

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

the court should dismiss with prejudice. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).

**Rule 12(f).** Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citation omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

**IV. COINBASE JOINS MARDEN-KANE'S MOTION TO COMPEL ARBITRATION, WHICH SHOULD BE GRANTED.**

Coinbase joins in the motion to compel arbitration submitted by Marden-Kane (ECF No. 87). As explained below, Coinbase agrees with Marden-Kane that arbitration is warranted, including because Plaintiffs have now taken a position before the Ninth Circuit that undermines its previous arguments in opposition to arbitration, and because of binding Ninth Circuit case law that the Court did not address in its previous order.

**A. Plaintiffs have conceded in Ninth Circuit briefing that the User Agreement and the Official Rules involve *different* contracting parties, precluding any supersession of the User Agreement by the Official Rules.**

In seeking and obtaining denial of Coinbase's motion to compel arbitration, Plaintiffs asserted that the User Agreement and Official Rules both were agreements between "the parties" and that the Official Rules superseded the User Agreement. *See, e.g.*, Pls. Opp. to MTC/MTD at 11 (referring to "the parties' original arbitration agreements and subsequent litigation agreements"). Since this Court's initial MTC/MTD ruling, however, Plaintiffs have expressly conceded in their Ninth Circuit stay briefing that the Official Rules and User Agreement do *not* involve the same parties. *See* Appellees' Brief in Opp. to Stay at 2 (acknowledging that Defendant "Marden-Kane, Inc. . . . was never party to Coinbase's User Agreements"); *id.* at 4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

1  (claiming that Plaintiffs "could follow their original User Agreements with Coinbase . . . [or] they

2  could follow their . . . Official Rules agreements with Coinbase *and* Marden-Kane . . . .").[2]

3        This concession is fatal to Plaintiffs' argument—accepted by this Court in its previous

4  order denying Coinbase's motion to compel arbitration—that the forum selection clause in the

5  Official Rules disrupts the User Agreement's delegation clause and supersedes the arbitration

6  clause in the User Agreement. *See* MTC/MTD Order at 7-10. Under basic contract interpretation

7  principles, supersession by a later agreement can only occur where the parties between the

8  agreements remain the *same*. "Before one contract is merged in another [or found to 'replace the

9  former agreement[]' in some respect], the last contract must be between *the same parties as the*

10 *first*, and must embrace the same subject matter, and be inconsistent with one another." 17A

11 C.J.S. Contracts § 580 (emphasis added) (citations omitted).

12       Courts have therefore concluded, in situations like this one, that a subsequent agreement

13 among one set of parties cannot supersede a valid earlier agreement between different parties. *See,*

14 *e.g.*, *Spark Connected, LLC v. Semtech Corp.*, No. 4:18-cv-748-KPJ, 2020 WL 6118575, at *5

15 (E.D. Tex. 2020) (applying California contract law and holding that a later executed "Separation

16 Agreement did not supersede the [earlier] Purchase Agreement because the agreements concern

17 different subject matter and involve different parties"); *Dunn v. FastMed Urgent Care PC*, 424

18 P.3d 436, 441–42 (Ariz. Ct. App. 2018) (relying on general contract principles to conclude that

19 later purchase agreement could not supersede where parties did not remain identical between

20 agreements at issue).

21       **B.    Under the Ninth Circuit's decision in *Mohamed*, the Official Rules' forum
22            selection clause does not disrupt the User Agreement's clear and
             unmistakable delegation of arbitrability questions to the arbitrator.**

23       As this Court has previously recognized, the Coinbase User Agreement, which applies to

24 all disputes between Coinbase and its users about the Agreement or the Coinbase Services,

25 delegates questions of arbitrability to the arbitrator. *See* MTC/MTD Order at 8 ("disagreements

26 over the scope of the arbitration provisions were delegated to the arbitrator"); ECF Nos. 33-8–33-

27

28 [2] Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

10, McPherson-Evans Decl. Exs. 7–9 (disputes about arbitrability "shall be decided by an arbitrator and not by a court or judge"). Under binding Ninth Circuit precedent, such a "clear and unmistakable" delegation clause in an arbitration agreement must be enforced, *even where a forum selection clause to which the parties also agreed provides for judicial resolution*. *See Mohamed*, 848 F.3d at 1209. The Court's MTC/MTD Order did not account for this holding of *Mohamed*, and Coinbase respectfully submits that this holding is dispositive of the motion to compel.

In *Mohamed*, the Ninth Circuit concluded that a delegation clause in the parties' arbitration agreement served as "clear and unmistakable" evidence of the parties' intent to delegate arbitrability questions to the arbitrator, even though the parties' agreement also—as here—contained a forum selection clause granting "exclusive jurisdiction" to state and federal courts in San Francisco over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement[.]" 848 F.3d at 1209 (citation omitted). As *Mohamed* explained, there is at most an "artificial" conflict between arbitration and forum selection clauses like those at issue here, *Mohamed*, 848 F.3d at 1209, and the two provisions can and should be read harmoniously, *see, e.g.*, *id.*; *Peterson v. Minidoka Cnty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir. 1997).

Following *Mohamed*, district courts in the Ninth Circuit have regularly concluded in recent years that delegation clauses in arbitration agreements provide "clear and unmistakable" evidence of intent to delegate questions of arbitrability to the arbitrator—even where the parties also agreed to forum selection clauses or other terms expressly contemplating the possibility of judicial relief. *See, e.g.*, *Dillion v. BET Info. Sys., Inc.*, No. 18-cv-04717-JST, 2019 WL 12338059, at *4 (N.D. Cal. Feb. 19, 2019) (delegation clause constituted "clear and unmistakable" evidence to delegate notwithstanding provision in same agreement providing exclusive jurisdiction to Delaware state and federal courts); *Jacksen v. Chapman Scottsdale Autoplex, LLC*, No. CV-21-00087-PHX-DGC, 2021 WL 3410912, at *3 (D. Ariz. July 21, 2021) (enforcing delegation clause, notwithstanding severability clause referencing potential court review of class action waiver); *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 WL

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

1    4334770, at *5 (N.D. Cal. Sept. 11, 2018) (enforcing delegation clause, notwithstanding

2    severability clause contemplating judicial determination of unenforceability); *see also Davis v.*

3    *Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *3 & n.1 (N.D. Cal.

4    Oct. 23, 2019) (delegation clause "clear and unmistakable" evidence of delegation to arbitrator

5    even with respect to questions of whether agreement applied to pre-agreement claims).

6         The Court's prior reliance on *Ingram Micro Inc. v. Signeo International, Ltd.*, No. SACV

7    13–1934–DOC (ANx), 2014 WL 3721197 (C.D. Cal. July 22, 2014), was misplaced. *See*

8    MTC/MTD Order at 8. *Ingram* predates *Mohamed* and is factually distinguishable. First, in

9    *Ingram*, the parties entered into a new agreement on the exact same issues, and the new

10   agreement contained a merger clause reflecting the parties' express intent to entirely supersede

11   their earlier agreement to arbitrate, as well as a provision releasing all claims between the parties

12   arising from their business relationship up to that date. *See Ingram*, 2014 WL 3721197, at *2–3.

13   No such express intent to supersede exists here. Second, *Ingram* relied on out-of-circuit caselaw

14   that, unlike *Mohamed*, did not pertain to a competing forum selection clause. Nor did *Ingram*

15   acknowledge that a conflict between arbitration and forum selection clauses can be "artificial," as

16   such clauses can and should be read harmoniously. *See id.*, 2014 WL 3721197, at *3; *Mohamed*,

17   848 F.3d at 1209.

18        **C.    Arbitration should be compelled because the User Agreement is fully
                  integrated and the Official Rules did not amend or supersede the User**
19                **Agreement.**

20        Although, as explained, the User Agreement's delegation clause is dispositive and

21   compels arbitration, alternatively arbitration should be compelled for the additional reason that

22   the present dispute is within the scope of the parties' arbitration agreement and was not (as the

23   Court previously concluded) superseded by the forum selection clause in the Official Rules.

24        The User Agreement contains an integration clause stating that the Agreement

25   "comprise[s] the entire understanding and agreement between [the user] and Coinbase."

26   McPherson-Evans Decl. at Ex. 7, § 9.4; *id.* at Ex. 8, § 9.4; *id.* at Ex. 9, § 9.4.[3] The User

27   Agreement further provides that "[w]e may amend or modify this Agreement by posting on the

---

[3] For Suski, that language appears in Section 8.4. *See* McPherson-Evans Decl. at Ex. 6, § 8.4.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time," and "[i]f the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective."[4] Plaintiffs do not allege that Coinbase followed the procedure for amending the User Agreement. And nowhere do the Official Rules evince the parties' intent to amend, revise, revoke, or supersede *any* prior agreement, including the User Agreement.

Under controlling law, the Official Rules did not and could not amend the integrated User Agreement because there is no indication whatsoever in the agreements (or otherwise) that Coinbase and Plaintiffs intended the Official Rules to supplant the User Agreement. *Garcia v. ISS Facility Servs., Inc.*, 855 F. App'x 338, 339 (9th Cir. 2021) (emphasis added) (quoting *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968)). Any "collateral agreement itself must be examined . . . to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing." *Masterson*, 68 Cal. 2d at 226; *see also Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531, 533–34 (9th Cir. 2020) (looking to whether subsequent agreement contains a "complete agreement" provision reflecting intent to supersede an earlier agreement); *Kanno v. Marwit Cap. Partners II, L.P.*, 18 Cal. App. 5th 987, 1000 (2017) (noting California law instructs courts to look for contract terms evincing the parties' "final expression" or "complete and exclusive statement" in finding evidence of integration (quoting Cal. Code Civ. Proc. §§ 1856(a), (b)).

### D.    The User Agreement is not unconscionable.

Finally, Plaintiffs now seek to avoid arbitration by claiming—incorrectly, and contrary to their prior representations in response to Coinbase's MTC/MTD—that the User Agreement is unconscionable. *Compare* TAC ¶ X93, *with*, Pls. Opp. to MTC/MTD at 6 ("Plaintiffs do not dispute

---

[4] *Id.* at Ex. 7, § 9.5 (agreement of Martin); *id.* at Ex. 8, § 9.5 (agreement of Calsbeek).  For Suski, that language, in materially similar form, appears in Section 8.5.  *See id.* at Ex. 6, § 8.5. Maher's version of the clause is substantially similar. *See id.* at Ex. 9, § 9.5 ("We may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time. . . . If the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective.").

the validity of their original arbitration agreements with Coinbase, as those agreements existed on 'March 31, 2021.'").

The User Agreement is not unconscionable, as the vast majority of courts to evaluate the validity of Coinbase's User Agreement have concluded. *See, e.g.*, *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 915 (9th Cir. 2020) (reversing district court and holding that the plaintiffs' claims against Coinbase are subject to arbitration); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 158 (E.D.N.Y. 2019); *Pierre v. Coinbase, Inc.*, No. 159761/20, 2021 WL 1538015, at *1 (N.Y. Sup. Ct. Apr. 14, 2021); *Tarverdiyeva v. Coinbase Global, Inc.*, No: 8:21-cv-1717-MSS-SPF, 2021 WL 4527960, at *2 (M.D. Fla. Sept. 8, 2021); *Strozier v. Coinbase, Inc.*, No. 651451/2018, 2018 N.Y. Misc. LEXIS 14299 (Sup. Ct., N.Y. Cnty. Sept. 10, 2018). The recent ruling in *Bielski* involved a situation where the plaintiff opposed Coinbase's motion to compel arbitration on the grounds that the User Agreement's delegation clause and arbitration agreement were unconscionable. Here, in contrast, Plaintiffs have already conceded that the delegation clause and arbitration agreement were valid and binding. But more importantly, the *Bielski* ruling runs counter to binding Ninth Circuit precedent and does not change the conclusion. *Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022). Coinbase has appealed that decision to the Ninth Circuit. *See* Ninth Circuit Case No. 22-15566.

## V.   ALTERNATIVELY, THE COURT SHOULD ENFORCE THE CLASS ACTION WAIVER AND DISMISS THIS CASE FOR LACK OF SUBJECT-MATTER JURISDICTION.

Although arbitration should be compelled, alternatively the Court should enforce the class action waiver in the Official Rules and dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) because CAFA is Plaintiffs' sole asserted basis for federal jurisdiction over Plaintiffs' claims. *See* TAC ¶ 24 (alleging jurisdiction pursuant to CAFA). Applying the class action waiver, all that remains are individual claims, which cannot support federal jurisdiction. *See, e.g.*, *Saldivar v. Insight Global, LLC*, No. 17-cv-05981 NC, 2018 U.S. LEXIS 119338, at *2 (N.D. Cal. July 16, 2018) (dismissing case for lack of subject-matter jurisdiction under CAFA where named plaintiff signed class action waiver); *Archer v. Carnival Corp.*, No. 20-cv-04203-RGK-SK, 2021 U.S. Dist. LEXIS 201310, at *9 (C.D. Cal. May 14, 2021) (same).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

**A.      Plaintiffs agreed to the class action waiver in the Official Rules.**

Plaintiffs do not dispute that they agreed to a class action waiver in the Official Rules, which states that Sweepstakes-related claims "may not be resolved through any form of class action." *See* TAC, Ex. A at 9; MTC/MTD Order at 3–5 (detailing allegations that show Plaintiffs' acceptance of Official Rules).

**B.      Class action waivers are enforceable under binding U.S. Supreme Court precedent.**

Plaintiffs wrongly allege in passing that class action waivers like that in the Official Rules are unenforceable under *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005). *See* TAC ¶ 94. Not so. The U.S. Supreme Court overruled *Discover Bank* on this issue. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011); *Carter v. Rent-A-Center, Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (noting that *Discover Bank* was "expressly overruled by *Concepcion*"); *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 362 (2014) (same). The Ninth Circuit has "interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver." *Carter*, 718 F. App'x at 504 (collecting cases).[5]

Plaintiffs cannot simply plead in conclusory terms that the class action waiver in the Official Rules is unconscionable. Plaintiffs must meet the higher burden—as the party asserting the defense—to show both procedural and substantive unconscionability with factual allegations in support. *See Sanchez*, 61 Cal. 4th at 911 ("Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof."). Plaintiffs have not met this burden.

**C.      Plaintiffs do not adequately plead that the class action waiver in the Official Rules is unconscionable.**

Plaintiffs do not specifically allege both procedural and substantive unconscionability with respect to the class action waiver they agreed to in the Official Rules. Instead, Plaintiffs

---

[5] The *Concepcion* holding also applies to, and thus invalidates, the CLRA's anti-waiver provision, insofar as the CLRA bars class waivers in arbitration agreements covered by the FAA (as the parties' agreements are so governed here). *See Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 924 (2015).

1    quote non-exhaustive factors considered in *Discover Bank* and proclaim in conclusory fashion

2    that the same factors must apply here to render the class action waiver unenforceable. *See* TAC

3    ¶ 94. This argument falls short for multiple reasons.

4         First, the unconscionability test for class action waivers articulated in *Discover Bank* and

5    quoted in the TAC was rejected by *Concepcion*. *See Sanchez*, 61 Cal. 4th at 923 (noting *Discover*

6    *Bank*'s unconscionability "rule was abrogated by *Concepcion*"). It is far from sufficient for

7    Plaintiffs to parrot that holding, without more. For the same reasons discussed above with respect

8    to the User Agreement (*see supra* Section IV.A.2), the TAC fails to allege the Official Rules are

9    unconscionable under California law.

10        Second, although *Discover Bank* has been abrogated, the Official Rules' class action

11   waiver is nonetheless fully enforceable under *Discover Bank*'s non-exhaustive test. Per *Discover*

12   *Bank*, a class action waiver in a contract of adhesion is only unconscionable—and thus

13   unenforceable—when disputes "between the contracting parties predictably involve *small*

14   *amounts* of damages," and the party with "superior bargaining power has carried out a scheme to

15   deliberately cheat large numbers of consumers out of *individually small sums* of money." 113

16   P.3d at 162–63 (emphasis added). Courts appropriately consider the entire theory of damages in

17   deciding whether the "small amounts" contemplated by *Discover Bank* are at stake. *See*

18   *Arguelles-Romero v. Super. Ct.*, 184 Cal. App. 4th 825, 844 (2010) (rejecting plaintiffs' attempt

19   to minimize individual damage amounts for purposes of enforcing class action waiver and

20   faulting plaintiffs for "fail[ing] to establish that these amounts are too small to justify individual

21   actions").

22        Under this standard, there is no basis for a finding of unconscionability here because the

23   requested damages amounts are neither "predictable" nor "small."[6] Plaintiffs' requested damages

24   seek, among other things, "disgorgement of [Coinbase's] ill-gotten gains" (*see, e.g.*, TAC ¶¶

25   99(f), 124, 134, 137, 144, 151, 156), which they allege amount to "hundreds of millions of

26   dollars" (*see, e.g., id.* ¶¶ 16, 17, 59, 133, 141). Plaintiffs also point to the allegedly "huge amount

27

28   ─────────────────────────────
     [6] Plaintiffs' damages allegations are baseless and improper as a matter of law. But even if
     Plaintiffs' damages allegations were valid (they are not), they fail to satisfy *Discover Bank*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

of commissions that Coinbase could earn from millions of users buying and selling DOGE on its

platform," not limited to the alleged class. The TAC also contains multiple allegations about the

price volatility of Dogecoin (*see, e.g.*, *id.* ¶¶ 3–4, 61–62), indicating that Plaintiffs' damages

claims may include losses related to trading Dogecoin regardless of whether those losses are

related to the Dogecoin Sweepstakes. Finally, Plaintiffs also seek punitive damages.

Although the exact amount of damages Plaintiffs seek remains ambiguous, that too is why

they fail to establish unconscionability under *Discover Bank*, which emphasizes that class action

waivers are unconscionable only where the damages sought are both *predictable* and *small*. For

example, in *Discover Bank*, class members sought to recover only a $29 late fee and other

miniscule charges by the defendant bank. 36 Cal. 4th at 159–61. Here, by contrast, Plaintiffs seek

the disgorgement of "hundreds of millions of dollars" that Coinbase allegedly "gained" from the

sweepstakes (*see, e.g.*, TAC ¶ 99(f)), as well as damages tied to the volatility of the price of

Dogecoin. These damages are far from "small" or "predictable," but could easily amount to

thousands of dollars, depending on the amount of Dogecoin at issue and the trading periods

involved. Under Discover Bank, courts enforce class action waivers where, as here, the

individualized damages claims are unpredictable and potentially amount to thousands of dollars,

and the aggregated claims amount to hundreds of millions of dollars. *See Provencher v. Dell, Inc.*,

409 F. Supp. 2d 1196, 1202 (C.D. Cal. 2006) (class action waiver was enforceable where, as here,

the plaintiff did "not state the specific amount of damages he is seeking for himself and the

nationwide class," but "clearly [was] seeking to recover a significant amount of money," and

where the aggregate recover would be "a significant amount of money, most likely hundreds of

millions of dollars")); *see also Arguelles–Romero*, 184 Cal. App. 4th at 844 (upholding class

action where waiver plaintiffs "wholly failed to introduce any evidence as to the size of the

amounts" of damages they sought, and the court inferred from the pleadings that their recovery

would be approximately $16,000).

Accordingly, the Official Rules' class action waiver is enforceable. Without a class action

to bring, Plaintiffs cannot satisfy the CAFA jurisdictional requirements and the Court should

Cooley LLP
Attorneys at Law
San Francisco

14

Coinbase's Joinder and
Motion to Dismiss TAC
Case No. 3:21-cv-04539

1    dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1). Alternatively, the

2    Court should strike the class allegations under Rule 12(f).

3    **VI.    ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS.**

4         Plaintiffs have failed to cure the fundamental flaw in their lottery claims: because

5    participants could enter the Dogecoin Sweepstakes for free, the contest was a lawful sweepstakes,

6    not an unlawful lottery. The Court should again dismiss Plaintiffs' lottery claims. In addition, the

7    Court should dismiss Plaintiffs' CLRA claims because cryptocurrencies like Dogecoin are not

8    "goods" within the meaning of the statute, and cryptocurrency exchanges like Coinbase are not

9    "services."

10        **A.    Plaintiffs again fail to adequately allege that the Dogecoin Sweepstakes was
             an illegal lottery (claims 1, 2, and 6).**

11

12        The Dogecoin sweepstakes had a free alternative method of entry that any consumer could

13   use to enter the contest without having to purchase Dogecoin. Thus, the Court previously dismissed

14   Plaintiffs' lottery claims, determining that the element of consideration was missing because

15   Plaintiffs "were not actually required to trade Dogecoins in order to enter the sweepstakes and have

16   a chance to win." MTC/MTD Order at 13. Plaintiffs fail to cure this defect in their TAC. They

17   concede that participants could have entered the sweepstakes for free, but allege that an "ordinary,

18   reasonable consumer" would not have known that a free alternative method of entry was available.

19   TAC ¶ 68. But there is no "reasonable consumer" test in California lottery law—what matters is

20   *whether* a free alternative method of entry existed, not whether a participant knew about it.

21   Plaintiffs' lottery claims once again fail as a matter of law—and because further amendment would

22   be futile, the Court should dismiss these claims with prejudice.

23        It is black letter law that an illegal lottery *must* have three components: "a prize, distribution

24   by chance, and consideration." *Hotel Emps. & Rest. Emps. Int'l Union v. Davis*, 21 Cal. 4th 585,

25   592 (1999). If *any* of these elements is missing, the contest is not an illegal lottery. *Cal. Gasoline*

26   *Retailers v. Regal Petroleum Corp.*, 50 Cal. 2d 844, 850–52 (1958). The difference between an

27   unlawful lottery and a lawful sweepstakes is whether participants are required to pay valuable

28   consideration to participate. Consideration is "the fee (in the form of money or anything else of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

value) that a participant pays the operator for entrance." *Hotel Emps.*, 21 Cal. 4th at 592 (citing *Regal*, 50 Cal. 2d at 853–54, 857–62).

In its previous order dismissing Plaintiffs' lottery claims, the Court recognized that no consideration was required because participants could enter for free, and thus the Dogecoin Sweepstakes was not an illegal lottery. MTC/MTD Order at 11–13. The Court explained that it made no difference whether Plaintiffs were "aware of [the free alternative method of entry] when they made a trade of Dogecoins" because they "were not actually *required* to trade Dogecoins in order to enter the sweepstakes and have a chance to win." *Id.* at 13 (emphasis added). The Court concluded that Plaintiffs "have not *and cannot* allege a violation" of California's lottery laws. *Id.* (emphasis added).

Nonetheless, Plaintiffs have reasserted their lottery claims in the TAC without alleging any new facts that change the outcome. They repeat their allegations that Coinbase's disclosures were deceptive, and contend now that "the ordinary, reasonable consumer could not be expected to have known" about the free alternative method of entry. TAC ¶ 68. Nothing has changed. And as the Court explained in its previous order, the relevant inquiry is whether a free alternative method of entry existed, not whether participants knew about it. There is no dispute that such a method existed here, and Plaintiffs do not (and cannot) contend otherwise.

There is also no basis for the Court to import a "reasonable consumer" test into California lottery law. As the Court explained, the fact that "many people may not have been aware that there was a free method of entry is significant for Plaintiffs' claims for disclosure and misrepresentation under the UCL, FAL, and CLRA[,]" but "no California court has held that being unaware of the free method of entry is sufficient" to state a lottery claim. MTC/MTD Order at 13.

Plaintiffs further allege that the "truth" about the free alternative method of entry "was reasonably and objectively knowable only to the Defendants themselves." TAC ¶ 68. That is not merely irrelevant, it is *false*. As Plaintiffs concede throughout the TAC and elsewhere, Coinbase disclosed the existence of the free method of entry and stated that no purchase was necessary to participate. *See, e.g.*, *id.* ¶¶ 77–78 (admitting that Coinbase included a "no-purchase-or-payment-necessary message" in its "sweepstakes email, web, [and] mobile app ads"), ¶¶ 81–87 (same); *see*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

1   *also* Pls.' Opp'n to Mot. to Compel and Dismiss, ECF No. 40 at 7 (acknowledging that Coinbase's

2   sweepstakes materials contained "conspicuous statement[s] that '[t]erms and conditions appl[ied]'"

3   and that these statements were "coupled with reasonably conspicuous hyperlinks" to the Official

4   Rules, which clearly disclosed the free alternative method of entry).

5        Accordingly, the Court should dismiss with prejudice Plaintiffs' first claim (violation of

6   Cal. Bus. & Prof. Code § 17200) in full. The Court should also dismiss with prejudice Plaintiffs'

7   second claim (violation of Cal. Bus. & Prof. Code §§ 17200, 17539.15) and sixth claim (violation

8   of Cal. Civ. Code § 1750) to the extent they are premised on a violation of Cal. Penal Code § 320.

9   **B.    The CLRA does not apply to cryptocurrencies or cryptocurrency exchange platforms (claims 6 and 7).**

10

11       Plaintiffs' CLRA claims should be dismissed because virtual cryptocurrencies like

12  Dogecoin are not "tangible chattels" to which the CLRA applies and Coinbase is not a covered

13  "service."

14       The CLRA provides remedies to any consumer who "seeks or acquires, by purchase or

15  lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d).

16  The CLRA defines "goods" and "services" as follows:

17          "Goods" means ***tangible chattels*** bought or leased for use primarily
            for personal, family, or household purposes, including certificates
18          or coupons exchangeable for these goods, and including goods that,
            at the time of the sale or subsequently, are to be so affixed to real
19          property as to become a part of real property, whether or not they
            are severable from the real property.
20

21  Cal. Civ. Code § 1761(a) (emphasis added).

22          "Services" means work, labor, and services for other than a
            commercial or business use, including services furnished in
23          connection with the sale or repair of ***goods***.

24  Cal. Civ. Code § 1761(b) (emphasis added).

25       The CLRA does not apply to Plaintiffs' claims because virtual currencies—including

26  cryptocurrencies like Dogecoin—are not "tangible chattels" within the meaning of the statute

27  because they exist only online, and cryptocurrency exchange platforms are not covered

28

"services."[7]

After the Court issued its order on Coinbase's previous motion to compel and dismiss, another court in this district considered CLRA claims (among others) asserted against Nexo, a cryptocurrency exchange platform like Coinbase. *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022). It concluded that the CLRA was inapplicable because cryptocurrencies are not "tangible chattels," and cryptocurrency exchanges are merely ancillary services rather than "services" to which the CLRA applies. *Id.* at *23–24. It determined that cryptocurrencies are "intangible" just like extensions of credit, which are unambiguously outside the CLRA's scope. *Id.* at *23 (citing, among others, *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229, 233 (2007)). It also analogized cryptocurrencies to virtual currencies on digital platforms, which are similarly "outside the purview of the CLRA, since they 'exist only as an indicia of the credit extended' like in *Berry*.'" *Id.* (citing *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) and *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1007–1009 (N.D. Cal. 2012)); *see also Reeves v. Niantic, Inc.*, 21-cv-05883-VC, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022) (dismissing CLRA claims with prejudice because "PokeCoins"—a virtual currency used in the Pokemon virtual world—are not tangible "goods" and the sale of virtual currencies is not a "service," and noting that "courts should not shoehorn transactions involving the purchase of intangible goods into the definition of 'services'").

With respect to the CLRA claims, this case is directly analogous to *Jeong*, and the Court should likewise dismiss Plaintiffs' CLRA claims with prejudice. *Id.* at *24 (finding that amendment would be futile because "the Court does not see how Plaintiff could amend its claims to plausibly allege that Nexo offers anything other than intangible goods and ancillary services" on its cryptocurrency exchange platform).

## VII. THE COURT SHOULD DISMISS PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF OR, ALTERNATIVELY, STRIKE THOSE REQUESTS.

The Dogecoin Sweepstakes is over. Coinbase operated the Dogecoin Sweepstakes for

---

[7] "Tangible" means "perceptible by touch." "Tangible," adj., Lexico.com (Oxford), https://www.lexico.com/en/definition/tangible (last visited June 9, 2022)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

approximately one week in June of 2021. TAC ¶¶ 6–17. There is no allegation that Coinbase

anticipates operating Sweepstakes in the same fashion again at any time in the future, nor is there

any allegation that Coinbase is currently engaging in or is expected to engage in any of the

challenged conduct against Plaintiffs or anyone else in the future. Accordingly, the Court should

dismiss Plaintiffs' requests for injunctive relief for lack of standing under Rule 12(b)(1), or, in the

alternative, strike these requests under Rule 12(f).[8]

    "To have standing to assert a claim for prospective injunctive relief, a plaintiff must

demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres v.*

*Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95,

109 (1983)); *see also Young v. Oakland Unified Sch. Dist.*, 20-CV-00685-VC, 2020 WL

6684844, at *1 (N.D. Cal. Nov. 12, 2020) (striking request for prospective injunctive relief for

lack of standing). To establish standing, a plaintiff must identify a "threat of injury" that is "actual

and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Thus, "the

'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of

*possible* future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013) (emphasis in original)).

    There is nothing to enjoin in this case. The TAC contains various boilerplate requests for

injunctive relief, but fails to identify any ongoing conduct or any possibility of future injury,

much less a "certainly impending" injury. *See, e.g.*, TAC, Prayer for Relief (requesting "an order

permanently and publicly enjoining Defendants from engaging in the unlawful and unfair

business acts and practices alleged herein"); *see also id.* ¶ 110 ("Plaintiffs, on behalf of

themselves and the Class, and as appropriate, on behalf of the general public, seek permanent

---

[8] Courts in this district are split on whether a challenge to injunctive relief should be asserted in a
motion to dismiss or a motion to strike. *See Grayson v. Cnty. of Marin*, No. 14-CV-05225-JST,
2015 WL 720830, at *2 (N.D. Cal. Feb. 18, 2015) (denying motion to strike and suggesting that
the proper vehicle would be a motion to dismiss).  *But see Mou v. SSC San Jose Operating Co.*,
415 F. Supp. 3d 918, 932–33 (N.D. Cal. 2019) (striking request for injunctive relief under Rule
12(f)). Thus, Coinbase requests that the Court dismiss Plaintiffs' claims for injunctive relief under
Rule 12(b)(1), or alternatively, strike those claims under Rule 12(f).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

injunctive relief prohibiting Defendants from continuing such wrongful practices[.]"). All of Plaintiffs' claims—comprising allegations that the Dogecoin Sweepstakes was an unlawful lottery and that Coinbase made deceptive statements in its Sweepstakes marketing materials— relate entirely to Coinbase's *previous* conduct in connection with the marketing and operation of the Sweepstakes. The Sweepstakes has ended, and there are no allegations that Coinbase will re-open the Sweepstakes or re-engage in any of the allegedly unlawful conduct that Plaintiffs challenge. Indeed, Plaintiffs are not even Coinbase customers anymore,[9] and thus cannot be harmed by participating in future sweepstakes. Because there is no risk of future harm whatsoever, the Court should dismiss Plaintiffs' requests for injunctive relief for lack of standing. *See, e.g.*, *Olmos v. Harbor Freight Tools USA, Inc*., 18-CV-04986-SK, 2018 WL 8804820, at *4 (N.D. Cal. Dec. 24, 2018) (Kim, J.) (dismissing requests for injunctive relief for lack of standing where the plaintiff did not allege that he would be harmed in the future by the defendant's advertisements); *Scott v. AT&T Inc.*, 19-CV-04063-SK, 2021 WL 2839959, at *5 (N.D. Cal. Feb. 16, 2021) (Kim, J.) (dismissing requests for injunctive relief for lack of standing where there was no indication that AT&T would continue to provide customers' geolocation data to the government).

## VIII.   CONCLUSION

Coinbase joins in Defendant Marden-Kane's motion to compel arbitration as to all parties. Alternatively, the Court should enforce the binding class action waiver in the Official Rules and dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1). Additionally, the Court should dismiss Plaintiffs' lottery claims and CLRA claims with prejudice because (1) no further amendments could cure the defects identified above and (2) further amendment would cause undue delay, as Plaintiffs have already amended their complaint three times since June 2021. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by

---

[9] Plaintiffs' counsel contacted Coinbase's counsel on January 28, 2022, to ask Coinbase to close each Plaintiff's Coinbase account. Coinbase complied. The Court may take judicial notice of this fact because it is not reasonably in dispute. *Hash v. Kanaan*, No. 17-CV-01663-SK (PR), 2018 WL 9801576, at *3 (N.D. Cal. Jan. 4, 2018) (Kim, J.) (citing *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

COINBASE'S JOINDER AND
MOTION TO DISMISS TAC
CASE NO. 3:21-CV-04539

1  itself, justify the denial of a motion for leave to amend."); *Senza-Gel Corp. v. Seiffhart*, 803 F.2d

2  661, 666 (9th Cir. 1986) (dismissal with prejudice is warranted where amendment would cause

3  undue delay). Finally, the Court should dismiss or strike Plaintiffs' requests for injunctive relief.

4  Dated: June 9, 2022                                    COOLEY LLP

5

6                                                         By: */s/ Michael G. Rhodes*

7                                                             Michael G. Rhodes

8                                                         Attorneys for Defendant
                                                          COINBASE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    270409299

26

27

28