COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
BETHANY C. LOBO (248109)
(blobo@cooley.com)
MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
ELIZABETH SANCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:   +1 415 693 2000
Facsimile:   +1 415 693 2222

Attorneys for Defendant
COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>Defendants. | Case No. 3:21-cv-04539-SK<br><br>**COINBASE, INC.'S REPLY IN SUPPORT OF JOINDER IN DEFENDANT MARDEN-KANE, INC.'S MOTION TO COMPEL ARBITRATION AND, ALTERNATIVELY, MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date:    August 22, 2022<br>Time:    9:30 a.m.<br>Courtroom: C |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................ 2

    A. The Court should compel this dispute to arbitration. .................................................. 2

        1. Under controlling Ninth Circuit precedent, a venue provision with the language used in Coinbase's Official Rules does not conflict with a delegation clause. ................................................................................. 2

        2. The Court should also compel arbitration because the Official Rules did not supersede the User Agreement. ............................................................ 6

    B. Alternatively, the Court should enforce the Official Rules' class waiver and dismiss this case for lack of subject matter jurisdiction. .......................................... 9

    C. Alternatively, the Court should grant Coinbase's motion to dismiss for failure to state a claim. ................................................................................................ 10

        1. Plaintiffs still do not (and cannot) allege that the Dogecoin Sweepstakes was an illegal lottery (claims 1, 2, and 6). ............................ 10

        2. Plaintiffs' CLRA claims must be dismissed (claims 6 and 7). ................. 12

            a. Plaintiffs' own "ancillary services" caselaw shows dismissal is required. ................................................................................. 12

            b. *Jeong* and *Reeves* show that the CLRA does not apply to Dogecoin, a cryptocurrency, or Coinbase, a cryptocurrency exchange. ..................................................................................... 13

        3. Coinbase's CLRA arguments are procedurally proper. ............................ 14

    D. Plaintiffs concede that the TAC's request for injunctive relief should be dismissed or stricken. ................................................................................................ 15

III. CONCLUSION ....................................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfia v. Coinbase Global, Inc.*,
  No. 21-8689, 2022 U.S. Dist. LEXIS 130559 (N.D. Cal. July 22, 2022) ................................. 9

*Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*,
  645 F.3d 522 (2d Cir. 2011) ......................................................................................... 4, 7, 8

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) .......................................................................................... 14

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
  No. 12-5797, 2014 WL 1868787 (N.D. Cal. May 7, 2014) ................................................ 9

*Bielski v. Coinbase, Inc.*,
  No. 21-7478, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) ................................................. 9

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995) .............................................................................................. 15

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
  971 F.2d 272 (9th Cir. 1992) .............................................................................................. 7

*Bruton v. Gerber Prods. Co.*,
  No. 12-2412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ............................................... 14

*California Gasoline Retailers v. Regal Petroleum*,
  50 Cal. 2d 844 (1958) ....................................................................................................... 10

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004) ............................................................................................. 5

*Dunn v. FastMed Urgent Care PC*,
  424 P.3d 436 (Ariz. Ct. App. 2018) ................................................................................ 6, 7

*Goldman, NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*,
  323 F.2d 545 (9th Cir. 1963) ........................................................................................... 6, 8

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ................................................................................... 4, 5, 7, 8

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................ 15

*Haskins v. Symantec Corp.*,
  No. 13-1834, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) .............................................. 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) .......................................................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
   No. 13-1934, 2014 WL 3721197 (C.D. Cal. July 22, 2014) .................................................... 4

*In re Ins. Installment Fee Cases*,
   211 Cal. App. 4th 1395 (2012) ............................................................................................... 9

*Jeong v. Nexo Fin. LLC*,
   No. 21-2392, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ......................................... 13, 14, 15

*Lacey v. Maricopa Cnty.*,
   693 F.3d 896 (9th Cir. 2012) ................................................................................................ 14

*LeBoeuf v. NVIDIA Corp.*,
   833 F. App'x 465 (9th Cir. 2021) ........................................................................................... 6

*Ma v. Golden State Renaissance Ventures, LLC*,
   No. 21-856, 2021 WL 2190912 (N.D. Cal. May 31, 2021) .................................................... 3

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ........................................................................................ *passim*

*Open Sea Inv., S.A. v. Credit Agricole Corp. & Inv. Bank*,
   No. 17-22366, 2018 WL 1120902 (S.D. Fla. Jan. 12, 2018) .................................................. 3

*Reeves v. Niantic, Inc.*,
   No. 21-5883, 2022 WL 1769199 (N.D. Cal. May 31, 2022) ..................................... 13, 14, 15

*Sidebotham v. Robison*,
   216 F.2d 816 (9th Cir. 1954) ................................................................................................ 14

*Sonoda v. Amerisave Mortgage Corp.*,
   No. 11-1803, 2011 WL 2690451 (N.D. Cal. July 8, 2011) ................................................... 12

*Spark Connected, LLC v. Semtech Corp.*,
   No. 18-748, 2020 WL 6118575 (E.D. Tex. Oct. 16, 2020) ................................................. 6, 7

*Strumlauf v. Starbucks Corp.*,
   No. 16-1306, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ....................................................... 3

*Turner v. Tierney*,
   No. 12-6231, 2013 WL 2156264 (N.D. Cal. May 17, 2013) ................................................ 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ......................................................................... 12, 13

**Statutes**

Cal. Civ. Code § 1761(d) ............................................................................................................. 14

Cal. Penal Code § 320 .................................................................................................................. 12

Class Action Fairness Action (CAFA), 28 U.S.C. §§ 1332, 1453, 1711-15 ............................... 10

Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1770 *et seq*. ........................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

**Other Authorities**

17A C.J.S. Contracts § 580 .................................................................................................................. 6

Fed. R. Civ. P.
    12(b)(1) ........................................................................................................................... 10
    12(b)(6) ........................................................................................................................... 14
    12(g)(2) ........................................................................................................................... 14

Cooley LLP
Attorneys at Law
San Francisco

iv

Coinbase's Reply iso
Joinder and Mot. to Dismiss TAC
Case No. 3:21-cv-04539-SK

## I. INTRODUCTION

This case should be sent to arbitration. Under the Ninth Circuit's controlling decision in *Mohamed v. Uber Technologies*, there is no conflict between—as here—an arbitration provision with a delegation clause and a venue provision granting "exclusive jurisdiction" to state and federal courts in San Francisco. Accordingly, arbitration should be compelled so the arbitrator can determine arbitrability. In *Mohamed*, the Ninth Circuit reversed the district court's denial of a motion to compel arbitration in precisely this situation, describing the claimed conflict between a materially identical delegation clause and venue provision as "artificial." Plaintiffs attempt to escape *Mohamed*'s mandate by misstating and minimizing its holding. Even were their construction of *Mohamed* correct (it is not), their contractual analysis would remain wrong because the Official Rules do not supersede the User Agreement's arbitration or delegation clauses. Because *Mohamed* is squarely on point, the Court must compel arbitration.

Alternatively, the Court should grant Coinbase's motion to dismiss the Third Amended Complaint ("TAC")—this time, with prejudice. Dismissal is required under the Official Rules' class action waiver, as Plaintiffs are incorrect that the waiver is "overly harsh" or "one-sided" and thus unconscionable. Such waivers are enforceable where, as here, a class action is not Plaintiffs' only feasible path to relief. Moreover, the TAC's pleading deficits also require dismissal of certain claims. Each of Plaintiffs' consumer protection claims (Claims 1, 2, and 6) must be dismissed to the extent premised on the flawed theory that the Sweepstakes was an illegal lottery: this Court has already held that the Sweepstakes was not an illegal lottery because a free alternative method of entry existed. That remains true regardless of whether, as Plaintiffs now posit, a hypothetical "reasonable entrant" would have been unaware of that free method. Plaintiffs' Consumers Legal Remedies Act ("CLRA") claims (Claims 6 and 7) must also be dismissed because, as recent caselaw illustrates, the CLRA does not apply to cryptocurrencies like Dogecoin, which are not tangible "goods," and Coinbase does not otherwise provide any "services" as statutorily defined. And critically, Plaintiffs' failure to oppose the motion to dismiss or strike their requests for injunctive relief, based on Plaintiffs' lack of standing, constitutes a waiver requiring dismissal.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

## II. ARGUMENT

### A. The Court should compel this dispute to arbitration.[1]

#### 1. Under controlling Ninth Circuit precedent, a venue provision with the language used in Coinbase's Official Rules does not conflict with a delegation clause.

The Ninth Circuit's controlling ruling in *Mohamed* is directly on point. There, the district court held that a venue provision granting San Francisco state and federal courts "exclusive jurisdiction" over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement" was "inconsistent and in considerable tension with the language of the delegation clauses, which provide[d] that 'without limitation' arbitrability will be decided by an arbitrator." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). The Ninth Circuit reversed, holding that these supposed conflicts were "artificial," as the venue provision "identif[ied] the venue for any other claims that were not covered by the arbitration agreement" and fixed the venue for the parties to "invoke the jurisdiction of a court" to "obtain a judgment enforcing an arbitration award" or "enforce an arbitration agreement." *Id*.

As explained in Coinbase's opening brief, *Mohamed* is on all fours. Mot. at 6-9. The User Agreement has an arbitration provision with a delegation clause, and the Official Rules has a venue provision. *See id*. at 9-10. As with the venue provision in *Mohamed*, the venue provision in the Official Rules identifies the venue for Sweepstakes-related claims not covered by the User Agreement (i.e., claims brought by non-Coinbase users such as free Sweepstakes entrants) and specifies the venue for parties to invoke a court's jurisdiction to enforce the arbitration agreement or obtain a judgment enforcing an arbitration award. *See id*. And as in *Mohamed*, the User Agreement's delegation clause is unaffected by and does not conflict with the Official Rules' forum

---

[1] Coinbase has joined Marden-Kane's motion to compel arbitration. *See* ECF No. 88, Joinder in Marden-Kane's Motion to Compel Arbitration and, Alternatively, Motion to Dismiss Plaintiffs' Third Amended Complaint ("Mot.") at 6-11. Moreover, Coinbase has appealed the Court's prior order denying Coinbase's motion to compel arbitration. But Coinbase respectfully submits that Marden-Kane's motion following the TAC's filing, and Coinbase's joinder in that motion, allows the Court to address arbitrability anew. Coinbase cited *Mohamed* in briefing its initial motion to compel arbitration (*see* ECF No. 43 at 6), but did not highlight *Mohamed* for this Court. Coinbase appreciates the Court's further consideration of this authority in this round of motion practice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

selection clause. *See id*. *Mohamed* is on-point, binding authority; Plaintiffs cannot escape the result it prescribes.

Plaintiffs seek to evade *Mohamed* by misstating and minimizing its holding. **First**, Plaintiffs falsely assert that in *Mohamed*, "[t]he Ninth Circuit acknowledged that the arbitration language and the exclusive-jurisdiction language within each isolated agreement **were in conflict, if read literally**." ECF No. 90 (Plaintiffs' "Opp.") at 13 (citing *Mohamed*, 848 F.3d at 1209) (emphasis added). But *Mohamed* did not hold that the two provisions were "in conflict, if read literally." It held the exact opposite: that the venue provision under consideration "**does not conflict with** or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments." *See* 848 F.3d at 1209 (emphasis added). The Ninth Circuit described the argument that such provisions conflict as "artificial." *Id*.

**Second**, Plaintiffs misrepresent *Mohamed* by asserting that its holding was limited only to delegation and forum selection clauses "contained within the same contracts[.]" Opp. at 13 (emphasis omitted). But *Mohamed*'s holding is not so limited. Its reasoning did not even implicitly rely on the fact that these two clauses were in the same agreement.[2] Plaintiffs fail to cite, and Coinbase is unaware of any, decisions so construing *Mohamed*. To the contrary, decisions applying *Mohamed* are consistent with Coinbase's position that *Mohamed* is not limited to situations involving only one agreement. *See, e.g.*, *Open Sea Inv., S.A. v. Credit Agricole Corp. & Inv. Bank*, No. 17-22366, 2018 WL 1120902, at *5 (S.D. Fla. Jan. 12, 2018) (compelling arbitration under *Mohamed* where arbitration clause in a contract document governed "all controversies . . . arising out of or concerning the Account" and was "not inconsistent" with forum selection clause in separate contract document that "applie[d] if the parties must resort to the court to . . . compel arbitration, seek enforcement of a subpoena, or confirm an arbitral award"); *Ma v. Golden State Renaissance Ventures, LLC*, No. 21-856, 2021 WL 2190912, at *7 (N.D. Cal. May 31, 2021) (citing *Mohamed*, compelling arbitration, and rejecting plaintiffs' argument that one contract document

---

[2] Plaintiffs cannot evade *Mohamed*'s binding authority by identifying factual dissimilarities that were not relevant to the court's conclusions. *See Strumlauf v. Starbucks Corp.*, No. 16-1306, 2018 WL 306715, at *5 n.9 (N.D. Cal. Jan. 5, 2018) (rejecting plaintiffs' effort to distinguish on-point authority based on immaterial facts because "mere factual dissimilarities between cases do not necessarily render those cases inapposite").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

"has a forum-selection clause that 'supersedes' the arbitration provision" contained in another contract document, where the "[forum selection] clause does not state or imply that the clear arbitration provision . . . is void . . . [or] state or imply that the parties must litigate *instead* of arbitrate").

**Third**, Plaintiffs argue that the motion to compel arbitration should be denied because "*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), not *Mohamed*, is controlling of cases like this one, involving multiple contracts formed at different times among different sets of contracting parties." Opp. at 2. But *Mohamed* and *Goldman* are not in conflict, and only *Mohamed* addresses the issue before the Court. *Goldman* concerned an arbitration provision in a Financial Industry Regulatory Authority ("FINRA") rule, which provided that any "customer" of a FINRA-regulated entity could bring certain claims in FINRA arbitration. 747 F.3d at 738-39. Importantly, and unlike the User Agreement here, the FINRA rule reflected no "clear and unmistakable" evidence of a delegation clause. *Id*. at 739. Moreover, the FINRA rule provided that FINRA members were "free to make alternative arrangements with each individual customer when the parties formed . . . their contractual relationship." *Id*. at 741. The *Goldman* parties did so, executing an agreement that contained a judicial forum selection clause (but no arbitration or delegation clauses) and a merger clause providing the agreement was integrated.[3] *Id*. at 747. *Goldman* thus considered the issues of whether (1) the parties' agreement that contained a forum selection clause was an enforceable contract; (2) if so, whether that contract superseded the FINRA rule containing an arbitration provision; and (3) whether the federal presumption in favor of arbitrability allowed the court to compel arbitration where the parties had never agreed, as between themselves, to resolve their disputes through arbitration.[4] *Id*. at 741-44.

---

[3] Plaintiffs also rely on the out-of-circuit case, *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 524–26 (2d Cir. 2011). Opp. at 9. But *Applied Energetics*, like *Goldman*, concerned application of FINRA default rules, so it, too, is inapposite.

[4] Plaintiffs also rely on *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. 13-1934, 2014 WL 3721197, at *3 (C.D. Cal. July 22, 2014) to argue that "clear and unmistakable" evidence of intent to arbitrate arbitrability does not exist where an arbitration provision has been excluded from a superseding agreement. Opp. at 17. But *Ingram* is distinguishable for at least three reasons. First, there is no superseding agreement here. *See* Section II.A.2, *infra*. Second, *Ingram* held that the court needed to determine the dispute's arbitrability—where the contracts at issue lacked a delegation clause,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

None of those extraneous issues in *Goldman* are before the Court here. Instead, as in *Mohamed*, the parties in this case clearly and unmistakably agreed at the outset to arbitrate "any dispute arising out of or relating to this Agreement or the Coinbase Services," including threshold questions of arbitrability.[5] ECF No. 33 at 5; *see also* ECF No. 53 ("Order") at 7 (this Court observes that Plaintiffs do not generally dispute that their claims "would fall within the scope of Coinbase's User Agreement arbitration provision"). The question is thus whether the venue provision in the Official Rules in any way displace the clear and unmistakable delegation clause in the User Agreement. The question here is not—as in *Goldman*—whether there was any clear and unmistakable delegation clause in the first place. Accordingly, *Mohamed*—not *Goldman*— provides the governing rule of decision here.

**Fourth**, Plaintiffs argue that the Official Rules' reference to "jurisdiction" precludes the parties from invoking "any arbitrator's 'jurisdiction' to decide disputes 'related to the interpretation, performance [or] enforcement' of the Official Rules themselves." Opp. at 15. But the Ninth Circuit rejected this exact argument in *Mohamed*. 848 F.3d at 1209. The venue provisions in *Mohamed*—like the Official Rules here—referred to "the exclusive **jurisdiction** of the state and federal courts located in the City and County of San Francisco." *Id.* (emphasis added). The Ninth Circuit explained this provision "identif[ied] the venue for any other claims that were not covered by the arbitration agreement" and did not "conflict with or undermine" the parties' arbitration agreement or delegation clause because "parties may need to invoke the jurisdiction of a court" to "enforce an arbitration agreement" or to "obtain a judgment enforcing an arbitration award." *Id.* (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004)). This Court should reach the same result here.

As Plaintiffs recognize, "the correct question is whether Official Rules ¶ 10 and the User Agreement's delegation clause" conflict. Opp. at 15. *Mohamed* answers that question: as described *supra*, there is no conflict. Consistent with binding precedent, the Court should compel arbitration

---

unlike here. *See id.* Third, *Ingram* was a pre-*Mohamed* decision that relied solely on Tenth Circuit caselaw for the cited proposition. *See* 2014 WL 3721197, at *3.

[5] The quoted language was agreed to by Plaintiffs Martin, Calsbeek, and Maher. ECF No. 33 at 5. Similarly, Plaintiff Suski agreed to arbitrate "any dispute arising under this Agreement." *Id.* at 4.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

so that an arbitrator can decide whether this dispute is arbitrable. *Mohamed*, 848 F.3d at 1209; *see also LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 466 (9th Cir. 2021) (where arbitration agreement contains delegation clause, "[a]ny dispute as to the scope of that agreement, and **whether [the parties'] claims fall outside the agreement**, must be determined by the arbitrator under the [agreement's] delegation clause.") (emphasis added) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)); Order at 8 ("[D]isagreements over the scope of the arbitration provision were delegated to the arbitrator[.]").

### 2. The Court should also compel arbitration because the Official Rules did not supersede the User Agreement.

If, notwithstanding *Mohamed*, the Court reaches Plaintiffs' argument that the Official Rules superseded the User Agreement as to dispute resolution procedures governing the Sweepstakes (*see* Opp. at 10-12), it should reject that notion and compel arbitration. For a later agreement to supersede an earlier agreement, *inter alia*, the "last contract [1] must be between the same parties as the first, and [2] must embrace the same subject matter." 17A C.J.S. Contracts § 580. Neither requirement is met here. Marden-Kane is not a party to the earlier User Agreement. *See* Mot. at 6-7.[6] And the Official Rules concern only the Dogecoin Sweepstakes, while the (fully-integrated) User Agreement governs the overall relationship between Coinbase and its users. *See* Order at 1-5. In short, it would defy black-letter contract interpretation principles to hold that a subsequent agreement between three parties about the discrete topic of the Dogecoin Sweepstakes modified an earlier agreement between two of those parties regarding their overall contractual relationship. *See* Mot. at 6-7.

Plaintiffs' Opposition fails to distinguish *Dunn v. FastMed Urgent Care PC*, 424 P.3d 436, 441-42 (Ariz. Ct. App. 2018) and *Spark Connected, LLC v. Semtech Corp.*, No. 18-748, 2020 WL 6118575, at *5 (E.D. Tex. Oct. 16, 2020), the cases that Coinbase cited in its Motion. Plaintiffs

---

[6] Plaintiffs contend that it is "unclear why Coinbase is . . . raising this . . . issue now" because it was always apparent that Marden-Kane was "personally named" as a party only to the Official Rules, not the User Agreement. Opp. at 10. But Coinbase is highlighting Plaintiffs' briefing on appeal, filed after the Court's last order on Defendants' motions to compel arbitration and dismiss. *See* Mot. at 6-7. In any event, Coinbase is entitled to raise new arguments in response to the newly amended complaint. *See* Section II.C.3, *infra*.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

instead rely on *Goldman*, *NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*, 323 F.2d 545, 546 (9th Cir. 1963), and *Applied Energetics*, hoping to evade application of black-letter contract principles described in Coinbase's Motion and above. *See* Opp. at 9-10. Plaintiffs' treatment of each case is incorrect, as set forth below.

In both *Dunn* and *Spark*, the courts held that no supersession could occur where the parties to the two contracts at issue were not the same. *See* Mot. at 7. Plaintiffs do not meaningfully dispute that these cases stand for that basic proposition, but instead contend that *Dunn* and *Spark* are distinguishable because they involved contracts whose subject matter varied scope. Opp. at 12. But the same is also true of the contracts at issue here: the User Agreement's subject matter scope is much broader than the Official Rules, which apply to only the Dogecoin Sweepstakes. Therefore, Plaintiffs' central argument for distinguishing *Dunn* and *Spark* fails.

Plaintiffs' other attempts to distinguish *Dunn* and *Spark* fail. Plaintiffs first contend that *Dunn* is inapplicable because it applied Arizona law. *See* Opp. at 12. However, *Dunn* relied not just on Arizona law, but also on common-law contract principles and the Restatement (Second) of Contracts (both of which are followed by California courts), to hold that an earlier agreement was not superseded by a later agreement between a different set of parties. *Dunn*, 424 P.3d at 439-42; *cf. Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) (noting that "California [courts] follow[]" the Restatement (Second) of Contracts in applying contract merger and integration principles). Those same contract interpretation principles apply to analogous facts here.

Plaintiffs next argue that *Spark* is not on point because not all parties to the first contract were parties to the second contract, while here, all parties to the User Agreement were also parties to the Official Rules. *See* Opp. at 12. But *Spark*'s holding was not so limited. The *Spark* court found that "the parties to the agreement are not the same" and, as a result, found that the later agreement did not supersede the earlier agreement. *See* 2020 WL 6118575, at *5.

Plaintiffs' reliance on *Goldman*, *International Union*, and *Applied Energetics* does not change this application of black-letter contract law to the supersession analysis here. *See* Opp. at 9-10. *Goldman*, for example, did not involve a contractual agreement to arbitrate; it held that a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

forum selection clause superseded the parties' "default obligation" to arbitrate under FINRA rules. 747 F.3d at 741. *Goldman* said nothing about whether a later agreement with different parties can supersede an earlier agreement between other parties. Plaintiffs nevertheless cite to *Goldman* for the proposition that a later contract with different parties can supersede an earlier one so long as "the **litigating** parties [are] ultimately bound by both agreements." Opp. at 11. But *Goldman* simply did not say that. Regardless, *Goldman* does not control the supersession analysis here, where Plaintiffs contractually agreed at the outset to arbitrate any disputes related to their use of Coinbase and unmistakably delegated the question of arbitrability to the arbitrator.

Plaintiffs similarly argue that in *International Union*, the court held that a later contract superseded an earlier one even though the contracting parties were "not identical sets[.]" Opp. at 11 (citing *Int'l Union*, 323 F.2d at 546). But that is not how *International Union* characterized the parties. To the contrary, the court found that "since the contracts were entered into by the *same parties* and cover the *same subject matter*, it is a well settled principle of law that the later contract supersedes the former contract as to inconsistent provisions." *Int'l Union*, 323 F.3d at 546, 548. Plaintiffs concede that Marden-Kane was not also a party to the earlier User Agreement. They therefore cannot claim that "the same parties" later agreed to the Official Rules.[7]

Plaintiffs finally cite *Applied Energetics* to argue that "ordinary rules of contract interpretation" show that the Official Rules superseded the User Agreement. Opp. at 9 (citing *Applied Energetics, Inc.*, 645 F.3d at 522). But *Applied Energetics* is inapposite for two reasons. First, the later agreement in *Applied Energetics* used the term "adjudicate," which the court found was "a clear and unmistakable reference to judicial action." 645 F.3d at 523. The Official Rules here, in contrast, do not use that term. Second, the later agreement in *Applied Energetics* had a merger clause providing that it reflected the parties' entire agreement. *Id.* at 523-24. That merger clause "displace[d]" the earlier arbitration agreement. *Id.* at 525-26. Here, in contract, the Official Rules do not have a merger clause. Simply put, *Applied Energetics* is a different case and is

---

[7] *International Union* is further distinguishable because the contracts at issue in that case had provisions that were in fact "inconsistent with each other." 323 F.3d at 546. Here, by contrast, *Mohamed* teaches that there is no inconsistency between the User Agreement's arbitration clause and the Official Rules' forum selection clause. *See* Section II.A.1, *supra*.

Cooley LLP
Attorneys at Law
San Francisco

8

Coinbase's Reply iso
Joinder and Mot. to Dismiss TAC
Case No. 3:21-cv-04539-SK

inapplicable to the supersession analysis here.[8]

In sum, black-letter contract principles are simple to apply in this case. Because the User Agreement and Official Rules did not involve the same contracting parties and do not embrace the same subject matter, the Official Rules did not supersede the User Agreement. Thus, the Court should compel arbitration.[9]

### B. Alternatively, the Court should enforce the Official Rules' class waiver and dismiss this case for lack of subject matter jurisdiction.

In the alternative, the Court should enforce the class action waiver in the Official Rules for the reasons set forth in Marden-Kane's Reply in Support of Motion to Dismiss. Plaintiffs cannot

---

[8] Relatedly, Plaintiffs incorrectly contend that the User Agreement's merger and integration clause "did not preclude the formation of other, future contracts," so the Official Rules could modify or supersede the User Agreement. Opp. at 18-19. First, as argued in Coinbase's Motion, controlling Ninth Circuit law holds that the Official Rules could not amend the fully-integrated User Agreement. Mot. at 9-10. Second, Plaintiffs' argument simply misses the point. Certainly, Coinbase and its users could form new agreements. But the User Agreement's integration clause shows that Coinbase and its users intended their agreement to be fully integrated and agreed to amend it only through specified procedures not used here. *See* Mot. at 10 n.4 (summarizing procedures for amending User Agreement). Moreover, Plaintiffs' cited authority merely holds that "extrinsic evidence" is not "bar[red]" when determining whether a contract modification has occurred. *See* Opp. at 18 (citing *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1413-14 (2012).) But the TAC does not (and cannot) allege the existence of any evidence that would support a finding that the parties intended to modify their agreement. Rather, the User Agreement's merger and integration clause further confirms that the Official Rules cannot, as a matter of law, supersede the User Agreement's arbitration provisions.

[9] Plaintiffs argue "[i]n the alternative" that the User Agreement's arbitration and delegation clauses are unconscionable, Opp. at 19, pivoting from their prior concession that the arbitration clause was enforceable. *See* Mot. at 10-11. The Court need not entertain their cursory argument, which does not even attempt to show that California's unconscionability standards are satisfied. *See, e.g.*, *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 12-5797, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (rejecting challenge that did not specify why delegation clause was unconscionable).

Plaintiffs rely solely on *Bielski v. Coinbase, Inc.*, No. 21-7478, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022), which they purport to incorporate by reference "as if fully set forth herein." *See* Opp. at 19. But they neither show how *Bielski* applies nor address the cases Coinbase had cited that enforced its User Agreement. *See id.*; *see also* Mot. at 11. *Bielski* is inapplicable because (1) it contradicts Ninth Circuit precedent (and Coinbase is appealing *Bielski* to the Ninth Circuit); and (2) the plaintiff there had always argued that the delegation and arbitration clauses were unconscionable, unlike Plaintiffs here. Mot. at 11. The Court should instead follow another, more recent decision from this district, *Alfia v. Coinbase Global, Inc.*, where the Court—though notified of *Bielski* by Coinbase—granted Coinbase's motion to compel arbitration over the plaintiff's unconscionability challenge. No. 21-8689, 2022 U.S. Dist. LEXIS 130559, at *8-10 (N.D. Cal. July 22, 2022). The Court rejected the plaintiff's argument that the class waiver and purportedly "relatively greater benefit" of the arbitration provision to Coinbase rendered the agreement unconscionable, because both parties were obligated to arbitrate designated claims. *See id.* at *10. Here, too, the parties' arbitration provision is both mutual and not unconscionable.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

establish federal subject matter jurisdiction if proceeding solely on their individual claims because they would not meet the statutory requirements under the Class Action Fairness Act ("CAFA"), which is Plaintiffs' sole basis for federal jurisdiction. *See* Mot. at 11. Therefore, the Court should dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

    **C.    Alternatively, the Court should grant Coinbase's motion to dismiss for failure to state a claim.**

        **1.    Plaintiffs still do not (and cannot) allege that the Dogecoin Sweepstakes was an illegal lottery (claims 1, 2, and 6).**

The Court previously held that the Dogecoin Sweepstakes was not an illegal lottery because participants could enter for free by mailing an index card. Order at 4, 13. Plaintiffs do not dispute the Court's finding that a free alternative method of entry ("FAME") existed. *See* Opp. at 24-25. And they allege no new facts that would change the Court's prior analysis. *See* Mot. at 16.

Instead, Plaintiffs once again seek to rewrite California lottery law to introduce a "reasonable entrant" standard, arguing that a lawful sweepstakes somehow becomes an unlawful lottery if a "reasonable entrant" believed that consideration was required to enter even if that was not true. Opp. at 22, 24. The Court previously rejected this argument, holding that the analysis under California lottery law depends on whether a FAME existed, not whether all entrants knew of it. Order at 12-13.

Plaintiffs again rely heavily on *California Gasoline Retailers v. Regal Petroleum*, misconstruing an excerpt of the decision in which the California Supreme Court stated that the "question of consideration is not to be viewed from the standpoint of the defendant, but from that of the [entrants]." Opp. at 22 (quoting 50 Cal. 2d 844, 860 (1958)). As Coinbase explained in prior motion practice, this statement does not establish a subjective test. *See* ECF No. 43 at 7. *Regal* was discussing another decision involving a movie theater's promotional contest, a decision which held that the contest was not a lottery because the theater made tickets freely available—even though it also received financial benefits resulting from the contest. 50 Cal. 2d at 853-55. The court in that underlying decision held that consideration is not determined from the defendant's standpoint (since the defendant in fact received a monetary benefit due to increased patronage at the theater),

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

but from the prize ticket holders' standpoint (as many of them paid nothing). *Id.* at 854-55. In other words, "consideration" is not satisfied just because a contest operator received a financial benefit; instead, the court must evaluate whether entrants had to pay consideration to participate. Similarly here, the Sweepstakes was not a lottery because a FAME was available and thus consideration was not required—even though participants could enter by trading Dogecoin, and though Coinbase received a financial benefit.

Moreover, Plaintiffs incorrectly interpret the Official Rules, contending that "Method 1" (entry by trading Dogecoin) was the only option available to Coinbase account holders, while "Method 2" (free entry by mailing an index card) was reserved for non-account holders. *See* Opp. at 23-25. Plaintiffs' erroneous interpretation turns on the first sentence of the "Method 1" description in the Official Rules, which states that account holders "must opt-in to participate in the Sweepstakes and must complete $100 USD" in Dogecoin trades during the Sweepstakes period. ECF No. 22-1 at 3. Plaintiffs assert that this means that all account holders were required to trade Dogecoin to participate rather than enter for free. But the only possible interpretation of this language found in the section about "Method 1" is that account holders "must" opt in and trade Dogecoin **to enter via "Method 1."** Nothing in the Method 1 section said that Method 2 was limited to non-account holders alone.[10] Moreover, Plaintiffs ignore the numerous instances in which Coinbase disclosed the FAME and stated that no purchase was necessary for **any** participant. *See, e.g.*, TAC ¶¶ 77-78, 81-87 (alleging that Coinbase included a "no-purchase-or-payment-necessary" throughout its marketing materials). These statements belie the notion that the FAME was available only to non-account holders, or that Coinbase misled its users by stating as much.

In any event, Plaintiffs' interpretation of the Official Rules (whether their own subjective interpretation, or that of a hypothetical, supposedly "reasonable entrant") is not just incorrect, but is irrelevant to the legal question presented—whether the Sweepstakes was an illegal lottery. In turn, the answer to that question is straightforward: the Sweepstakes was not an illegal lottery

---

[10] Similarly, language Plaintiffs identify elsewhere in Coinbase's marketing materials stating that participants would "need" to trade Dogecoin to participate (*see* Opp. at 24) only reminded participants that they would "need" to trade Dogecoin to participate via Method 1; it did not foreclose their participation via Method 2.

Cooley LLP
Attorneys at Law
San Francisco

11

Coinbase's Reply iso
Joinder and Mot. to Dismiss TAC
Case No. 3:21-cv-04539-SK

because a FAME existed. There is no merit to Plaintiffs' contention that the Court "previously recognized" that account holders "had to trade to enter." Opp. at 5; *see also id.* at 23. On the contrary, the Court held that Plaintiffs "have not **and cannot** allege a violation" of California's lottery laws because "they were not actually required to trade Dogecoins in order to enter the sweepstakes and have a chance to win." Order at 13 (emphasis added). Nothing in Plaintiffs' TAC changes this result.

Thus, the Court should again hold that the Dogecoin Sweepstakes was not an illegal lottery and dismiss with prejudice (1) Plaintiffs' first claim (violation of the Unfair Competition Law) in full; and (2) Plaintiffs' second and sixth claim (violation of the False Advertising Law and Consumers Legal Remedies Act, respectively) to the extent they are premised on a violation of California Penal Code § 320.

### 2. Plaintiffs' CLRA claims must be dismissed (claims 6 and 7).

Coinbase's Motion explained that dismissal of the CLRA claims is required because (1) cryptocurrencies like Dogecoin are not "goods" (or "tangible chattels") to which the CLRA applies, and (2) Coinbase is not otherwise providing a "service" under the statute. Mot. at 17-18. Plaintiffs offer no adequate rebuttal to these points. *See* ECF No. 89 (Plaintiffs' "M-K Opp.") at 14-19.

#### a. Plaintiffs' own "ancillary services" caselaw shows dismissal is required.

Plaintiffs' authorities collectively demonstrate that their CLRA claims are not proper against Coinbase, a cryptocurrency exchange, because (1) virtual cryptocurrencies like Dogecoin are not "tangible chattels" to which the CLRA applies; and (2) Coinbase is not a covered "service." *See* M-K Opp. at 16-19.

First, in *Sonoda v. Amerisave Mortgage Corp.*, the court noted in dicta that if defendant Amerisave was "selling brokerage services"—*i.e.*, "its [own] work or labor in finding a loan for Plaintiffs"—then it "might well" have fallen under the purview of the CLRA. No. 11-1803, 2011 WL 2690451, at *4 (N.D. Cal. July 8, 2011). But Plaintiffs do not (and cannot) allege that Coinbase's role in the Dogecoin Sweepstakes is akin to a "brokerage service" because Coinbase was not "selling" its "work and labor" to Plaintiffs in setting up the Sweepstakes. *Id*.

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.* similarly confirms that Plaintiffs'

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

1  CLRA claims should be dismissed. *Yahoo!* held that Yahoo!'s "email services" could qualify as a
2  "service" for purposes of alleging a CLRA claim, but its ruling was based on plaintiffs' numerous
3  allegations about the level of services that Yahoo! provided to customers. 313 F. Supp. 3d 1113,
4  1142 (N.D. Cal. 2018). Plaintiffs do not (and cannot) make similar allegations as to Coinbase. The
5  *Yahoo!* court also analogized to sales of "software," which courts have held can qualify as a CLRA
6  "good" because consumers can purchase it "in a store, pick it up in their hands, and carry it home."
7  *See id.* (citing and summarizing *Haskins v. Symantec Corp.*, No. 13-1834, 2013 WL 6234610, at
8  *9 (N.D. Cal. Dec. 2, 2013)). Cryptocurrency is plainly distinguishable in this respect, as Plaintiffs
9  themselves concede. *See* M-K Opp. at 15 (admitting that "cryptocurrencies themselves are not
10 'tangible goods'").

   b.  **Jeong and Reeves show that the CLRA does not apply to Dogecoin, a cryptocurrency, or Coinbase, a cryptocurrency exchange.**

13 Plaintiffs fail to distinguish *Jeong* and *Reeves*—both recent Northern District of California
14 cases—that are directly analogous here and warrant dismissal of their CLRA claims.
15 As to *Jeong*, Plaintiffs argue that the defendant there provided services beyond
16 cryptocurrency trading tools that allegedly gave rise to a CLRA claim. Opp. at 21 (discussing *Jeong*
17 *v. Nexo Fin. LLC*, No. 21-2392, 2022 WL 174236, at *23-24 (N.D. Cal. Jan. 19, 2022).) But, fatal
18 to their arguments, Plaintiffs fail to meaningfully address *Jeong*'s central holding (which relied on
19 several in-district cases) that virtual currencies on digital platforms are "outside the purview of the
20 CLRA," since they "exist only as an indicia of the credit extended" and are thus "intangible." *Jeong*,
21 2022 WL 174236, at *23-24.
22 Plaintiffs also attempt to distinguish *Reeves*, arguing that it "did not hold that a defendant
23 charging standalone 'fees' for a standalone 'service' of matching and facilitating digital token
24 trades . . . is [] immune from CLRA 'services' liability[.]" M-K Opp. at 19 (citing *Reeves v. Niantic,*
25 *Inc.*, No. 21-5883, 2022 WL 1769199, at *2 (N.D. Cal. May 31, 2022)). But *Reeves* undisputedly
26 held that (1) virtual currencies are not tangible "goods" under the CLRA; (2) the sale of virtual
27 currency is not a "service" under the CLRA; and (3) "courts should not shoehorn transactions
28 involving the purchase of intangible goods into the definition of 'services.'" *Id.* at *2.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

Nor are Plaintiffs correct that the CLRA contains an ambiguity that must be resolved in their favor. *See* M-K Opp. at 20. Indeed, as above, Plaintiffs themselves concede that cryptocurrency is not a "tangible good" under the statute. *Id.* at 15. Thus, it is undisputed that virtual currency like Dogecoin is not a tangible good that could serve as the basis for a CLRA claim. *See* Cal. Civ. Code § 1761(d).

### 3.     Coinbase's CLRA arguments are procedurally proper.

Plaintiffs contend that Coinbase's CLRA arguments should be precluded as procedurally improper under Federal Rule of Civil Procedure 12(g)(2). Opp. at 20-21. They are not. It is axiomatic that the filing of an amended complaint allows the defendant to raise new arguments supporting dismissal, including on claims where the district court ruled as to a prior complaint. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018), 899 F.3d at 1043 ("[P]ermitting the filing of an amended complaint requires a new determination."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[A]n amended complaint supersedes the original complaint and renders it without legal effect[.]"); *Sidebotham v. Robison*, 216 F.2d 816, 823 (9th Cir. 1954) ("[O]n filing a third amended complaint which carried over the causes of action of the second amended complaint, the appellees were free to challenge the entire new complaint.").

Courts in this district routinely follow this principle. *See, e.g.*, *Turner v. Tierney*, No. 12-6231, 2013 WL 2156264, at *1 (N.D. Cal. May 17, 2013) (defendant's motion to dismiss amended complaint was "not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint," so Civil Local Rule 7-9—which outlines the circumstances under which a party can bring a motion for reconsideration of a new court order—did not apply); *Bruton v. Gerber Prods. Co.*, No. 12-2412, 2014 WL 172111, at *7 n.2 (N.D. Cal. Jan. 15, 2014) (defendant's motion to dismiss amended complaint on grounds "already considered[] and rejected" by prior rulings was "not seeking reconsideration of the Court's prior Order, but rather [was] responding to [plaintiff's] new complaint").

Moreover, Plaintiffs' authorities—exclusively out-of-circuit district court cases—are not to the contrary because Coinbase is not raising a "brand new Rule 12(b)(6) defense." Opp. at 21.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK

Coinbase is citing newly-decided, in-district caselaw—*Jeong* and *Reeves*—that directly addresses to what extent the CLRA applies (or does not apply) to cryptocurrency exchanges like Coinbase. Specifically, *Jeong* and *Reeves* were issued in January and May 2022, respectively, **after** briefing on the motions to dismiss Plaintiffs' Second Amended Complaint was complete.

### D. Plaintiffs concede that the TAC's request for injunctive relief should be dismissed or stricken.

Coinbase and Marden-Kane's Motions both argued that Plaintiffs' request for injunctive relief should be stricken because the TAC states no basis for an injunction, where the challenged conduct is neither ongoing nor expected to recur. *See* Mot. at 18-19; ECF No. 87 at 16. Plaintiffs' opposition briefs offered no response. Their failure to respond is a waiver that mandates dismissal or striking of the TAC's requests for injunctive relief. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100-01 (N.D. Cal. 2017) (finding waiver and dismissing claims as to which plaintiff failed to oppose defendant's motion to dismiss).

### III. CONCLUSION

The Court should compel arbitration of this dispute. Alternatively, the Court should dismiss the entire case for lack of subject matter jurisdiction, based on the Official Rules' class action waiver. Additionally, the Court should dismiss Plaintiffs' lottery-based claims and CLRA claims, and dismiss or strike the TAC's requests for injunctive relief as waived. The dismissal should be with prejudice: Plaintiffs have already filed multiple amended pleadings, and further amendment would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (denial of leave to amend was proper where amendment would be futile).

Dated: August 1, 2022                                COOLEY LLP

                                                     By: */s/ Michael G. Rhodes*
                                                         Michael G. Rhodes

                                                     Attorneys for Defendant
                                                     COINBASE, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

COINBASE'S REPLY ISO
JOINDER AND MOT. TO DISMISS TAC
CASE NO. 3:21-CV-04539-SK