**VENABLE LLP**
Laura A. Wytsma (SBN 189527)
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
lawytsma@venable.com
Telephone: (310) 229-9900
Facsimile:  (310) 229-9901

Attorneys for Defendant
MARDEN-KANE, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>COINBASE INC. and MARDEN-KANE, INC.,<br><br>             Defendants. | Case No. 3:21-cv-04539-SK<br><br>**MARDEN-KANE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   August 22, 2022<br>Time:   9:30 a.m.<br>Ctrm.:  C |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

I. California Law Does Not Bar Enforcing An Informal Complaint Resolution Process Or Plaintiffs' Double-Waiver Of Class Claims ................................................ 3

II. Plaintiffs Cannot Excuse Their Jumbled Allegations Against "Defendants" ............... 7

III. Plaintiffs' CLRA Claims Against Marden-Kane Fail As A Matter Of Law ................ 8

    A. Marden-Kane Did Not Make Any "Representation" In Any "Transaction"—As Plaintiffs' Own TAC Establishes ....................................... 8

    B. Because The CLRA Does Not Apply To Dogecoin Or Cryptocurrency Exchanges, Plaintiffs' CLRA Claims Should Be Dismissed ............................. 9

    C. Plaintiffs Cannot Excuse Their Failure To Comply With The CLRA's Dispute Resolution And Venue Requirements. ............................................... 10

IV. Plaintiffs' New Allegations Based On A "Reasonable Entrant" Theory Do Not Support Claims Based On An Unlawful Lottery ........................................................ 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arguelles-Romero v. Super. Ct.*,
　184 Cal. App. 4th 825 (2010) ................................................................................................... 5

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) ................................................................................................................. 5

*Baltazar v. Forever 21, Inc.*,
　62 Cal. 4th 1237 (2016) ........................................................................................................... 5

*Barbera v. WMC Mortgage Corp.*,
　No. 04-3738, 2006 WL 167632 (N.D. Cal. Jan. 19, 2006) ...................................................... 4

*Brosnan v. Dry Cleaning Station, Inc.*,
　2008 U.S. Dist. LEXIS 44678 (N.D. Cal. June 8, 2008) .......................................................... 3

*California Gasoline Retailers v. Regal Petroleum*,
　50 Cal. 2d 844 (1958) ............................................................................................................ 13

*Cattie v. Wal-Mart Stores, Inc.*,
　504 F. Supp. 2d 939 (S.D. Cal. 2007) .................................................................................... 11

*Chung Ping Turng v. Guaranteed Rate*,
　371 F. Supp. 3d 610 (N.D. Cal. 2019) ..................................................................................... 5

*Discover Bank v. Super. Ct.*,
　36 Cal. 4th 149 (2005) ................................................................................................. 1, 4, 5, 6

*Jeong v. Nexo Fin. LLC*,
　No. 21-2392, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) .................................................... 10

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) .................................................................................................. 8

*Laster v. T-Mobile USA, Inc.*,
　407 F. Supp. 2d 1181 (S.D. Cal. 2005) .................................................................................. 10

*Ofir v. Transamerica Premier Life Ins. Co.*,
　No. 17-1544, 2017 WL 6059162 (S.D. Cal. Dec. 6, 2017) ..................................................... 4

*Reeves v. Niantic, Inc.*,
　No. 21-5883, 2022 WL 1769199 (N.D. Cal. May 31, 2022) ................................................. 10

*Sapan v. Lexington Mortg. Corp.*,
  2017 U.S. Dist. LEXIS 63069 (C.D. Cal. Apr. 17, 2017) ................................................. 10

*Seifi v. Mercedes-Benz USA, LLC*,
  No. 12-5493, 2013 WL 2285339 (N.D. Cal. May 23, 2013) ............................................. 4

*United Specialty Ins. Co. v. Clean & Sober Media LLC*,
  2021 U.S. Dist. LEXIS 81911 (N.D. Cal. Feb. 19, 2021) ................................................... 3

*Waller v. Hewlett-Packard Co.*,
  2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 16, 2011) ............................................... 10

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
  187 Cal. App. 4th 634 (2010) ............................................................................................ 5

*Yu v. Design Learned, Inc.*,
  2016 U.S. Dist. LEXIS 54374 (N.D. Cal. Apr. 22, 2016) .................................................. 7

**Statutes**

Cal. Civ. Code § 1770(a) ............................................................................................................. 9

Cal. Civ. Code § 1780(a)(1) ........................................................................................................ 7

Cal. Civ. Code § 1780(a)(e) ........................................................................................................ 7

Cal. Civ. Code § 1782 ............................................................................................................... 10

Cal. Civ. Code § 1782(a) .......................................................................................................... 10

Cal. Civil Code § 1780(d) ................................................................................................... 11, 12

**INTRODUCTION**

Try as they might, Plaintiffs cannot avoid their contractual obligation to pursue claims arising out of their Dogecoin purchases during a Coinbase sweepstakes event on an individual basis—regardless of whether resolved in arbitration or court. Beyond Plaintiffs' obligation to arbitrate their claims arising out of use of Coinbase services, the Court should enforce the class waiver Plaintiffs agreed to not once, but twice. The purchases which supposedly injured Plaintiffs were made pursuant to a User Agreement waiving class claims, to participate in Coinbase's Dogecoin Sweepstakes, which had rules reinforcing the initial valid, class waiver.

Plaintiffs are wrong that *Discover Bank* and *Gentry* preclude enforcing the waiver here. The key concerns underpinning those decisions—e.g., the small damages at issue ($29 in *Discover Bank*); the promotion of public health, safety, and a stable job market or the potential for retaliation against low-wage employees and significant evidentiary barriers (as in *Gentry*); or fee awards that were discretionary (as in both cases)—do not exist here. Nor do Plaintiffs' belated, unsubstantiated, and inherently contradictory unconscionability claims bar the class waiver's enforcement. Indeed, Plaintiffs cannot invoke the Dogecoin Sweepstakes rules to attempt to dodge their obligations under their User Agreements and then insist that those same rules are unconscionable to avoid their class waiver.

As to their individual claims, Plaintiffs fail to adequately plead liability under any theory against Marden-Kane. Seeking to shirk their heightened burden of alleging claims premised on false advertising with particularity, Plaintiffs argue that they should be permitted to pursue claims against Marden-Kane based on euphemisms ("business partner"), aspersions ("hired gun") and non-specific allegations of joint liability (Marden-Kane "caused" Coinbase to make allegedly false representations). Nowhere, though, do Plaintiffs address the cases making clear that they cannot do so.

Beyond Plaintiffs' pleading failure, their fifth and sixth claims under the Consumers Legal Remedies Act (CLRA) fail as a matter of law. Whether the relevant "transaction" is purchasing Dogecoin from Coinbase or entering the Dogecoin Sweepstakes, Plaintiffs cannot point to any "transaction" *with Marden-Kane*. And as decisions from this district have recently

held, no statutorily-defined "goods" or "services" are at issue that would trigger application of the CLRA. In any case, Plaintiffs failed to allow Marden-Kane to remedy their alleged injury *before* filing suit, and now have exacerbated their failure by pursuing claims in an improper forum. For these additional reasons, the claims against Marden-Kane should be dismissed.

As for their claims based on the inaccurate theory that the Dogecoin Sweepstakes was an illegal lottery, Plaintiffs have not provided a compelling reason for the Court to alter its initial decision that the sweepstakes did *not* constitute an unlawful lottery. Their fundamental theory remains substantially the same: a reasonable entrant *could have* been misled into believing no such alternative existed. But critically, Plaintiffs do not and cannot dispute the dispositive fact that a free, alternative method of entry was actually available to all persons.

Lastly, there is no dispute that Plaintiffs' injunctive relief claim should be dismissed. Plaintiffs' total silence on this issue—in voluminous briefing—concedes the point.

In fifty pages of combined opposition briefing, Plaintiffs level many false accusations against Marden-Kane and advance many irrelevant arguments. But name-calling is no substitute for detailed, factual allegations of wrongdoing, and Plaintiffs' Third Amended Complaint lacks such allegations of misconduct specifically attributable to Marden-Kane. While Plaintiffs suggest that Marden-Kane is a "hired gun" who "caused" Coinbase to purportedly violate the law, its Third Amended Complaint alleges no specific facts explaining how Marden-Kane *caused* Coinbase—a sophisticated, independent company with a team of inside legal counsel—to do anything.

For the reasons addressed below, the Court should enforce the class waiver and strike the class allegations, strike the claim for injunctive relief, dismiss the lottery and CLRA claims against Marden-Kane with prejudice, and dismiss all remaining claims against Marden-Kane not pled with the requisite particularity. If leave to amend is granted, and it should not be after *four* tries, then it should be coupled with a specific admonition that further amendment of the complaint will require specific (and Rule 11-compliant) allegations of wrongdoing specific to Marden-Kane.

2

# ARGUMENT

## I. California Law Does Not Bar Enforcing an Informal Complaint Resolution Process or Plaintiffs' Double-Waiver of Class Claims

Plaintiffs do not dispute that they purchased Dogecoin pursuant to a User Agreement, which govern disputes arising out of or relating to Coinbase Services. Nor do they (or could they) dispute that their claims arise out of Coinbase Services. Indeed, their alleged injury *is* the use of Coinbase Services—*viz*, purchasing or selling cryptocurrency from Coinbase. *See, e.g.*, TAC ¶ 110 ("Plaintiffs … have lost money and property by purchasing and/or selling Dogecoins for $100 more on coinbase.com or the Coinbase app, and by paying all attendant transaction costs to Coinbase.").

This User Agreement required Plaintiffs to submit disputes to Coinbase through a "Formal Complaint Process" for a prompt resolution and then, if not resolved, to arbitrate or litigate them on an individual basis. ECF No. 33-7, Ex. 6 (User Agreement) § 7.2. The latter "individual basis" requirement was reflected not only in the User Agreements, but in the Dogecoin Sweepstakes rules. TAC Ex. 1 ¶ 10 (Official Rules).

In opposing Marden-Kane's motion, Plaintiffs make no attempt to excuse their failure to utilize Coinbase's dispute resolution procedure—because they have no justification for failing to do so. *See* Mot. at 4-5. Plaintiffs similarly ignore caselaw requiring compliance with such contractual preconditions. *E.g., United Specialty Ins. Co. v. Clean & Sober Media LLC*, 2021 U.S. Dist. LEXIS 81911, at *9 (N.D. Cal. Feb. 19, 2021); *Brosnan v. Dry Cleaning Station, Inc.*, 2008 U.S. Dist. LEXIS 44678, at *2-3 (N.D. Cal. June 8, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."). Plaintiffs having said **nothing** on this point, **it should be deemed conceded**. The Court should dismiss this case entirely until Plaintiffs seek—in good faith—to resolve their grievances through the dispute resolution procedures they expressly agreed to.

Just as Plaintiffs ignore their agreement to follow the User Agreement's "Complaint Process," they likewise seek to evade its arbitration clause. M-K Opp. at 7-8. They should

not be permitted to do so, for all the reasons discussed in Coinbase's Motion and Reply, which Marden-Kane incorporates here. Coinbase Mot. at 6-10; Coinbase Reply at 1-9.

Noting that Marden-Kane is not a signatory to the User Agreements—an undisputed point—Plaintiffs argue that Marden-Kane cannot enforce the agreements. As discussed in Marden-Kane's opening brief, the Court need not address the various legal theories and equitable doctrines under which Marden-Kane has standing to enforce the User Agreement's arbitration requirement.[1] *See* M-K Mot. at 7. Such analysis is only necessary following a judicial determination that the arbitration provision in the User Agreement is enforceable against Plaintiffs with respect to the claims in the Third Amended Complaint.

Turning to the class action waiver in the Dogecoin Sweepstakes rules, Plaintiffs now argue for the first time that the rules are unconscionable (M-K Opp. at 8-13) and insist that *Discover Bank v. Superior Court*, 36 Cal. 4th 149 (2005) bars their enforcement. Not so.

As an initial matter, Plaintiffs failed to plead any factual allegations supporting an unconscionability claim in their Third Amended Complaint. *See* TAC ¶¶ 92-94 (containing only conclusory allegations parroting unconscionability factors under *Discover Bank*). In California, plaintiffs must allege *facts* to support a legal finding of unconscionability. *See Seifi v. Mercedes-Benz USA, LLC*, No. 12-5493, 2013 WL 2285339, at *5 (N.D. Cal. May 23, 2013) (dismissing express warranty claim for failure to allege facts demonstrating that the terms were overly harsh and thus unconscionable); *Ofir v. Transamerica Premier Life Ins. Co.*, No. 17-1544, 2017 WL 6059162, at *7 (S.D. Cal. Dec. 6, 2017) (dismissing breach of contract claim for failure to allege facts supporting unconscionability of aviation exclusion provision in insurance contract). The Court should disregard Plaintiffs' argument, as they cannot correct this pleading deficit through briefing. *See, e.g.*, *Barbera v. WMC Mortgage Corp.*, No. 04-3738, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss").

---

[1] When addressing liability, Plaintiffs seek to hold Marden-Kane accountable for Coinbase's alleged conduct under a quasi-agency theory. But when it comes to arbitration, Plaintiffs try to distance the two companies. It must pick a position—either there is an identity of interest, or not.

4

REPLY IN SUPPORT OF MOTION TO DISMISS

Even if considered, Plaintiffs' *Discover Bank* argument fails. As an initial matter, the U.S. Supreme Court expressly overruled *Discover Bank* in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Plaintiffs incorrectly counter that *Concepcion* is inapplicable here because no valid arbitration agreement exists. M-K Opp. at 12. But that argument relies on Plaintiffs' incorrect assertion that the Dogecoin Sweepstakes rules superseded the User Agreement, and thus no valid arbitration agreement still exists. As explained in Coinbase's brief that argument fails. *See* Coinbase Reply at 6-9. *Discover Bank* does not control here.

And even if *Discover Bank* controlled, Plaintiffs have not satisfied its standard. In California, a plaintiff must allege and show, *inter alia*, substantive unconscionability to invalidate a contract provision—i.e., that contract enforcement would generate "overly harsh" results or is "one-sided" despite an "absence of justification for it." *Chung Ping Turng v. Guaranteed Rate*, 371 F. Supp. 3d 610, 624 (N.D. Cal. 2019); *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647 (2010). Class action waivers do not inherently meet this standard: *Discover Bank* itself stated that "not all class action waivers are necessarily unconscionable," 36 Cal. 4th at 162-63, and California courts have continued to enforce class waivers following *Discover Bank*. *See, e.g.*, *Walnut Producers*, 187 Cal. App. 4th 634, 647 (2010); *Arguelles-Romero v. Super. Ct.*, 184 Cal. App. 4th 825, 844 (2010).

Nor can Plaintiffs show that the waiver is "overly harsh" or unduly "one-sided." They argue that, though worded mutually, it is "one-sided" because, as a practical matter, Coinbase would not file class actions against its users. M-K Opp. at 10-11. But even functionally "one-sided" waivers are not inherently unconscionable. If they were, virtually all class action waivers in business-to-consumer contracts would be unenforceable in California. *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1248 n.4 (2016) (a provision is not "unfairly one-sided merely because one side is, as a practical matter, more likely to make use of it"). Instead, California courts have upheld waivers where a class action is not the only effective means of enforcing plaintiffs' rights. *See, e.g.*, *Walnut Producers*, 187 Cal. App. 4th at 647 (enforcing waiver because class action was not plaintiffs' only feasible mechanism for relief, where they could recover non-trivial damages in individual actions).

5

REPLY IN SUPPORT OF MOTION TO DISMISS

Further, Plaintiffs cannot establish under *Discover Bank* that the class action waiver is a substantively unconscionable "exculpatory contract" that immunizes defendants from liability for injury allegedly suffered by Dogecoin Sweepstakes participants. *See* M-K Opp. at 9-10. A contract term may be "exculpatory," and thus substantively unconscionable, if a defendant who seeks to enforce the contract has allegedly "deliberately cheat[ed] large numbers of consumers out of individually small sums of money," but—by operation of the challenged contract term (here, the class waiver) would be "insulate[d] . . . from liability that otherwise would be imposed under California law." *Discover Bank*, 36 Cal. 4th at 161-62.

Plaintiffs cannot show that is the case here: setting aside its demand for a class action mechanism, their TAC alleges that they are entitled to actual and punitive damages, restitution, and attorneys' fees. *See generally* TAC, Prayer for Relief. And without classwide litigation, Plaintiffs can still pursue redress through procedures they contractually agreed to before using Coinbase's services—the Formal Complaint Process and—if not thus resolved—via individual arbitration (or individual litigation, if not compelled to arbitration).[2] *See* ECF 33-7 at 12. Thus, the class action waiver is not an exculpatory contract term.

Plaintiffs next argue that this case involves "predictably [] small amounts of damages" that *Discover Bank* contemplated. But their Prayer for Damages—which seeks statutory CLRA damages ($1000 per violation), disgorgement of profits, and punitive damages—shows just the opposite. *See* M-K Mot. at 8-9; Coinbase Mot. at 13-14. While Plaintiffs' briefing suggests that their individual claims are as low as "$100", that briefing cannot amend the Third Amended Complaint, in which the damages theories are not so limited. And even if "plaintiffs'

---

[2] Even if the *venue provision* in the Official Rules (state or federal court) superseded the *venue provision* in the User Agreement (small claims court or arbitration), nothing in the Official Rules purported to undo Plaintiffs' separate, enforceable class action waiver that appears in both documents. Quite the contrary, in fact. *See* TAC ¶ 94 (Plaintiffs allege that the Official Rules provide that "[c]laims may not be resolved through any form of class action."). Notably, the User Agreement contains a "Severability" provision so that, in the event one provision is not enforced, the other provisions "shall not be affected." ECF No. 33-7 ¶ 8.7. So even if the venue provision in the Official Rules controlled, the remaining obligations in both the User Agreement and Official Rules, including the class action waivers, would remain enforceable.

lawyers are unlikely to spend contingency time on a $100, individual damages claim," (Opp. at 10), lawyers *are* likely to pursue claims authorizing statutory and punitive damages and, if meritorious, *mandating* an award of fees. Cal. Civ. Code § 1780(a)(1), (e). That alone, is a powerfully strong incentive.

For this reason, *Gentry v. Superior Court*, involving a Labor Code provision that made fee awards discretionary, does not support Plaintiffs' position. Also, important public policy reasons influenced the Court's refusal to enforce a class action waiver. Specifically, California's overtime wages law promotes a stable job market, promotes public health and safety and plaintiffs bringing overtime claims face "real world obstacles" such as low incomes; evidentiary challenges; risk of intimidation, retaliation or even termination; economic dependency on job security and other significant challenges to pursuing an individual claim. 42 Cal.4th 443, 784-86 (2007).

No such "significant disadvantages" (*id.* at 794) to pursuing individual relief exist here. Nor do important public policies—such as the health, safety, and security of low-wage workers or job market stability—require protecting traders of cryptocurrency who can afford $100 to enter a sweepstakes and whose only "injury" is paying $100 to receive $100 in value of Dogecoin. Plaintiffs can pursue, on their own behalf, all damages available to them (regardless of venue) and if they prevail on their CLRA claim, obtain a mandatory fee award.

## II. Plaintiffs Cannot Excuse Their Jumbled Allegations Against "Defendants"

As noted in the motion to dismiss, "grouping multiple defendants together in a broad allegation" of wrongdoing will not support a liability claim. *See, e.g., Yu v. Design Learned, Inc.*, 2016 U.S. Dist. LEXIS 54374, at *12-13 (N.D. Cal. Apr. 22, 2016) (granting motion to dismiss). But that is exactly what Plaintiffs did; they do not and cannot suggest otherwise. Throughout the Third Amended Complaint, alleged conduct of Coinbase alone—evidenced by the snapshots of Coinbase's website—is attributed to "Defendants" generally. *See, e.g.*, TAC ¶ 79 ("Defendants buried the same faint, fine-print text at the bottom of their "Opt-in" and "Make a trade" webpages and mobile screens."; referring to screenshot of *Coinbase* website).

In lumping Defendants together, Plaintiffs disregard their heightened burden of pleading their UCL and CLRA claims with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009). For example, Plaintiffs do not allege that Marden-Kane had any control over Coinbase's advertising or the placement of the rules in that advertising. Nor do (or can) Plaintiffs allege that Marden-Kane had any control over Coinbase's on-line process for opting-in to the sweepstakes. Indeed, Plaintiffs cannot allege that Marden-Kane exercised any control *whatsoever* over Coinbase—an independent company with its own team of inside legal counsel.

Plaintiffs argue that "it makes no difference whether Defendants' misleading ads were physically disseminated from Coinbase's website or Marden-Kane's website; what matters is that both Defendants specifically intended and caused the misrepresentations at issue to be disseminated …" But the Third Amended Complaint does not allege any specific facts showing that *Marden-Kane* "caused" Coinbase to represent anything. And simply alleging that it did so is not sufficient under Plaintiffs' heighted burden of pleading claims sounding in false advertising. Doubling down on (false) conclusory allegations does not cure this fatal pleading failure. Absent any *specific* factual allegations of *specific* wrongdoing by Marden-Kane, all claims against it should be dismissed.

**III.  Plaintiffs' CLRA Claims Against Marden-Kane Fail as a Matter of Law**

    **A.  Marden-Kane Did Not Make Any "Representation" in Any "Transaction"—as Plaintiffs' Own TAC Establishes**

The parties agree on what the CLRA prohibits: "any person in a transaction" from "[r]epresenting that [the] transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Opp. at 14 (citing Cal. Civ. Code § 1770(a)(14)). But Plaintiffs do not and cannot allege any "transaction" with Marden-Kane. Plaintiffs argue "the relevant 'transactions' were their entries into the DOGE Sweepstakes." *Id.* And that "transaction" did not include Marden-Kane. *See, e.g.,* TAC ¶ 30 ("Plaintiff Martin immediately *went on Coinbase* and bought Dogecoins she would not otherwise have purchased.") (emphasis added). Because Plaintiffs cannot allege that Marden-Kane entered

into a "transaction"—"an agreement [with] a consumer"—the CLRA claim against it fails as a matter of law.³ Plaintiffs further suggest a different transaction with Marden-Kane—the Official Rules for the Dogecoin Sweepstakes. But the rules do not "specifically name[]" Marden-Kane as a party; it is simply identified as the Administrator.

Moreover, Plaintiffs do not and cannot allege any representation that *Marden-Kane* made. Their own allegations and arguments make this clear. Addressing the "representation" limitation, Plaintiffs' opposition notes: "Defendants represented this by (among other things) prominently asserting in their Sweepstakes-entry solicitations: 'Remember, you'll still need to buy or sell $100 in Dogecoin on Coinbase by 6/10/21 for a chance to win.'" Opp. at 14 (citing TAC ¶¶ 11, 28-38). But the Third Amended Complaint itself alleges that this representation was made by Coinbase, *not* Marden-Kane. *Id.*; s*ee also* TAC ¶ 7 ("Coinbase directly emailed Plaintiffs and millions of its users, and also displayed to them on its website and mobile app, advertisements of a $1.2 million Dogecoin 'sweepstakes.'"). And, as noted above, Plaintiffs allege no specific facts showing that Marden-Kane *caused* Coinbase to make any representation.

**B.    Because the CLRA Does Not Apply to Dogecoin or Cryptocurrency Exchanges, Plaintiffs' CLRA Claims Should Be Dismissed**

To the extent Plaintiffs argue that the relevant CLRA "transaction" was entering the Dogecoin Sweepstakes (Opp. at 14), then it clearly does not involve a good or service. Cal. Civ. Code § 1770(a) ("CLRA applies only to the sale or lease of "goods or services."). If the relevant "transaction" was the purchase of Dogecoin, Marden-Kane was not a party to that transaction. Indeed, Plaintiffs' opposition highlights that the relevant transaction or "sale" did not involve Marden-Kane. *See* Opp. at 20 ("<u>Coinbase</u> separately and specifically charged Plaintiffs for *its* standalone "<u>Coinbase</u> Services"; emphasis added)); *id.* (arguing that Plaintiffs' payments for the "*Coinbase Services*" constituted a "sale" of "services"; emphasis added).

---

³ Since Marden-Kane did not enter into any "transaction," Plaintiffs' arguments concerning what it supposedly "intended" are irrelevant.

Moreover, and also dispositive of Plaintiffs' claim as Coinbase's briefing details, cryptocurrency like Dogecoin is not a tangible "good" covered by the CLRA, and Coinbase is not otherwise providing a "service" to consumers under the statute. *See* Coinbase Mot. at 17-18; Coinbase Reply at 12-13; *see also* M-K Opp. at 15 (Plaintiffs concede that cryptocurrency is not a tangible "good" under the CLRA). Crucially, Plaintiffs fail to distinguish *Jeong v. Nexo Fin. LLC*, No. 21-2392, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) and *Reeves v. Niantic, Inc.*, No. 21-5883, 2022 WL 1769199 (N.D. Cal. May 31, 2022)—decisions of the Northern District of California issued this year that are directly analogous and warrant dismissal of Plaintiffs' CLRA claims. *See* Coinbase Reply at 12.

### C.   Plaintiffs Cannot Excuse Their Failure to Comply with the CLRA's Dispute Resolution and Venue Requirements

Consistent with the statute's titular goal to afford "remedies" to consumers, the CLRA requires a plaintiff to provide pre-suit notice so that a defendant can "correct, repair, replace, or otherwise rectify the goods or services." Cal. Civ. Code § 1782. Plaintiffs concede that they did not provide such pre-filing notice. Caselaw in this Circuit explains that amendment to circumvent the pre-suit failure does "not rectify the situation." *Sapan v. Lexington Mortg. Corp.*, 2017 U.S. Dist. LEXIS 63069, at *5 (C.D. Cal. Apr. 17, 2017); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (requiring "[s]trict adherence to the statute's notice provision" "to accomplish the Act's goals of expeditious remediation before litigation."). Plaintiffs do not rebut—or even acknowledge—these cases dismissing with prejudice CLRA claims for damages filed without pre-suit notice. *See id.* ("[T]he only relief warranted here … is dismissal" without leave to amend); *Waller v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 145276 (S.D. Cal. Dec. 16, 2011).

Not only did Plaintiffs fail to give *any* pre-suit notice, their belated notice failed to explain how *Marden-Kane* could correct, repair, rectify or replace the "goods" or "services" supposedly offered by *Coinbase* to *its* users. Plaintiffs suggest that Marden-Kane should have discerned what specific relief Plaintiffs sought from the First Amended Complaint. This flips the burden of notice on its head. Cal. Civ. Code § 1782(a) ("the consumer shall do the

following"). If any Plaintiffs simply wanted Marden-Kane to write a check, they should have asked it to do so, and for a sum certain.

Plaintiffs' belated notice also sought unspecified relief for an uncertified class. However, the CLRA's pre-suit notice requirement is intended to resolve the grievances of an individual consumer, not an entire class. Compare § 1782(b) (discussing pre-suit notice requirement for individual "consumer") with *id.* § 1782(c) (discussing conditions when remedies offered to "consumers" will bar a CLRA class action for damages). Moreover, while Coinbase may have had information to contact *its* users, Marden-Kane had no such information. It did not and legally could not have access to such information under state and federal financial privacy statutes and regulations. And, of course, it had no reason to contact postcard entrants who fell outside the defined class.

Significantly, Plaintiffs never responded to Marden-Kane's request to provide additional information (a fact which they cannot dispute). That's because their notice was never intended to secure a full, quick, and pre-suit settlement but rather to "check off" a statutory requirement that Plaintiffs ignored at the outset. Asking Marden-Kane for non-specific relief, only *after* publicly accusing it of fraud, impugning its good reputation, and embroiling it in an expensive class action lawsuit, is paying mere lip service to an important statutory goal of pre-dispute resolution. "Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement." *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). Because Plaintiffs failed to afford Marden-Kane a pre-suit opportunity to rectify the "goods and services" (provided by Coinbase), the Court should dismiss the CLRA claim against it. *See Cattie,* 504 F. Supp. 2d at 950 (dismissing CLRA damages claim with prejudice).

Filing without pre-suit notice is not Plaintiffs' only filing failure. Plaintiffs also failed to file an affidavit "stating facts showing that the action has been commenced in a … proper place for the trial of the action." Cal. Civil Code § 1780(d). Plaintiffs offer to file such an affidavit now. But they miss the point—this is not a proper place for a claim against Marden-

Kane, which neither "resides" in San Francisco County, nor has a "principal place of business" here. *Id.* And any of its conduct relevant to the Dogecoin Sweepstakes occurred in New York. That the Dogecoin Sweepstakes rules required "EACH ENTRANT … participating in the Promotion" to submit to the jurisdiction of California courts (TAC, Ex. A ¶ 10), does not mean that Marden-Kane waived its objections to being sued in a venue where it does not reside or have a principal place of business. *See also id.* ¶ 1 ("Participation constitutes *entrant's* full and unconditional agreement to these Official Rules ") (emphasis added). Indeed, Plaintiffs have not shown that the "rules" impose any contractual obligations whatsoever on Marden-Kane which, under the rules, could not enter the Dogecoin Sweepstakes. Notably, Plaintiffs dispute that Dogecoin Sweepstakes rules constitute a legally binding contract; quite the contrary, they allege the rules are unenforceable. (Again, Plaintiffs cannot have it both ways.)

The CLRA explicitly requires Plaintiffs to pursue their claims in a "proper place." And this is not the proper place, at least as to Marden-Kane.

## IV. Plaintiffs' New Allegations Based on a "Reasonable Entrant" Theory Do Not Support Claims Based on an Unlawful Lottery

The Court previously held that the Dogecoin Sweepstakes was not an illegal lottery because participants could enter for free by mailing an index card. ECF No. 53 at 13. And Plaintiffs do not (and cannot) dispute the existence of this free alternative method of entry ("FAME"). *See* Pls.' Opp. to Coinbase Mot. at 24-25. Plaintiffs allege no new facts in the TAC that would change the Court's prior analysis.[4] Notably, Plaintiffs have not alleged that any Coinbase user sending a postcard would have been refused entry to the sweepstakes. Indeed, that would have been impossible since Marden-Kane could not have known if a postcard entrant was also an existing Coinbase user.

Instead of pleading any new relevant facts, Plaintiffs again seek to rewrite California lottery law to introduce a "reasonable entrant" standard. *See* Pls. Opp. to Coinbase Mot. at 22, 24. However, the Court has already rejected this argument. ECF No. 53 at 12-13. And as

---

[4] Marden-Kane incorporates by reference Coinbase's arguments as to why dismissal of the lottery-based claims remains appropriate. *See* Coinbase Reply at 9-11.

explained in Coinbase's Reply, Plaintiffs' renewed reliance on *California Gasoline Retailers v. Regal Petroleum*, 50 Cal. 2d 844 (1958) remains unavailing. *See* Coinbase Reply at 10.

Plaintiffs also incorrectly interpret the Official Rules concerning the two methods of entry into the Dogecoin Sweepstakes. Plaintiffs' erroneous interpretation turns on the first sentence of the "Method 1" description in the sweepstakes rules, which states that account holders "must opt-in to participate in the Sweepstakes and must complete $100 USD" in Dogecoin trades during the Sweepstakes period. ECF No. 22-1 at 3. Plaintiffs assert that this means that all account holders were required to trade Dogecoin to participate rather than enter for free. But the correct interpretation of this language is that account holders "must" opt in and trade Dogecoin only to enter via "Method 1". *See* Coinbase Reply at 10-11.

In any event, Plaintiffs' interpretation of the Official Rules is not just incorrect but irrelevant to the relevant legal question—whether the Dogecoin Sweepstakes was an illegal lottery. The answer is straightforward: as the Court previously held, the Sweepstakes was not an illegal lottery because a free, alternative method of entry actually existed (and was used). Nothing in Plaintiffs' TAC changes this result. *See* Coinbase Reply at 9-11.

## CONCLUSION

Plaintiffs offer many excuses for their many failures—failing to seek a pre-suit resolution, failing to provide pre-suit notice of the CLRA claim, failing to file the requisite CLRA affidavit, and so on. None sanction their failures.

Plaintiffs continue to insist that they are not bound by their User Agreements (which they previously conceded to be valid), even though their claims clearly arise out of services provided under those agreements. But the sweepstakes rules—if it is the *three*-party agreement Plaintiffs allege that it is—did not supersede the User Agreements between *two* signatories. And the rules reinforced that any entrant would be required to litigate claims arising out of the Dogecoin sweepstakes on an individual basis. The Court should enforce the Plaintiffs' agreement, reflected in both the User Agreement covering their Dogecoin purchases and the rules relating to the Coinbase Dogecoin sweepstakes they entered, to litigate their claims on an individual basis—regardless of *where* they do so.

Lastly, in their opposition, Plaintiffs double down on their efforts to paint Defendants with a broad brush of alleged wrongdoing. But even after *four* rounds of pleading, their most recent iteration of the complaint does not plead liability against Marden-Kane with the requisite specificity required for Plaintiffs' claims, which are all premised on theories of falsely advertising the Coinbase Dogecoin Sweepstakes to Coinbase users.

Dated: August 1, 2022

Respectfully submitted,

VENABLE LLP

/s/ *Laura A. Wytsma*
Laura A. Wytsma
Attorneys for Defendant Marden-Kane, Inc.