UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARDEN-KANE, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-04539-SK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>Regarding Docket Nos. 87, 88 |

This matter comes before the Court upon consideration of the motions to dismiss filed by Defendant Marden-Kane, Inc. ("Marden-Kane") and by Coinbase Global, Inc. ("Coinbase") (collectively referred to as "Defendants"). Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART both Defendants' motion for the reasons set forth below.

## BACKGROUND

Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek and Thomas Maher (collectively, "Plaintiffs") filed this purported class action on behalf of themselves and persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) sweepstakes in June 2021, and who purchased or sold Dogecoin on a Coinbase exchange for a total of $100 or more between June 3, 2021 and June 10, 2021. (Dkt. No. 83 (Third Amended Complaint, ¶ 95.) Coinbase hired Marden-Kane as the administrator of the Dogecoin Sweepstakes. (*Id.*, ¶ 23)

Plaintiffs are Coinbase users with Coinbase accounts, which they created before the sweepstakes began. When they created their Coinbase accounts, each Plaintiff agreed to the Coinbase User Agreement, each of which contains an arbitration provision. Suski agreed to a User Agreement with the following provision:

> . . . If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration**. The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by law, and the arbitral decision may be enforced in any court. . . .

(Dkt. No. 33-7 (Attached as Exhibit 6 to the Declaration of Carter McPherson-Evans) (emphasis in original).) Martin, Calsbeek, and Maher agreed to a User Agreement with the following provision:

> . . . **If we cannot resolve the dispute through the Formal Complaint Process, you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis (the "Arbitration Agreement"). Subject to applicable jurisdictional requirements, you may elect to pursue your claim in your local small claims court rather than through arbitration so long as your matter remains in small claims court and proceeds only on an individual (non-class and non-representative) basis. Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible https://www.adr.org/sites/default/files/Consumer%20Rules.pdf).**
>
> **This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge.**
>
> \* \* \*
>
> The arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language. The arbitrator may award any relief that a court of competent jurisdiction could award and the arbitral decision may be enforced in any court.

(Dkt. Nos. 33-8, 33-9, 33-10 (Exhibits 7, 8, 9 to the McPherson-Evans Decl.) (emphasis in original).)

Suski accepted Coinbase's User Agreement on January 24, 2018; Martin accepted on February 12, 2021; Calsbeek accepted on May 13, 2021; and Maher accepted on April 5, 2020. (Dkt. Nos. 33-3, 33-4, 33-5, 33-6 (Exhibits 2 through 5 to the McPherson-Evans Decl.).)

Plaintiffs then participated in Coinbase's June 2021 sweepstakes. The "Official Rules" for the Dogecoin Sweepstakes identifies Coinbase as the sponsor and Marden-Kane as the administrator and states:

> Participation [in the Sweepstakes] constitutes entrant's full and unconditional agreement to these Official Rules and [Coinbase's] and [its] Administrator's decisions, which are final and binding in all matters related to the Sweepstakes."

(Dkt. No. 83-1, Ex. A (Official Rules), ¶ 1.) The Official Rules further provide:

> THE CALIFORNIA COURTS (STATE AND FEDERAL) SHALL HAVE SOLE JURISDICTION OF ANY CONTROVERSIES REGARDING THE PROMOTION AND THE LAWS OF THE STATE OF CALIFORNIA SHALL GOVERN THE PROMOTION. EACH ENTRANT WAIVES ANY AND ALL OBJECTIONS TO JURISDICTION AND VENUE IN THOSE COURTS FOR ANY REASON AND HEREBY SUBMITS TO THE JURISDICTION OF THOSE COURTS. Claims may not be resolved through any form of class action.

(*Id*., ¶10.)

The Court denied Coinbase's earlier motion to compel arbitration, which Coinbase then appealed to the Ninth Circuit. (Dkt. Nos. 53, 58.) The Court also granted in part and denied in part Coinbase's alternative motion to dismiss. (Dkt. No. 53.) The Court granted the motion as to Plaintiffs' claim that the Dogecoin Sweepstakes constituted an illegal lottery under California Penal Code § 320 but provided Plaintiffs with leave to amend. (*Id*.) Marden-Kane did not move to compel arbitration or dismiss any of Plaintiff's claims at that time. Plaintiffs filed their Third Amended Complaint in response. (Dkt. No. 83.)

In their Third Amended Complaint, Plaintiffs bring the following claims against both Defendants: (1) violations of the California Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. ("UCL") based on California Penal Codes §§ 319 and 320

3

regarding unlawful lotteries; (2) violations of UCL based on California Business and Professions Code § 17539.15 regarding solicitation materials for sweepstakes; (3) violation of California Business and Professions Code §§ 17500, *et seq.*, ("FAL") for false advertising; (4) violation of UCL for false advertising; (5) violation of UCL for unfair business practices; (6) violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); and (7) violations of UCL based on unlawful acts under the CLRA.  (Dkt. No. 83.)

**ANALYSIS**

**A.     Applicable Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on*

*other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice, such as matters of public record, may be considered on a motion to dismiss. *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

**B.   Defendants' Motions to Dismiss.**

Each Defendant joined in the other's arguments made in the respective motions. Therefore, the Court will address both motions together. However, in the future, the parties are required to make the arguments they are on which they relying and opposing in their own briefs. The Court will not refer to a separate brief in evaluating a party's argument.

**1.   Arbitration.**

In their motion to dismiss, Marden-Kane moves to enforce the arbitration provision in Coinbase's User Agreement, an agreement between Coinbase and Plaintiffs as Coinbase users. Coinbase joins in the motion.

**i.   Coinbase.**

This Court no longer has jurisdiction over the issue of whether the arbitration clause of Coinbase's User Agreement applies to Coinbase. Coinbase appealed the Court's denial of its motion to compel arbitration to the Ninth Circuit, and that appeal deprives this Court of jurisdiction over the issue of arbitration. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Coinbase's cites to *Medidata Solutions, Inc. v. Veeva Systems, Inc.*, 748 F. App'x 363 (2nd Cir. 2018), which held that the filing of an amended complaint divested the circuit court's jurisdiction over the appeal of the denial of motion to compel arbitration based on the prior complaint. If Coinbase believes that Plaintiffs' filing of their

1  Third Amended Complaint divested the Ninth Circuit of jurisdiction over the pending appeal, then
2  Coinbase should withdraw its appeal. As the Supreme Court has made clear, "a federal district
3  court and a federal court of appeals should not attempt to assert jurisdiction over a case
4  simultaneously." *Griggs*, 459 U.S. at 58. Unless and until the Ninth Circuit remands the
5  arbitration issue back to this Court or Coinbase withdraws its appeal, this Court does not have
6  jurisdiction over the arbitration issue. Moreover, the Court notes that, in *Medidata Solutions*, the
7  Second Circuit observed, without providing any factual detail, that the amended complaint
8  contained new factual allegations which superseded the allegations of the prior complaint.
9  *Medidata Solutions*, 748 F. App'x at 365. Here, while Plaintiffs filed an amended complaint, the
10 new factual allegations do not affect the arbitration analysis in any manner.

### ii. Marden Kane.

Absent an applicable exception, Marden-Kane does not have standing to enforce an arbitration provision in an agreement to which it is not a party. *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration."). The legal theories on which Marden-Kane rely to support standing – equitable estoppel and successor in interest – are inapplicable. *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 213-14 (2009) ("The *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause."). Here, none of Plaintiffs' claims against either Defendant are inextricably bound up with the contractual obligations of the User Agreements. *See also Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *8 (N.D. Cal. Sept. 14, 2020) ("To the extent Plaintiff argues the new Shutterfly (Shutterfly LLC) lacks standing to enforce the Arbitration Agreement, Plaintiff has provided no authority and articulated no arguments as to why a restructured successor is barred from enforcing an arbitration agreement entered into by its predecessor.") And Marden-Kane does not even argue and can point to no evidence showing that it is a successor-in-interest to Coinbase, so Marden-Kane cannot enforce the terms of the User Agreements on that basis.

1    Therefore, the Court denies both Defendants' motions with respect to the issue of
2  arbitration.

### 2. Pre-Arbitration Dispute Process

Three of the four User Agreements between Plaintiffs and Coinbase provide:

> Formal Complaint Process.** If you have a dispute with Coinbase (a "Complaint"), you agree to contact Coinbase through our support team to attempt to resolve any such dispute amicably. **If we cannot resolve the dispute through the Coinbase support team, you and we agree to use the Formal Complaint Process set forth below.** You agree to use this process before filing any arbitration claim or small claims action. If you do not follow the procedures set out in this Section before filing an arbitration claim or suit in small claims court, we shall have the right to ask the arbitrator or small claims court to dismiss your filing unless and until you complete the following steps.

(Dkt. Nos. 33-8, 33-9, 33-10.)

Marden-Kane – but notably not Coinbase – argues that the Court must dismiss Plaintiffs' claims because Plaintiffs failed to comply with this process for contacting Coinbase before filing suit. However, as discussed above, Marden-Kane lacks standing to enforce the User Agreements between Plaintiffs and Coinbase.

Moreover, even if the Court could find that Marden-Kane had standing, the provision in the User Agreements with three of the Plaintiffs is inapplicable to this lawsuit, according to its terms. The provision explicitly applies only to claims filed in arbitration or small claims court: "You agree to use this process before filing any arbitration claim or small claims action." (Dkt. Nos. 33-8, 33-9, 33-10.) Here, Plaintiffs filed suit in federal court and did not file an arbitration claim or small claims action, and thus the plain terms of the User Agreements do not apply. Because Marden-Kane lacks standing and because this provision is simply inapplicable, the Court need not address whether it is unconscionable.

### 3. Class Action Waiver in Official Rules.

Defendants both argue that the Court should enforce the class action waiver in the Dogecoin Sweepstakes Official Rules. However, where, as here, a class action waiver is not coupled with an arbitration provision, California law on unconscionability applies.[1] California

---
[1] Coinbase argues that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) bars

7

courts apply a three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable:

> (1) whether the agreement is a consumer contract of adhesion drafted by a party that has superior bargaining power; (2) whether the agreement occurs in a setting in which disputes between the contracting parties predictably involve small amounts of damages; and (3) whether it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 983 (9th Cir. 2007) (quotation marks omitted) (summarizing how California courts have construed *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148 (Cal.2005)).

Defendants do not contest that the Official Rules is a consumer contract of adhesion, that Coinbase had superior bargaining power, or that Plaintiffs allege that Coinbase carried out a scheme to cheat consumers.[2] Instead, Defendants focus on the second requirement of unconscionability above: whether Plaintiffs' alleged damages do not "predictably involve small amounts." Plaintiff David Suski spent $100 to buy Dogecoins to enter the Dogecoin Sweepstakes. (Dkt. No. 83, ¶ 27.) Plaintiff Jaimee Martin spent $220 to buy Dogecoins to enter the Dogecoin Sweepstakes. (*Id.*, ¶¶ 30, 31.) Plaintiff Jonas Calsbeek spent $125 to buy Dogecoins to enter the Dogecoin Sweepstakes. (*Id*, ¶ 35.) Plaintiff Thomas Maher spent $105 to buy Dogecoins to enter the Dogecoin Sweepstakes. (*Id.*, ¶ 38.) Each Plaintiff's alleged damages are well under $1,000, and courts have found amounts of $1,000 are small enough to satisfy the second element of the *Discover Bank* test. *Shroyer*, 498 F.3d at 984 (citing cases).

Plaintiffs' request for attorneys' fees does not alter this analysis. *Id*. at 986 (noting "[t]he California Supreme Court in *Discover Bank* rejected 'the rationale . . . that the potential

---

Plaintiffs' argument that the class action waiver is unconscionable. However, in *Concepcion*, the Supreme Court merely held that the Federal Arbitration Act preempted California's *Discover Bank* rule. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Where, as here, the class action waiver in the Official Rules is not coupled with an arbitration provision, *Concepcion* does not apply.

[2] In its reply brief, Marden-Kane argues that Plaintiffs fail to allege facts to support its unconscionability argument with sufficient particularity. However, a party cannot raise a new argument for the first time in its reply brief. Regardless, the Court finds that Plaintiffs have sufficiently alleged sufficient facts to satisfy all of the elements of the *Discover Bank* test.

8

1   availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the

2   problem posed by such class action waivers.'") (quoting *Discover Bank*, 36 Cal. 4th at 162).

3         Lastly, Plaintiffs' request for disgorgement and punitive damages does not enlarge their

4   damages to render the class action waiver conscionable. California law does not allow

5   "nonrestitutionary disgorgement," meaning that Plaintiffs can recover disgorgement only for

6   amounts paid out of pocket. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148-

7   49 (2003) ("nonrestitutionary disgorgement is not an available remedy in an individual action

8   under the UCL"); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) ("it

9   is well-established that nonrestitutionary disgorgement, which focuses on the defendant's unjust

10  enrichment, is unavailable in a . . . class action under the FAL, CLRA, and UCL) (internal

11  quotation marks and citations omitted). Moreover, while Plaintiffs seek punitive damages,

12  punitive damages are only available under Plaintiffs' CLRA claim. *See Roper v. Big Heart Pet*

13  *Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal. 2020) ("Punitive damages are generally not

14  available under the UCL or FAL."). As discussed below, the Court finds that Plaintiffs cannot

15  state a claim under the CLRA as a matter of law. Therefore, Plaintiffs cannot recover punitive

16  damages. For these reasons, the Court finds that Plaintiffs' claims predictably involve small

17  amounts of damages and that the class action waiver is unconscionable.

18      **4.    Plaintiffs' Illegal Lottery Claims.**

19        The Court previously rejected Plaintiffs' contention that the Dogecoin sweepstakes

20  violates California Penal Code § 320. (Dkt. No. 53.) The Court held that:

> [a]lthough Plaintiffs may not have been aware of it when they made a trade of Dogecoins, they were not actually required to trade Dogecoins in order to enter the sweepstakes and have a chance to win. Because California penal statutes are construed strictly and because no California court has held that being unaware of the free method of entry is sufficient to demonstrate the required consideration, the Court finds that Plaintiffs have not and cannot allege a violation of California Penal Code § 320.

(*Id*. at p. 13.) In their Third Amended Complaint, Plaintiffs include allegations that in addition to

*their* subjective lack of knowledge of the free method of entry, "the ordinary, reasonable consumer

could not be expected to have known the truth that Defendants would privately allow Coinbase

users to" enter the sweepstakes without buying or selling Dogecoin on Coinbase and that the "truth was reasonably and objectively knowable only to the Defendants themselves." (Dkt. No. 83, ¶ 68.) Plaintiffs further allege that Defendants "objectively conceal[ed] from those consumers and from the public at large that the consumers [could] obtain free chances to win." (*Id*., ¶ 74.) Again, Plaintiffs' allegations center around Defendants' alleged misrepresentations and disclosures, or lack of disclosures. As the Court previously stated "[b]ecause California penal statutes are construed strictly and because no California court has held that being unaware of the free method of entry is sufficient to demonstrate the required consideration, the Court finds that Plaintiffs have not and cannot allege a violation of California Penal Code § 320." Plaintiffs have not cited to any authority to alter the Court's conclusion. Accordingly, the Court GRANTS Defendants' motions as to Plaintiffs' claims to the extent they are premised on allegations of an illegal lottery. Moreover, because giving leave to amend would be futile, the Court dismisses such claims with prejudice.

### 5. Allegations Against Marden-Kane.

Marden-Kane argues that Plaintiffs fail to allege sufficient allegations against it to support their claims against Marden-Kane but merely group Marden-Kane together with Coinbase. Plaintiffs allege that Coinbase hired Marden-Kane to help plan and execute the Dogecoin Sweepstakes. (Dkt. No. 83, ¶ 6; *see also* ¶ 23 (Marden-Kane "contracted with Defendant Coinbase to serve as Coinbase's "Administrator" for the June 2021 Dogecoin sweepstakes.").) Plaintiffs further allege that Marden-Kane and Coinbase, in collaboration, drafted, structured and designed the emails and digital ads for the Dogecoin Sweepstakes. (*Id*., ¶ 7; *see also ¶* 108 (Marden-Kane collaborated "with Coinbase to draft, design and structure Defendants' digital ad campaign for the "sweepstakes," and to draft and finalize the "Official Rules[.]").) Coinbase and Marden-Kane knew that the advertisements had the likelihood, tendency and capacity to mislead and confuse consumers. (*Id*., ¶ 52.) Plaintiffs then describe an earlier sweepstakes for which Coinbase and Marden-Kane had collaborated. (*Id*., ¶¶ 53-56.) The Court finds that Plaintiffs allege sufficient facts related to Marden-Kane to hold Marden-Kane liable for any misrepresentations in the advertisements for the Dogecoin Sweepstakes. Accordingly, the Court

10

denies Marden-Kane's motion to dismiss on this ground.

### 6. Plaintiffs' CLRA Claims.

Both Coinbase and Marden-Kane move to dismiss Plaintiffs' CLRA claims. Plaintiffs argue that, pursuant to Federal Rule of Civil Procedure 12(g), which prohibits successive motions to dismiss, the Court should not consider Coinbase's arguments. However, some courts have held that, although Rule 12(g) "technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, *2 n. 1 (N.D. Cal. 2011) ("Rule 12(g) merely prohibits them from raising it before filing an answer because they did not raise it in their initial response under Rule 12(b). Plaintiffs do not dispute that Defendants would simply be able to renew their motion as a Rule 12(c) motion for judgment on the pleadings after filing an answer."); *see also Banko v. Apple, Inc.*, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013); *Green v. ADT, LLC*, 2016 WL 5339800, at *6 (N.D. Cal. Sept. 23, 2016) ("Some courts have, however, exercised their discretion to consider the untimely arguments if they were not interposed for delay and the final disposition of the case would thereby be expedited.") (quotation marks omitted) (citing cases). Here, the Court finds that judicial economy warrants considering Coinbase's arguments. As discussed below, the Court finds that Plaintiffs' CLRA claims fail as a matter of law. The Court's reason for dismissing the claim against Marden-Kane applies equally to Plaintiffs' CLRA claims against Coinbase, so applying that argument only to Marden-Kane and forcing Coinbase to file a motion for judgment on the pleadings at a later date is not an efficient way to address this issue.

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of *goods or services* to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes," and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of

11

1    goods." Cal. Civ. Code § 1761(a), (b).

2          Interpreting these definitions, the California Supreme Court held that the CLRA's
3    protections do not extend to the sale of life insurance. *Fairbanks v. Superior Court*, 46 Cal. 4th
4    56, 61 (2009). The Court reasoned life insurance contracts are not "tangible chattels," and
5    therefore not "goods" under the CLRA. *Id.* The plaintiffs in that case also argued the work and
6    labor in connection with helping consumers select insurance policies, assisting policyholders to
7    maintain their policies, and processing claims were all "services" under the CLRA. *Id.* at 65. The
8    Court rejected that argument, as well: "Using the existence of these ancillary services to bring
9    intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in
10   limiting the definition of 'goods' to include only 'tangible chattels.'" *Id*. Following *Fairbanks*,
11   the California Court of Appeal concluded the CLRA's prohibitions do not extend to mortgage
12   loans or the ancillary services connected with servicing home loans. *Alborzian v. JP Morgan*
13   *Chase Bank, N.A.*, 235 Cal. App. 4th 29, 33 (2015) ("*Fairbanks* applies with equal force to
14   lenders."). Similarly, "[m]ost federal district courts that have considered the issue since *Fairbanks*
15   likewise have held that the CLRA does not apply to mortgage loan servicing." *Jamison v. Bank of*
16   *Am., N.A.*, 194 F. Supp. 3d 1022, 1031 (E.D. Cal. 2016).

17         The parties agree that Dogecoin is cryptocurrency and thus is an intangible good outside
18   the purview of the CLRA. *See Doe v. Epic Games, Inc*., 435 F. Supp. 3d 1024, 1046 (N.D. Cal.
19   2020) ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good
20   or service."). Plaintiffs argue that, because Coinbase does not actually buy or sell Dogecoin but
21   rather facilitates other in trading it, Coinbase is akin to a broker and thus provides "standalone" as
22   opposed to ancillary services related to the cryptocurrency. However, the only authority on which
23   Plaintiffs rely is mere dicta. *See Sonoda v. Amerisave Mortg. Corp*., 2011 WL 2690451, at *4
24   (N.D. Cal. July 8, 2011) ("To be sure, if Amerisave was not loaning money but instead acted only
25   as a broker for other third-party lenders, then *arguably* what Amerisave was selling was its work
26   or labor in finding a loan for Plaintiffs (rather than negotiating terms of its own loans). Such
27   brokerage services *might* well qualify as 'services' under the CLRA.") (emphasis added).
28   However, another court actually considered and rejected this argument. *See Meyer v. Cap. All.*

*Grp*., 2017 WL 5138316, at *6 (S.D. Cal. Nov. 6, 2017) (rejecting argument that plaintiffs' services were distinguishable because they were not lenders themselves and merely served as loan advertisers). As the court reasoned:

> For services "in connection with" the sale of goods to qualify under the CLRA, "goods" must themselves be covered by the CLRA. . . . Since loans at their core are not "goods" or "services" under the CLRA, advertising related to selling such intangible financial goods are not "services furnished in connection with" any goods or services. . . . It would seem wildly incongruous that the CLRA would apply to advertising or marketing of loans but not apply to the loans themselves. Indeed, bootstrapping the CLRA into this case in this manner would, as the Supreme Court of California explained, "defeat the apparent legislative intent in limiting the definition of" goods and services, *Fairbanks*, 92 Cal. Rptr. 3d 279 . . . by greatly expanding that definition.

*Id*, 2017 WL 5138316, at *7 (internal citations omitted). The Court finds the reasoning of *Meyer* persuasive. The case law is clear, and Plaintiffs do not argue otherwise, that if the Coinbase's alleged services were offered by an entity which sold cryptocurrency, such services would be considered ancillary and would not be covered by the CLRA. The Court finds that Coinbase offering the same services for others selling cryptocurrency does not meaningfully distinguish the services. Therefore, the Court GRANTS both Defendants' motions on Plaintiffs' CLRA claims. Because granting leave would be futile, the Court dismisses Plaintiffs' CLRA claims with prejudice.

### 7. Plaintiffs' Claims for Injunctive Relief.

Plaintiffs do not oppose the dismissal of their request for injunctive relief. Therefore, the Court GRANTS Defendants' motion on this ground.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Coinbase's and Marden-Kane's motions to dismiss. The Court GRANTS WITH PREJUDICE the motion to dismiss Plaintiffs' requests for injunctive relief, GRANTS WITH PREJUDICE the motion to dismiss Plaintiffs' CLRA claims 6 and 7 against both Defendants, and GRANTS WITH PREJUDICE Plaintiffs' claims 1 and 5 to the extent they are premised on an unlawful lottery. The Court DENIES the remainder of both motions.

**IT IS SO ORDERED**.

Dated: August 31, 2022

_____
SALLIE KIM
United States Magistrate Judge