David J. Harris, Jr. (SBN 286204)
david@harrisllp.com
Gerilyn R. Harris (SBN 286031)
gerilyn@harrisllp.com
HARRIS LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102

*Counsel for Plaintiffs and*
*the Putative Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER, Individually and On Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>        vs.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>                         Defendants. | Case No.: 3:21-cv-04539-SK<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Sallie Kim<br><br>Hearing Date:   June 16, 2025<br>Hearing Time:  9:30 a.m. |

1

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 2

II.    SUMMARY OF FACTUAL AND PROCEDURAL HISTORY ........................... 4

    A.    Class Claims and Allegations ................................................................... 4

    B.    Defendants' Defenses ................................................................................ 5

    C.    Summary of Procedural History ................................................................ 6

III.   SUMMARY OF THE SETTLEMENT ............................................................... 9

    A.    The Settlement Class ................................................................................. 9

    B.    Automatic Cash Benefits To All Class Members ...................................... 9

    C.    Release of Claims by the Class ............................................................... 11

    D.    The Class Notices and Class Members' Rights to Opt Out or Object ....... 11

    E.    Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award ... 12

IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ..................... 13

    A.    Rule 23(a) Is Satisfied ............................................................................ 14

        1.    The Settlement Class is Sufficiently Numerous. ........................... 14

        2.    The Settlement Class Presents Common Questions of Law and Fact. ........... 14

        3.    Plaintiffs' Claims are Typical of Those of the Settlement Class ........... 14

        4.    Plaintiffs and Their Counsel Have Fairly and Adequately Protected the Interests of Class Members. ........... 15

    B.    Rule 23(b)'s Prongs Are Satisfied .......................................................... 17

        1.    Common Questions of Law and Fact Predominate. ...................... 17

        2.    A Class Action is the Superior Method of Adjudication. ............... 17

V.     PRELIMINARILY APPROVAL OF THE SETTLEMENT IS PROPER ............ 18

    A.    The Settlement Benefits All Proposed Class Members By Providing Automatic Cash Relief, In Reasonable Relation To Each Class Member's Alleged Injury ......... 19

    B.    The Settlement Is A Product Of Arms-Length Negotiations ..................... 22

    C.    The Recommendation Of Experienced Counsel Favors Approval ............ 23

    D.    Plaintiffs Will Request A Reasonable Incentive Award And A Reasonable, Non-Reversionary Award of Fees And Costs ......... 24

VI.    THE PROPOSED NOTICE PLAN COMPORTS WITH DUE PROCESS ........... 25

VII.   CONCLUSION ................................................................................................. 26

1

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) ................................................................ 17, 18

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) ........................................................ 14

*AT&T Mobility LLC v. Concepcion*
  563 U.S. 333 (2011) ................................................................... 17

*Carnegie v. Household Int'l, Inc.*
  376 F.3d 656 (7th Cir. 2004) ........................................................ 18

*Chavez v. WIS Holding Corp.*
  2010 WL 11508280 (S.D. Cal. Jun. 7, 2010) ................................... 19

*Chu v. Wells Fargo Invs., LLC*
  2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ..................................... 24

*Churchill Village, L.L.C. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) .................................................. 19, 25

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*
  2015 WL 965696 (W.D. La. Mar. 3, 2015) ...................................... 20

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ................................................ 19, 22

*Coinbase, Inc. v. Bielski*
  599 U.S. 736 (2023) ................................................................ 6, 16

*Coinbase, Inc. v. Suski*
  602 U.S. 143 (2024) ..................................................................... 7

*Glover v. City of Laguna Beach*
  2018 WL 6131601 (C.D. Cal. July 18, 2018) .................................... 19

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ............................................... 13, 19

*Heffelinger v. Elec. Data Sys. Corp.*
  2013 WL 12201050 (C.D. Cal. Feb. 26, 2013) ................................. 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
  139 S.Ct. 524 (2019) .................................................................. 16

*In re Bluetooth Headset Prods. Liability Litig.*
  654 F.3d 935 (9th Cir. 2011) ........................................................ 22

*In re Hyundai & Kia Fuel Economy Litig.*
  926 F.3d 539 (9th Cir. 2019) .................................................. 19, 24

*In re Juniper Networks Sec. Litig.*
   264 F.R.D. 584 (N.D. Cal. 2009) ................................................................................ 14

*In re Linkedin User Privacy Litig.*
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................ 21

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ...................................................................................... 20

*In re Pac. Enters. Sec. Litig.*
   47 F.3d 373 (9th Cir. 1995) ........................................................................................ 19

*In re Syncor ERISA Litig.*
   516 F.3d 1095 (9th Cir. 2008) .................................................................................... 19

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*
   295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................... 20, 22

*Jordan v. Los Angeles Cty.*
   669 F.2d 1311 (9th Cir. 1982) .................................................................................... 14

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................................................ 23

*Lamps Plus, Inc. v. Varela*
   139 S.Ct. 1407 (2019) ................................................................................................ 16

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) .................................................................................... 20

*McCrary v. Elations Co., LLC*
   2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................................................ 18

*McDonald v. Bass Pro Outdoor World, LLC*
   2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) .............................................................. 19

*Minter v. Wells Fargo Bank*, N.A.
   283 F.R.D. 268 (D. Md. May 22, 2012) ..................................................................... 25

*Negrete v. Allianz Life Ins. Co. of N. Am.*
   238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*
   688 F.2d 615 (9th Cir. 1982) ................................................................................. 13, 20

*Parkinson v. Hyundai Motor Am.*
   258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................... 14

*Phillips Petrol. Co. v. Shutts*
   472 U.S 797 (1985) .................................................................................................... 25

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
   390 U.S. 414 (1968) ................................................................................................... 19

*Rangel v. PLS Check Cashers of California, Inc.*
  899 F.3d 1106 (9th Cir. 2018) ................................................................. 11

*Rent-A-Center, West, Inc. v. Jackson*
  561 U.S. 63 (2010) ................................................................................. 16

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ............................................................. 19, 23

*Silber v. Mabon*
  18 F.3d 1449 (9th Cir. 1994) ................................................................... 25

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ............................................................. 15, 24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
  559 U.S. 662 (2010) ............................................................................... 17

*Tompkins v. 23andMe, Inc.*
  840 F.3d 1016 (9th Cir. 2016) ................................................................ 16

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) .................................................................... 25

*Tyson Foods, Inc. v. Bouaphakeo*
  136 S. Ct. 1036 (2016) ........................................................................... 17

*Vikram v. First Student Mgmt., LLC*
  2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) .......................................... 13

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ........................................................................... 14

**STATUTES**

9 U.S.C. §§ 1, *et seq.* ................................................................................ 6

Cal. Bus. & Prof. Code  §§ 17500, et seq. .................................................. 5

Cal. Bus. & Prof. Code §§ 17200, et seq. ................................................... 5

Cal. Civ. Code §§ 1750, et seq. ............................................................... 5, 6

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 6, 7, 8

Fed. R. Civ. P. 23(a) .................................................................. 13, 14, 15, 17

Fed. R. Civ. P. 23(b)(3) ............................................................... 13, 17, 18

Fed. R. Civ. P. 23(c) ............................................................................... 25

Fed. R. Civ. P. 23(e) ...................................................................... 2, 4, 18, 25

iv

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

**OF CLASS ACTION SETTLEMENT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2025, at 9:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable United States Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher ("Plaintiffs") will and hereby do move the Court for an order pursuant to Fed. R. Civ. P. 23(e), preliminarily approving a class action settlement agreement ("Settlement") between Plaintiffs and Defendants Coinbase, Inc. ("Coinbase") and Marden-Kane, Inc. ("Marden-Kane") (collectively, "Parties"), directing notice of the Settlement to be disseminated to proposed Class Members, and preliminarily certifying for Settlement purposes the following Class:

> All U.S. persons who opted into the June 2021 Dogecoin sweepstakes sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive.

The Settlement is filed concurrently herewith as Exhibit 1 to the Declaration of David J. Harris, Jr.

This Motion is based on this Notice of Motion, the following Memorandum of Law, the concurrently filed Declaration of David J. Harris, Jr. and all Exhibits thereto, including the Settlement Agreement and Settlement Exhibits A through E, the pleadings and all other documents on file in this case, all matters of which the Court may take judicial notice, and any oral argument of counsel on this Motion.

**STATEMENT OF RELIEF SOUGHT**

Plaintiffs request that the Court preliminarily approve the proposed Settlement under Fed. R. Civ. P. 23(e), preliminarily certify the proposed Class for Settlement purposes, and direct that notice of the Settlement be given to Class Members pursuant to the Parties' proposed Class Notice plan.

**STATEMENT OF UNDISPUTED ISSUE TO BE DECIDED**

Whether the Court should preliminarily approve the Parties' Class Action Settlement Agreement pursuant to Fed. R. Civ. 23(e).

1

## I.    **<u>INTRODUCTION</u>**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs and proposed Class Representatives David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher move for an order granting preliminary approval of a class action settlement ("Settlement") among Plaintiffs, and Defendants Coinbase, Inc. ("Coinbase") and Marden-Kane, Inc. ("Marden-Kane"), the terms of which are set forth in the Settlement Agreement attached as Exhibit 1 to the Declaration of David J. Harris, Jr. ("Harris Decl.") filed contemporaneously herewith.[1]

Plaintiffs initiated this Action to challenge Defendants' promotion of a cryptocurrency sweepstakes occurring from June 3, 2021 through June 10, 2021 ("Sweepstakes"). *E.g.,* Dkt. 83 ("TAC"), ¶¶7-15. The Sweepstakes offered Coinbase users a chance to win up to $300,000.00 in prizes, using one of two, alternative methods of entry. *See* Dkt. 83-1 ("Official Rules"), at § 3. The first method of entry was for users to buy or sell $100 or more of "Dogecoins" during the Sweepstakes period, via Coinbase's online trading platform. *Id.* For each such "Dogecoin" trade, Coinbase would charge users a "Transaction Fee" and a "Spread" to account for small changes in market prices. TAC, ¶2. The second method of entry was free; participants could enter to win prizes merely by mailing in a paper index card, with the participant's name and contact information written on it. Official Rules, § 3.

Plaintiffs have alleged that Defendants misrepresented and failed to adequately disclose the free entry method, in violation of California law. *See generally* TAC. Plaintiffs aver that Defendants' Sweepstakes ads and disclosures caused Plaintiffs and other Coinbase users to pay money they would not otherwise have paid to trade Dogecoin, on Coinbase's platform, between June 3, 2021 and June 10, 2021 ("Sweepstakes Period" or "Class Period"). *Id.* Defendants contend, *inter alia,* that their Sweepstakes ads and disclosures complied with California law, and that in any event, Plaintiffs and the Class were unharmed by Defendants' alleged conduct.

After much litigation, and during the discovery period set by this Court, the Parties agreed to attend an in-person mediation session before the Honorable Layn R. Phillips (Ret.), Ms. Caroline Cheng, Esq., and Ms. Niki Mendoza, Esq. of Phillips ADR Enterprises, P.C. ("PADRE") in Corona

---

[1] Unless otherwise defined herein, all capitalized terms herein have the same meaning as the identical terms defined in the Settlement Agreement.

del Mar, California, on October 24, 2024. *See* Declaration of David J. Harris, Jr. in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Harris Decl."), ¶¶22-26. At mediation, the Parties' negotiations were informed by: (i) their extensive factual investigations, plus formal and informal exchanges of relevant evidence before mediation; (ii) this Court's hearings and orders on Defendants' multiple motions to dismiss Plaintiffs' claims, (iii) this Court's, the Ninth Circuit's, and the Supreme Court's orders regarding arbitrability; and (iv) the Parties' thorough mediation briefing based on early discovery and this Court's orders. *Id.* The Settlement resulting from all such litigation and negotiation efforts is carefully calibrated to the facts and uncertainties of this case.

Defendants have agreed to pay a Cash Settlement Amount of $2,250,000.00 to resolve all claims in the Action. *See* Harris Decl., Ex. 1 ("Settlement"), § 2.2(a). Under the Parties' plan of allocation, after deduction of the Fees & Expense Award, Administrative Costs, and all Service Awards, each Settlement Class Member will receive back the approximate, total U.S. dollar amount of all "Transaction Fees" and "Spreads" that Coinbase charged them for their first $100 of Dogecoin trades during the Sweepstakes Period. *Id.*, § 2.2(d).

Plaintiffs and their counsel believe in the strength of their claims, and in the potential for a recovery greater than the Cash Settlement Amount in contested proceedings. At the same time, Plaintiffs and the Class face numerous risks to winning a contested judgment more favorable than this Settlement. Those risks include, without limitation: (i) the risk of an unfavorable summary judgment order on Plaintiffs' and other Class Members' claims; (ii) the risk that Defendants could successfully oppose class certification in a disputed context, rendering all individual claims cost-prohibitive; (iii) the risks of ultimately losing on the merits at trial, or on appeal; and (iv) the risk of obtaining Class-wide restitution that is ultimately *less* than the Cash Settlement Amount, even if Plaintiffs and the Class were ultimately successful on the merits. Consequently, the Parties' Settlement reasonably reflects the risks, costs and delays of extensive, future litigation in the Action. Harris Decl., ¶¶43-48.

Additionally, the Parties' proposed Class Notice plan satisfies all applicable requirements of law, including Fed. R. Civ. P. 23 and due process. This Settlement provides for direct notice to

3

individual Class Members via email or U.S. mail, with such Class Notices to be further supplemented by a Settlement Website and Long-Form Notice. Settlement, § 2.4. The Class Notices explain in clear language the nature of the Action, the Settlement, the Fee & Expense Award that Class Counsel will seek, the Service Awards that Plaintiffs will seek, and Class Members' rights to object to or exclude themselves from the Settlement. *See* Harris Decl., Settlement Exhibit A ("Email Notice"), Settlement Exhibit B ("Postcard Notice"), and Settlement Exhibit C ("Long-Form Notice"). The proposed Class Notice plan thus gives Class Members the best notice practicable under the circumstances, in compliance with Fed. R. Civ. P. 23 and due process. The Class Notices and Class Member Awards will be competently administered by Simpluris, Inc. ("Simpluris"), a reputable and experienced Administrator of class action settlements. Settlement, § 1.1.

As detailed herein, the Court should grant Plaintiffs' Unopposed Motion for Preliminary Approval, preliminarily certify the proposed Class for Settlement purposes under Fed. R. Civ. P. 23(b)(3), and direct that the Class Notices be sent to Class Members under Fed. R. Civ. P. 23(e).

## II.    SUMMARY OF FACTUAL AND PROCEDURAL HISTORY

### A.    Class Claims and Allegations

Plaintiffs' allegations are detailed in the Third Amended Class Action Complaint (Dkt. 83) ("TAC" or "Complaint") and summarized in this subsection. Coinbase operates a cryptocurrency trading platform through its mobile app and website, www.coinbase.com. TAC, ¶1. Coinbase allows its platform users to buy and sell cryptocurrencies using U.S. dollars, as well as other fiat currencies and cryptocurrencies. *Id.* Plaintiffs are individual consumers who were Coinbase users before and during the month of June 2021. *Id.*, ¶¶18-21.

That month, Coinbase made a cryptocurrency called "Dogecoin" available for trading on its platform, for the first time. *Id.*, ¶6. To maximize trading volumes in Dogecoin, Coinbase hired Marden-Kane to administer a Dogecoin Sweepstakes, in which users could enter to win up to $300,000.00 in prizes by clicking an "Opt in" button, and buying or selling Dogecoins for $100 or more via Coinbase, between June 3, 2021 and June 10, 2021. *Id.*, ¶¶6-10. Each Plaintiff opted into that Sweepstakes, trading $100 or more in Dogecoins as instructed, and Coinbase charged Plaintiffs Transaction Fees and Spreads for their qualifying trades. *Id.*, ¶¶27-42.

Plaintiffs, however, allege that they were misled by Defendants into paying for their Sweepstakes entries. *Id.* Plaintiffs maintain that Defendants' Sweepstakes solicitations and disclosures unlawfully concealed the free entry option, of which Plaintiffs would have availed themselves had Defendants clearly and conspicuously disclosed the free-entry option as required by law. *Id.* Their Complaint asserts claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL").[2]

### B.    Defendants' Defenses

Defendants have long denied any wrongdoing. *E.g.,* Dkt. 130 (Marden-Kane's Answer); Dkt. 131 (Coinbase's Answer). Coinbase contends that its Sweepstakes solicitations were not misleading or confusing, as they plainly disclosed that no purchase was necessary to enter. *E.g.,* TAC, ¶78; Dkt. 83-1 ("Official Rules"). Coinbase maintains that a reasonable consumer would have discerned payments were unnecessary for entry, upon reading the "no purchase necessary" language in all of its Sweepstakes ads. *Id.* Furthermore, says Coinbase, the reasonable consumer would have read the Official Rules linked to its ads, which specified that consumers could enter by mailing in a paper index card containing their contact information. *See* TAC, ¶8; Official Rules, § 3.

Additionally, Marden-Kane argues that it had no role in drafting or disseminating Coinbase's allegedly defective advertisements of the Sweepstakes. Marden-Kane may have helped prepare the Official Rules, but according to Marden-Kane, the Official Rules complied with all applicable laws. Marden-Kane further asserts that it received no money from Plaintiffs or other Class Members in the Sweepstakes. Thus, Marden-Kane says that Plaintiffs' and the Class's pending claims for restitution against Marden-Kane are likely doomed to fail as a matter of law. Marden-Kane's Answer (Dkt. 130), Eleventh Defense.

Defendants have proffered many other defenses, and vehemently deny that Plaintiffs or Class Members suffered compensable harm as a result of their alleged conduct.

---

[2] Their Complaint also asserted claims for relief under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), but this Court subsequently dismissed such claims with prejudice under Fed. R. Civ. P. 12(b)(6). *See* TAC, ¶¶145-153; Dkt. 113 ("August 2022 Order"), at 11-14 (analyzing and applying the "ancillary services" doctrine).

C.    **Summary of Procedural History**

Plaintiff Suski filed the initial complaint in this Action on June 11, 2021.  Dkt. 1.  On August 31, 2021 and October 20, 2021, Plaintiffs Martin, Calsbeek, and Maher joined Plaintiff Suski in filing a First Amended Class Action Complaint ("FAC") and Second Amended Class Action Complaint ("SAC"), respectively.  Dkt. 22; Dkt. 36.[3]

On October 19, 2021, Coinbase moved to compel the arbitration of Plaintiffs' claims, or alternatively, to dismiss them under Fed. R. Civ. P. 12(b)(6).  Dkt. 33.  The Court denied Coinbase's motion to compel arbitration, and denied in part Coinbase's motion to dismiss on January 11, 2022.  Dkt. 53 ("January 2022 Order").

This Court's denial of Coinbase's motion to compel arbitration kicked off three years of proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA").  First, on February 9, 2022, Coinbase filed an interlocutory appeal in the Ninth Circuit presenting questions of arbitrability.  Dkt. 58.  The same day, Coinbase filed a motion to stay this Action pending appeal, which the Court denied in April 2022.  Dkt. 59.

In May 2022, Coinbase responded by filing an appellate motion to stay in the Ninth Circuit, which the Circuit denied.  *Suski v. Coinbase, Inc.*, No. 22-15209 (9th Cir.), ECF Nos. 16, 24.  Upon the Circuit's denial of a stay, Coinbase filed a petition for certiorari in the Supreme Court, contending that stays pending arbitrability appeals are mandatory—rather than discretionary—under the FAA.  *See Coinbase, Inc. v. Bielski, Coinbase, Inc. v. Suski*, No. 22-105 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-105.html (last visited May 3, 2025).  The Parties completed certiorari briefing, merits briefing, supplemental briefing, and oral argument before the Supreme Court on the stay issue, only to have the Supreme Court dismiss Coinbase's certiorari petition as improvidently granted with respect to this Action.  *Id.*; *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, at n.7 (2023).

The Supreme Court's procedural dismissal occurred in part because, when the Supreme Court heard merits arguments on the stay question, the Ninth Circuit had recently resolved Coinbase's

---

[3] The SAC was substantially identical to the FAC, but replaced Coinbase Global, Inc. with its subsidiary, Coinbase, Inc. as a Defendant. The SAC also updated Plaintiffs' allegations regarding the CLRA's notice provisions.  Cal. Civ. Code §§ 1750, *et seq.*

arbitrability appeal, affirming this Court's January 2022 Order on arbitrability. The Circuit's affirmance (arguably) mooted the question of whether a stay pending Coinbase's appeal was mandatory or discretionary under the FAA.

Yet that did not mark the end of the Parties' arbitrability disputes. Coinbase proceeded to file a second certiorari petition, on the same day that the Supreme Court resolved its first petition: June 23, 2023. *See generally Coinbase, Inc. v. Suski*, No. 23-3 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-3.html (last visited May 3, 2025). In its second certiorari petition, Coinbase asked the Supreme Court to review and reverse the Ninth Circuit's affirmance of this Court's January 2022 Order. *Id.* Coinbase argued that the "delegation clauses" in its User Agreements required an arbitrator, not courts, to decide whether the User Agreements' arbitration provisions, or the Official Rules' forum-selection clause, governed Plaintiffs' claims. *Id.* The Supreme Court granted review and—after a second round of merits briefing, supplemental briefing, and oral argument—the Supreme Court affirmed the Ninth Circuit's judgment upholding this Court's January 2022 Order, allowing this Action to proceed as a putative class action. *Id*; *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

During and after the Parties' appellate and Supreme Court proceedings related to arbitrability, the Parties also engaged in substantial merits litigation. On May 10, 2022, Plaintiffs filed the TAC to replead claims that were dismissed by this Court under Fed. R. Civ. P. 12(b)(6), including Plaintiffs' claims that the Sweepstakes constituted an unlawful "lottery" under California law. Dkt. 83 (TAC).

On June 9, 2022, Marden-Kane and Coinbase each moved to compel arbitration (again), or alternatively, to dismiss Plaintiffs' claims on the merits. Dkt. 87; Dkt. 88. Defendants also moved the Court to enforce a class action waiver provision in the Official Rules. Dkt. 87 at 7-9. The Court ultimately granted in part and denied in part Defendants' motions to dismiss the TAC, dismissing Plaintiffs' CLRA and lottery claims with prejudice, but invalidating Defendants' class action waiver as unconscionable, and allowing all other claims to proceed. Dkt. 113 ("August 2022 Order").[4]

---

[4] Defendants took new appeals on arbitrability after this Court's second arbitrability decision; those appeals, however, were later voluntarily dismissed by Defendants as unnecessary, due to the Supreme Court's pending review of the arbitrability question.

After this Court's January 2022 and August 2022 Orders on Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss (Dkt. 53; Dkt. 113), Coinbase and Marden-Kane filed their Answers to the TAC. Dkt. 130; Dkt. 131. The Parties also conducted substantial, formal and informal discovery on Class-related issues as well as merits issues, propounding and responding to 68 interrogatories and over 100 requests for production of documents. Harris Decl., ¶21. All Parties engaged in detailed negotiations concerning the proper scope of discovery, including but not limited to specific search and production criteria that should be employed for particular categories of ESI. *Id.*

Additionally, after the Supreme Court's ruling on arbitrability, the Parties evaluated their ADR options, eventually agreeing to a full-day, in-person mediation session on October 24, 2024. *Id.*, ¶¶22-26. Former United States District Judge Layn R. Phillips (Ret.) and two of his mediator-colleagues, Ms. Caroline Cheng, Esq. and Ms. Niki Mendoza, Esq., together conducted the Parties' mediation session, at the offices of PADRE in Corona del Mar, California. *Id.*

Prior to mediation, the Parties used the fruits of discovery, as well as informal exchanges of documents and data, to submit comprehensive mediation briefs detailing their respective case theories and restitution analyses. *Id.*[5] The Parties submitted numerous exhibits in support of their mediation briefs, providing a fulsome preview of their evidentiary support and legal arguments at class certification, summary judgment, and trial. *Id.*

During their full-day mediation session, the Parties conducted arms-length negotiations and debates regarding their respective positions in the Action. *Id.* This included face-to-face debates and discussions before Judge Phillips and his colleagues, among all of Class Counsel, defense counsel, and in-house counsel for Coinbase. *Id.* In addition to such face-to-face debates and discussions, Judge Phillips and his colleagues together conducted multiple, private breakout sessions with each Party, aiding them in understanding the strengths and weaknesses of their positions, as well as the legal and economic risks to all Parties of insisting on continued litigation. *Id.*

---

[5] After this Court's August 2022 Order on Defendants' motions to dismiss, only Plaintiffs' UCL and FAL claims remained in the Action; thus, the only remaining, potential remedy for Plaintiffs and the Class was an equitable restitution remedy, as opposed to damages at law. *See* August 2022 Order (Dkt. 113) (dismissing Plaintiffs' CLRA claims with prejudice).

1    The Parties were unable to reach an agreement to settle this Action at the end of their eight-

2 hour, in-person mediation session in October 2024. *Id.* Over the ensuing weeks and months,

3 however, the Parties continued to correspond with the mediators by phone, video conference, and

4 email to try to reach an agreement. *Id.* The Parties continued to prepare for and engage in further

5 litigation activities during that time, until an agreement in principle was finally reached. *Id.*

6    In late December 2024, the Parties reached an agreement in principle to fully and finally

7 resolve the Action. *Id.* From January 2025 to April 2025, the Parties carefully negotiated all

8 remaining Settlement terms, fully executing a finalized Settlement Agreement, and all Exhibits

9 thereto, on April 28, 2025. Harris Decl., Ex. 1; Settlement Exhibits A - E.

10 **III.    SUMMARY OF THE SETTLEMENT**

11    **A.    The Settlement Class**

12    Solely for purposes of the Settlement, the Parties agree to preliminary certification of the

13 following Settlement Class: "All U.S. persons who opted into the June 2021 Dogecoin sweepstakes

14 promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase

15 trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021,

16 inclusive." Settlement, § 2.1(a). Based on a thorough search of Coinbase's records, the Parties have

17 found and identified 447,644 members of the putative Class. *See* Harris Decl., Settlement Exhibit D

18 (Declaration of John Huang), ¶3. The Parties have determined that the total amount of Transaction

19 Fees and Spreads charged to all Settlement Class Members, for *all* of their Dogecoin transactions on

20 Coinbase's platform during the Sweepstakes Period, was approximately $4,191,588.14, and that the

21 total amount of Transaction Fees and Spreads charged to all Settlement Class Members, for their *first*

22 *$100* of Dogecoin transactions on Coinbase's platform during the Sweepstakes Period, was

23 approximately $1,340,916.50. *Id.*, ¶¶4-5.

24    **B.    Automatic Cash Benefits To All Class Members**

25    Defendants have agreed to provide an aggregate Cash Settlement Amount of $2,250,000.00.

26 Settlement, § 2.2(a). The Settlement will provide cash benefits to all Class Members, without any

27 Class Members having to submit claims to receive their funds. *Id.*, § 2.6(b). Class Member Awards

28 will be calculated based on the approximate amount of Dogecoin Transaction Fees and Spreads that

each Class Member paid Coinbase to enter the Sweepstakes; each Settlement Class Member will receive the approximate, U.S. dollar amount of all Transaction Fees and Spreads that they paid for their first $100 in Dogecoin transactions on Coinbase's platform during the Sweepstakes Period. *Id.*, § 2.2(d). As further detailed *infra*, such Class Member Awards are fair, reasonable, and adequate in a Settlement context, under the totality of circumstances.

Again, Class Members need not submit any claim form to receive their monetary payments from the Settlement. In the event of Final Approval, the Administrator will automatically compensate each Class Member by one of two methods. First, for Class Members who continue to be Coinbase users at the time of disbursement, the Administrator will transfer the full U.S. dollar amount of each Class Member Award to the Class Member's existing Coinbase account. *See* Settlement § 2.6(b). Class Members can freely transfer such Awards via ACH transfers into their verified bank accounts within the United States. Settlement Exhibit C, at 5; *see also* https://help.coinbase.com/en/exchange/funding/withdrawing-with-ach (last visited May 5, 2025) (Coinbase's ACH withdrawal policy). Class Members will also receive direct, email notices that their Class Member Awards have been deposited into their accounts. Settlement § 2.6(b). Second, for Class Members who have closed their Coinbase accounts or whose accounts are otherwise disabled with respect to U.S. dollar transmissions at the time of disbursement, the Administrator will automatically mail checks to such Class Members at their last known mailing addresses. *Id.* Before mailing checks, the Administrator will update each Class Member's last known mailing address using the National Change of Address Database or similar databases. *Id.*, §§ 2.4(c), 2.6(c).

The utilization of electronic U.S. dollar payments and ACH transfers, versus paper checks, for existing Coinbase users is intended to save and will save Class Members hundreds of thousands of dollars in Administrative Costs, which would otherwise arise from cutting and mailing checks to the entire Settlement Class. Harris Decl., ¶¶32-37.[6] All Class Member Awards will be processed and paid automatically after Final Approval, and no amount of the Settlement Fund will revert to

---

[6] Before settling on an Administrator and on the method(s) for distributing Class Member Awards, counsel for all Parties solicited detailed bids and proposals from three, reputable and experienced settlement administrators, to price out the administrative costs of various, potential methods of distribution. Harris Decl., ¶¶32-37. The distribution proposal submitted by Simpluris, the Parties' chosen Administrator, was by far the most cost-effective for Class Members. *Id.*

Defendants' benefit in the event of Final Approval.  *Id.*  If after disbursement of all Class Member Awards, a residual amount less than $50,000 remains in the Settlement Fund, then such amount may be distributed to a *cy pres* recipient mutually agreed upon by the Parties.  Settlement, § 3.5.

### C.    Release of Claims by the Class

In exchange for the Cash Settlement Amount, upon the Effective Date, each Settlement Class Member will fully release Defendants and the related "Releasees" from all "Released Claims," as those terms are defined in the Settlement.  Settlement § 2.3.  The Released Claims encompass all claims that were, or could have been, asserted in the Action related to the June 2021 Dogecoin Sweepstakes, including, but not limited to, any claims that Defendants or the Releasees unlawfully conducted any aspect of the Sweepstakes.  *Id.*  "Settlements of this breadth are common and unobjectionable."  *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110–11 (9th Cir. 2018) (noting approval where settlement covered "all claims" that "could have been pled based on the factual allegations in the Complaint").

### D.    The Class Notices and Class Members' Rights to Opt Out or Object

Within seven days after the Court's Preliminary Approval of the Settlement, Coinbase will provide the Settlement Administrator, Simpluris, Inc., with the following information for each Class Member: (i) name; (ii) last known email address; (iii) last known mailing address; and (iv) the approximate, U.S. dollar amount each Class Member incurred in Transaction Fees and Spreads for buying, selling, or trading their first $100 in Dogecoins on the Coinbase platform between and including June 3, 2021 and June 10, 2021.  *See* Settlement, § 2.4(b).  The Administrator will use that data to make the Class Member Award calculations required by the Settlement.  *Id.*

The Administrator will also use such data to provide direct, individual notice of the Settlement to Class Members via email or regular mail, to each Class Member's last known email or mailing address.  *Id.*, § 2.4(c).  The Administrator will send the "Email Notice" (Settlement Exhibit A) to all Class Members for whom Coinbase provides a valid email address, and a "Postcard Notice" (Settlement Exhibit B) to Class Members for whom Coinbase provides no email address or who have their Email Notices returned as undeliverable.  *Id.*  Both the Email Notice and Postcard Notice further direct Class Members to a Long Form Notice (Settlement Exhibit C), which will be posted to

a Settlement Website maintained by the Administrator until at least 90 days after Final Approval. Settlement, § 2.4(c).

The Class Notices will contain hyperlinks and URLs for the Settlement Website containing the Court-approved Long Form Notice, and will advise Class Members of the pendency of this Action, including the nature of the Action and a summary of Plaintiffs' claims; the Settlement's essential terms; the automatic (not claims-made) nature of Class Member Awards in the event of Final Approval; each Class Member's right to object to or request exclusion from the Settlement for up to 60 days after Preliminary Approval; and each Class Member's right to appear, argue, or testify at the Final Approval Hearing. *See generally* Settlement Exhibits A, B and C. The Class Notices provide information regarding Class Counsel's request for attorneys' fees and expenses, Plaintiffs' requests for Service Awards, and the estimated average amounts of Class Member Awards to be distributed among individual Class Members. *Id.* Thus, the Class Notices provide necessary and pertinent information allowing Class Members to make informed decisions about the Settlement.

In addition, upon Preliminary Approval, the Administrator will: (i) create and maintain a toll-free number for Class Members to call for further information about the Settlement; (ii) process and record Class Member requests for exclusion; and (iii) serve notice of the Settlement on appropriate government officials under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). Settlement §§ 2.5(a), 5.13; *see also* Settlement Exhibit C. All Administrative Costs of the Settlement, totaling up to $96,000, will be paid from the Cash Settlement Amount of $2,250,000. Settlement § 2.2(c).

**E.    Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award**

Each Plaintiff may request a Service Award of up to $7,000 for their contributions to prosecuting the Class's claims in this Action. *Id.*, §3.1. Any Service Awards approved by the Court will be paid out of the Cash Settlement Amount. *Id.*

Class Counsel will request a Fee & Expense Award of up to $750,000 in attorneys' fees, representing a sharp discount (not multiplier) to Class Counsel's reasonable lodestar, and up to $75,000 in out-of-pocket expenses to be paid from the Cash Settlement Amount subject to Court approval. *Id.*, § 3.2. If the Court approves a Fee & Expense Award in an amount less than Class

Counsel's request[7], then any such difference would not revert to Defendants. *Id.*; *see also* Settlement, §§ 2.2(d), 3.5. Instead, any difference would be additive to the Net Cash Settlement Amount and paid proportionally to Class Members as an additional monetary benefit. *Id.*

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

Plaintiffs hereby seek preliminary certification of the Class, for Settlement purposes only, to facilitate distribution of the Class Notices under Fed. R. Civ. P. 23(e).[8] At this preliminary approval stage, the Court's threshold task is to ascertain whether the proposed class is properly maintainable under Federal Rules of Civil Procedure 23(a) and (b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019). To qualify for certification of a settlement class, the proposed class must be so numerous that joinder of all members is impracticable; there must be questions of law or fact common to the class; the claims of the representative parties must be typical of other class members' claims; and the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Additionally, common questions must "predominate over any questions affecting only individual members," and class resolution must be deemed "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Importantly, courts apply less scrutiny when reviewing the proposed certification of settlement classes, than when determining the propriety of class certification for trial purposes. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982); *Heffelinger v. Elec. Data Sys. Corp.*, 2013 WL 12201050, at *7 (C.D. Cal. Feb. 26, 2013). Such reduced scrutiny reflects the fact that a class settlement ends the class-wide litigation, and thus does not require that a class-wide trial be readily practicable. *Id.*

---

[7] The Court should not do so for multiple, independent reasons which will be detailed in Class Counsel's forthcoming application for attorneys' fees and expenses.

[8] Only in the context of the Settlement do Defendants stipulate to certification of the Class proposed herein. However, if the Settlement is not finally approved, then all Parties will return to their respective litigation positions as they existed prior to settling, including all arguments regarding the propriety of class certification, without waiver of any Party's rights or litigation positions resulting from this Settlement or any Settlement-related proceedings. Settlement § 4.3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.      Rule 23(a) Is Satisfied

#### 1.      The Settlement Class is Sufficiently Numerous.

A class may be certified only if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Here, there are hundreds of thousands of Class Members, making the Class sufficiently numerous that the joinder of all Members would be "impracticable." *See* Harris Decl., Settlement Exhibit D (Declaration of John Huang), ¶3.

#### 2.      The Settlement Class Presents Common Questions of Law and Fact.

Rule 23(a)(2) requires there to be questions of law or fact that are common among class members. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011).  Here, Class Members' claims arise from the same core contentions: namely, that Defendants misrepresented and failed to disclose the free method of entry in the Dogecoin Sweepstakes, causing Class Members to pay for their entries therein. *See generally* TAC.  Hence, the following questions of law and fact are generally common among Class Members: (a) whether Defendants falsely or misleadingly advertised the entry requirements for the Sweepstakes; (b) whether Defendants clearly and conspicuously disclosed the free entry option; and (c) whether and to what extent Defendants are liable for the payments made by Class Members to enter.  The commonality requirement is easily satisfied based on the foregoing common questions. *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ("The threshold for establishing commonality under Rule 23(a) is relatively low.").

#### 3.      Plaintiffs' Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality does not require a perfect similarity of claims among plaintiffs and a proposed class. *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied where the plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and [are] based upon the same legal theory." *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1321 (9th Cir. 1982); *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) (explaining "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

14

Plaintiffs' claims are typical of the Settlement Class's claims here. Like all Class Members, Plaintiffs allege that they opted into the Sweepstakes and traded Dogecoins for $100 or more on the Coinbase platform, during the same eight-day period in June 2021, in response to Defendants' digital Sweepstakes ads through the Coinbase website and mobile app. TAC, ¶¶27-42. Plaintiffs and other Class Members allegedly incurred quantifiable Transaction Fees and Spreads charged by Coinbase for all such Dogecoin transactions. *Id.*; ¶2. Even if Plaintiffs' claims are not identical to those of all other Class Members in every respect, Plaintiffs and other Class Members generally assert the same facts and legal theories against Defendants to claim violations of California's UCL and FAL. *Id.*; ¶¶101-144. Furthermore, the Sweepstakes' Official Rules subjected Plaintiffs' and all Class Members' claims to California law, regardless of the various States in which individual Class Members may reside. Official Rules (Dkt. 83-1) § 10. Thus, Plaintiffs' claims are typical of other Class Members' claims, since all share similar factual allegations, assert similar injuries, and must satisfy the same legal elements. Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. Plaintiffs and Their Counsel Have Fairly and Adequately Protected the Interests of Class Members.

Rule 23(a)(4) requires that Plaintiffs "fairly and adequately" protect the interests of the Class. The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Both prongs are readily satisfied here.

*First*, Plaintiffs' interests are aligned with, not antagonistic to, the Class's interests. As explained *supra*, Plaintiffs share the same claims and theories in the Action as other Class Members, and the Settlement provides Plaintiffs and all Class Members with similar Awards, in direct proportion to each Class Member's Coinbase transaction records during the Sweepstakes Period. Settlement § 2.2(d). Moreover, Plaintiffs have diligently represented all Class Members' interests in this Action throughout four years of District Court, Circuit Court, and Supreme Court proceedings. Harris Decl., ¶38.

*Second*, Class Counsel has extensive experience litigating and settling complex class action lawsuits, including but not limited to consumer and securities class actions, and is thus well qualified to represent the Settlement Class here.  Harris Decl., ¶¶ 39-43.  Class Counsel, along with Plaintiffs, have vigorously protected Class Members' interests in extensive, contested proceedings, arguing and negotiating across multiple forums to obtain a significant cash recovery on their behalf.  *Id.*

*Third*, Plaintiffs and their Counsel have taken on extraordinary levels of personal risk for the Class's benefit, far beyond the substantial, economic risks inherent in most class actions.  *Id.*  At all relevant times, the Coinbase User Agreement's arbitration provisions—which Defendants sought to enforce through multiple motions, Ninth Circuit appeals, and Supreme Court proceedings—contained clear cut fee-shifting provisions.  *E.g.,* Suski's User Agreement (Dkt. 33-7) at 12, § 7.2 ("The prevailing party in any action or proceeding to enforce this agreement shall be entitled to costs and attorneys' fees."); *see also* Martin's User Agreement (Dkt. 33-8) at 26, § 8.3 ("To the extent permitted by law, the prevailing party in any action or proceeding to enforce this Agreement . . . shall be entitled to costs and attorneys' fees."); Calsbeek's User Agreement (Dkt. 33-9) at 26, § 8.3 (same); Maher's User Agreement (Dkt. 33-10) at 25, § 8.3 (same).  The Ninth Circuit has held such fee-shifting provisions in arbitration agreements to be enforceable by large corporations, even against individual consumers like Plaintiffs who cannot afford the fees of large, elite law firms like Coinbase's counsel (Cooley LLP, and before the Supreme Court, Hogan Lovells (US) LLP as well).  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1024-27 (9th Cir. 2016).

If Plaintiffs and Class Counsel had lost on arbitrability, particularly in the Supreme Court, they could have been personally liable for *millions of dollars* in Coinbase's attorneys' fees and costs, which Coinbase surely incurred through its many District Court, Ninth Circuit, and Supreme Court "proceeding[s] to enforce" its arbitration terms here.  Dkt. 33-7 at 12, § 7.2; Dkt. 33-8 at 26, § 8.3; Dkt. 33-9 at 26, § 8.3; Dkt. 33-10 at 25, § 8.3.  Plaintiffs and Class Counsel single-handedly shouldered such extraordinary economic risks, for the benefit of all Class Members, and prevailed in a high-risk Supreme Court when it comes to resisting consumer arbitration.  *See, e.g., Bielski*, 599 U.S. 736; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019); *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407 (2019); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010); *AT&T*

*Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).

For the above reasons, Plaintiffs and Class Counsel have been, and will continue to be, more than "adequate" to represent the proposed Class in this Action.  Fed. R. Civ. P. 23(a)(4).

**B.      Rule 23(b)'s Prongs Are Satisfied**

**1.      Common Questions of Law and Fact Predominate.**

The Supreme Court has defined the predominance factor as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "The predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation omitted).  Here, Plaintiffs' and the Class's claims all turn on the following common questions, among others: (a) whether Defendants falsely or misleadingly advertised the entry requirements for the Dogecoin Sweepstakes; (b) whether Defendants clearly and conspicuously disclosed the free entry method in the Sweepstakes; and (c) whether and to what extent Defendants are liable for the payments made by Class Members to enter the Sweepstakes.  *See generally* TAC.  Such common questions predominate over individual issues that might exist in the Action, particularly in this Settlement context.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

**2.      A Class Action is the Superior Method of Adjudication.**

To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) [T]he class members' interests in individually controlling the prosecution . . . of separate actions;  (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;  (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Each of these factors supports certifying the Class for Settlement purposes.

This Action involves hundreds of thousands of Class Members who have been injured in relatively small dollar amounts.  There is no incentive for Class Members to pursue separate actions

here.  *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").  In effect, the Court has already decided as much with respect to this case, by invalidating the Official Rules' class action waiver as unconscionable.  *See* August 2022 Order at 7-9 ("For these reasons, the Court finds that Plaintiffs' claims predictably involve small amounts of damages . . . .").  Indeed: so "small" as to render individual suits cost-prohibitive.  *Id.*

To date, no Class Members apart from the Plaintiffs have pursued their own individual claims relating to the Dogecoin Sweepstakes.  Yet *even if* some Class Members were inclined to sue individually, such repetitious litigation would be neither beneficial nor efficient here.  *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *16 (C.D. Cal. Jan. 13, 2014) ("It is more efficient to resolve the common questions . . . in a [single] proceeding rather than to have individual courts separately hear these cases.").  Thus, a class action is superior, as concentrating all Class claims in this forum reduces the risks of both inconsistent outcomes and irrationally high litigation costs. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493 (C.D. Cal. 2006).

Finally, there can be no manageability challenges presented by preliminarily certifying the Class for Settlement purposes, because there will be no Class-wide trial if the Court grants Final Approval.  *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.")  The Settlement Class in this Action plainly satisfies Rule 23(b)(3).

For all of the above reasons, Plaintiffs request that the Court preliminarily certify the following Class under Fed. R. Civ. P. 23(b)(3) for Settlement purposes, and order that the proposed Class Notices be disseminated to the following Class Members: "All U.S. persons who opted into the June 2021 Dogecoin sweepstakes promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive."

## V.    PRELIMINARILY APPROVAL OF THE SETTLEMENT IS PROPER

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval." The purpose of requiring court approval "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). When considering whether to preliminarily approve a class action settlement, courts determine whether it is "fair, adequate, and reasonable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019).

The law favors settlement in class actions and other complex cases, where substantial resources can be conserved by avoiding the time, costs, and rigors of prolonged litigation. *In re Syncor ERISA Litig.*, 516 F.3d at 1101; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Additionally, the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Glover v. City of Laguna Beach*, 2018 WL 6131601, at *5 (C.D. Cal. July 18, 2018) (quoting *Hanlon*, 150 F.3d at 2017); *see also Chavez v. WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. Jun. 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Preliminary approval is appropriate where—as here—a settlement is the product of informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to representatives or segments of the class, and falls within the range of likely approval. *McDonald v. Bass Pro Outdoor World, LLC*, 2014 WL 3867522, *6 (S.D. Cal. Aug. 5, 2014).

### A. The Settlement Benefits All Proposed Class Members By Providing Automatic Cash Relief, In Reasonable Relation To Each Class Member's Alleged Injury

To evaluate the fairness of a settlement, the Court should "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). A settlement, however, is not judged

solely against what plaintiffs could have recovered at trial if they prevailed, nor must a settlement provide a full recovery to be reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."). Settlement is, by definition, a compromise: "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.

Courts routinely approve of cash settlement amounts materially less than the class members' alleged losses. *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (finding a $5 or $30 benefit representing 5% to 30% of the potential recovery, post-trial, was fair and adequate in a consumer class action); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *7-8 (W.D. La. Mar. 3, 2015) (finding a "7.4%–10.3% [recovery] of estimated provable damages" to be "a high degree of success" because "[t]he typical recovery in most class actions generally is three-to-six cents on the dollar").

Here, the Settlement provides automatic cash benefits to Class Members, in reasonable relation to the financial charges each Class Member incurred to enter the June 2021 Dogecoin Sweepstakes. Settlement § 2.2(d). The Parties estimate that the total of all Transaction Fees and Spreads Coinbase charged to Class Members, for *all* of their Dogecoin trades during the Sweepstakes Period, was approximately $4,189,828.67, and that the total amount of Transaction Fees and Spreads Coinbase charged to Class Members for their *first $100* of Dogecoin trades during the Sweepstakes Period, was approximately $1,340,713.87. *See* Settlement Ex. D, ¶¶4-5.

This Settlement provides for a Net Cash Settlement Amount which—*after* deduction of all Administrative Costs, the Fee & Expense Award, and Service Awards—allows each Class Member to recover the approximate, total amount of Transaction Fees & Spreads charged for their first $100 in Dogecoin trades during the Sweepstakes Period (plus or minus approximately ten cents per Class Member). Settlement § 2.2(d). Even if Class Members could perhaps recover more at trial, it is reasonable to tailor Class Members' recoveries to charges incurred on their first $100 in Dogecoin

trades: given that Defendants' Sweepstakes ads told Class Members they "need[ed]" to trade just "$100 in Dogecoin," or "$100 or more in DOGE," to enter.  TAC, ¶¶6-10; Official Rules § 3.

In short, the Net Cash Settlement Amount of approximately $1.3 million reasonably measures the Transaction Fees and Spreads that Class Members were allegedly *misled* to incur to enter this Sweepstakes by trading.  The Class's interests are thus fairly, reasonably, and adequately served by this Settlement, especially when compared with the high costs and degrees of uncertainty inherent in all future litigation.  *In re Linkedin User Privacy Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

In contrast to the tangible, immediate benefits of this Settlement, the outcomes of continuing litigation and a trial on the merits are uncertain and could add *years* to this dispute.  *See* Harris Decl., ¶¶43-48.  Absent Settlement, Defendants would aggressively defend the Action before, during and after trial, including through oppositions to class certification, motions for summary judgment, and appeals (plus Supreme Court litigation if necessary, as Coinbase has shown twice already).  *Id.*

By way of example only, Defendants would vigorously argue that the no-purchase-necessary language in all Sweepstakes solicitations sufficed to alert Class Members of a free entry method, especially when coupled with the direct hyperlinks to the Official Rules presented on all Sweepstakes solicitations. *Id.*  Defendants would draw from their own data records—showing that thousands of consumers entered this Sweepstakes for free—and contend that such data evidences the truthfulness and clarity of their disclosures.  *Id.*  It is difficult to predict the outcomes of such defenses on a full evidentiary record, in part because, as this Court recognized at the pleading stage, there is a dearth of precedent interpreting and applying California's sweepstakes statute.  *See* January 2022 Order (Dkt. 53) at 14 ("There are no cases construing this statute.").

Moreover, Defendants would argue on the evidence that their Sweepstakes ads' deficiencies (if any) were not an actual or proximate cause of Class Members' trading activities during the Sweepstakes Period.  Harris Decl., ¶¶43-48.  They might prove that some Class Members actively traded Dogecoin before and after the Sweepstakes Period, or traded far more Dogecoins during the

Sweepstakes Period than the ads required. *Id.* Defendants would argue on such grounds that many Class Members, demonstrably, would have paid to trade Dogecoins during the Class Period anyway, regardless of any Sweepstakes ad or disclosure. *Id.* These are just a few of the many merits defenses that Defendants could put forth at future stages of this Action: creating multiple, independent hurdles for Plaintiffs and the Class to try to overcome at great risk, delay, and cost to the Class. *Id.*

In sum, Defendants would oppose class certification outside of the Settlement context, and would likely appeal any merits judgment for Class Members *if* Plaintiffs ultimately won any Class-wide recovery. *Id.* Absent the Settlement, Plaintiffs and the Class could ultimately recover nothing, or, if they prevailed, could recover materially *less* than the Cash Settlement Amount achieved by the Parties' Settlement today. *Id.* Any financial recoveries Class Members might obtain from a future, contested judgment could also take several more years to materialize. *Id.* By reaching a reasonable resolution now, Plaintiffs and the Class have secured cash recoveries and avoided the many delays, expenditures, and uncertainties that accompany complex, contested litigation. *In re Toys R Us*, 295 F.R.D. at 454.

### B.    The Settlement Is A Product Of Arms-Length Negotiations

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.   The involvement of a neutral mediator is an important "factor weighing in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 948 (9th Cir. 2011).

Here, although the Parties were prepared to litigate this case vigorously and indefinitely, they agreed to private mediation in keeping with this Court's ADR deadline in the Action.  Harris Decl., ¶¶22-26, 49-52.   After contacting multiple, potential mediators, the Parties eventually agreed to mediate before the Honorable Layn R. Phillips (Ret.) of PADRE, and his colleagues, Ms. Caroline Cheng and Ms. Niki Mendoza, in Corona del Mar, California. *Id.* The Parties agreed to a mediation session in October 2024, after this Court's multiple decisions on Defendants' motions to dismiss, during the discovery process, and months after the Supreme Court's ruling on arbitrability. *Id.*

In addition to formal discovery requests and responses, the Parties exchanged extensive, informal document and data requests and disclosures to facilitate informed negotiations at the mediation. *Id.* The Parties used their formal and informal, pre-mediation disclosures of evidence and data to craft detailed mediation briefs for Judge Phillips, highlighting the strengths of their own cases and exposing the other side's perceived weaknesses. At their arms-length mediation session before Judge Phillips, the Parties were well versed in the factual and legal disputes they have in this Action. *Id.* The Parties zealously debated the strengths and weaknesses of their cases at mediation, and after a full day, were still unable to reach an agreement-in-principle to resolve the Action. *Id.*

Over the ensuing two months, the Parties prepared for further, contested proceedings, while continuing to correspond with Judge Phillips and his colleagues at PADRE. *Id.* It was not until late December 2024—three and a half years into this Action—that the Parties reached a tentative agreement-in-principle to resolve the case on a Class-wide basis. *Id.* Far from suggesting fraud or collusion, the Parties' extensive, arms-length debates and negotiations, before skilled and experienced mediators, suggests a fair and reasonable result for all involved. *Rodriguez*, 563 F.3d at 965 (affirming settlement approval, and noting that "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

**C.      The Recommendation Of Experienced Counsel Favors Approval**

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009). Here, Class Counsel has extensive experience litigating and settling securities and consumer class actions and other complex matters, and has conducted extensive research and investigation into the factual and legal issues raised by this Action. *See* Harris Decl., ¶¶39-40, 43. Class Counsel has carefully weighed the benefits of the Settlement against the risks and expenses of continued litigation, and believes that the proposed Settlement is fair, reasonable, and adequate under the totality of circumstances. *Id.*, ¶¶39-43, 48.

23

**D.    Plaintiffs Will Request A Reasonable Incentive Award And A Reasonable, Non-Reversionary Award of Fees And Costs**

Class Counsel intends to request a non-reversionary award of up to $750,000 in attorneys' fees, to be paid from the Cash Settlement Amount of $2,250,000; such fees represent a sharp discount to Class Counsel's reasonable, seven-figure lodestar over the course of four, challenging years. *Id.*; *see also* Settlement § 3.2.  Class Counsel has expended thousands of attorney hours investigating, litigating, mediating, and ultimately settling this Action for the benefit of Class Members. *Id.*  Class Counsel will also request reimbursement of their out-of-pocket litigation (and appellate, and Supreme Court) expenses, which are just under $75,000. *Id.*  Thirty days after Preliminary Approval, Class Counsel will detail all evidentiary and legal support for their proposed attorneys' fees & expenses in an application for the Fee & Expense Award and for Plaintiffs' Service Awards.  Settlement § 4.1.

Importantly for approval purposes, in no event would a judicial reduction of Class Counsel's attorneys' fees and expenses revert to the Defendants. *Id.*, §§ 3.2, 3.5.  Instead, any judicial reduction of the requested Service Awards or Fee & Expense Award would increase the Net Cash Settlement Amount and be distributed as an additional, cash benefit to Class Members. *Id.*, § 2.2(d).  The non-reversionary nature of the Settlement Fund only further demonstrates the Settlement's reasonableness and non-collusiveness.  *Hyundai & Kia Fuel Economy Litig.*, 926 F.3d at 569 (affirming settlement approval where, among other things, the settlement was non-reversionary).

The Court has discretion to approve the proposed Service Awards to Plaintiffs for their expenditures of time and effort to benefit others, and for undertaking the risks inherent in serving as named plaintiffs. *See, e.g., Staton*, 327 F.3d at 977.  The $7,000 Service Awards that Plaintiffs seek here are well within the customary range of class action service awards for named plaintiffs. *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs) (collecting cases).  And as explained *supra*, these named Plaintiffs are uniquely deserving of Service Awards because they—not other Class Members—repeatedly faced down Coinbase's adhesive fee-shifting clauses to prevail on arbitrability, maintain this Action as a Class Action, and ultimately obtain cash relief for the Class.

1    At bottom, the Settlement bears no clear deficiencies, and the Court should grant Preliminary

2    Approval of the Settlement to facilitate notice to all Class Members under Fed. R. Civ. P. 23(e).

3    **VI.    THE PROPOSED NOTICE PLAN COMPORTS WITH DUE PROCESS**

4    Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class

5    members the best notice that is practicable under the circumstances, including individual notice to all

6    members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c).  Due process

7    requires the best notice practicable, reasonably calculated under the circumstances, to apprise class

8    members of the action's pendency and give them a chance to be heard, object to, or opt out of a class

9    settlement.  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).  Notice to the Class should

10    include a general description of the relevant action and proposed settlement.  *Churchill Village*, 361

11    F.3d at 575; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

12    Here, the Administrator will send direct, individual notice to each Class Member, based on

13    identifying information provided from Coinbase's user account records.  Settlement §§ 2.4, 2.5; *see*

14    *also* Settlement Ex. A (E-mail Notice); Settlement Ex. B (Postcard Notice); Settlement Ex. C (Long-

15    Form Notice).  The Class Notices will be delivered to Class Members by email or mail as

16    appropriate, based on the best available addresses for each Class Member.  *Id.*  In addition, Class

17    Notice will be published on a dedicated Settlement Website, which the Administrator will create and

18    maintain throughout this approval process.  *Id.*  Such a Class Notice program comports with due

19    process and constitutes the best notice reasonably practicable.  *See Minter v. Wells Fargo Bank*, *N.A.*,

20    283 F.R.D. 268, 276 (D. Md. May 22, 2012) (where "all class members have been identified by

21    name from Defendant records," and administrator used reasonable methods to update addresses,

22    supplemental notice by publication was not necessary to satisfy due process).

23    The proposed Class Notice program, combined with Class Members' rights to object to or opt

24    out of the Settlement, clearly satisfies Fed. R. Civ. P. 23's notice requirements and the Class's due

25    process rights.  *Phillips Petrol. Co. v. Shutts*, 472 U.S 797, 812 (1985).

26

27

28

1

## VII. <u>CONCLUSION</u>

2

For all of the foregoing reasons, Plaintiffs respectfully request that this Court preliminarily

3

approve the Parties' Settlement Agreement, and order that the proposed Class Notices be

4

disseminated to all Class Members as set forth in the Settlement.

5

6    Dated: May 9, 2025                                    Respectfully submitted,

7                                                          HARRIS LLP

8                                                          By:    *s/ David J. Harris, Jr.*

9                                                                 David J. Harris, Jr.

10                                                         david@harrisllp.com
                                                           Gerilyn R. Harris
11                                                         gerilyn@harrisllp.com
                                                           501 West Broadway, Suite 800
12                                                         San Diego, California 92101
                                                           Telephone: (619) 213-1102
13

14                                                         *Counsel for Plaintiffs and*
                                                           *the Putative Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28