# EXHIBIT 1

*Suski, et al. v. Coinbase, Inc., et al.*

United States District Court for the Northern District of California

Case No. 3:21-cv-04539-SK

**Settlement and Release Agreement**

This Settlement and Release Agreement ("Agreement") is entered into by David Suski, Jaimee Martin, Jonas Calsbeek and Thomas Maher (collectively, "Plaintiffs") individually and on behalf of the Settlement Class defined herein, and by Coinbase, Inc. ("Coinbase"), and Marden-Kane, Inc. ("Marden-Kane") (collectively, "Defendants"). Plaintiffs and Defendants ("the Parties") hereby agree to the following terms in full settlement of the action titled *Suski, et al. v. Coinbase, Inc., et al.*, No. 3:21-cv-04539-SK (N.D. Cal.) ("Action"), subject to Final Approval by the United States District Court for the Northern District of California ("Court").

## I    <u>RECITALS</u>

WHEREAS, on June 11, 2021, Plaintiff David Suski filed the Action asserting claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. §§ 17500, *et seq.* ("FAL") against Coinbase Global, Inc. and Defendant Marden-Kane, on behalf of himself and a putative class of allegedly similarly situated individuals;

WHEREAS, on August 31, 2021, Plaintiffs filed the First Amended Class Action Complaint ("FAC"), which added Jaimee Martin, Jonas Calsbeek, and Thomas Maher as named Plaintiffs, and asserted additional claims for relief under the UCL and California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA").

WHEREAS, on October 20, 2021, Plaintiffs filed the Second Amended Class Action Complaint ("SAC"), naming Coinbase, Inc. as a Defendant in lieu of Coinbase Global, Inc.;

WHEREAS, on October 19, 2021, Coinbase filed a motion to compel the individual arbitration of Plaintiffs' claims asserted in the FAC and the SAC, or in the alternative, to dismiss the Action on the ground that Plaintiffs failed to sufficiently plead any claims upon which relief could be granted;

WHEREAS, on January 11, 2022, the Court denied Coinbase's motion to compel arbitration, and granted in part and denied in part Coinbase's motion to dismiss, with leave to amend;

WHEREAS, on May 10, 2022, Plaintiffs filed the Third Amended Class Action Complaint ("TAC"), seeking to cure the pleading of claims in the SAC that were dismissed by the Court as deficient;

WHEREAS, on June 9, 2022, Defendants filed motions to compel the individual arbitration of Plaintiffs' claims asserted in the TAC, or in the alternative, to dismiss the Action for failure to plead claims upon which relief could be granted;

WHEREAS, on August 31, 2022, the Court denied Defendants' motions to compel the arbitration of Plaintiffs' claims asserted in the TAC, and granted in part and denied in part Defendants' motions to dismiss for failure to state a claim;

WHEREAS, on December 16, 2022, the United States Court of Appeals for the Ninth Circuit affirmed this Court's January 11, 2022 opinion and order denying Coinbase's motion to compel arbitration, in *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022);

WHEREAS, on May 23, 2024, the Supreme Court of the United States affirmed this Court's January 11, 2022 opinion and order denying Coinbase's motion to compel arbitration, in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024);

WHEREAS, on October 24, 2024, the Parties mediated this Action before the Hon. Layn R. Phillips (Ret.), Ms. Caroline Cheng, and Ms. Niki Mendoza of Phillips ADR ("PADRE") through a full-day, in-person mediation session at PADRE's offices in Corona del Mar, California, and thereafter for several weeks via remote communication and correspondence with PADRE's aforementioned mediators, until the parties were able to reach an agreement in principle to finally resolve the Action;

WHEREAS, Coinbase and Marden-Kane have denied, and continue to deny, each and every claim and allegation of wrongdoing asserted in the Action, and believe that they would ultimately succeed in their respective defenses against all claims asserted in the Action;

WHEREAS, Coinbase and Marden-Kane have nevertheless concluded that settlement of the Action is advisable because further litigation involves risk and could be protracted and expensive;

WHEREAS, Plaintiffs, individually and on behalf of the Settlement Class as defined herein, believe that the claims asserted in the Action have merit and that there is evidence to support their claims;

WHEREAS, Plaintiffs nevertheless recognize and acknowledge the risks, expenses and length of all legal proceedings necessary to prosecute the Action through trial and through any appeals; and

WHEREAS, Plaintiffs have also, in consultation with their counsel, assessed the legal risks faced in the Action, including the risk that some or all of their claims could be adjudicated against them and/or that the Court would decline to certify a class for litigation purposes, and on the basis of that assessment believe that the Settlement set forth in this Agreement and as defined below provides substantial benefits to Plaintiffs and the Settlement Class, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class.

NOW THEREFORE, the Parties agree that the Action shall be fully and finally compromised, settled, released, and dismissed with prejudice, subject to the terms and conditions of this Agreement and subject to Final Approval by the Court.

## II    TERMS OF THE SETTLEMENT

### Section 1.    Definitions

In addition to the terms defined elsewhere in this Agreement, the following capitalized terms used in this Agreement shall have the meanings specified below:

1.1    "Administrative Costs" means all fees paid to the Administrator for its services administering the Settlement and all out-of-pocket costs and third-party expenses of the Administrator that are associated with providing notice of the Settlement to the Settlement Class, administering and distributing the Cash Settlement Amount to Class Members, or otherwise administering or carrying out the terms of the Settlement, including but not limited to postage and telecommunications costs.

1.2    "Administrator" means Simpluris, Inc.  Class Counsel and Defendants may, by subsequent agreement, substitute a different organization as Administrator, subject to approval by the Court if the Court has previously approved the Settlement.  In the absence of a subsequent agreement, any Party may move the Court to substitute a different organization as Administrator, upon a showing that the responsibilities of Administrator have not been reasonably executed by the incumbent organization.

1.3    "Agreement" means this Settlement Agreement and Release.

1.4    "Cash Settlement Amount" has the meaning ascribed to it in Section 2.2(a).

1.5    "Class Counsel" means the law firm of Harris LLP.

1.6    "Class Member" means a person who falls within the definition of the Settlement Class.

1.7    "Class Member Award" means an award to a Participating Settlement Class Member of funds from the Net Cash Settlement Amount.

1.8    "Class Notices" means Exhibits A, B and C attached hereto, which the Parties will ask the Court to approve for transmission to the Settlement Class.

1.9    "Class Period" means the period between and including June 3, 2021 and June 10, 2021.

1.10    "Class Representative Service Award" has the meaning ascribed to it in Section 3.1.

1.11    "Complaint" means the Third Amended Class Action Complaint ("TAC") filed in the Action on May 10, 2022.

1.12    "Effective Date" shall mean the date when the last of the following has occurred:  (1) the day following the expiration of the deadline for appealing Final Approval, if no timely appeal is filed; or (2) if a timely appeal of Final Approval is taken, the date upon which all appeals (including any requests for rehearing or other appellate review), as well as any further appeals therefrom (including all petitions for certiorari) have been finally resolved without material change to the Final Approval Order, and the deadline for taking any further appeals has expired such that no future appeal is possible; or (3) such date as the Parties otherwise agree in a subsequent writing.

1.13    "Escrow Account" means the interest-bearing account constituting a qualified settlement fund, as defined in Treasury Regulation 26 C.F.R. § 1.468B-1 *et seq.*, to be mutually selected by the Parties and opened and maintained by the Administrator, subject to the continuing jurisdiction of the Court.

1.14    "Escrow Agent" means the Administrator, Simpluris, Inc.  The Escrow Agent shall be paid with monies from the Settlement Fund, as defined below.

1.15    "Fee & Expense Award" has the meaning ascribed to it in Section 3.2.

1.16    "Final Approval" means entry of the Final Approval Order.

1.17    "Final Approval Hearing" means the hearing on Plaintiffs' motion seeking Final Approval.

1.18    "Final Approval Order" means the Court's order regarding Plaintiffs' motion seeking Final Approval.

1.19    "Long-Form Notice" means Notice posted on the Settlement Website that shall be substantially in the form attached hereto as Exhibit C.

1.20    "National Change of Address Database" means the change of address database maintained by the United States Postal Service.

1.21    "Net Cash Settlement Amount" means the Cash Settlement Amount, less the Service Awards, the Fee & Expense Award, and the Administrative Costs.

1.22    "Notice Deadline" means the date by which the Administrator must complete the Notice Program, which shall be the date twenty-five (25) days after Preliminary Approval.

1.23    "Notice Program" means the methods provided in this Agreement for the dissemination of Class Notices pursuant to the Preliminary Approval Order.

1.24    "Objection Deadline" means sixty (60) calendar days after Preliminary Approval (or other date as ordered by the Court).

1.25    "Opt-Out Deadline" means sixty (60) calendar days after Preliminary Approval (or other date as ordered by the Court).

1.26    "Parties" means Plaintiffs, Coinbase, and Marden-Kane collectively.

1.27    "Party" means any of the Plaintiffs, Coinbase, or Marden-Kane individually.

1.28    "Preliminary Approval" means entry by the Court of the Preliminary Approval Order.

1.29    "Preliminary Approval Hearing" means any hearing on Plaintiffs' motion seeking Preliminary Approval.

1.30    "Preliminary Approval Order" means a Court order substantially similar to the attached Exhibit E, approving the form and content of the Class Notices and Notice Program, and preliminarily certifying the Settlement Class as defined herein.

1.31    "Released Claims" has the meaning ascribed to it in Section 2.3(a).

1.32     "Releasees" has the meaning ascribed to it in Section 2.3(a).

1.33     "Service Awards" means payments to the Plaintiffs, not to exceed $7,000.00 to each of the four Plaintiffs, to be paid, subject to Court approval, from the Settlement Fund Account within fourteen (14) calendar days after the Effective Date.

1.34     "Settlement" means the settlement into which the Parties have entered to finally resolve the Action; the terms of the Settlement are set forth in this Agreement.

1.35     "Settlement Class" or "Class" has the meaning ascribed to it in Section 2.1(a).

1.36     "Settlement Fund" means the non-reversionary cash fund consisting of two million two hundred fifty thousand U.S. dollars ($2,250,000.00) to be distributed in accordance with the terms of this Agreement. The Parties agree that the Settlement Fund is intended to be at all times a "qualified settlement fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, from the earliest date possible, and further agree to any relation-back election (as described in Treasury Regulation 26 C.F.R. § 1.468B-1(j)) required to treat the Settlement Fund as a "qualified settlement fund" from the earliest date possible. The Settlement Fund will be maintained by the Escrow Agent, with permissions granted to the Administrator to access said funds until such time as the payments set forth herein are made. The Settlement Fund includes all interest that will accrue on the sums deposited in the Escrow Account. The Administrator, as "administrator" of the Settlement Fund within the meaning of 26 C.F.R. § 1.468B-2(k)(3), will be responsible for all Tax filings with respect to any earnings on the Settlement Fund and the payment of all Taxes that may be due on such earnings. Counsel for Coinbase agrees to provide promptly to the Administrator the statement described in Treasury Regulation 26 C.F.R. § 1.468B-3(e). Neither Plaintiffs, Class Counsel, Defendants, nor Defendants' Counsel will have any liability or responsibility for any Tax arising with respect to the Settlement Fund.

1.37     "Settlement Website" means the public website which the Administrator will establish within twenty-five (25) days after Preliminary Approval.

1.38     "Spread(s)" has the same meaning as the term "spread" in ¶2 of the Complaint.

1.39     "Tax(es)" shall have the meaning ascribed to it in Section 3.4.

1.40     "Transaction Fees" has the meaning ascribed to the term "trading fees" in ¶ 2 of the Complaint.

### Section 2.     The Settlement

2.1     <u>Conditional Certification of the Settlement Class</u>

(a)     Solely for purposes of this Settlement, the Parties agree to certification of the following Settlement Class under Fed. R. Civ. P. 23(b)(3):

> All U.S. persons who opted into the June 2021 Dogecoin sweepstakes sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive.

The Settlement Class excludes (i) Coinbase, its officers, directors, or members of their immediate families, and their legal representatives, heirs, successors or assigns, (ii) Marden-Kane, its officers, directors, or members of their immediate families, and their legal representatives, and (iii) Class Members who submit timely and valid opt-out requests.

(b)    In the event that the Settlement does not receive Final Approval, or in the event the Effective Date does not occur, any order certifying the Settlement Class for purposes of effectuating this Settlement Agreement, and all preliminary and/or final findings regarding that class certification order, shall be automatically vacated upon notice of the same to the Court.  In any such event, the Action shall proceed as if the Settlement Class had never been certified pursuant to this Settlement Agreement, as if no such findings had been made, and otherwise in accordance with Section 4.3.  In addition, under any such event, the Parties shall not be bound by this definition of the Settlement Class, shall not be permitted to use it as evidence or otherwise in support of any argument or position in any motion, brief, hearing, appeal, or otherwise, and Coinbase and Marden-Kane shall retain their rights to oppose and object to the maintenance of this Action as a class action.

## 2.2    Monetary Relief

(a)    Cash Settlement Amount.  Defendants will collectively pay a total of $2,250,000.00 (two million, two hundred fifty thousand U.S. dollars) to settle the Action ("Cash Settlement Amount"), which shall be the sole and exclusive source of all costs of the Settlement. Defendants have no monetary obligation under this Settlement beyond payment of the Cash Settlement Amount.

(b)    Escrow Account.  Within twenty-five (25) calendar days after Preliminary Approval, Defendants shall deposit the Cash Settlement Amount into a segregated Escrow Account, which shall be opened, maintained, and controlled by the Administrator and held at Huntington Bank.

(c)    Initial Disbursement of Administrative Costs.  After the initial deposit to the Escrow Account, an advance totaling $85,000.00 (eighty-five thousand U.S. dollars) for anticipated Administrative Costs may be initially disbursed from the Escrow Account to the Administrator. In the event that the Administrator must reasonably expend more than $85,000.00 on Administrative Costs, counsel for all Parties may approve, by written assent and without further Court approval, a second disbursement from the Escrow Account to the Administrator for Administrative Costs, in an additional amount of up to $11,000.00 (eleven thousand U.S. dollars). To the extent the Administrator actually and reasonably expends some or all of such disbursement(s) from the Escrow Account on Administrative Costs, such actual and reasonable expenditure amount(s) will not be returned to Defendants, and Defendants will have no claim for reimbursement thereof in the event that Final Approval does not occur.

(d)    Calculation of Class Member Awards. Each Class Member shall be entitled to receive a cash payment in U.S. dollars from the Net Cash Settlement Amount. Class Member Awards will be calculated using a proportional payment structure, whereby each Class Member will be entitled to receive the approximate, total amount of "Transaction Fees" and "Spreads" that Coinbase charged to each Class Member for their first $100.00 (one hundred U.S. dollars) of Dogecoin trades, purchases, or sales on the Coinbase trading platform, occurring between June 3, 2021 and June 10, 2021 (inclusive). In the event that the Net Cash Settlement Amount exceeds the aggregate amount of Class Member Awards dictated by this payment structure, then the Award for each Class Member will be increased *pro rata* until the Net Cash Settlement amount no longer exceeds the aggregate amount of Class Member Awards calculated hereunder. In the event that the Net Cash Settlement Amount is less than the aggregate amount of Class Member Awards dictated by this payment structure, then the Award for each Class Member will be decreased *pro rata* until the aggregate amount of Class Member Awards calculated hereunder no longer exceeds the Net Cash Settlement. All individual Class Member Awards shall be calculated based upon Coinbase's business records of historical transaction data for each Class Member's Coinbase account during the Class Period, as reflected by the Declaration of John Huang attached hereto as Exhibit D.

2.3    Releases

(a)    Upon the Effective Date, Plaintiffs and Class Members who have not opted out of the Settlement Class pursuant to the procedures set forth in Section 2.5 hereby release, waive, and forever discharge Coinbase, Marden-Kane, and each of their present, former, and future parents, subsidiaries, predecessors, successors, assigns, assignees, affiliates, conservators, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers, and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent, or actual), representatives, employees, managers, administrators, and each person or entity acting or purporting to act for them or on their behalf (collectively, "Releasees") with respect to any claim or issue relating to or arising out of any of the claims that were asserted in the Action, and any allegations, acts, transactions, facts, events, matters, occurrences, representations, statements, or omissions that were or could have been set forth, alleged, referred to, or asserted in the Action, and whether assertable in the form of a cause of action or as a private motion, petition for relief or claim for contempt, or otherwise, and in any court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, and whether based on the UCL, FAL, CLRA, or any other federal, state, local, statutory, or common law or any other law, rule, regulation, ordinance, code, contract, common law, or any other source, including the law of any jurisdiction outside the United States (including both direct and derivative claims), including any and all claims for damages, injunctive relief, declaratory relief, interest, attorney fees, and litigation expenses, or other relief; and additionally, with respect to Plaintiffs, regarding any actions, causes of action (in law, equity, or administratively), suits, debts, liens or claims, known or unknown, suspected or unsuspected, fixed or contingent, which they may have or claim to have against the Releasees that arise before entry of the Final Approval Order and Judgment ("Released Claims").

(b)    Unknown Claims. With respect to the Released Claims, Plaintiffs and the Class Members shall be deemed to have, and by operation of the Settlement shall have,

expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Thus, subject to and in accordance with this Agreement, even if the Plaintiffs and/or Class Members may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, Plaintiffs and each Class Member, upon entry of Final Approval of the Settlement, shall be deemed to have and by operation of the Final Approval Order, shall have, fully, finally, and forever settled and released all of the Released Claims. This is true whether such claims are known or unknown, suspected, or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

(c)     Covenant Not to Sue.  Plaintiffs and the Settlement Class covenant not to sue or otherwise assert any claims against Defendants related to the Dogecoin sweepstakes sponsored by Coinbase, Inc. and administered by Marden-Kane, Inc. during the Class Period.

2.4     Notice Procedures

(a)     Class Action Administrator.  The Administrator shall perform the duties, tasks, and responsibilities associated with providing notice and administering the Settlement.  The Administrator is authorized to act as the Settlement Class "administrator" of the Settlement Fund in this Action, and to undertake all duties as Administrator in accordance with the United States Treasury regulations promulgated under § 1.468B of the Internal Revenue Code of 1986.  All reasonable costs incurred by the Administrator while carrying out its duties under this Agreement shall be construed as Administrative Costs and shall be paid solely out of the Cash Settlement Amount deposited into the Settlement Fund.

(b)     Provision of Information to Administrator.  Within seven (7) calendar days of Preliminary Approval, Coinbase will provide the Administrator with the following information, which will be kept strictly confidential among Class Counsel, the Administrator and Coinbase, for each Class Member: (i) name; (ii) last known e-mail address; (iii) last known mailing address; and (iv) the approximate dollar (USD) amount that each Class Member incurred in Transaction Fees and Spreads for trading, purchasing, or selling their first $100 (USD) for Dogecoins on the Coinbase trading platform between June 3, 2021 and June 10, 2021 (inclusive).  The Administrator shall use the data provided by Coinbase to make the

calculations required by this Settlement Agreement, and the Administrator shall share the calculations with counsel for the Parties. The Administrator shall use this information solely for the purpose of administering the Settlement. Should a Class Member raise a dispute with the Administrator, the Administrator may provide Class Counsel with the information identified in (i) and (iv), along with information regarding the nature of the dispute.

(c)    Class Notices. Within twenty-five (25) calendar days of Preliminary Approval, or by the time specified by the Court, the Administrator shall send the Class Notices in the forms attached hereto as Exhibits A, B, and C, or in such form as is approved by the Court, to the Class Members. The Administrator shall send the "Email Notice," attached hereto as Exhibit A, to all Class Members for whom Coinbase has provided the Administrator with an e-mail address. The Administrator shall send the "Postcard Notice," attached hereto as Exhibit B, to all Class Members for whom Coinbase has not provided an email address and to all Class Members to whom the Administrator sent Exhibit A via email but for whom the Administrator receives notice of an undeliverable email. Exhibit B shall be mailed after the Administrator updates mailing addresses provided by Coinbase with the National Change of Address database and other commercially feasible means. The Administrator shall also maintain a website containing the Complaint, the "Long-Form Notice," attached hereto as Exhibit C, and any motions or orders relating to Preliminary or Final Approval until at least ninety (90) calendar days after Final Approval. The Administrator shall send the Long-Form Notice by mail or email to any Class Member who requests a copy thereof.

2.5    Opt-Outs and Objections

As set forth below, Class Members shall have the right to opt-out of the Settlement Class and this Settlement, or to object to this Settlement.

(a)    Requirements for Opting-Out. If a Class Member wishes to be excluded from the Settlement Class and this Settlement, that Class Member is required to submit to the Administrator using a form available at the website address listed in the Class Notices, a written, signed, and dated statement that he or she is opting out of the Settlement Class and understands that he or she will not receive a Class Member Award from the Settlement of the Action. To be effective, this opt-out statement (i) must be postmarked no later than the Opt-Out Deadline, (ii) include the Class Member's name, address, and telephone number, (iii) state that the Class Member wants to be excluded from the Settlement in *Suski et al. v. Coinbase, Inc., et al.*, Case No. 3:21-cv-04539-SK, and that the Class Member understands that he or she will receive no money from the Settlement, and (iv) must be personally signed and dated by the Class Member. The Administrator will, within five (5) business days of receiving any opt-out statement, provide counsel for the Parties with a copy of the opt-out statement. The Administrator will, at least five (5) court days before the Final Approval Hearing, file copies of all opt-out statements with the Court. As stated in Section 2.1(a), the Settlement Class will not include any individuals who send timely and valid opt-out statements, and individuals who opt out are not entitled to receive a Class Member Award under this Settlement.

(b)    Objections. Any Class Member who has not submitted a timely opt-out form and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement

must send that written objection to the Clerk of the Court and to the Administrator via first class mail at the addresses listed below.

Objections must be filed with the Court electronically or in person, or mailed via first-class mail to the Clerk of the Court, with copies sent to Class Counsel as well as Coinbase's and Marden-Kane's counsel of record in the Action. For an objection to be valid and considered by the Court, it must be filed with the Court or postmarked via first-class mail on or before the Objection Deadline set forth in the Class Notices, and state clearly:

(i)     the objector's full name, address, and telephone number;

(ii)    the case name and case number of this Action, *Suski et al. v. Coinbase, Inc., et al.*, Case No. 3:21-cv-04539-SK;

(iii)   an explanation of the bases upon which the objector claims to be a Settlement Class Member;

(iv)    the identity of any counsel representing the objector, including any current or former counsel who may be entitled to compensation for any reason related to the objection;

(v)     each objection the Class Member is raising and the specific legal and factual grounds for each objection, identifying all documents which the Class Member asks the Court to consider;

(vi)    whether the objection is intended to apply only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

(vii)   the number of times in which the Class Member or their counsel has filed an objection to a class action settlement in the past five (5) years, including the caption of each case in which the objector has made such objection;

(viii)  a list of all persons (whether *pro se* or through representation) who may testify and/or argue at the Final Approval Hearing; and

(ix)    be personally signed by the Class Member (an attorney's signature will not suffice).

All evidence and legal support a Class Member wishes to use to support an objection must be filed with the Court on or before by the Objection Deadline, and sent to all counsel of record for the Parties, postmarked on or before the Objection Deadline.

Plaintiffs and Defendants may file responses to any objection submitted. Any Class Member who timely files and serves an objection in accordance with this section may appear at the Final Approval Hearing, either in person or through an attorney, if the Class Member indicates in their objection papers that they wish to appear at the Final Approval Hearing with the Court. Failure to adhere to the requirements of this section will bar a Class Member from being heard at the Final Approval Hearing, either individually or through an attorney, unless the Court otherwise orders.

The Parties shall have the right to take discovery, including via subpoenas *duces tecum* and depositions, from any objector.

(c)    Waiver of Objections.  Except for Class Members who opt-out of the Settlement Class in compliance with the foregoing, all Class Members will be deemed to be members of the Settlement Class for all purposes under this Agreement, the Final Approval Order, and the Releases set forth in this Agreement and, unless they have timely and validly asserted an objection to the Settlement, shall be deemed to have waived all objections and opposition to the Settlement's fairness, reasonableness, and adequacy.

(d)    No Encouragement of Objections.  Neither the Parties nor any person acting on their behalf shall seek to solicit or otherwise encourage anyone to object to the Settlement or appeal from any order of the Court that is consistent with the terms of this Settlement.

(e)    Right to Terminate Based on Opt-outs.  Defendants may, in their sole discretion, terminate this Settlement if the number of opt-outs exceeds one thousand (1000) of all Settlement Class members (the "Termination Option").  Defendants shall give written notice to Class Counsel of any decision to exercise the Termination Option within ten (10) calendar days after the Opt-Out Deadline.

In the event Defendants terminate this Agreement, this Settlement shall become null and void, and it shall have no further force or effect.  In that event, all funds being held in the Settlement Fund Account will revert back to Coinbase, the Action shall continue, and any orders preliminarily approving the Agreement shall be automatically vacated by the Court.  In the event Defendants invoke the Termination Option, the Parties shall confer with the Court as to whether and how any notice of the termination should be sent to the Settlement Class, with Defendants bearing the cost of such notice.  In the event Defendants terminate this Agreement, the Settlement shall be considered null and void; no term or condition of the Settlement, or any draft thereof, or any element of the discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions, or any judgment or orders entered with respect to the Settlement or any pleading filed in support of motions to approve the Settlement shall have any force or effect, may not be admitted as evidence at trial, and may not be relied upon by any party or by the Court for any purpose whatsoever; and any judgment or orders entered with respect to the Settlement shall be vacated.  Thereafter, Plaintiffs and the Class Members shall be free to pursue any claims available to them, and Defendants shall be free to assert any claims or defenses available to them.

2.6    Benefit Distribution

(a)    Within ten (10) days after Final Approval, the Administrator shall provide to Coinbase a list of all persons who are entitled to receive Class Member Awards, including for each such person their: (i) name; (ii) last known e-mail address; and (iii) last known mailing address.  The information provided by the Administrator shall be considered conclusive as to which persons are entitled to receive a Class Member Award.

(b)    Within sixty (60) calendar days after the Effective Date, Class Member Awards shall be distributed from the Settlement Fund as follows:

i.      if a Class Member's Coinbase account remains open at the time of distribution of their Class Member Award, then by transferring the U.S. dollar amount of such a Class Member's Award to the Class Member's Coinbase account, with notice of such transfer's completion sent to the Class Member via email; or

ii.     if a Class Member's Coinbase account has been closed or is otherwise disabled with respect to U.S. dollar transmissions at the time of distribution of their Class Member Award, then by a check mailed to such a Class Member's last known mailing address.

(c)     Mailing Addresses.  Prior to mailing Class Member Award checks, the Administrator shall attempt to update the last known addresses of the Class Members through the National Change of Address Database or similar databases.  No skip-tracing shall be done as to any checks that are returned by the postal service with no forwarding address.  Class Member Award checks returned with a forwarding address shall be re-mailed to the new address within seven (7) calendar days.  The Administrator shall not mail Class Member Award checks to addresses from which Class Notices were returned as undeliverable.

(d)     Interest.  All interest on the funds in the Settlement Fund shall accrue to the benefit of the Settlement Class.  Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Administrator.  The Administrator is responsible for the payment of all Taxes on interest on the funds in the Settlement Fund Account.   Under no circumstances will Defendants have any liability for Taxes or, Tax expenses under the Settlement Agreement, including any Taxes on interest on the funds in the Settlement Fund.  Notwithstanding the foregoing, in the event that in the event that the Settlement does not receive Final Approval or the Effective Date does not come to pass under Section 3.3 and this Agreement becomes null and void, all funds being held in the Settlement Fund will revert to Coinbase, including any interest accrued in the Settlement Fund.

(e)     Time for Depositing Class Member Award Checks.  If a Class Member's Class Member Award check is not deposited (or cashed) within ninety (90) calendar days after the check is mailed, (i) the check will be null and void, (ii) the Class Member will be barred from receiving a further Class Member Award under this Settlement, and (iii) the amount of such a check will revert to the Settlement Fund and be distributed as described in Section 3.5.

(f)     Deceased Class Members.  Any Class Member Award paid to a deceased Class Member shall be made payable to the estate of the deceased Class Member, provided that the Class Member's estate informs the Administrator of the Class Member's death at least thirty (30) calendar days before the date that Class Member Award checks are mailed and provides a death certificate confirming that the Class Member is deceased.  If the Class Member's estate does not inform the Administrator of the Class Member's death at least thirty (30) calendar days before Class Member Award checks are mailed, the deceased Class Member will be barred from receiving a Class Member Award under this Settlement.

(g)     Tax Obligations.  The Parties shall have no responsibility or liability for any federal, state, or other taxes owed by Class Members as a result of, or that arise from, any Class Member Awards or any other term or condition of this Agreement.

(h)     Tax Reporting.  The Administrator shall prepare, send, file, and furnish all tax information reporting forms required for payments made from the Settlement Fund as required by the Internal Revenue Service pursuant to the Internal Revenue Code and related Treasury Regulations.  The Parties hereto agree to cooperate with the Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this section.

(i)     Post-Distribution Accounting.  Within twenty-one (21) days after all Class Member Awards have been paid to Class Members and all Settlement checks  have become stale, the Parties and Administrator shall file with the Court and display on the Settlement Website a Post-Distribution Accounting providing the following information: (i) the total remaining balance of the Settlement Fund; (ii) the total number of Class Members; (iii) the total number of Class Members to whom notice was sent and returned undeliverable; (iv) the number and percentage of opt-outs; (v) the number and percentage of objections; (vi) the mean average, median average, minimum and maximum recoveries per Class Member; (vii) the number and aggregate U.S. dollar value of Settlement checks not cashed; and (viii) the total U.S. dollar amount distributed to any *cy pres* recipient.

**Section 3.     Class Representative Service Award and Class Counsel's Fee & Expense Award**

3.1     Class Representative Service Awards.  Plaintiffs, through their undersigned counsel, shall each be entitled to apply to the Court for an award from the Cash Settlement Amount of up to $7,000.00 for their participation, services, and risks undertaken in the Action for the benefit of the Settlement Class ("Service Award").  Any Service Awards approved by the Court shall be paid from the Settlement Fund.  Any disapproval of a Service Award by the Court, or approval by the Court of a Service Award in an amount less than the amount sought by a Plaintiff, shall not affect the validity or enforceability of this Agreement or the finality of the Settlement.

3.2     Fee & Expense Award.  The Parties consent to the Court appointing Harris LLP as Class Counsel in this Action for purposes of the Settlement.  Class Counsel shall be entitled to apply to the Court for an award for attorneys' fees incurred in investigating, researching, litigating, and finally resolving this Action, in an amount not to exceed one-third (1/3) of the Cash Settlement Amount; additionally, Class Counsel may apply for reimbursement of their costs and expenses incurred in the Action, in an aggregate amount of up to $75,000.00 (collectively, the "Fee & Expense Award").  The Fee & Expense Award shall constitute full satisfaction of any obligation on the part of Defendants or the Releasees to pay any person, attorney, or law firm for costs, litigation expenses, attorneys' fees, or any other expense incurred on behalf of Plaintiffs or the Settlement Class in connection with or relation to any aspect of or proceeding in this Action.  A Fee & Expense Award approved by the Court in an amount less than the amount sought by Class Counsel is not a basis for setting aside the Agreement, and the Court's decision concerning the Fee & Expense Award shall not affect the validity of the Agreement or finality of the Settlement.  Any Service Award and any Fee & Expense Award shall be paid from the Settlement Fund, out of the Cash Settlement Amount, on the date(s) of Class Counsel's choosing within ten (10) to ninety (90) calendar days after the Effective Date.

3.3    Demarcation.  It is the intention of the Parties to demarcate clearly between proceeds from the Settlement in which Class Members have an interest, which may subject them to tax liability, and the Fee & Expense Award.  Accordingly, the amount paid separately to Class Counsel for the Fee & Expense Award is independent of and apart from the amounts paid to Class Members, and Class Members shall at no time have any interest in the Fee & Expense Award.  The Parties make no representation regarding and shall have no responsibility for the tax treatment of the Fee & Expense Award, or any other payments paid to Class Counsel or the tax treatment of any amounts paid under this Agreement.

3.4    The funds in the Settlement Fund shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l, at all times after the creation of the Settlement Fund.  All taxes (including any estimated taxes, and any interest or penalties relating thereto) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendants, Defendants' counsel, Plaintiffs and/or Class Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.  Defendants and Defendants' counsel and Plaintiffs and Class Counsel shall have no liability or responsibility for any of the Taxes.  The Settlement Fund shall indemnify and hold Defendants and Defendants' counsel and Plaintiffs and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any indemnification).

3.5    Residual in Settlement Fund.  In the event that there is any residual in the Settlement Fund after the distributions required by this Agreement are completed, said funds shall in no circumstance revert to Defendants.  Subject to the approval of the Court, the funds may be distributed to Settlement Class Members through a secondary distribution; however, if the residual amount is less than $50,000.00 (fifty thousand U.S. dollars), the funds may be distributed to a residual *cy pres* program chosen by and mutually agreed to in writing by counsel for all Parties.  Any *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members.

**Section 4.    Settlement Approval**

4.1    Preliminary Approval.  Plaintiffs will submit for the Court's consideration a motion seeking Preliminary Approval of the Settlement and apply to the Court for entry of a Preliminary Approval Order, the form of both being subject to review and consent by Defendants. In the event the Court does not enter the Preliminary Approval Order in substantially the same form consented to by Defendants, any Party has the right to terminate this Agreement and the Settlement and will have no further obligations under the Agreement, unless the Parties waive in writing their rights to terminate the Agreement due to any substantive changes or deviations from the form of the Preliminary Approval Order.  If any Party exercises its right to terminate, this Agreement becomes null and void, and all funds being held in the Settlement Fund Account will revert to Coinbase.  In Plaintiffs' motion seeking Preliminary Approval, Plaintiffs shall request that the Court approve the Class Notices attached as Exhibits A, B, and C hereto.  The Court will ultimately determine and approve the content and form of the Class Notices to be distributed to Class Members.

The Parties further agree that in Plaintiffs' motion seeking Preliminary Approval, Plaintiffs will request that the Court enter the following schedule governing the Settlement: (i) deadline for sending the Class Notices: twenty-five (25) calendar days after Preliminary Approval; (ii) deadline for filing motions for the Service Awards and Fee & Expense Award: thirty (30) calendar days after Preliminary Approval; (iii) deadline for opting out or serving objections: sixty (60) calendar days from Preliminary Approval; and (iv) Final Approval Hearing: between ninety (90) and one hundred (100) calendar days after Preliminary Approval.

    4.2    Final Approval.  Plaintiffs will submit for the Court's consideration, by the deadline set by the Court, a proposed Final Approval Order, the form of which will be subject to review and consent by Defendants.  The motion for Final Approval of this Settlement, the form of which will also be subject to review and consent by Defendants, shall include a request that the Court enter the proposed Final Approval Order and, if the Court grants Final Approval of the Settlement and incorporates the Agreement into the final judgment, that the Court dismiss this Action with prejudice, subject to the Court's continuing jurisdiction to enforce the Agreement.  In the event that the Court does not enter the Final Approval Order in materially the same form as consented to by Defendants, as reasonably determined by the Parties, the Parties have the right to terminate this Agreement and the Settlement and will have no further obligations under the Agreement unless the Parties waive in writing their right to terminate the Agreement due to any material changes or deviations from the form of the Final Approval Order.  If this Agreement becomes null and void, all funds being held in the Settlement Fund Account will revert to Coinbase.  While materiality remains subject to the Parties' determination in their reasonable discretion, material changes shall not include any changes to the legal reasoning or format used by the Court to justify the substantive relief sought by the Final Approval Order.  In the event that the Effective Date does not come to pass, the Final Approval Order is vacated or reversed, or the Settlement does not become final and binding, the Parties agree to request that the Court vacate any prior dismissal of the Action with prejudice.

    4.3    Effect of Disapproval.  If the Settlement does not receive Final Approval or the Effective Date does not come to pass, the Parties shall have the right to terminate this Agreement and the Settlement and will have no further obligations under the Agreement unless the Parties waive in writing their right to terminate the Agreement under this section.  In addition, the Parties agree that if this Agreement becomes null and void, all funds being held in the Settlement Fund will revert to Coinbase (including any interest accrued in the Settlement Fund); no Party or Class Member shall be prejudiced in any way in their seeking or opposing class certification in the Action; and no Party or Class Member shall use anything in this Agreement, in any term sheet, or in the Preliminary Approval Order or Final Approval Order or any Settlement-related papers to support or oppose any motion for class certification or as evidence proving or disproving any wrongdoing by Defendants.  No Party shall be deemed to have waived any claims, objections, rights, or defenses, or legal or factual arguments or positions, including but not limited to, those related to claims or objections to class certification, or claims or defenses on the merits. Each Party reserves the right to prosecute or defend this Action as if this Agreement was never made, if this Agreement does not become final and binding.

**Section 5.    General Provisions**

5.1    Cooperation.  The Parties agree that they will cooperate in good faith to effectuate and implement the terms and conditions of this Settlement.

5.2    Effect of Prior Agreements.  This Agreement constitutes the entire agreement and understanding of the Parties with respect to the Settlement of this Action, contains the final and complete terms of the Settlement of the Action and supersedes all prior agreements between the Parties regarding Settlement of the Action.  The Parties agree that there are no representations, understandings, or agreements relating to the Settlement of this Action other than as set forth in this Agreement.  Each Party acknowledges that it has not executed this Agreement in reliance upon any promise, statement, representation, or warranty, written or verbal, not expressly contained herein.

5.3    No Drafting Presumption.  All Parties hereto have participated, through their counsel, in the drafting of this Agreement, and this Agreement shall not be construed more strictly against any one Party than the other Parties.  Whenever possible, each term of this Agreement shall be interpreted in such a manner as to be valid and enforceable.  Headings are for the convenience of the Parties only, and are not intended to create substantive rights or obligations.

5.4    No Admission of Liability.  Defendants expressly disclaim and deny any wrongdoing or liability whatsoever.  This Agreement and the Settlement, and any and all negotiations, statements, documents, and/or proceedings in connection with the Agreement and Settlement, shall not be construed or deemed to be evidence of an admission or concession by Defendants of any liability or wrongdoing by Defendants or any of the Releasees with respect to the matters that are the subject of the Action, or that the case was properly brought as a class action, or that any person suffered compensable harm or is entitled to any relief with respect to Defendants' conduct as alleged in the Complaint.

5.5    Court Address for Objections.  Objections filed with the Court in person or via first-class mail must be sent to the Court at the address provided below.

Clerk of the Court
U.S. District Court for the Northern District of California
U.S. Magistrate Judge Sallie Kim
450 Golden Gate Avenue
San Francisco, CA 94102

5.6    Administrator Address.  All notices to the Administrator required or desired to be given under this Agreement shall be in writing and sent by first-class mail as follows:

Simpluris, Inc.
P.O. Box 26170
Santa Ana, California 92799

5.7    Notices.  All notices to the Parties or counsel for the Parties required or desired to be given under this Agreement shall be in writing and sent by first-class mail as follows:

To Plaintiffs and the Settlement Class:

David J. Harris, Jr.
Harris LLP
501 West Broadway
Suite 800
San Diego, California 92101

To Coinbase:

Kathleen Hartnett
Cooley LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111

To Marden-Kane:

Laura Wytsma
Orrick, Herrington & Sutcliffe LLP
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071

5.8     Modifications.  No modifications to this Agreement may be made without the written agreement of all Parties and Court approval.

5.9     Agreement Binding on Successors in Interest; No Third-Party Beneficiaries.  This Agreement shall not inure to the benefit of any third party, except that this Agreement is binding on and shall inure to the benefit of the respective heirs, successors, and assigns of the Parties, Class Counsel, and the Releasees.

5.10     Retention of Jurisdiction.  The Court shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this Agreement. The Court has jurisdiction over the Parties to this Agreement, and the Settlement Class.  Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.

5.11     No Waiver.  The provisions of this Agreement may be waived only in a writing executed by the waiving Party.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver, by that Party or by any other Party, of any other prior or subsequent breach of this Agreement.

5.12     Execution in Counterparts.   This Agreement may be executed in counterparts.  Each signed counterpart together with the others shall constitute the full Agreement. Each signatory warrants that the signer has authority to bind his/her party.

5.13     CAFA.  The Administrator shall timely send the notices required by 28 U.S.C. § 1715 within ten (10) calendar days after Plaintiffs file the motion seeking Preliminary Approval of the Settlement.

5.14    Deadlines    If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day

**APPROVED AND AGREED:**

_____
Plaintiff David Suski

_____
04/22/25
Date

_____
Plaintiff Jaimee Martin

_____
4/22/25
Date

_____
Plaintiff Jonas Calsbeek

_____
04/22/25
Date

_____
Plaintiff Thomas Maher

_____
04/23/25
Date

_____
David J. Harris, Jr. - Harris LLP
*Counsel for Plaintiffs*

_____
04/23/25
Date

_____
On Behalf of Coinbase, Inc.
Ryan VanGrack, Vice President, Litigation

_____
Date

_____
Kathleen Hartnett - Cooley LLP
*Counsel for Coinbase, Inc*

_____
Date

5.14    Deadlines.    If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.

**APPROVED AND AGREED:**

_____
Plaintiff David Suski

_____
Date

_____
Plaintiff Jaimee Martin

_____
Date

_____
Plaintiff Jonas Calsbeek

_____
Date

_____
Plaintiff Thomas Maher

_____
Date

_____
David J. Harris, Jr. - Harris LLP
*Counsel for Plaintiffs*

_____
Date

Signed by:

C751D65CE53A4E2...
_____
On Behalf of Coinbase, Inc.
Ryan VanGrack, Vice President, Litigation

April 22, 2025
_____
Date

_____
Kathleen Hartnett - Cooley LLP
*Counsel for Coinbase, Inc.*

_____
Date

5.14    Deadlines.    If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.

**APPROVED AND AGREED:**

_____          _____
Plaintiff David Suski                                 Date


_____          _____
Plaintiff Jaimee Martin                             Date


_____          _____
Plaintiff Jonas Calsbeek                          Date


_____          _____
Plaintiff Thomas Maher                          Date


_____          _____
David J. Harris, Jr. - Harris LLP              Date
*Counsel for Plaintiffs*


_____          _____
On Behalf of Coinbase, Inc.                    Date
Ryan VanGrack, Vice President, Litigation


_____          April 22, 2025
Kathleen Hartnett - Cooley LLP            _____
*Counsel for Coinbase, Inc.*                      Date

On Behalf of Marden-Kane, Inc

Fae Savignano, Executive Vice President, CCO

4/28/2025

Date

Laura Wytsma - Orrick, Herrington & Sutcliffe LLP

*Counsel for Marden-Kane, Inc.*

4/28/2025

Date