David J. Harris, Jr. (SBN 286204)
david@harrisllp.com
Gerilyn R. Harris (SBN 286031)
gerilyn@harrisllp.com
HARRIS LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102

*Counsel for Plaintiffs and
the Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiffs,<br><br>   vs.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>                  Defendants. | Case No.: 3:21-cv-04539-SK<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Sallie Kim<br><br>Hearing Date:  November 10, 2025<br>Hearing Time:  9:30 a.m. |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................ 1

I.  INTRODUCTION ............................................................................................... 2

II.  SUMMARY OF FACTUAL AND PROCEDURAL HISTORY ........................... 3

    A.  Class Claims and Allegations ................................................................ 3

    B.  Defendants' Defenses ............................................................................ 4

    C.  Summary of Procedural History ............................................................ 4

III.  SUMMARY OF THE SETTLEMENT ............................................................... 9

    A.  The Settlement Class ............................................................................. 9

    B.  Automatic Cash Benefits to All Class Members .................................. 9

    C.  Release of Claims by the Settlement Class ......................................... 11

    D.  Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award .................. 11

IV.  THE SETTLEMENT CLASS CONTINUES TO SATISFY FED. R. CIV. P. 23 ................ 11

    A.  Rule 23(a) Remains Satisfied ............................................................. 12

        1.  The Settlement Class is sufficiently numerous. ...................... 12

        2.  The Settlement Class presents common questions of law and fact. ............... 12

        3.  Plaintiffs' claims are typical of those of the Settlement Class. ...................... 12

        4.  Plaintiffs and their counsel have fairly and adequately protected the Class's interests. ................ 13

    B.  Rule 23(b)'s Prongs Remain Satisfied ............................................... 14

        1.  Common questions of law and fact predominate over individual issues. ....... 14

        2.  A class action is the superior method of adjudication. ............. 14

V.  FINAL APPROVAL OF THE SETTLEMENT IS PROPER ............................... 16

    C.  All Applicable *Hanlon* Factors Support Final Approval ................... 17

    D.  There is No Evidence of Fraud, Collusion, or Conflicts of Interest That Could Preclude Final Approval ................. 21

VI.  CONCLUSION .................................................................................................. 23

i

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) .................................................................................................. 14, 15

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001) ............................................................................................. 12

*Bell Atl. Corp. v. Bolger*
  2 F.3d 1304 (3d Cir. 1993) ............................................................................................ 2, 21

*Campbell v. Facebook, Inc.*
  951 F.3d 1106 (9th Cir. 2020) ........................................................................................... 17

*Carnegie v. Household Int'l, Inc.*
  376 F.3d 656 (7th Cir. 2004) ............................................................................................. 15

*Churchill Village, L.L.C. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ........................................................................................ 16, 17

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 16, 21, 23

*Coinbase, Inc. v. Bielski*
  599 U.S. 736 (2023) ............................................................................................................ 5

*Coinbase, Inc. v. Suski*
  602 U.S. 143 (2024) ............................................................................................................ 6

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ........................................................................ 16, 17, 20, 21

*In re Bluetooth Headset Prods. Liability Litig.*
  654 F.3d 935 (9th Cir. 2011) ........................................................................................ 21, 22

*In re Hyundai & Kia Fuel Economy Litig.*
  926 F.3d 539 (9th Cir. 2019) ............................................................................................. 17

*In re Juniper Networks Sec. Litig.*
  264 F.R.D. 584 (N.D. Cal. 2009) ...................................................................................... 13

*In re LinkedIn User Privacy Litig.*
  309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................. 19, 20

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ............................................................................................. 17

*In re Syncor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 16

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*
  295 F.R.D. 438 (C.D. Cal. 2014) ................................................................................. 18, 20

ii

*Jordan v. Los Angeles Cty.*
  669 F.2d 1311 (9th Cir. 1982) ................................................................................. 12

*Knight v. Red Door Salons, Inc.*
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................. 20

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ................................................................................. 17

*McCrary v. Elations Co., LLC*
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ........................................................... 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 2, 21

*Negrete v. Allianz Life Ins. Co. of N. Am.*
  238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................. 15

*Officers for Justice v. Civil Serv. Comm'm of City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ................................................................................... 17

*Parkinson v. Hyundai Motor Am.*
  258 F.R.D. 580 (C.D. Cal. 2008) ............................................................................. 12

*Pedraza v. Pier 1 Imports U.S., Inc.*
  No. 8:16-cv-01447-JLS-DFM,  2018 WL 11327201 (C.D. Cal. June 19, 2018) ....................... 21

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
  390 U.S. 414 (1968) ................................................................................................. 17

*Rangel v. PLS Check Cashers of California, Inc.*
  899 F.3d 1106 (9th Cir. 2018) ................................................................................. 11

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ............................................................................. 16, 23

*Salinas v. Block, Inc.*
  No. 22-cv-04823-SK, 2025 WL 1070754 (N.D. Cal. Mar. 27, 2025) ................. 16, 17

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ................................................................................... 13

*Suski v. Coinbase, Inc.*
  No. 22-15209, 2022 WL 3099846 (9th Cir. May 27, 2022) ....................................... 5

*Tucker v. Chase Bank USA, N.A.*
  399 F. Supp. 3d 105 (S.D.N.Y. 2019) ...................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*
  136 S. Ct. 1036 (2016) ............................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ............................................................................................. 12

**STATUTES**

9 U.S.C. §§ 1, *et seq.* ............................................................................................ 5

Cal. Bus. & Prof. Code  §§ 17500, *et seq.* ........................................................... 3

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................................................ 3

Cal. Civ. Code §§ 1750, *et seq.* ............................................................................ 3

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 3, 4, 6

Fed. R. Civ. P. 23(a) .................................................................................. 2, 12, 13

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 15

Fed. R. Civ. P. 23(e) ..................................................................................... 2, 11

1

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on November 10, 2025, at 9:30 a.m., or as soon thereafter as

4

this matter may be heard, in the courtroom of the Honorable United States Magistrate Judge Sallie

5

Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue,

6

San Francisco, CA 94102, Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas

7

Maher ("Plaintiffs") will and hereby do move the Court for an order pursuant to Fed. R. Civ. P.

8

23(e), granting final approval of a class action settlement agreement (Dkt. 189-2) ("Settlement")

9

among Plaintiffs and Defendants Coinbase, Inc. ("Coinbase") and Marden-Kane, Inc. ("Marden-

10

Kane") (collectively, "Parties"), and conclusively certifying for Settlement purposes the following

11

Class under Fed. R. Civ. P. 23(a) and 23(b)(3):

12

13

14

> All U.S. persons who opted into the June 2021 Dogecoin sweepstakes sponsored by
> Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform
> for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive.

15

This Motion is based upon this Notice of Motion, the following Memorandum of Law, the

16

concurrently filed Declaration of Anne-Marie Marra and all Exhibits thereto, the pleadings and all

17

other documents and evidence on file in this case, all matters of which the Court may take judicial

18

notice, and any oral argument on this Motion.

19

**STATEMENT OF RELIEF SOUGHT**

20

Plaintiffs request that the Court grant final approval of the Parties' Settlement pursuant to

21

Fed. R. Civ. P. 23(e), and conclusively certify the Class for Settlement purposes under Fed. R. Civ.

22

P. 23(a) and 23(b)(3).

23

24

**STATEMENT OF ISSUE TO BE DECIDED**

25

Whether this Court, pursuant to Fed. R. Civ. P. 23, should grant final approval of the

26

Settlement and conclusively certify the Class for Settlement purposes.

27

28

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs and Settlement Class Representatives David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher move for an order granting final approval of a class action settlement ("Settlement") among Plaintiffs, Defendant Coinbase, Inc. ("Coinbase") and Defendant Marden-Kane, Inc. ("Marden-Kane"), the terms of which are set forth in the Parties' docketed Settlement agreement (Dkt. 189-2).[1]

On July 3, 2025, this Court entered an order granting Preliminary Approval of the Settlement under Fed. R. Civ. P. 23.  *See generally* Dkt. 195 ("Preliminary Approval Order").  In its Preliminary Approval Order, the Court explained that the Settlement was "likely to be given final approval by this Court," and preliminarily certified the Class for Settlement purposes.  *Id.*, ¶¶3-7.  The Court found the Parties' $2,250,000.00 Settlement to be "fair, adequate, and reasonable for Settlement Class Members," and found the proposed Settlement Class to satisfy all requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  Dkt. 195, ¶¶1, 5-7.

Substantially nothing has changed since this Court entered the Preliminary Approval Order on July 3.  If anything, the case for Settlement approval has only strengthened since that time.  Upon receiving Class Notice, the Class's response to the Settlement has been exceptionally positive: with zero Class Members filing objections and just one Class Member excluding themselves, out of hundreds of thousands of notified Class Members.  Such an extraordinary acceptance of this Settlement by the Class counsels strongly in favor of Final Approval.  *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526-27 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to the class members.") (collecting cases); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. This is an infinitesimal number.").

---

[1] Unless otherwise defined herein, all capitalized terms herein have the same meaning as the identical terms defined in the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons detailed *infra*, and in the Court's Preliminary Approval Order, the Court should now grant Plaintiffs' Motion for Final Approval, conclusively certify the proposed Class for Settlement purposes, and bring this four-year-old Action to a constructive end.

## II. SUMMARY OF FACTUAL AND PROCEDURAL HISTORY

### A. Class Claims and Allegations

Plaintiffs' allegations are detailed in the Third Amended Class Action Complaint (Dkt. 83) ("TAC" or "Complaint") and summarized in this subsection. Coinbase operates a cryptocurrency trading platform through its mobile app and website, www.coinbase.com. TAC, ¶1. Coinbase allows its platform users to buy and sell cryptocurrencies using U.S. dollars, as well as other fiat currencies and cryptocurrencies. *Id.* Plaintiffs are individual consumers who were Coinbase users before and during the month of June 2021. *Id.*, ¶¶18-21.

That month, Coinbase made a cryptocurrency called "Dogecoin" available for trading on its platform for the first time. *Id.*, ¶6. To maximize trading volumes in Dogecoin, Coinbase hired Marden-Kane to administer a Dogecoin Sweepstakes, in which users could enter to win up to $300,000.00 in prizes by clicking an "Opt in" button, and buying or selling Dogecoins for $100 or more via Coinbase, between June 3, 2021 and June 10, 2021. *Id.*, ¶¶6-10. Each Plaintiff opted into the Sweepstakes and traded $100 or more in Dogecoins, as instructed, and Coinbase charged each Plaintiff a Transaction Fee and a Spread for their qualifying trades. *Id.*, ¶¶27-42.

Plaintiffs, however, allege that they were misled by Defendants into paying for their Sweepstakes entries. *Id.* Plaintiffs say that Defendants' Sweepstakes ads and disclosures unlawfully concealed a free entry-option, of which Plaintiffs would have availed themselves had Defendants clearly and conspicuously disclosed the free option as required by law. *Id.* Their Complaint asserts claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL").[2]

---

[2] Their Complaint also asserted claims for relief under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), but this Court subsequently dismissed such claims with prejudice under Fed. R. Civ. P. 12(b)(6). *See* TAC, ¶¶145-153; Dkt. 113 ("August 2022 Order") at 11-14 (analyzing and applying the "ancillary services" doctrine).

3

### B.    Defendants' Defenses

Defendants have long denied any wrongdoing.  *E.g.,* Dkt. 130 (Marden-Kane's Answer); Dkt. 131 (Coinbase's Answer).  Coinbase contends that its Sweepstakes solicitations were not misleading or confusing, as they plainly disclosed that no purchase was necessary to enter.  *E.g.,* TAC, ¶78; Dkt. 83-1 ("Official Rules").  Coinbase says a reasonable consumer would have discerned that payments were unnecessary for entry, upon reading the "no purchase necessary" language in all its Sweepstakes ads.  *Id.*  Furthermore, maintains Coinbase, a reasonable consumer would have read its ads' direct links to the Official Rules, which specified that consumers could enter by mailing in a paper index card with their contact information written in.  *See* TAC, ¶8; Official Rules, § 3.

Additionally, Marden-Kane contends that it had no role in drafting or disseminating Coinbase's allegedly defective advertisements of the Sweepstakes.  Marden-Kane may have helped prepare the Official Rules, but according to Marden-Kane, the Official Rules complied with all applicable laws.  Marden-Kane further asserts that it received no money from Plaintiffs or other Class Members in the Sweepstakes.  Thus, Marden-Kane says that Plaintiffs' and the Class's claims for restitution against it are likely doomed to fail as a matter of law.  Marden-Kane's Answer (Dkt. 130), Eleventh Defense.

Defendants have proffered many other defenses, and vehemently deny that Plaintiffs or Class Members suffered compensable harm from their alleged conduct.

### C.    Summary of Procedural History

Plaintiff Suski filed the initial complaint in this Action on June 11, 2021.  Dkt. 1.  On August 31, 2021 and October 20, 2021, respectively, Plaintiffs Martin, Calsbeek, and Maher joined Plaintiff Suski in filing a First Amended Class Action Complaint ("FAC") and Second Amended Class Action Complaint ("SAC"), respectively.  Dkt. 22; Dkt. 36.[3]

On October 19, 2021, Coinbase moved to compel the arbitration of Plaintiffs' claims, or alternatively, to dismiss all claims under Fed. R. Civ. P. 12(b)(6).  Dkt. 33.  The Court denied

---

[3] The SAC was substantially identical to the FAC, but replaced Coinbase Global, Inc. with its subsidiary, Coinbase, Inc., as a Defendant. The SAC also updated Plaintiffs' allegations regarding the CLRA's pre-claim notice provisions.  Cal. Civ. Code §§ 1750, *et seq.*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Coinbase's motion to compel arbitration, and denied in part Coinbase's motion to dismiss on January 11, 2022.  Dkt. 53 ("January 2022 Order").

This Court's denial of Coinbase's motion to compel arbitration kicked off years of proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA").  On February 9, 2022, Coinbase filed an interlocutory appeal in the Ninth Circuit presenting questions of arbitrability.  Dkt. 58.  The same day, Coinbase filed a motion to stay this Action pending appeal, which the Court denied in April 2022.  Dkt. 59.

In May 2022, Coinbase filed an appellate motion to stay in the Ninth Circuit, which the Circuit denied.  *Suski v. Coinbase, Inc.*, No. 22-15209, 2022 WL 3099846 (9th Cir. May 27, 2022).  After the Circuit's stay denial (*id.*), Coinbase filed a petition for certiorari in the Supreme Court, contending that stays pending arbitrability appeals are mandatory—not discretionary—under the FAA.  *See Coinbase, Inc. v. Bielski, Coinbase, Inc. v. Suski*, No. 22-105 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-105.html (last visited October 4, 2025).    The Parties completed certiorari briefing, merits briefing, supplemental briefing, and oral argument before the Supreme Court on the stay issue, only to eventually have the Supreme Court dismiss Coinbase's certiorari petition as improvidently granted.  *Id.*; *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, at n.7 (2023).

The Supreme Court's procedural dismissal of this Action occurred in part because, by the time the Supreme Court heard merits arguments on the stay issue, the Ninth Circuit had already resolved Coinbase's arbitrability appeal, affirming this Court's January 2022 Order on arbitrability.  The Circuit's affirmance of this Court's arbitrability judgment arguably mooted the issue of whether a stay pending Coinbase's appeal was mandatory or discretionary under the FAA.

Yet that did not mark the end of the Parties' appellate disputes.  Coinbase proceeded to file a second certiorari petition, on the same day that the Supreme Court dismissed its first petition: June 23, 2023.    *See generally Coinbase, Inc. v. Suski*, No. 23-3 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-3.html (last visited May 3, 2025).  In its second certiorari petition, Coinbase asked the Supreme Court to review

and reverse the Ninth Circuit's affirmance of this Court's arbitrability judgment. *Id.* Coinbase contended that "delegation clauses" in its User Agreements required an arbitrator, not courts, to decide whether the User Agreements' arbitration provisions or the Official Rules' forum-selection provisions governed Plaintiffs' claims. *Id.* The Supreme Court granted review, and—after a *second* round of merits briefing, supplemental briefing, and oral argument—the Supreme Court affirmed the Ninth Circuit's judgment upholding this Court's January 2022 Order, allowing this Action to proceed in federal court as a class action. *Id*; *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

During and after the Parties' extensive appellate and Supreme Court proceedings, the Parties engaged in significant merits litigation. On May 10, 2022, Plaintiffs filed the TAC to try to replead claims that had been dismissed by this Court under Fed. R. Civ. P. 12(b)(6), including Plaintiffs' claims that the Sweepstakes constituted an unlawful lottery. Dkt. 83.

On June 9, 2022, Marden-Kane and Coinbase each moved to compel arbitration (again), or alternatively, to dismiss Plaintiffs' claims on the merits. Dkt. 87; Dkt. 88. Defendants also asked the Court to enforce a class-action waiver provision in the Official Rules. *See* Dkt. 87 at 7-9. The Court ultimately granted in part and denied in part Defendants' motions to dismiss the TAC, dismissing Plaintiffs' CLRA and lottery claims with prejudice, but invalidating Defendants' class-action waiver as unconscionable and allowing all other Class claims to proceed. Dkt. 113 ("August 2022 Order").[4]

Following the Court's January 2022 and August 2022 Orders on Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss (*see* Dkt. 53; Dkt. 113), Coinbase and Marden-Kane filed their respective Answers to the TAC. Dkt. 130; Dkt. 131. The Parties conducted substantial, formal and informal discovery on Class-related issues as well as merits issues, propounding and responding to numerous interrogatories and requests for production of documents. Dkt. 189-1 ("Harris Decl."), ¶21. All Parties engaged in detailed negotiations concerning the proper scope of discovery, including but not limited to specific search and production criteria that would be utilized for particular categories of ESI. *Id.*

---

[4] Defendants took two new appeals on arbitrability after this Court's August 2022 Order, but Defendants (eventually) voluntarily dismissed those appeals as unnecessary, due to the Supreme Court's then-pending review of the arbitrability question.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Additionally, after the Supreme Court's arbitrability ruling, the Parties evaluated their ADR

2    options and eventually agreed to attend a full-day, in-person mediation session on October 24, 2024.

3    *Id.*, ¶¶22-26.  Former United States District Judge Layn R. Phillips (Ret.) and two of his colleagues,

4    Ms. Caroline Cheng, Esq. and Ms. Niki Mendoza, Esq., together conducted the Parties' mediation

5    session at the offices of Phillips ADR Enterprises ("PADRE"), in Corona del Mar, California.  *Id.*

6    Leading up to mediation, the Parties used the fruits of discovery and informal exchanges of

7    documents and data to submit comprehensive mediation briefs, detailing their respective case

8    theories and restitution analyses.  *Id.*[5]  The Parties submitted numerous exhibits in support of their

9    mediation briefs, providing a fulsome preview of their evidentiary support and legal arguments at

10   class certification, summary judgment, and trial.  *Id.*

11   During their in-person mediation session, the Parties conducted arms-length negotiations and

12   debates regarding their respective positions in the Action.  *Id.*  This included face-to-face debates and

13   discussions before Judge Phillips and his colleagues, among all of Class Counsel, defense counsel,

14   and in-house counsel for Coinbase.  *Id.*  In addition to such debates and discussions, Judge Phillips

15   and his colleagues together conducted multiple, private breakout sessions with each Party, aiding

16   them in understanding the strengths and weaknesses of their positions, as well as the legal and

17   economic risks to all Parties of insisting upon continued litigation.  *Id.*

18   The Parties were unable to reach an agreement to settle this Action at the end of their in-

19   person mediation session in October 2024.  *Id.*  Over the ensuing weeks and months, however, the

20   Parties continued to correspond with the mediators by phone, video conference, and email to try to

21   reach an agreement.  *Id.*  The Parties continued to prepare for and engage in further litigation

22   activities during that time, until an agreement in principle was ultimately reached.  *Id.*

23   Finally, in late December 2024, the Parties reached an agreement in principle to fully and

24   finally resolve this Action.  *Id.*  From January 2025 to April 2025, the Parties carefully negotiated all

25

26   [5] After the Court's August 2022 Order on Defendants' motions to dismiss, only Plaintiffs' UCL and
     FAL claims remained in this Action; thus, the only remaining, potential remedy for Plaintiffs and the
27   Class was an equitable restitution remedy, as opposed to damages at law.  *See* August 2022 Order
     (Dkt. 113) (dismissing Plaintiffs' CLRA claims with prejudice).
28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    remaining Settlement terms, fully executing their Settlement Agreement, and all Exhibits thereto, on

2    April 28, 2025.  *See generally* Dkt. 189-2.

3          On July 3, 2025, this Court granted Preliminary Approval of the Settlement, and ordered that

4    Class Notice be distributed to Members of the Settlement Class.  *See generally* Preliminary Approval

5    Order (Dkt. 195).

6          On July 8, 2025, Coinbase provided the Court-approved Settlement Administrator, Simpluris,

7    Inc. ("Simpluris" or "Administrator"), with a list of over 400,000 Class Members' names, mailing

8    addresses, and email addresses, along with the dollar amounts of Transaction Fees and Spreads that

9    Coinbase charged each such Class Member for their first $100 in Dogecoin trades during the

10   Sweepstakes Period.  *See* Declaration of Anne-Marie Marra Regarding Class Notice and Settlement

11   Administration (hereinafter "Marra Decl."), ¶¶7-8.

12         Starting on July 28, 2025, Simpluris sent the Court-approved Email Notices (Dkt. 189-3) and

13   Postcard Notices (Dkt. 189-4) to Class Members at their known email and/or mailing addresses, as

14   applicable.  Marra Decl., ¶¶9-11.  The Email and Postcard Notices contained basic information about

15   this Action and Settlement, and further directed Class Members to a dedicated Settlement Website,

16   www.June2021DogecoinSweepstakesSettlement.com, which contains the Court-approved Long

17   Form Notice (Dkt. 189-5), the fully executed Settlement Agreement (Dkt. 189-2), this Court's

18   Preliminary Approval Order (Dkt. 195), and other documents relevant to the Action and

19   Settlement—such as the Complaint (Dkt. 83) and Plaintiffs' pending Motion for Service Awards,

20   Attorneys' Fees and Expenses (Dkt. 200).  *See* Marra Decl., ¶¶12-13.

21         All Class Notices further provided Class Members with a toll-free number, (833) 360-6904,

22   to call with any questions they might have about the Settlement.  *Id.*  This phone line has been

23   available to Class Members 24 hours per day, 7 days per week, since July 25, 2025, and, during

24   normal business hours, has allowed Class Members to speak with live representatives about the

25   Settlement.  *Id.*

26         The Court ordered deadline for objecting to this Settlement, or for requesting exclusion from

27   the Class, was October 1, 2025.  *See* Preliminary Approval Order (Dkt. 195), ¶¶12-14.  As of the

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

post-deadline filing of this Motion, on October 6, 2025, only one (1) Class Member has excluded themselves from the Settlement Class, and not one Class Member has objected to the Settlement's terms. *See* Marra Decl., ¶¶14-16.

Plaintiffs' Motion for Final Approval now follows the Class's overwhelmingly positive response to the Settlement, after receiving direct Class Notices. *See generally* Marra Decl.

## III.    SUMMARY OF THE SETTLEMENT

### A.    The Settlement Class

For purposes of the Settlement, the Parties have agreed to final certification of the following Class: "All U.S. persons who opted into the June 2021 Dogecoin sweepstakes promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive." Settlement, § 2.1(a).  Based on a thorough search and analysis of Coinbase's business records, the Parties have found and identified 447,535 unique Members of the Settlement Class.  Dkt. 189-6 ("Huang Decl."), ¶3; Marra Decl., ¶8.   The total amount of Transaction Fees and Spreads charged to Class Members for *all* their Dogecoin transactions during the Sweepstakes Period was approximately $4,191,588.14; of that amount, the total of Transaction Fees and Spreads charged to Class Members for their *first* $100 in Dogecoin transactions during the Sweepstakes Period was approximately $1,340,916.50. Huang Decl., ¶¶4-5.

### B.    Automatic Cash Benefits to All Class Members

Defendants have agreed to provide a Cash Settlement Amount of $2,250,000.00.   *See* Settlement, § 2.2(a).  The Settlement provides cash awards to all Class Members, without any Class Members having to submit claims to receive their funds.  *Id.*, § 2.6(b).  Each Class Member will receive a Class Member Award equal to the approximate, total U.S. dollar amount of all Transaction Fees and Spreads they paid for their first $100 in Dogecoin trades during the Sweepstakes Period. *Id.*, § 2.2(d).  As further detailed herein, such Class Member Awards are fair, reasonable, and adequate based on the totality of facts and circumstances in this case.

Again, Class Members need not submit any claim forms to receive their cash payments from the Settlement.  Following Final Approval, the Administrator will automatically compensate Settlement Class Members by one of two methods.  First, for each Class Member who continues to be a Coinbase user at the time of disbursement, the Administrator will transfer the full U.S. dollar amount of their Class Member Award into the Class Member's existing Coinbase account.  *See* Settlement § 2.6(b).  Class Members can then freely transfer such Awards via ACH transfer, into their verified bank accounts within the United States.  *See* Dkt. 189-4 at 5; *see also* https://help.coinbase.com/en/exchange/funding/withdrawing-with-ach (last visited Oct. 5, 2025) (free ACH withdrawals from Coinbase accounts to outside bank accounts).  Class Members will also receive direct, email notices that their Class Member Awards have been deposited in their accounts.  *See* Settlement, § 2.6(b).

Second, for Class Members who have closed their Coinbase accounts or whose accounts are otherwise disabled with respect to U.S. dollar transmissions at the time of disbursement, the Administrator will automatically mail checks to all such Class Members at their last known mailing addresses.  *Id.*  Before mailing checks, the Administrator will update each Class Member's last known mailing address using the National Change of Address Database or similar databases.  *Id.*, §§ 2.4(c), 2.6(c).

The Settlement's utilization of electronic payments and ACH transfers for existing Coinbase users, versus paper checks, is intended to save and will save Class Members hundreds of thousands of dollars in Administrative Costs, which would otherwise accrue from cutting and mailing checks to the entire Settlement Class.  *Accord* Harris Decl., ¶¶32-37.[6]

All Class Member Awards will be processed and paid automatically after Final Approval, and no amount of the Settlement Fund will revert to Defendants' benefit in the event of Final Approval.  *Id.*  If after the disbursement of all Class Member Awards, a residual amount less than $50,000

---

[6] Before settling on an Administrator and on the method(s) for distributing Class Member Awards, counsel for all Parties solicited detailed bids and proposals from three reputable and experienced settlement administrators, to price out the likely administrative costs of various, potential methods of distribution.  *See* Harris Decl., ¶¶32-37.  The distribution proposal submitted by Simpluris, the Parties' chosen Administrator, was by far the most reliable and cost-effective for Class Members.  *Id.*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

remains in the Settlement Fund, such a residual amount may be distributed to an appropriate *cy pres* recipient mutually agreed upon by the Parties.  Settlement, § 3.5.

### C.    Release of Claims by the Settlement Class

In exchange for the Cash Settlement Amount, upon the Effective Date, each Settlement Class Member will fully release Defendants and the related "Releasees" from all "Released Claims," as such terms are fully defined in the Settlement.  Settlement § 2.3.  The Released Claims encompass all claims that were, or could have been, asserted in this Action related to the June 2021 Dogecoin Sweepstakes, including, but not limited to, any claims that Defendants or the Releasees unlawfully conducted any aspect of the Sweepstakes.  *Id.*  "Settlements of this breadth are common and unobjectionable."  *Rangel v. PLS Check Cashers of California, Inc*., 899 F.3d 1106, 1110–11 (9th Cir. 2018) (noting approval where settlement covered "all claims" that "could have been pled based on the factual allegations in the Complaint").

### D.    Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award

Pursuant to Settlement § 3.1, Plaintiffs have requested Service Awards of $7,000 each, in recognition of their personal contributions to prosecuting the Class's claims.  *See* Dkt. 200 at 23-25; *accord* Settlement, § 3.1.  Consistent with Settlement § 3.2, Class Counsel has requested a Fee & Expense Award of $750,000 in attorneys' fees, and $75,000 in reimbursement for out-of-pocket litigation expenses.  *See* Dkt. 200 at 1-23; Settlement, § 3.2.   If the Court grants a Fee & Expense Award or Service Awards in amounts less than Plaintiffs' requests, then any such difference would not revert to Defendants.  *See* Settlement, § 2.2(d).  Instead, any such difference would simply increase the Net Cash Settlement Amount, and be paid out proportionally to Class Members.  *Id.*[7]

## IV.    THE SETTLEMENT CLASS CONTINUES TO SATISFY FED. R. CIV. P. 23

Plaintiffs seek final certification of the Class, for Settlement purposes only.  *See* Fed. R. Civ. P. 23(e) (providing that "a class [may be] certified for purposes of settlement").  In its Preliminary Approval Order, the Court properly analyzed the Settlement Class and found it to satisfy all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Dkt. 195, ¶¶5-9.  Nothing has

---

[7] Plaintiffs' pending Motion for Service Awards, Attorneys' Fees, and Expenses thoroughly analyzes the reasonableness of the Fee & Expense Award and Service Awards.  *See generally* Dkt. 200.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

changed—legally or factually—since the Court preliminarily certified the Class in July, so the Court should now finally certify the Class for purposes of effectuating the Settlement's terms, and bringing this Action to its decisive and fruitful conclusion.  Dkt. 195, ¶¶5-9.

### A.    Rule 23(a) Remains Satisfied

#### 1.    The Settlement Class is sufficiently numerous.

A class may be certified only if it is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, there are hundreds of thousands of Class Members, which render the Class more than sufficiently numerous.  Huang Decl., ¶3.

#### 2.    The Settlement Class presents common questions of law and fact.

Rule 23(a)(2) requires there to be questions of law or fact that are common among class members.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011).  Here, Class Members' claims arise from the same core contentions: namely, that Defendants misrepresented and failed to disclose the free method of entry in the Dogecoin Sweepstakes, causing Class Members to unnecessarily pay for their entries.  *See generally* TAC.  Hence, the following questions of law and fact are common among Class Members: (a) whether Defendants falsely or misleadingly advertised the Sweepstakes entry requirements; (b) whether Defendants clearly and conspicuously disclosed the free entry option; and (c) whether and to what extent Defendants are liable for the payments made by Class Members to enter.  The commonality requirement is easily satisfied, based on the foregoing common questions.  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ("The threshold for establishing commonality under Rule 23(a) is relatively low.").

#### 3.    Plaintiffs' claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not require a perfect similarity of claims among plaintiffs and a proposed class.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied where named plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and [are] based upon the same legal theory."  *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1321 (9th Cir. 1982); *In re Juniper*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) (explaining "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Plaintiffs' claims are plainly typical of the Class's claims here.  Like all Class Members, Plaintiffs allege that, in response to Defendants' digital Sweepstakes ads through the Coinbase website and mobile app, they opted into the Sweepstakes and traded Dogecoins for $100 or more on the Coinbase platform, during an eight-day period in June 2021.  TAC, ¶¶27-42.  Coinbase charged Plaintiffs and other Class Members quantifiable Transaction Fees and Spreads for all such Dogecoin transactions.  *Id.*, ¶2.  Even if Plaintiffs' claims are not *identical* to those of all other Class Members in every respect, Plaintiffs and the Class generally assert the same facts and legal theories against Defendants to claim violations of California's UCL and FAL.  *Id.*; ¶¶101-144.  Indeed, the Official Rules expressly subjected Plaintiffs' and all Class Members' claims to California law, regardless of the various States in which individual Class Members may reside.  *See* Official Rules (Dkt. 83-1) § 10.  Thus, Plaintiffs' claims are "typical" of Class Members' claims, since all share similar factual allegations, assert similar injuries, and must satisfy the same legal elements to prevail on their claims.  Fed. R. Civ. P. 23(a)(3).

### 4.    Plaintiffs and their counsel have fairly and adequately protected the Class's interests.

Rule 23(a)(4) requires that Plaintiffs "fairly and adequately" protect the interests of the Class.  The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  As this Court previously determined, both prongs are satisfied here.  *See* Preliminary Approval Order (Dkt. 195), ¶¶7(d)-(e).

First, Plaintiffs' interests are aligned with, not antagonistic to, the Class's interests.  As explained *supra*, Plaintiffs share the same claims and theories as other Class Members, and the Settlement provides Plaintiffs and the Class with similar Class Member Awards, in direct proportion to each Class Member's Coinbase transaction records.  Settlement § 2.2(d).  Plaintiffs have already

diligently represented this Class's interests throughout four years of District Court, Circuit Court, and Supreme Court proceedings.  Harris Decl., ¶38.

Second, Class Counsel has extensive experience litigating and settling complex class action lawsuits, including but not limited to complex consumer and securities class actions.  Harris Decl., ¶¶ 39-43.  Class Counsel, alongside Plaintiffs, have zealously guarded the Class's interests through many contested proceedings over four years, arguing and negotiating in multiple forums to achieve a multimillion-dollar recovery on the Class's behalf.  *Id.*; *see generally* Dkt. 200.  Class Counsel is well qualified and adequate to represent this Settlement Class.  *Id.*

### B.    Rule 23(b)'s Prongs Remain Satisfied

#### 1.    Common questions of law and fact predominate over individual issues.

The Supreme Court has defined the predominance factor as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "The predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation omitted).

Here, Plaintiffs' and the Class's claims turn on the following, common questions, among others: (a) whether Defendants falsely or misleadingly advertised the true entry requirements for the Sweepstakes; (b) whether Defendants clearly and conspicuously disclosed the free-entry option in their digital Sweepstakes solicitations; and (c) whether and to what extent Defendants are liable for payments made by Class Members to enter the Sweepstakes.  *See generally* TAC.  Such common questions predominate over any individual issues that might exist in the Action, particularly in this Settlement context.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

#### 2.    A class action is the superior method of adjudication.

To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the

14

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    controversy already begun by . . . class members; (C) the desirability . . . of
2    concentrating the litigation of the claims in the particular forum; and (D) the
     likely difficulties in managing a class action.

3    Fed. R. Civ. P. 23(b)(3). Each of those factors supports certifying the Class for Settlement purposes.

4    This Action involves hundreds of thousands of Class Members who have been injured in

5    relatively small dollar amounts. There is no incentive for Class Members to pursue separate actions

6    here. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic

7    alternative to a class action is not 17 million individual suits, but zero individual suits, as only a

8    lunatic or a fanatic sues for $30"). In effect, the Court has already decided as much with respect to

9    this case, by invalidating the Official Rules' class-action waiver as unconscionable. August 2022

10   Order at 7-9 ("For these reasons, the Court finds that Plaintiffs' claims predictably involve small

11   amounts of damages . . . ."). Indeed: so "small" as to render individual suits cost-prohibitive. *Id.*

12   To date, no Class Members apart from Plaintiffs have pursued their own claims regarding the

13   June 2021 Dogecoin Sweepstakes. Even if some Class Members were inclined to sue individually,

14   such repetitious litigation would be neither beneficial nor efficient. *McCrary v. Elations Co., LLC*,

15   2014 WL 1779243, at *16 (C.D. Cal. Jan. 13, 2014) ("It is more efficient to resolve the common

16   questions . . . in a [single] proceeding rather than to have individual courts separately hear these

17   cases."). A class action is superior to hundreds of thousands of individual actions, because

18   concentrating all claims in one forum eliminates the dual risks of inconsistent outcomes and

19   irrationally high litigation costs. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 493

20   (C.D. Cal. 2006).

21   Finally, there are no manageability challenges presented by certifying this Class for

22   Settlement purposes, as there will be no Class-wide trial once the Court grants Plaintiffs' Motion for

23   Final Approval. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only

24   class certification, a district court need not inquire whether the case, if tried, would present

25   intractable management problems.") The proposed Settlement Class plainly satisfies Rule 23(b)(3).

26   For the above reasons, Plaintiffs ask that the Court conclusively certify the following Class

27   under Fed. R. Civ. P. 23(b)(3), for Settlement purposes only: "All U.S. persons who opted into the

28

15

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

June 2021 Dogecoin sweepstakes promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive." *Accord* Settlement, § 2.1(a).

## V.    FINAL APPROVAL OF THE SETTLEMENT IS PROPER

### A.  Legal Standards Governing Final Settlement Approval

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  The purpose of requiring court approval of class settlements is "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Courts need not address whether a class settlement is ideal or presents the best possible outcome, but instead, "only whether the settlement is fair, free of collusion, and consistent with plaintiff[s'] fiduciary obligations to the class." *Salinas v. Block, Inc.* No. 22-cv-04823-SK, 2025 WL 1070754, at *1 (N.D. Cal. Mar. 27, 2025) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

The law favors settlements in class actions and other complex cases, as substantial resources are conserved by avoiding the time, costs, and rigors of prolonged litigation.  *See Syncor*, 516 F.3d at 1101; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Absent serious red flags, the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."  *Hanlon*, 150 F.3d at 1027 (internal quotations omitted); *see also Chavez v. WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. Jun. 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    In deciding whether to finally approve a settlement, courts must determine whether the

2    settlement is "fair, adequate, and reasonable."  *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d

3    539, 569 (9th Cir. 2019).   The Ninth Circuit has "identified the following factors relevant to

4    assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense,

5    complexity and likely duration of further litigation; (3) the risk of maintaining class action status

6    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

7    the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a

8    government participant [if any]; and (8) the reaction of class members to the proposed settlement."

9    *Salinas*, 2025 WL 1070754, at *1 (citing *Hanlon*, 150 F.3d at 1026); *see also Churchill Village*, 361

10    F.3d at 575-77 & n.7 (analyzing the *Hanlon* factors, and noting that they are "non-exclusive").

11    "District courts may consider some or all of these factors," and of course, "[n]o one factor is

12    dispositive."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121, 1127 (9th Cir. 2020).

13    In this case, the overwhelming weight of applicable *Hanlon* factors counsels strongly in

14    favor of Final Approval.

15    **C.    All Applicable *Hanlon* Factors Support Final Approval**

16    **1.    The "strength of plaintiffs' case," relative to "the amount offered"**

17    In evaluating the strength of a case, courts "compare the terms of the compromise with the

18    likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

19    *Anderson*, 390 U.S. 414, 424-25 (1968).  A settlement, however, is not judged solely against what

20    plaintiffs could have recovered at trial if they prevailed, nor must a settlement provide a full recovery

21    to be reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Mego*

22    *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement

23    amounting to only a fraction of the potential recovery does not *per se* render the settlement

24    inadequate or unfair.").  Settlement is, by definition, a compromise; "in exchange for the saving of

25    cost and elimination of risk, the parties each give up something they might have won had they

26    proceeded with litigation."  *Officers for Justice v. Civil Serv. Comm'm of City and County of San*

27    *Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (internal citation omitted).

28

1    Courts routinely approve of cash settlement amounts that are far less than class members'

2    alleged losses.  *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*

3    *(FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (finding a $5 or $30 benefit representing 5%

4    to 30% of the potential, post-trial recovery was fair and adequate in a consumer class action); *City of*

5    *Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *7-8 (W.D. La. Mar. 3, 2015)

6    (finding a "7.4%–10.3% [recovery] of estimated provable damages" to be "a high degree of success"

7    because "[t]he typical recovery in most class actions generally is three-to-six cents on the dollar").

8    Here, the Settlement provides automatic cash benefits to Class Members, in reasonable

9    relation to the charges each Class Member incurred to enter the June 2021 Dogecoin Sweepstakes.

10   Settlement § 2.2(d).  The Parties estimate that the total Transaction Fees and Spreads Coinbase

11   charged to Class Members, for *all* their Dogecoin trades during the Sweepstakes Period, was

12   $4,189,828.67, and—of that amount—the Transaction Fees and Spreads that Coinbase charged Class

13   Members for their *first $100* in Dogecoin trades during the Sweepstakes Period, totaled

14   approximately $1,340,713.87.  *See* Huang Decl. (Dkt. 189-6), ¶¶4-5.

15   The Settlement preliminarily approved by this Court provides for a Net Cash Settlement

16   Amount of over $1.3 million.  Hence, even *after* making deductions from the Settlement Fund for the

17   Fee & Expense Award, Service Awards, and Administrative Costs, Class Members will still receive

18   more than $1.3 million—the total of all Transaction Fees and Spreads they paid for their first $100 in

19   Dogecoin trades during the Sweepstakes Period (plus or minus about ten cents per Class Member).

20   *See* Settlement § 2.2(d).  Even if Class Members could theoretically recover more at trial, it is

21   certainly "reasonable" to tailor their negotiated recoveries to those charges they incurred for their

22   *first $100* in trades: given that Defendants' challenged ads told Class Members they "need[ed]" to

23   trade just "$100 in Dogecoin," or "$100 or more in DOGE," for entry into the Sweepstakes.  *See*

24   TAC (Dkt. 83), ¶¶6-10; Official Rules (Dkt. 83-1), § 3.

25   The Net Cash Settlement Amount of over $1.3 million reasonably measures the charges Class

26   Members were allegedly *misled* to incur to enter this Sweepstakes.  The Class's interests are thus

27   fairly, reasonably, and adequately served by this Settlement, especially when compared to the high

28

18

costs and degrees of uncertainty inherent in all future litigation. *In re LinkedIn User Privacy Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

**2.    The risks, costs, complexities, and duration of future litigation**

In contrast to the tangible, immediate benefits of this Settlement, the ultimate outcome of continuing litigation is highly uncertain and could add years to this dispute. Absent Settlement, Defendants would aggressively defend the Action before, during and after trial, including through oppositions to class certification, motions for summary judgment, and appeals (and perhaps even Supreme Court proceedings, as Coinbase has demonstrated twice already).

By way of example only, Defendants would contend that the no-purchase-necessary language in their Sweepstakes ads sufficed to alert all Class Members of a free-entry method, especially when coupled with hyperlinks to the Official Rules that were directly visible in the ads. *Id.* Defendants would also draw from their business records showing that thousands of consumers, in fact, entered the Dogecoin Sweepstakes for free; Defendants would argue that such widespread, free entries clearly evidence the truthfulness and clarity of their Sweepstakes solicitations. *Id.* It is hard to predict the outcomes of such defenses (among others) on a full evidentiary record, in part because— as this Court recognized during the pleading stage—there is a dearth of precedent interpreting and applying California's sweepstakes law. *See* January 2022 Order (Dkt. 53) at 14 ("There are no cases construing this statute.").

Defendants would also contend on the evidence that their ads' deficiencies (if any) were not an actual or proximate cause of Class Members' trading activities during the Sweepstakes Period. Defendants might prove that many Class Members traded Dogecoin both before and after the Sweepstakes Period, and/or traded far more Dogecoins than the ads ever required. Based on such evidence, Defendants might show that many Class Members would have paid to trade Dogecoins during the Sweepstakes Period *regardless* of any of Defendants' Sweepstakes solicitations.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  These are just a few of the many merits defenses that Defendants would put forth during

2  future stages of this Action, thereby creating multiple, independent hurdles for Plaintiffs and the

3  Class to try to overcome at great risk, delay, and cost to the Class.

4  Defendants would oppose class certification outside of this Settlement context, and would

5  likely appeal any ultimate merits judgment in the Class's favor.  Absent Settlement, Plaintiffs and the

6  Class might well recover nothing at all.  Or, even if Class Members fully prevailed on the merits,

7  they might later recover *less* than the $2.25 million Cash Settlement Amount achieved by today's

8  Settlement.  In reaching a reasonable resolution now, Plaintiffs have secured a sizable, automatic

9  cash recovery for the Class, and avoided all delays, expenditures, and uncertainties that would

10  accompany future, contested litigation in this Action.  *In re Toys R Us*, 295 F.R.D. at 454; *LinkedIn*,

11  309 F.R.D. at 587.

12  **3.    The "stage of proceedings and extent of discovery" have informed the**

13  **views of Class Counsel having "experience" in comparable cases.**

14  In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

15  should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.,* No. 08-01520

16  SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009).  Where, as here, "[t]here is no evidence to

17  suggest that the settlement was negotiated in haste or [without] information illuminating the value of

18  plaintiffs' claims," final approval is proper.  *Hanlon*, 150 F.3d at 1027.

19  Here, Class Counsel has over twelve years of experience litigating and settling complex

20  securities and consumer class actions, including actions specifically analogous to this one.  *E.g.,*

21  Harris Decl., ¶40; *Tucker v. Chase Bank USA, N.A.*, 399 F. Supp. 3d 105 (S.D.N.Y. 2019) (pertaining

22  to financial institutions' disclosures of transaction charges for cryptocurrency purchases).  Class

23  Counsel has conducted many contested proceedings in this case, to thoroughly test the myriad legal

24  and factual issues raised; such contested proceedings have included, but not been limited to, multiple

25  pleading amendments, multiple dispositive motions, formal and informal discovery, and heavy

26  evidentiary briefing submitted to experienced mediators.  *See generally* Part II, *supra*.  There is

27  simply "no evidence" that Class Counsel has negotiated this Settlement "in haste," or "in the absence

28

of information illuminating the value of [P]laintiffs' claims." *Hanlon*, 150 F.3d at 1027.  Class Counsel has demonstrably, carefully weighed this Settlement against all risks and costs of continued litigation, and believes that the Settlement is fair, reasonable, and adequate under the totality of circumstances presented.  Harris Decl., ¶¶43, 48.  This factor supports Final Approval, as does the Class's favorable response to this Settlement upon receiving Class Notice.

### 4.    The Class's positive response to this Settlement favors Final Approval.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to the class members." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526-27.  Likewise, a relatively "small number of opt-outs . . . weighs in favor of granting final approval." *Pedraza v. Pier 1 Imports U.S., Inc.*, No. 8:16-cv-01447-JLS-DFM,  2018 WL 11327201, at *4 (C.D. Cal. June 19, 2018).

The deadline for Class Members to submit their opt-outs or objections in this case expired on October 1, 2025.  *See* Preliminary Approval Order (Dkt. 195), ¶¶12, 14.  As of the post-deadline filing of this Motion, ***zero*** Class Members have objected to the Settlement, and only ***one*** Class Member has opted to exclude themselves from the Class—out of the more than 400,000 persons who received Class Notice.  Marra Decl., ¶¶9-16.  Such "infinitesimal[ly]" small numbers of objections and opt-outs unequivocally support Final Approval.  *See Bolger*, 2 F.3d at 1313-14 (recognizing that even 30 objectors out of 1.1 million class members was "an infinitesimal number").  The Class itself has overwhelmingly approved of this Settlement, and the Court should do the same.  *Id.*

### D.    There is No Evidence of Fraud, Collusion, or Conflicts of Interest That Could Preclude Final Approval

While pre-certification class settlements require additional "scrutiny," beyond the *Hanlon* factors alone, pre-certification settlements remain approvable absent "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).  "Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  The Ninth Circuit has identified "subtle signs" of collusion and conflicts of interest that may undermine the approvability of class

21

action settlements: (1) outsized fee requests by class counsel, "or when the class receives no monetary distribution"; (2) "clear sailing" terms, which "provid[e] for the payment of attorneys' fees separate and apart from the class funds"; and (3) "when the parties arrange for [attorneys'] fees *not* awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947 (emphasis added).  No such warning signs exist here.

First, this Settlement gives Class Members over $1.3 million in "monetary distribution[s]," in direct proportion to their alleged financial injuries.  *Id.*  Furthermore, as shown in Plaintiffs' pending Motion for Service Awards, Attorneys' Fees and Expenses (Dkt. 200), the Fee & Expense Award is unquestionably proper, in relation to the capable work performed and the cash results achieved.  *See generally* Dkt. 200.  Class Counsel has requested a minority share of the Settlement Fund, while the Class retains the lion's share, with the lion's share being tied directly to the monetary value of the Class's claims.  *Id.*

Second, the Settlement here contains no "clear sailing" terms.  *Bluetooth*, 654 F.3d at 947.  Instead, "any Fee & Expense Award shall be paid from the Settlement Fund," and "[a] Fee & Expense Award approved by the Court in an amount less than the amount sought by Class Counsel is *not* a basis for setting aside the Agreement."  Settlement (Dkt. 189-2), § 3.2 (emphasis added).

Third, there are no reversionary provisions in this Settlement.  *See generally* Dkt. 189-2.  If the Court were to reduce Class Counsel's Fee & Expense Award, such a judicial reduction would accrue solely to the Class's benefit, rather than any Defendant's.  Harris Decl., ¶39; Settlement, §§ 1.21, 2.2(d).  There is simply no "evidence of collusion or other conflicts of interest" in this Settlement.  *Bluetooth*, 654 F.3d at 946-47.

Lastly, the involvement of a neutral mediator here is an important "factor weighing in favor of a finding of non-collusiveness."  *Id.* at 948.  Only after litigating contentiously, for multiple years (*see* Part II, *supra*), the Parties agreed to mediate before the Honorable Layn R. Phillips (Ret.) and his colleagues, Ms. Caroline Cheng and Ms. Niki Mendoza, in Corona del Mar, California.  Harris Decl., ¶¶22-26, 49-52.

In October 2024, during the Parties' in-person mediation session before Judge Phillips and his colleagues, the Parties debated the strengths and weaknesses of this case, and after a full day, were still unable to agree to resolve it.  *Id.*  It was not until December 2024—three and a half years into the Action—that the Parties finally reached an agreement in principle to resolve this case.  *Id.*  Far from suggesting "fraud or overreaching by . . . the negotiating parties," *City of Seattle*, 955 F.2d at 1290, the Parties' extensive work here with experienced mediators only further shows a fair and reasonable result for the Settlement Class.  *See Rodriguez*, 563 F.3d at 965 (affirming final settlement approval, and noting that "[w]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

As the Court has already recognized, this "Settlement is the result of arms-length negotiations between the parties and extensive mediation efforts conducted after Class Counsel had adequately investigated Plaintiffs' claims and become familiar with their strengths and weaknesses." Preliminary Approval Order (Dkt. 195), ¶4.

## VI.    CONCLUSION

There is no lawful barrier to the Court's Final Approval of this Settlement.  For the foregoing reasons, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, and bring a positive end to this four year-old Action.

Dated: October 6, 2025                    Respectfully submitted,

                                          HARRIS LLP

                                          By:  *s/ David J. Harris, Jr.*
                                               David J. Harris, Jr.

                                          david@harrisllp.com
                                          Gerilyn R. Harris
                                          gerilyn@harrisllp.com
                                          501 West Broadway, Suite 800
                                          San Diego, California 92101
                                          Telephone: (619) 213-1102

                                          *Counsel for Plaintiffs and*
                                          *the Settlement Class*

23

David J. Harris, Jr. (SBN 286204)
david@harrisllp.com
Gerilyn R. Harris (SBN 286031)
gerilyn@harrisllp.com
HARRIS LLP
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 213-1102

*Counsel for Plaintiffs and
the Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SUSKI, JAIMEE MARTIN, JONAS CALSBEEK, and THOMAS MAHER, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>   vs.<br><br>COINBASE, INC. and MARDEN-KANE, INC.,<br><br>               Defendants. | Case No.: 3:21-cv-04539-SK<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Sallie Kim<br><br>Hearing Date:  November 10, 2025<br>Hearing Time:  9:30 a.m. |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION..................................................................................................1

I.      INTRODUCTION ..........................................................................................................................2

II.     SUMMARY OF FACTUAL AND PROCEDURAL HISTORY ....................................................3

    A.      Class Claims and Allegations.................................................................................................3

    B.      Defendants' Defenses.............................................................................................................4

    C.      Summary of Procedural History .............................................................................................4

III.    SUMMARY OF THE SETTLEMENT...........................................................................................9

    A.      The Settlement Class ..............................................................................................................9

    B.      Automatic Cash Benefits to All Class Members ....................................................................9

    C.      Release of Claims by the Settlement Class .........................................................................11

    D.      Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award ...................11

IV.     THE SETTLEMENT CLASS CONTINUES TO SATISFY FED. R. CIV. P. 23...................11

    A.      Rule 23(a) Remains Satisfied ..............................................................................................12

        1.      The Settlement Class is sufficiently numerous. .......................................................12

        2.      The Settlement Class presents common questions of law and fact. ................12

        3.      Plaintiffs' claims are typical of those of the Settlement Class. ......................12

        4.      Plaintiffs and their counsel have fairly and adequately protected the Class's interests..........................................................................................................................13

    B.      Rule 23(b)'s Prongs Remain Satisfied ...............................................................................14

        1.      Common questions of law and fact predominate over individual issues. .......14

        2.      A class action is the superior method of adjudication. ....................................14

V.      FINAL APPROVAL OF THE SETTLEMENT IS PROPER.......................................................16

    C.      All Applicable *Hanlon* Factors Support Final Approval.............................................17

    D.      There is No Evidence of Fraud, Collusion, or Conflicts of Interest That Could Preclude Final Approval ..................................................................................................21

VI.     CONCLUSION .............................................................................................................................23

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. v. Windsor*
 521 U.S. 591 (1997) ..................................................................... 14, 15

*Armstrong v. Davis*
 275 F.3d 849 (9th Cir. 2001) ..................................................... 12

*Bell Atl. Corp. v. Bolger*
 2 F.3d 1304 (3d Cir. 1993) ........................................................ 2, 21

*Campbell v. Facebook, Inc.*
 951 F.3d 1106 (9th Cir. 2020) ................................................... 17

*Carnegie v. Household Int'l, Inc.*
 376 F.3d 656 (7th Cir. 2004) ..................................................... 15

*Churchill Village, L.L.C. v. Gen. Elec.*
 361 F.3d 566 (9th Cir. 2004) ..................................................... 16, 17

*Class Plaintiffs v. City of Seattle*
 955 F.2d 1268 (9th Cir. 1992) ................................................... 16, 21, 23

*Coinbase, Inc. v. Bielski*
 599 U.S. 736 (2023) .................................................................... 5

*Coinbase, Inc. v. Suski*
 602 U.S. 143 (2024) .................................................................... 6

*Hanlon v. Chrysler Corp.*
 150 F.3d 1011 (9th Cir. 1998) ................................................... 16, 17, 20, 21

*In re Bluetooth Headset Prods. Liability Litig.*
 654 F.3d 935 (9th Cir. 2011) ..................................................... 21, 22

*In re Hyundai & Kia Fuel Economy Litig.*
 926 F.3d 539 (9th Cir. 2019) ..................................................... 17

*In re Juniper Networks Sec. Litig.*
 264 F.R.D. 584 (N.D. Cal. 2009) .............................................. 13

*In re LinkedIn User Privacy Litig.*
 309 F.R.D. 573 (N.D. Cal. 2015) .............................................. 19, 20

*In re Mego Fin. Corp. Sec. Litig.*
 213 F.3d 454 (9th Cir. 2000) ..................................................... 17

*In re Syncor ERISA Litig.*
 516 F.3d 1095 (9th Cir. 2008) ................................................... 16

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*
 295 F.R.D. 438 (C.D. Cal. 2014) .............................................. 18, 20

*Jordan v. Los Angeles Cty.*
 669 F.2d 1311 (9th Cir. 1982) ............................................................................................. 12

*Knight v. Red Door Salons, Inc.*
 No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................................ 20

*Linney v. Cellular Alaska P'ship*
 151 F.3d 1234 (9th Cir. 1998) ............................................................................................. 17

*McCrary v. Elations Co., LLC*
 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ........................................................................ 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
 221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 2, 21

*Negrete v. Allianz Life Ins. Co. of N. Am.*
 238 F.R.D. 482 (C.D. Cal. 2006) ......................................................................................... 15

*Officers for Justice v. Civil Serv. Comm'm of City and County of San Francisco*
 688 F.2d 615 (9th Cir. 1982) ............................................................................................... 17

*Parkinson v. Hyundai Motor Am.*
 258 F.R.D. 580 (C.D. Cal. 2008) ......................................................................................... 12

*Pedraza v. Pier 1 Imports U.S., Inc.*
 No. 8:16-cv-01447-JLS-DFM,  2018 WL 11327201 (C.D. Cal. June 19, 2018) ......................... 21

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
 390 U.S. 414 (1968) ........................................................................................................... 17

*Rangel v. PLS Check Cashers of California, Inc.*
 899 F.3d 1106 (9th Cir. 2018) ............................................................................................. 11

*Rodriguez v. West Publ'g Corp.*
 563 F.3d 948 (9th Cir. 2009) .......................................................................................... 16, 23

*Salinas v. Block, Inc.*
 No. 22-cv-04823-SK, 2025 WL 1070754 (N.D. Cal. Mar. 27, 2025) ................................. 16, 17

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003) ............................................................................................... 13

*Suski v. Coinbase, Inc.*
 No. 22-15209, 2022 WL 3099846 (9th Cir. May 27, 2022) ...................................................... 5

*Tucker v. Chase Bank USA, N.A.*
 399 F. Supp. 3d 105 (S.D.N.Y. 2019) .................................................................................. 20

*Tyson Foods, Inc. v. Bouaphakeo*
 136 S. Ct. 1036 (2016) ....................................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*
 131 S. Ct. 2541 (2011) ....................................................................................................... 12

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATUTES**

9 U.S.C. §§ 1, *et seq.* .................................................................................................. 5

Cal. Bus. & Prof. Code  §§ 17500, *et seq.* ..................................................................... 3

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..................................................................... 3

Cal. Civ. Code §§ 1750, *et seq.* ..................................................................................... 3

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3, 4, 6

Fed. R. Civ. P. 23(a) ............................................................................................ 2, 12, 13

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 15

Fed. R. Civ. P. 23(e) ............................................................................................... 2, 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 10, 2025, at 9:30 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable United States Magistrate Judge Sallie Kim, located in Courtroom C, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher ("Plaintiffs") will and hereby do move the Court for an order pursuant to Fed. R. Civ. P. 23(e), granting final approval of a class action settlement agreement (Dkt. 189-2) ("Settlement") among Plaintiffs and Defendants Coinbase, Inc. ("Coinbase") and Marden-Kane, Inc. ("Marden-Kane") (collectively, "Parties"), and conclusively certifying for Settlement purposes the following Class under Fed. R. Civ. P. 23(a) and 23(b)(3):

> All U.S. persons who opted into the June 2021 Dogecoin sweepstakes sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive.

This Motion is based upon this Notice of Motion, the following Memorandum of Law, the concurrently filed Declaration of Anne-Marie Marra and all Exhibits thereto, the pleadings and all other documents and evidence on file in this case, all matters of which the Court may take judicial notice, and any oral argument on this Motion.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs request that the Court grant final approval of the Parties' Settlement pursuant to Fed. R. Civ. P. 23(e), and conclusively certify the Class for Settlement purposes under Fed. R. Civ. P. 23(a) and 23(b)(3).

## STATEMENT OF ISSUE TO BE DECIDED

Whether this Court, pursuant to Fed. R. Civ. P. 23, should grant final approval of the Settlement and conclusively certify the Class for Settlement purposes.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs and Settlement Class Representatives David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher move for an order granting final approval of a class action settlement ("Settlement") among Plaintiffs, Defendant Coinbase, Inc. ("Coinbase") and Defendant Marden-Kane, Inc. ("Marden-Kane"), the terms of which are set forth in the Parties' docketed Settlement agreement (Dkt. 189-2).[1]

On July 3, 2025, this Court entered an order granting Preliminary Approval of the Settlement under Fed. R. Civ. P. 23.  *See generally* Dkt. 195 ("Preliminary Approval Order").  In its Preliminary Approval Order, the Court explained that the Settlement was "likely to be given final approval by this Court," and preliminarily certified the Class for Settlement purposes.  *Id.*, ¶¶3-7.  The Court found the Parties' $2,250,000.00 Settlement to be "fair, adequate, and reasonable for Settlement Class Members," and found the proposed Settlement Class to satisfy all requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).  Dkt. 195, ¶¶1, 5-7.

Substantially nothing has changed since this Court entered the Preliminary Approval Order on July 3.  If anything, the case for Settlement approval has only strengthened since that time.  Upon receiving Class Notice, the Class's response to the Settlement has been exceptionally positive: with zero Class Members filing objections and just one Class Member excluding themselves, out of hundreds of thousands of notified Class Members.  Such an extraordinary acceptance of this Settlement by the Class counsels strongly in favor of Final Approval.  *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526-27 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to the class members.") (collecting cases); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. This is an infinitesimal number.").

---

[1] Unless otherwise defined herein, all capitalized terms herein have the same meaning as the identical terms defined in the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    For the reasons detailed *infra*, and in the Court's Preliminary Approval Order, the Court

2    should now grant Plaintiffs' Motion for Final Approval, conclusively certify the proposed Class for

3    Settlement purposes, and bring this four-year-old Action to a constructive end.

4    **II. SUMMARY OF FACTUAL AND PROCEDURAL HISTORY**

5        **A.    Class Claims and Allegations**

6        Plaintiffs' allegations are detailed in the Third Amended Class Action Complaint (Dkt. 83)

7    ("TAC" or "Complaint") and summarized in this subsection.  Coinbase operates a cryptocurrency

8    trading platform through its mobile app and website, www.coinbase.com.  TAC, ¶1.  Coinbase

9    allows its platform users to buy and sell cryptocurrencies using U.S. dollars, as well as other fiat

10   currencies and cryptocurrencies.  *Id.*  Plaintiffs are individual consumers who were Coinbase users

11   before and during the month of June 2021.  *Id.*, ¶¶18-21.

12       That month, Coinbase made a cryptocurrency called "Dogecoin" available for trading on its

13   platform for the first time.  *Id.*, ¶6.  To maximize trading volumes in Dogecoin, Coinbase hired

14   Marden-Kane to administer a Dogecoin Sweepstakes, in which users could enter to win up to

15   $300,000.00 in prizes by clicking an "Opt in" button, and buying or selling Dogecoins for $100 or

16   more via Coinbase, between June 3, 2021 and June 10, 2021.  *Id.*, ¶¶6-10.  Each Plaintiff opted into

17   the Sweepstakes and traded $100 or more in Dogecoins, as instructed, and Coinbase charged each

18   Plaintiff a Transaction Fee and a Spread for their qualifying trades.  *Id.*, ¶¶27-42.

19       Plaintiffs, however, allege that they were misled by Defendants into paying for their

20   Sweepstakes entries.  *Id.*  Plaintiffs say that Defendants' Sweepstakes ads and disclosures unlawfully

21   concealed a free entry-option, of which Plaintiffs would have availed themselves had Defendants

22   clearly and conspicuously disclosed the free option as required by law.  *Id.*  Their Complaint asserts

23   claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et*

24   *seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code  §§ 17500, *et seq.* ("FAL").[2]

25

26   _____

27   [2] Their Complaint also asserted claims for relief under California's Consumer Legal Remedies Act,
     Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), but this Court subsequently dismissed such claims with
     prejudice under Fed. R. Civ. P. 12(b)(6).  *See* TAC, ¶¶145-153; Dkt. 113 ("August 2022 Order") at

28   11-14 (analyzing and applying the "ancillary services" doctrine).

3

### B.      Defendants' Defenses

Defendants have long denied any wrongdoing.  *E.g.,* Dkt. 130 (Marden-Kane's Answer); Dkt. 131 (Coinbase's Answer).  Coinbase contends that its Sweepstakes solicitations were not misleading or confusing, as they plainly disclosed that no purchase was necessary to enter.  *E.g.,* TAC, ¶78; Dkt. 83-1 ("Official Rules").  Coinbase says a reasonable consumer would have discerned that payments were unnecessary for entry, upon reading the "no purchase necessary" language in all its Sweepstakes ads.  *Id.*  Furthermore, maintains Coinbase, a reasonable consumer would have read its ads' direct links to the Official Rules, which specified that consumers could enter by mailing in a paper index card with their contact information written in.  *See* TAC, ¶8; Official Rules, § 3.

Additionally, Marden-Kane contends that it had no role in drafting or disseminating Coinbase's allegedly defective advertisements of the Sweepstakes.  Marden-Kane may have helped prepare the Official Rules, but according to Marden-Kane, the Official Rules complied with all applicable laws.  Marden-Kane further asserts that it received no money from Plaintiffs or other Class Members in the Sweepstakes.  Thus, Marden-Kane says that Plaintiffs' and the Class's claims for restitution against it are likely doomed to fail as a matter of law.  Marden-Kane's Answer (Dkt. 130), Eleventh Defense.

Defendants have proffered many other defenses, and vehemently deny that Plaintiffs or Class Members suffered compensable harm from their alleged conduct.

### C.      Summary of Procedural History

Plaintiff Suski filed the initial complaint in this Action on June 11, 2021.  Dkt. 1.  On August 31, 2021 and October 20, 2021, respectively, Plaintiffs Martin, Calsbeek, and Maher joined Plaintiff Suski in filing a First Amended Class Action Complaint ("FAC") and Second Amended Class Action Complaint ("SAC"), respectively.  Dkt. 22; Dkt. 36.[3]

On October 19, 2021, Coinbase moved to compel the arbitration of Plaintiffs' claims, or alternatively, to dismiss all claims under Fed. R. Civ. P. 12(b)(6).  Dkt. 33.  The Court denied

---

[3] The SAC was substantially identical to the FAC, but replaced Coinbase Global, Inc. with its subsidiary, Coinbase, Inc., as a Defendant. The SAC also updated Plaintiffs' allegations regarding the CLRA's pre-claim notice provisions.  Cal. Civ. Code §§ 1750, *et seq.*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Coinbase's motion to compel arbitration, and denied in part Coinbase's motion to dismiss on January 11, 2022.  Dkt. 53 ("January 2022 Order").

This Court's denial of Coinbase's motion to compel arbitration kicked off years of proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA").  On February 9, 2022, Coinbase filed an interlocutory appeal in the Ninth Circuit presenting questions of arbitrability.  Dkt. 58.  The same day, Coinbase filed a motion to stay this Action pending appeal, which the Court denied in April 2022.  Dkt. 59.

In May 2022, Coinbase filed an appellate motion to stay in the Ninth Circuit, which the Circuit denied.  *Suski v. Coinbase, Inc.*, No. 22-15209, 2022 WL 3099846 (9th Cir. May 27, 2022).  After the Circuit's stay denial (*id.*), Coinbase filed a petition for certiorari in the Supreme Court, contending that stays pending arbitrability appeals are mandatory—not discretionary—under the FAA.  *See Coinbase, Inc. v. Bielski, Coinbase, Inc. v. Suski*, No. 22-105 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/22-105.html (last visited October 4, 2025).  The Parties completed certiorari briefing, merits briefing, supplemental briefing, and oral argument before the Supreme Court on the stay issue, only to eventually have the Supreme Court dismiss Coinbase's certiorari petition as improvidently granted.  *Id.*; *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, at n.7 (2023).

The Supreme Court's procedural dismissal of this Action occurred in part because, by the time the Supreme Court heard merits arguments on the stay issue, the Ninth Circuit had already resolved Coinbase's arbitrability appeal, affirming this Court's January 2022 Order on arbitrability.  The Circuit's affirmance of this Court's arbitrability judgment arguably mooted the issue of whether a stay pending Coinbase's appeal was mandatory or discretionary under the FAA.

Yet that did not mark the end of the Parties' appellate disputes.  Coinbase proceeded to file a second certiorari petition, on the same day that the Supreme Court dismissed its first petition: June 23, 2023.  *See generally Coinbase, Inc. v. Suski*, No. 23-3 (U.S.), *available at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-3.html (last visited May 3, 2025).  In its second certiorari petition, Coinbase asked the Supreme Court to review

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

and reverse the Ninth Circuit's affirmance of this Court's arbitrability judgment.  *Id.*  Coinbase contended that "delegation clauses" in its User Agreements required an arbitrator, not courts, to decide whether the User Agreements' arbitration provisions or the Official Rules' forum-selection provisions governed Plaintiffs' claims.  *Id.*  The Supreme Court granted review, and—after a *second* round of merits briefing, supplemental briefing, and oral argument—the Supreme Court affirmed the Ninth Circuit's judgment upholding this Court's January 2022 Order, allowing this Action to proceed in federal court as a class action.  *Id*; *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

During and after the Parties' extensive appellate and Supreme Court proceedings, the Parties engaged in significant merits litigation.  On May 10, 2022, Plaintiffs filed the TAC to try to replead claims that had been dismissed by this Court under Fed. R. Civ. P. 12(b)(6), including Plaintiffs' claims that the Sweepstakes constituted an unlawful lottery.  Dkt. 83.

On June 9, 2022, Marden-Kane and Coinbase each moved to compel arbitration (again), or alternatively, to dismiss Plaintiffs' claims on the merits.  Dkt. 87; Dkt. 88.  Defendants also asked the Court to enforce a class-action waiver provision in the Official Rules.  *See* Dkt. 87 at 7-9.  The Court ultimately granted in part and denied in part Defendants' motions to dismiss the TAC, dismissing Plaintiffs' CLRA and lottery claims with prejudice, but invalidating Defendants' class-action waiver as unconscionable and allowing all other Class claims to proceed.  Dkt. 113 ("August 2022 Order").[4]

Following the Court's January 2022 and August 2022 Orders on Defendants' Fed. R. Civ. P. 12(b)(6) motions to dismiss (*see* Dkt. 53; Dkt. 113), Coinbase and Marden-Kane filed their respective Answers to the TAC.  Dkt. 130; Dkt. 131.  The Parties conducted substantial, formal and informal discovery on Class-related issues as well as merits issues, propounding and responding to numerous interrogatories and requests for production of documents.  Dkt. 189-1 ("Harris Decl."), ¶21.  All Parties engaged in detailed negotiations concerning the proper scope of discovery, including but not limited to specific search and production criteria that would be utilized for particular categories of ESI.  *Id.*

---

[4] Defendants took two new appeals on arbitrability after this Court's August 2022 Order, but Defendants (eventually) voluntarily dismissed those appeals as unnecessary, due to the Supreme Court's then-pending review of the arbitrability question.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Additionally, after the Supreme Court's arbitrability ruling, the Parties evaluated their ADR options and eventually agreed to attend a full-day, in-person mediation session on October 24, 2024. *Id.*, ¶¶22-26. Former United States District Judge Layn R. Phillips (Ret.) and two of his colleagues, Ms. Caroline Cheng, Esq. and Ms. Niki Mendoza, Esq., together conducted the Parties' mediation session at the offices of Phillips ADR Enterprises ("PADRE"), in Corona del Mar, California. *Id.*

Leading up to mediation, the Parties used the fruits of discovery and informal exchanges of documents and data to submit comprehensive mediation briefs, detailing their respective case theories and restitution analyses. *Id.*[5] The Parties submitted numerous exhibits in support of their mediation briefs, providing a fulsome preview of their evidentiary support and legal arguments at class certification, summary judgment, and trial. *Id.*

During their in-person mediation session, the Parties conducted arms-length negotiations and debates regarding their respective positions in the Action. *Id.* This included face-to-face debates and discussions before Judge Phillips and his colleagues, among all of Class Counsel, defense counsel, and in-house counsel for Coinbase. *Id.* In addition to such debates and discussions, Judge Phillips and his colleagues together conducted multiple, private breakout sessions with each Party, aiding them in understanding the strengths and weaknesses of their positions, as well as the legal and economic risks to all Parties of insisting upon continued litigation. *Id.*

The Parties were unable to reach an agreement to settle this Action at the end of their in-person mediation session in October 2024. *Id.* Over the ensuing weeks and months, however, the Parties continued to correspond with the mediators by phone, video conference, and email to try to reach an agreement. *Id.* The Parties continued to prepare for and engage in further litigation activities during that time, until an agreement in principle was ultimately reached. *Id.*

Finally, in late December 2024, the Parties reached an agreement in principle to fully and finally resolve this Action. *Id.* From January 2025 to April 2025, the Parties carefully negotiated all

---

[5] After the Court's August 2022 Order on Defendants' motions to dismiss, only Plaintiffs' UCL and FAL claims remained in this Action; thus, the only remaining, potential remedy for Plaintiffs and the Class was an equitable restitution remedy, as opposed to damages at law. *See* August 2022 Order (Dkt. 113) (dismissing Plaintiffs' CLRA claims with prejudice).

1    remaining Settlement terms, fully executing their Settlement Agreement, and all Exhibits thereto, on

2    April 28, 2025.  *See generally* Dkt. 189-2.

3            On July 3, 2025, this Court granted Preliminary Approval of the Settlement, and ordered that

4    Class Notice be distributed to Members of the Settlement Class.  *See generally* Preliminary Approval

5    Order (Dkt. 195).

6            On July 8, 2025, Coinbase provided the Court-approved Settlement Administrator, Simpluris,

7    Inc. ("Simpluris" or "Administrator"), with a list of over 400,000 Class Members' names, mailing

8    addresses, and email addresses, along with the dollar amounts of Transaction Fees and Spreads that

9    Coinbase charged each such Class Member for their first $100 in Dogecoin trades during the

10   Sweepstakes Period.  *See* Declaration of Anne-Marie Marra Regarding Class Notice and Settlement

11   Administration (hereinafter "Marra Decl."), ¶¶7-8.

12           Starting on July 28, 2025, Simpluris sent the Court-approved Email Notices (Dkt. 189-3) and

13   Postcard Notices (Dkt. 189-4) to Class Members at their known email and/or mailing addresses, as

14   applicable.  Marra Decl., ¶¶9-11.  The Email and Postcard Notices contained basic information about

15   this Action and Settlement, and further directed Class Members to a dedicated Settlement Website,

16   www.June2021DogecoinSweepstakesSettlement.com, which contains the Court-approved Long

17   Form Notice (Dkt. 189-5), the fully executed Settlement Agreement (Dkt. 189-2), this Court's

18   Preliminary Approval Order (Dkt. 195), and other documents relevant to the Action and

19   Settlement—such as the Complaint (Dkt. 83) and Plaintiffs' pending Motion for Service Awards,

20   Attorneys' Fees and Expenses (Dkt. 200).  *See* Marra Decl., ¶¶12-13.

21           All Class Notices further provided Class Members with a toll-free number, (833) 360-6904,

22   to call with any questions they might have about the Settlement.  *Id.*  This phone line has been

23   available to Class Members 24 hours per day, 7 days per week, since July 25, 2025, and, during

24   normal business hours, has allowed Class Members to speak with live representatives about the

25   Settlement.  *Id.*

26           The Court ordered deadline for objecting to this Settlement, or for requesting exclusion from

27   the Class, was October 1, 2025.  *See* Preliminary Approval Order (Dkt. 195), ¶¶12-14.  As of the

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

post-deadline filing of this Motion, on October 6, 2025, only one (1) Class Member has excluded themselves from the Settlement Class, and not one Class Member has objected to the Settlement's terms. *See* Marra Decl., ¶¶14-16.

Plaintiffs' Motion for Final Approval now follows the Class's overwhelmingly positive response to the Settlement, after receiving direct Class Notices. *See generally* Marra Decl.

## III.    SUMMARY OF THE SETTLEMENT

### A.    The Settlement Class

For purposes of the Settlement, the Parties have agreed to final certification of the following Class: "All U.S. persons who opted into the June 2021 Dogecoin sweepstakes promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive." Settlement, § 2.1(a). Based on a thorough search and analysis of Coinbase's business records, the Parties have found and identified 447,535 unique Members of the Settlement Class. Dkt. 189-6 ("Huang Decl."), ¶3; Marra Decl., ¶8. The total amount of Transaction Fees and Spreads charged to Class Members for *all* their Dogecoin transactions during the Sweepstakes Period was approximately $4,191,588.14; of that amount, the total of Transaction Fees and Spreads charged to Class Members for their *first $100* in Dogecoin transactions during the Sweepstakes Period was approximately $1,340,916.50. Huang Decl., ¶¶4-5.

### B.    Automatic Cash Benefits to All Class Members

Defendants have agreed to provide a Cash Settlement Amount of $2,250,000.00. *See* Settlement, § 2.2(a). The Settlement provides cash awards to all Class Members, without any Class Members having to submit claims to receive their funds. *Id.*, § 2.6(b). Each Class Member will receive a Class Member Award equal to the approximate, total U.S. dollar amount of all Transaction Fees and Spreads they paid for their first $100 in Dogecoin trades during the Sweepstakes Period. *Id.*, § 2.2(d). As further detailed herein, such Class Member Awards are fair, reasonable, and adequate based on the totality of facts and circumstances in this case.

Again, Class Members need not submit any claim forms to receive their cash payments from the Settlement. Following Final Approval, the Administrator will automatically compensate Settlement Class Members by one of two methods. First, for each Class Member who continues to be a Coinbase user at the time of disbursement, the Administrator will transfer the full U.S. dollar amount of their Class Member Award into the Class Member's existing Coinbase account. *See* Settlement § 2.6(b). Class Members can then freely transfer such Awards via ACH transfer, into their verified bank accounts within the United States. *See* Dkt. 189-4 at 5; *see also* https://help.coinbase.com/en/exchange/funding/withdrawing-with-ach (last visited Oct. 5, 2025) (free ACH withdrawals from Coinbase accounts to outside bank accounts). Class Members will also receive direct, email notices that their Class Member Awards have been deposited in their accounts. *See* Settlement, § 2.6(b).

Second, for Class Members who have closed their Coinbase accounts or whose accounts are otherwise disabled with respect to U.S. dollar transmissions at the time of disbursement, the Administrator will automatically mail checks to all such Class Members at their last known mailing addresses. *Id.* Before mailing checks, the Administrator will update each Class Member's last known mailing address using the National Change of Address Database or similar databases. *Id.*, §§ 2.4(c), 2.6(c).

The Settlement's utilization of electronic payments and ACH transfers for existing Coinbase users, versus paper checks, is intended to save and will save Class Members hundreds of thousands of dollars in Administrative Costs, which would otherwise accrue from cutting and mailing checks to the entire Settlement Class. *Accord* Harris Decl., ¶¶32-37.[6]

All Class Member Awards will be processed and paid automatically after Final Approval, and no amount of the Settlement Fund will revert to Defendants' benefit in the event of Final Approval. *Id.* If after the disbursement of all Class Member Awards, a residual amount less than $50,000

---

[6] Before settling on an Administrator and on the method(s) for distributing Class Member Awards, counsel for all Parties solicited detailed bids and proposals from three reputable and experienced settlement administrators, to price out the likely administrative costs of various, potential methods of distribution. *See* Harris Decl., ¶¶32-37. The distribution proposal submitted by Simpluris, the Parties' chosen Administrator, was by far the most reliable and cost-effective for Class Members. *Id.*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

remains in the Settlement Fund, such a residual amount may be distributed to an appropriate *cy pres* recipient mutually agreed upon by the Parties.  Settlement, § 3.5.

### C.    Release of Claims by the Settlement Class

In exchange for the Cash Settlement Amount, upon the Effective Date, each Settlement Class Member will fully release Defendants and the related "Releasees" from all "Released Claims," as such terms are fully defined in the Settlement.  Settlement § 2.3.  The Released Claims encompass all claims that were, or could have been, asserted in this Action related to the June 2021 Dogecoin Sweepstakes, including, but not limited to, any claims that Defendants or the Releasees unlawfully conducted any aspect of the Sweepstakes.  *Id.*  "Settlements of this breadth are common and unobjectionable."  *Rangel v. PLS Check Cashers of California, Inc*., 899 F.3d 1106, 1110–11 (9th Cir. 2018) (noting approval where settlement covered "all claims" that "could have been pled based on the factual allegations in the Complaint").

### D.    Plaintiffs' Service Awards and Class Counsel's Fee & Expense Award

Pursuant to Settlement § 3.1, Plaintiffs have requested Service Awards of $7,000 each, in recognition of their personal contributions to prosecuting the Class's claims.  *See* Dkt. 200 at 23-25; *accord* Settlement, § 3.1.  Consistent with Settlement § 3.2, Class Counsel has requested a Fee & Expense Award of $750,000 in attorneys' fees, and $75,000 in reimbursement for out-of-pocket litigation expenses.  *See* Dkt. 200 at 1-23; Settlement, § 3.2.   If the Court grants a Fee & Expense Award or Service Awards in amounts less than Plaintiffs' requests, then any such difference would not revert to Defendants.  *See* Settlement, § 2.2(d).  Instead, any such difference would simply increase the Net Cash Settlement Amount, and be paid out proportionally to Class Members.  *Id.*[7]

### IV.    THE SETTLEMENT CLASS CONTINUES TO SATISFY FED. R. CIV. P. 23

Plaintiffs seek final certification of the Class, for Settlement purposes only.  *See* Fed. R. Civ. P. 23(e) (providing that "a class [may be] certified for purposes of settlement").  In its Preliminary Approval Order, the Court properly analyzed the Settlement Class and found it to satisfy all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Dkt. 195, ¶¶5-9.  Nothing has

---

[7] Plaintiffs' pending Motion for Service Awards, Attorneys' Fees, and Expenses thoroughly analyzes the reasonableness of the Fee & Expense Award and Service Awards.  *See generally* Dkt. 200.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

changed—legally or factually—since the Court preliminarily certified the Class in July, so the Court should now finally certify the Class for purposes of effectuating the Settlement's terms, and bringing this Action to its decisive and fruitful conclusion.  Dkt. 195, ¶¶5-9.

### A.    Rule 23(a) Remains Satisfied

#### 1.    The Settlement Class is sufficiently numerous.

A class may be certified only if it is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, there are hundreds of thousands of Class Members, which render the Class more than sufficiently numerous.  Huang Decl., ¶3.

#### 2.    The Settlement Class presents common questions of law and fact.

Rule 23(a)(2) requires there to be questions of law or fact that are common among class members.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011).  Here, Class Members' claims arise from the same core contentions: namely, that Defendants misrepresented and failed to disclose the free method of entry in the Dogecoin Sweepstakes, causing Class Members to unnecessarily pay for their entries.  *See generally* TAC.  Hence, the following questions of law and fact are common among Class Members: (a) whether Defendants falsely or misleadingly advertised the Sweepstakes entry requirements; (b) whether Defendants clearly and conspicuously disclosed the free entry option; and (c) whether and to what extent Defendants are liable for the payments made by Class Members to enter.  The commonality requirement is easily satisfied, based on the foregoing common questions.  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) ("The threshold for establishing commonality under Rule 23(a) is relatively low.").

#### 3.    Plaintiffs' claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not require a perfect similarity of claims among plaintiffs and a proposed class.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied where named plaintiffs' claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and [are] based upon the same legal theory."  *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1321 (9th Cir. 1982); *In re Juniper*

12

*Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) (explaining "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members") (citation omitted).

Plaintiffs' claims are plainly typical of the Class's claims here.  Like all Class Members, Plaintiffs allege that, in response to Defendants' digital Sweepstakes ads through the Coinbase website and mobile app, they opted into the Sweepstakes and traded Dogecoins for $100 or more on the Coinbase platform, during an eight-day period in June 2021.  TAC, ¶¶27-42.  Coinbase charged Plaintiffs and other Class Members quantifiable Transaction Fees and Spreads for all such Dogecoin transactions.  *Id.*, ¶2.  Even if Plaintiffs' claims are not *identical* to those of all other Class Members in every respect, Plaintiffs and the Class generally assert the same facts and legal theories against Defendants to claim violations of California's UCL and FAL.  *Id.*; ¶¶101-144.  Indeed, the Official Rules expressly subjected Plaintiffs' and all Class Members' claims to California law, regardless of the various States in which individual Class Members may reside.  *See* Official Rules (Dkt. 83-1) § 10.  Thus, Plaintiffs' claims are "typical" of Class Members' claims, since all share similar factual allegations, assert similar injuries, and must satisfy the same legal elements to prevail on their claims.  Fed. R. Civ. P. 23(a)(3).

### 4.    Plaintiffs and their counsel have fairly and adequately protected the Class's interests.

Rule 23(a)(4) requires that Plaintiffs "fairly and adequately" protect the interests of the Class.  The two-prong test for determining adequacy is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  As this Court previously determined, both prongs are satisfied here.  *See* Preliminary Approval Order (Dkt. 195), ¶¶7(d)-(e).

First, Plaintiffs' interests are aligned with, not antagonistic to, the Class's interests.  As explained *supra*, Plaintiffs share the same claims and theories as other Class Members, and the Settlement provides Plaintiffs and the Class with similar Class Member Awards, in direct proportion to each Class Member's Coinbase transaction records.  Settlement § 2.2(d).  Plaintiffs have already

diligently represented this Class's interests throughout four years of District Court, Circuit Court, and Supreme Court proceedings.  Harris Decl., ¶38.

Second, Class Counsel has extensive experience litigating and settling complex class action lawsuits, including but not limited to complex consumer and securities class actions.  Harris Decl., ¶¶ 39-43.  Class Counsel, alongside Plaintiffs, have zealously guarded the Class's interests through many contested proceedings over four years, arguing and negotiating in multiple forums to achieve a multimillion-dollar recovery on the Class's behalf.  *Id.*; *see generally* Dkt. 200.  Class Counsel is well qualified and adequate to represent this Settlement Class.  *Id.*

## B.    Rule 23(b)'s Prongs Remain Satisfied

### 1.    Common questions of law and fact predominate over individual issues.

The Supreme Court has defined the predominance factor as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "The predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation omitted).

Here, Plaintiffs' and the Class's claims turn on the following, common questions, among others: (a) whether Defendants falsely or misleadingly advertised the true entry requirements for the Sweepstakes; (b) whether Defendants clearly and conspicuously disclosed the free-entry option in their digital Sweepstakes solicitations; and (c) whether and to what extent Defendants are liable for payments made by Class Members to enter the Sweepstakes.  *See generally* TAC.  Such common questions predominate over any individual issues that might exist in the Action, particularly in this Settlement context.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

### 2.    A class action is the superior method of adjudication.

To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the

14

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  controversy already begun by . . . class members; (C) the desirability . . . of
2  concentrating the litigation of the claims in the particular forum; and (D) the
   likely difficulties in managing a class action.

3  Fed. R. Civ. P. 23(b)(3). Each of those factors supports certifying the Class for Settlement purposes.

4  This Action involves hundreds of thousands of Class Members who have been injured in
5  relatively small dollar amounts. There is no incentive for Class Members to pursue separate actions
6  here. *See Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic
7  alternative to a class action is not 17 million individual suits, but zero individual suits, as only a
8  lunatic or a fanatic sues for $30"). In effect, the Court has already decided as much with respect to
9  this case, by invalidating the Official Rules' class-action waiver as unconscionable. August 2022
10 Order at 7-9 ("For these reasons, the Court finds that Plaintiffs' claims predictably involve small
11 amounts of damages . . . ."). Indeed: so "small" as to render individual suits cost-prohibitive. *Id.*

12 To date, no Class Members apart from Plaintiffs have pursued their own claims regarding the
13 June 2021 Dogecoin Sweepstakes. Even if some Class Members were inclined to sue individually,
14 such repetitious litigation would be neither beneficial nor efficient. *McCrary v. Elations Co., LLC*,
15 2014 WL 1779243, at *16 (C.D. Cal. Jan. 13, 2014) ("It is more efficient to resolve the common
16 questions . . . in a [single] proceeding rather than to have individual courts separately hear these
17 cases."). A class action is superior to hundreds of thousands of individual actions, because
18 concentrating all claims in one forum eliminates the dual risks of inconsistent outcomes and
19 irrationally high litigation costs. *See Negrete v. Allianz Life Ins. Co. of N. Am*., 238 F.R.D. 482, 493
20 (C.D. Cal. 2006).

21 Finally, there are no manageability challenges presented by certifying this Class for
22 Settlement purposes, as there will be no Class-wide trial once the Court grants Plaintiffs' Motion for
23 Final Approval. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only
24 class certification, a district court need not inquire whether the case, if tried, would present
25 intractable management problems.") The proposed Settlement Class plainly satisfies Rule 23(b)(3).

26 For the above reasons, Plaintiffs ask that the Court conclusively certify the following Class
27 under Fed. R. Civ. P. 23(b)(3), for Settlement purposes only: "All U.S. persons who opted into the

28

June 2021 Dogecoin sweepstakes promotion sponsored by Coinbase, Inc., and who bought, sold, or traded Dogecoins on the Coinbase trading platform for an aggregate $100 (USD) or more between June 3, 2021 and June 10, 2021, inclusive." *Accord* Settlement, § 2.1(a).

## V.    FINAL APPROVAL OF THE SETTLEMENT IS PROPER

### A.  Legal Standards Governing Final Settlement Approval

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  The purpose of requiring court approval of class settlements is "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Courts need not address whether a class settlement is ideal or presents the best possible outcome, but instead, "only whether the settlement is fair, free of collusion, and consistent with plaintiff[s'] fiduciary obligations to the class." *Salinas v. Block, Inc.* No. 22-cv-04823-SK, 2025 WL 1070754, at *1 (N.D. Cal. Mar. 27, 2025) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

The law favors settlements in class actions and other complex cases, as substantial resources are conserved by avoiding the time, costs, and rigors of prolonged litigation. *See Syncor*, 516 F.3d at 1101; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Absent serious red flags, the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotations omitted); *see also Chavez v. WIS Holding Corp.*, 2010 WL 11508280, at *1 (S.D. Cal. Jun. 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In deciding whether to finally approve a settlement, courts must determine whether the settlement is "fair, adequate, and reasonable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019). The Ninth Circuit has "identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant [if any]; and (8) the reaction of class members to the proposed settlement." *Salinas*, 2025 WL 1070754, at *1 (citing *Hanlon*, 150 F.3d at 1026); *see also Churchill Village*, 361 F.3d at 575-77 & n.7 (analyzing the *Hanlon* factors, and noting that they are "non-exclusive"). "District courts may consider some or all of these factors," and of course, "[n]o one factor is dispositive." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121, 1127 (9th Cir. 2020).

In this case, the overwhelming weight of applicable *Hanlon* factors counsels strongly in favor of Final Approval.

### C.    All Applicable *Hanlon* Factors Support Final Approval

#### 1.    The "strength of plaintiffs' case," relative to "the amount offered"

In evaluating the strength of a case, courts "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). A settlement, however, is not judged solely against what plaintiffs could have recovered at trial if they prevailed, nor must a settlement provide a full recovery to be reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."). Settlement is, by definition, a compromise; "in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'm of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (internal citation omitted).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Courts routinely approve of cash settlement amounts that are far less than class members' alleged losses. *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (finding a $5 or $30 benefit representing 5% to 30% of the potential, post-trial recovery was fair and adequate in a consumer class action); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *7-8 (W.D. La. Mar. 3, 2015) (finding a "7.4%–10.3% [recovery] of estimated provable damages" to be "a high degree of success" because "[t]he typical recovery in most class actions generally is three-to-six cents on the dollar").

Here, the Settlement provides automatic cash benefits to Class Members, in reasonable relation to the charges each Class Member incurred to enter the June 2021 Dogecoin Sweepstakes. Settlement § 2.2(d). The Parties estimate that the total Transaction Fees and Spreads Coinbase charged to Class Members, for *all* their Dogecoin trades during the Sweepstakes Period, was $4,189,828.67, and—of that amount—the Transaction Fees and Spreads that Coinbase charged Class Members for their *first $100* in Dogecoin trades during the Sweepstakes Period, totaled approximately $1,340,713.87. *See* Huang Decl. (Dkt. 189-6), ¶¶4-5.

The Settlement preliminarily approved by this Court provides for a Net Cash Settlement Amount of over $1.3 million. Hence, even *after* making deductions from the Settlement Fund for the Fee & Expense Award, Service Awards, and Administrative Costs, Class Members will still receive more than $1.3 million—the total of all Transaction Fees and Spreads they paid for their first $100 in Dogecoin trades during the Sweepstakes Period (plus or minus about ten cents per Class Member). *See* Settlement § 2.2(d). Even if Class Members could theoretically recover more at trial, it is certainly "reasonable" to tailor their negotiated recoveries to those charges they incurred for their *first $100* in trades: given that Defendants' challenged ads told Class Members they "need[ed]" to trade just "$100 in Dogecoin," or "$100 or more in DOGE," for entry into the Sweepstakes. *See* TAC (Dkt. 83), ¶¶6-10; Official Rules (Dkt. 83-1), § 3.

The Net Cash Settlement Amount of over $1.3 million reasonably measures the charges Class Members were allegedly *misled* to incur to enter this Sweepstakes. The Class's interests are thus fairly, reasonably, and adequately served by this Settlement, especially when compared to the high

18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

costs and degrees of uncertainty inherent in all future litigation.  *In re LinkedIn User Privacy Litig.,* 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

### 2.    The risks, costs, complexities, and duration of future litigation

In contrast to the tangible, immediate benefits of this Settlement, the ultimate outcome of continuing litigation is highly uncertain and could add years to this dispute.  Absent Settlement, Defendants would aggressively defend the Action before, during and after trial, including through oppositions to class certification, motions for summary judgment, and appeals (and perhaps even Supreme Court proceedings, as Coinbase has demonstrated twice already).

By way of example only, Defendants would contend that the no-purchase-necessary language in their Sweepstakes ads sufficed to alert all Class Members of a free-entry method, especially when coupled with hyperlinks to the Official Rules that were directly visible in the ads. *Id.*  Defendants would also draw from their business records showing that thousands of consumers, in fact, entered the Dogecoin Sweepstakes for free; Defendants would argue that such widespread, free entries clearly evidence the truthfulness and clarity of their Sweepstakes solicitations.  *Id.*  It is hard to predict the outcomes of such defenses (among others) on a full evidentiary record, in part because— as this Court recognized during the pleading stage—there is a dearth of precedent interpreting and applying California's sweepstakes law.  *See* January 2022 Order (Dkt. 53) at 14 ("There are no cases construing this statute.").

Defendants would also contend on the evidence that their ads' deficiencies (if any) were not an actual or proximate cause of Class Members' trading activities during the Sweepstakes Period. Defendants might prove that many Class Members traded Dogecoin both before and after the Sweepstakes Period, and/or traded far more Dogecoins than the ads ever required.  Based on such evidence, Defendants might show that many Class Members would have paid to trade Dogecoins during the Sweepstakes Period *regardless* of any of Defendants' Sweepstakes solicitations.

19

These are just a few of the many merits defenses that Defendants would put forth during future stages of this Action, thereby creating multiple, independent hurdles for Plaintiffs and the Class to try to overcome at great risk, delay, and cost to the Class.

Defendants would oppose class certification outside of this Settlement context, and would likely appeal any ultimate merits judgment in the Class's favor. Absent Settlement, Plaintiffs and the Class might well recover nothing at all. Or, even if Class Members fully prevailed on the merits, they might later recover *less* than the $2.25 million Cash Settlement Amount achieved by today's Settlement. In reaching a reasonable resolution now, Plaintiffs have secured a sizable, automatic cash recovery for the Class, and avoided all delays, expenditures, and uncertainties that would accompany future, contested litigation in this Action. *In re Toys R Us*, 295 F.R.D. at 454; *LinkedIn*, 309 F.R.D. at 587.

### 3. The "stage of proceedings and extent of discovery" have informed the views of Class Counsel having "experience" in comparable cases.

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009). Where, as here, "[t]here is no evidence to suggest that the settlement was negotiated in haste or [without] information illuminating the value of plaintiffs' claims," final approval is proper. *Hanlon*, 150 F.3d at 1027.

Here, Class Counsel has over twelve years of experience litigating and settling complex securities and consumer class actions, including actions specifically analogous to this one. *E.g.,* Harris Decl., ¶40; *Tucker v. Chase Bank USA, N.A.*, 399 F. Supp. 3d 105 (S.D.N.Y. 2019) (pertaining to financial institutions' disclosures of transaction charges for cryptocurrency purchases). Class Counsel has conducted many contested proceedings in this case, to thoroughly test the myriad legal and factual issues raised; such contested proceedings have included, but not been limited to, multiple pleading amendments, multiple dispositive motions, formal and informal discovery, and heavy evidentiary briefing submitted to experienced mediators. *See generally* Part II, *supra*. There is simply "no evidence" that Class Counsel has negotiated this Settlement "in haste," or "in the absence

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

of information illuminating the value of [P]laintiffs' claims." *Hanlon*, 150 F.3d at 1027. Class Counsel has demonstrably, carefully weighed this Settlement against all risks and costs of continued litigation, and believes that the Settlement is fair, reasonable, and adequate under the totality of circumstances presented. Harris Decl., ¶¶43, 48. This factor supports Final Approval, as does the Class's favorable response to this Settlement upon receiving Class Notice.

**4.    The Class's positive response to this Settlement favors Final Approval.**

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement . . . are favorable to the class members." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526-27. Likewise, a relatively "small number of opt-outs . . . weighs in favor of granting final approval." *Pedraza v. Pier 1 Imports U.S., Inc.*, No. 8:16-cv-01447-JLS-DFM, 2018 WL 11327201, at *4 (C.D. Cal. June 19, 2018).

The deadline for Class Members to submit their opt-outs or objections in this case expired on October 1, 2025. *See* Preliminary Approval Order (Dkt. 195), ¶¶12, 14. As of the post-deadline filing of this Motion, ***zero*** Class Members have objected to the Settlement, and only ***one*** Class Member has opted to exclude themselves from the Class—out of the more than 400,000 persons who received Class Notice. Marra Decl., ¶¶9-16. Such "infinitesimal[ly]" small numbers of objections and opt-outs unequivocally support Final Approval. *See Bolger*, 2 F.3d at 1313-14 (recognizing that even 30 objectors out of 1.1 million class members was "an infinitesimal number"). The Class itself has overwhelmingly approved of this Settlement, and the Court should do the same. *Id.*

**D.    There is No Evidence of Fraud, Collusion, or Conflicts of Interest That Could Preclude Final Approval**

While pre-certification class settlements require additional "scrutiny," beyond the *Hanlon* factors alone, pre-certification settlements remain approvable absent "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). "Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290. The Ninth Circuit has identified "subtle signs" of collusion and conflicts of interest that may undermine the approvability of class

21

action settlements: (1) outsized fee requests by class counsel, "or when the class receives no monetary distribution"; (2) "clear sailing" terms, which "provid[e] for the payment of attorneys' fees separate and apart from the class funds"; and (3) "when the parties arrange for [attorneys'] fees *not* awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947 (emphasis added). No such warning signs exist here.

First, this Settlement gives Class Members over $1.3 million in "monetary distribution[s]," in direct proportion to their alleged financial injuries. *Id.* Furthermore, as shown in Plaintiffs' pending Motion for Service Awards, Attorneys' Fees and Expenses (Dkt. 200), the Fee & Expense Award is unquestionably proper, in relation to the capable work performed and the cash results achieved. *See generally* Dkt. 200. Class Counsel has requested a minority share of the Settlement Fund, while the Class retains the lion's share, with the lion's share being tied directly to the monetary value of the Class's claims. *Id.*

Second, the Settlement here contains no "clear sailing" terms. *Bluetooth*, 654 F.3d at 947. Instead, "any Fee & Expense Award shall be paid from the Settlement Fund," and "[a] Fee & Expense Award approved by the Court in an amount less than the amount sought by Class Counsel is *not* a basis for setting aside the Agreement." Settlement (Dkt. 189-2), § 3.2 (emphasis added).

Third, there are no reversionary provisions in this Settlement. *See generally* Dkt. 189-2. If the Court were to reduce Class Counsel's Fee & Expense Award, such a judicial reduction would accrue solely to the Class's benefit, rather than any Defendant's. Harris Decl., ¶39; Settlement, §§ 1.21, 2.2(d). There is simply no "evidence of collusion or other conflicts of interest" in this Settlement. *Bluetooth*, 654 F.3d at 946-47.

Lastly, the involvement of a neutral mediator here is an important "factor weighing in favor of a finding of non-collusiveness." *Id.* at 948. Only after litigating contentiously, for multiple years (*see* Part II, *supra*), the Parties agreed to mediate before the Honorable Layn R. Phillips (Ret.) and his colleagues, Ms. Caroline Cheng and Ms. Niki Mendoza, in Corona del Mar, California. Harris Decl., ¶¶22-26, 49-52.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    In October 2024, during the Parties' in-person mediation session before Judge Phillips and

2    his colleagues, the Parties debated the strengths and weaknesses of this case, and after a full day,

3    were still unable to agree to resolve it.  *Id.*  It was not until December 2024—three and a half years

4    into the Action—that the Parties finally reached an agreement in principle to resolve this case.  *Id.*

5    Far from suggesting "fraud or overreaching by . . . the negotiating parties," *City of Seattle*, 955 F.2d

6    at 1290, the Parties' extensive work here with experienced mediators only further shows a fair and

7    reasonable result for the Settlement Class.  *See Rodriguez*, 563 F.3d at 965 (affirming final

8    settlement approval, and noting that "[w]e put a good deal of stock in the product of an arms-length,

9    non-collusive, negotiated resolution").

10    As the Court has already recognized, this "Settlement is the result of arms-length negotiations

11    between the parties and extensive mediation efforts conducted after Class Counsel had adequately

12    investigated Plaintiffs' claims and become familiar with their strengths and weaknesses."

13    Preliminary Approval Order (Dkt. 195), ¶4.

14    **VI.    CONCLUSION**

15    There is no lawful barrier to the Court's Final Approval of this Settlement.  For the foregoing

16    reasons, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, and

17    bring a positive end to this four year-old Action.

18

19    Dated: October 6, 2025                          Respectfully submitted,

20                                                    HARRIS LLP

21                                                    By:    *s/ David J. Harris, Jr.*

22                                                        David J. Harris, Jr.

23                                                    david@harrisllp.com

24                                                    Gerilyn R. Harris
                                                      gerilyn@harrisllp.com

25                                                    501 West Broadway, Suite 800
                                                      San Diego, California 92101

26                                                    Telephone: (619) 213-1102

27                                                    *Counsel for Plaintiffs and*
                                                      *the Settlement Class*

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT